DAVID B. BAYLESS (SBN 189235)
Email:  dbayless@cov.com
TAMMY ALBARRÁN (SBN 215605)
Email:  talbarran@cov.com
AILEEN WHEELER (SBN 223705)
Email:  awheeler@cov.com
JOSHUA D. HURWIT (SBN 263108)
Email:  jhurwit@cov.com
SAMANTHA J. CHOE (SBN 252002)
Email:  schoe@cov.com
JOHN D. FREED (SBN 261518)
Email:  jfreed@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone:    415-591-6000
Facsimile:    415-591-6091

Attorneys for Defendant Kimon P. Daifotis

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>                              Plaintiff,<br><br>         v.<br><br>KIMON P. DAIFOTIS and RANDALL MERK,<br><br>                              Defendants. | Civil Case No.: 11-cv-00137-WHA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>**Date:**          June 2, 2011<br>**Time:**          2:00 p.m.<br>**Judge:**        Hon. William H. Alsup<br>**Courtroom: 9** |

1

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

2

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on June 2, 2011, at 2:00 p.m., or as soon

4

thereafter as the matter may be heard, in the Courtroom of the Honorable William H. Alsup, at

5

the United States District Court, Northern District of California, 450 Golden Gate Avenue, San

6

Francisco, CA 94102, defendant Kimon Daifotis will and hereby does move the Court, pursuant

7

to Federal Rule of Civil Procedure 12(b)(6), to dismiss this action against him with prejudice.

8

This Motion is brought on the grounds that the Complaint fails to state a claim upon which relief

9

can be granted.

10

This Motion is based on this Notice of Motion and Motion, the concurrently filed

11

Memorandum of Points and Authorities; the Declaration of David Bayless in support of

12

Mr. Daifotis' Motion ("Bayless Decl.") and the exhibits attached thereto ("Ex. __");[1] the papers

13

and pleadings on file with this Court; and such other written or oral argument and other

14

materials as may be presented to this Court.

15

16

17

18

19

20

21

22

23

---

[1] All exhibits to the Bayless Declaration are documents incorporated by reference in the SEC's Complaint.  Accordingly, the Court may consider the contents of those documents in ruling on this Motion to Dismiss.  *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. . . . [T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss . . . . The doctrine of incorporation by reference may apply, for example, . . . when a plaintiff's claim about stock fraud is based on the contents of SEC filings.") (internal citations omitted).

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF ISSUES

### (Local Rule 7-4)

(1)     Whether the SEC's Complaint as a whole should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for constituting an improper "shotgun" pleading.

(2)     Whether the SEC's causes of action for primary liability (First, Third, and Sixth Claims for Relief) should be dismissed pursuant to Federal Rule of Civil Procedure 9(b) for failing to plead with particularity facts showing that Mr. Daifotis "substantially participated" in making alleged third-party misstatements.

(3)     Whether the SEC's causes of action for secondary liability (Second, Fifth, Seventh, and Eighth Claims for Relief) should be dismissed pursuant to Federal Rule of Civil Procedure 9(b) for failing to plead with particularity facts showing (a) an underlying primary violation and (b) that Mr. Daifotis "substantially assisted" in making alleged third-party misstatements.

(4)     Whether the SEC's Fifth Claim for Relief should be dismissed because SEC Rule 206(4)-8 was not effective at the time of almost all of the alleged misconduct.

(5)     Whether the SEC's Seventh and Eighth Claims for Relief should be dismissed with prejudice because the SEC did not have the authority to bring claims for aiding and abetting violations of the Investment Company Act of 1940 at the time of the alleged misconduct.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND FACTS ................................................................................................. 2

ARGUMENT ................................................................................................................... 3

I.    THE SEC'S COMPLAINT MUST BE DISMISSED BECAUSE IT
ENGAGES IN IMPROPER "SHOTGUN" PLEADING. ..................................... 3

II.   THE SEC'S COMPLAINT VIOLATES FEDERAL RULE OF CIVIL
PROCEDURE 9(b) BY FAILING TO PLEAD both FRAUD and
aiding and abetting WITH PARTICULARITY. .................................................. 6

    A.    The Complaint Fails to Allege With Particularity That
Mr. Daifotis Is Primarily Liable for Alleged Third-Party
Misstatements. ........................................................................................ 6

        1.    The Complaint Fails to Allege Facts Showing
Mr. Daifotis' Substantial Participation in the Preparation
of Alleged Third-Party Misstatements About the Nature
and Risks of the YP Fund. .............................................................. 9

        2.    The SEC Fails to Allege Mr. Daifotis' Substantial
Participation in Alleged Misstatements About Weighted
Average Maturity and Duration. .................................................... 10

        3.    The Complaint Fails to Allege Mr. Daifotis' Substantial
Participation in the Alleged Misstatements About the
Fund's Concentration Policy. ......................................................... 11

        4.    Any SEC Attempt to Directly Attribute These Third-Party
Statements to Mr. Daifotis Fails. .................................................. 13

    B.    The SEC Complaint Fails to Allege the Elements of Aiding and
Abetting Liability with Particularity........................................................ 16

        1.    The SEC's Complaint Fails to Allege The Primary
Violations That Mr. Daifotis Supposedly Aided and
Abetted........................................................................................... 17

        2.    The SEC Fails To Allege With Particularity that
Mr. Daifotis Substantially Assisted the Alleged Primary
Violations....................................................................................... 18

        3.    The SEC's Reliance on Mr. Daifotis' Position and Job
Responsibilities Is Legally Insufficient to Plead
Substantial Assistance. .................................................................. 20

III.   Count FIVE Must Be Dismissed Because SEC RULE 206(4)-8 Was
Not Effective AT the Time of the alleged misconduct....................................... 21

IV.    Counts SEven And eight Must be Dismissed With Prejudice Because the SEC Has No Authority to Bring these Claims............................................. 22

1.    The SEC Had No Authority to Bring Claims for Aiding and Abetting a Violation of the ICA at the Time of the Alleged Misconduct....................................................... 22

2.    Dodd-Frank's Provision Giving the SEC the Right to Bring Claims for Aiding and Abetting an ICA Violation Is Not Retroactive. .......................................................... 24

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*,
 Nos. CV-09-8162-PCT-GMS, CV-09-8174-PCT-GMS, 2010 U.S. Dist. LEXIS
 123834 (D. Ariz. Nov. 4, 2010)..................................................................................16

*Bowen v. Georgetown Univ. Hosp.*,
 488 U.S. 204 (1988)...................................................................................................24

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver*,
 511 U.S. 164 (1994)...................................................................................................22

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
 713 F. Supp. 2d 378 (D. Del. 2010)......................................................................13, 14

*Commc'ns Workers of Am. v. CSK Auto Corp.*,
 No. 2:06-cv-01580-DGC, 2007 U.S. Dist. LEXIS 22782 (D. Ariz. Mar. 28, 2007)................8

*Destfino v. Kennedy*,
 No. CV-F-08-1269 LJO DLB, 2008 U.S. Dist. LEXIS 109691 (E.D. Cal. Nov. 3,
 2008) ...........................................................................................................................3

*Fezzani v. Bear Stearns & Co., Inc.*,
 592 F. Supp. 2d 410 (S.D.N.Y. 2008) .......................................................................21

*First Equity Corp. v. Standard & Poor's Corp.*,
 690 F. Supp. 256 (S.D.N.Y. 1988), *aff'd*, 869 F.2d 175 (2d Cir. 1989)..................18

*In re Int'l Rectifier Corp. Sec. Litig.*,
 No. CV-07-2544-JFW .................................................................................................14

*In re Nvidia Sec. Litig.*,
 No. 08-CV-04260-RS, 2010 U.S. Dist. LEXIS 114230 (N.D. Cal. Oct. 19, 2010) ...............18

*In re Seracare Life Sci., Inc.*,
 No. 3:05-cv-02335-JLS-CAB, 2007 U.S. Dist. LEXIS 19654 (S.D. Cal. Mar. 19,
 2007) ...........................................................................................................................8

*In re Software Toolworks, Inc. Sec. Litig.*,
 50 F.3d 615 (9th Cir. 1994) ..................................................................................7, 12

*In re Syntex Corp. Sec. Litig.*,
 855 F. Supp. 1086 (N.D. Cal. 1994) ..........................................................................15

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) .....................................................................................6

iii

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ........................................................................................... 25

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) .............................................................................. 6

*New York City Employees' Ret. Sys. v. Berry*,
   616 F. Supp. 2d 987 (N.D. Cal. 2009) ........................................................ passim

*Ponce v. SEC*,
   345 F.3d 722 (9th Cir. 2003) ............................................................................ 16

*Riddle v. Dyncorp Int'l Inc.*,
   733 F. Supp. 2d 743 (N.D. Tex. 2010) ............................................................. 24

*Roberts v. Heim*,
   670 F. Supp. 1466 (N.D. Cal. 1987) ................................................................. 15

*Russello v. United States*,
   464 U.S. 16 (1983) ............................................................................................ 24

*SEC v. Berry*,
   580 F. Supp. 2d 911 (N.D. Cal. 2008) ........................................... 7, 12, 16, 21

*SEC v. Druffner*,
   353 F. Supp. 2d 141 (D. Mass. 2005) .............................................................. 17

*SEC v. Fraser*,
   No. CV-09-00443-PHX-GMS, 2009 U.S. Dist. LEXIS 70198 (D. Ariz. Aug. 11,
   2009) ................................................................................................... 3, 4, 7, 8

*SEC v. Leslie*,
   No. C 07-03444, 2008 U.S. Dist. LEXIS 79790 (N.D. Cal. Aug. 19, 2008) ......... 17

*SEC v. Patel*,
   Civil No. 07-cv-39-SM, 2009 U.S. Dist. LEXIS 64394, (D.N.H. July 7, 2009) ...... 4

*SEC v. Patel*,
   Civil No. 07-cv-39-SM, 2009 U.S. Dist. LEXIS 90558, (D.N.H. Sept. 30, 2009) ......... 5

*SEC v. Parnes*,
   No. 01 Civ. 0763 (LLS) (THK), 2001 U.S. Dist. LEXIS 21722 (S.D.N.Y. Dec. 26,
   2001) ................................................................................................................ 5

*SEC v. Pimco Advisors Fund Mgmt., LLC*,
   341 F. Supp. 2d 454 (S.D.N.Y. 2004) ................................................................ 6

*SEC v. Rabinovich & Assocs., LP*,
   No. 07 Civ. 10547 (GEL), 2008 U.S. Dist. LEXIS 93595 (S.D.N.Y. Nov. 18, 2008) ......... 21

*SEC v. Rana Research, Inc.*,
   8 F.3d 1358 (9th Cir. 1993) ...................................................................................12

*SEC v. Solow*,
   No. 06-81041-CIV, 2007 U.S. Dist. LEXIS 20751 (S.D. Fla. Mar. 23, 2007) ...................4, 5

*SEC v. Trabulse*,
   526 F. Supp. 2d 1001 (N.D. Cal. 2007) ...................................................................17

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 21935 (N.D. Cal. Mar. 9, 2007) .............7, 16

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................6

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ......................................................................3, 4, 13

*Wisdom v. Nevada*,
   No. 3:06-CV-00094-PMP-RAM, 2010 U.S. Dist. LEXIS 107993 (D. Nev. Oct. 8,
   2010) ..............................................................................................................16

*Yamamoto v. Kim*,
   564 F.2d 1319 (9th Cir. 1977) ................................................................................14

**FEDERAL STATUTES**

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203,
   124 Stat. 1376–2223 (2010) ("Dodd-Frank")...............................................22, 23, 24, 25

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b) .........................................17

Securities Exchange Act of 1934 § 20(e), 15 U.S.C. § 78t(e).........................................22

Investment Advisers Act of 1940 § 209(d), 15 U.S.C. § 80b-9(d).............................22, 23

Investment Company Act of 1940 § 34(b), 15 U.S.C. § 80a-33(b)....................................17

**OTHER AUTHORITIES**

17 C.F.R. § 275.206(4)-8...............................................................................17, 21

Federal Rule of Civil Procedure 9(b)..............................................................6, 15, 16, 19

Federal Rule of Civil Procedure 12(e)..............................................................................3

Federal Rule of Civil Procedure 12(f) .............................................................................17

Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, Rel. No. IA-
   2628 (Aug. 3, 2007).............................................................................................21

1

156 Cong. Rec. H5,237 (June 30, 2010)..........................................................................23

2

3

*Regulatory Perspectives on the Obama Administration's Financial Regulatory Reform Proposals, Testimony Before the H. Comm. on Fin. Servs.*, 111th Cong. (2009) (prepared statement of Mary L. Schapiro, SEC Chair) ............................................23

4

5

*SEC Oversight: Current State and Agenda, Testimony Before the H. Comm. on Fin. Servs., Subcomm. on Capital Mkts., Ins., and Gov.-Sponsored Enters.*, 111th Cong. (2009) (prepared statement of Mary L. Schapiro, SEC Chair)...............................23

6

7

U.S. Dept. of Treasury, Fact Sheet: Administration's Regulatory Reform Agenda Moves Forward Legislation for Strengthening Investor Protection Delivered to Capital Hill (2009)......................................................................................................................................24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

The SEC's Complaint against Mr. Daifotis should be dismissed for several independent reasons.[2]  First, the Complaint is an improper "shotgun" pleading, with each count incorporating by reference every paragraph that precedes it.  This makes it impossible for Defendants (and the Court) to determine which factual allegations relate to which causes of action and to which elements of these causes of action.  Courts routinely dismiss SEC complaints that engage in "shotgun pleading."

Second, the Complaint fails in several respects to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirements.  As to the causes of action for primary liability (Counts One, Three, and Six), most of the alleged misstatements were made by third-parties – not Mr. Daifotis.  But because the Complaint fails to allege specific facts showing that Mr. Daifotis substantially participated in the making of the alleged third-party misstatements, primary liability is not properly pled.  As to the causes of action for secondary liability (Counts Two, Five, Seven, and Eight), the Complaint fails to allege with particularity the primary violations (and the primary violator) that Mr. Daifotis supposedly aided and abetted.  It also fails to allege with particularity that Mr. Daifotis substantially assisted the purported primary violations.

Third, SEC Rule 206(4)-8 promulgated under the Investment Advisers Act ("IAA") – the alleged basis for Count Five – did not become effective until September 10, 2007, *after* most of the conduct alleged in the Complaint had occurred.

Finally, Counts Seven and Eight both allege causes of action for aiding and abetting primary violations of the Investment Company Act ("ICA").  But the SEC did not obtain the authority to bring aiding and abetting claims under the ICA until July 2010, years

---

[2]  Mr. Daifotis joins in and incorporates by reference the parallel motion to dismiss filed on April 7, 2011 by Defendant Randall Merk.

1    after Mr. Daifotis' alleged misconduct had occurred.  Because this authority is *not* retroactive,

2    Counts Seven and Eight must be dismissed with prejudice.

3                                  **BACKGROUND FACTS**

4              From 1999 until July 2008, Mr. Daifotis was the Chief Investment Officer for the

5    fixed income (i.e., bond) mutual funds of Charles Schwab Investment Management ("CSIM"),

6    where he was responsible for the YieldPlus Fund ("YP Fund" or "Fund"), an ultra-short bond

7    fund.[3]  (*See* Compl. ¶ 20.)  He reported to the President of CSIM, who in turn reported to the

8    CSIM Board of Trustees.  CSIM is a wholly owned subsidiary of Charles Schwab Corporation

9    ("Schwab").  (Compl. ¶ 22.)  CSIM is an SEC-registered investment adviser, not a broker-

10   dealer.  (*See id.*)

11             Another separate wholly owned subsidiary of Schwab is Charles Schwab & Co.,

12   Inc. ("CSC").  (Compl. ¶ 23.)  CSC is a broker-dealer registered with the SEC.  (*Id.*)  It

13   employed the Schwab brokers who interacted with investors and the product managers that

14   developed advertising and marketing materials for investors.  It employed the in-house lawyers

15   responsible for SEC filings and the firm's compliance with all federal securities laws and the

16   Compliance Group responsible for compliance with SEC and FINRA rules and regulations

17   governing advertisements and other communications to investors.  (*See id.*)  Mr. Daifotis had no

18   position at CSC.

19             The SEC's Complaint alleges four types of allegedly fraudulent statements (most

20   of which Mr. Daifotis did not make) about YieldPlus:  (1) purported misstatements about the

21   nature and risk of the YP Fund; (2) purported misstatements about the weighted average

22   maturity and duration of the YP Fund; (3) Schwab's purported violation of the YP Fund's

23   concentration policy, followed by Schwab's alleged illegal change in that policy (and Schwab's

24   failure to disclose that change) due to Schwab's failure to obtain shareholder approval; and,

25

26   _____

27   [3]  Importantly, Mr. Daifotis personally invested in YieldPlus, alongside every other investor in
     the Fund.  So, when the value of the fund declined in late 2007 and early 2008, the value of his
     investment declined too.

28

1   finally, (4) various alleged misstatements from the middle of 2007 through November 2007,

2   when the unprecedented liquidity crisis hit all financial markets, including bond markets.  (*See*

3   Compl. ¶¶ 25-160.)

4                                          **ARGUMENT**

5   **I.    THE SEC'S COMPLAINT MUST BE DISMISSED BECAUSE IT ENGAGES IN
6          IMPROPER "SHOTGUN" PLEADING.**

7          The SEC's Complaint sets forth 48 pages of allegations – consisting of 172

8   separate paragraphs – before it identifies the seven causes of action alleged against

9   Mr. Daifotis.[4]  For each of these seven causes of action, the Complaint simply incorporates by

10  reference every single one of the preceding 172 paragraphs of factual allegations.  It does not

11  connect the specific factual allegations to each cause of action or to each element of these

12  causes of action.  Indeed, it often fails even to distinguish which factual allegations apply to

13  which (if either) Defendant, or which allegations support the SEC's primary liability claims as

14  opposed to its aiding and abetting claims.

15         The SEC's failure to link its factual allegations to its causes of action (and the

16  elements thereof) constitutes "shotgun pleading."  "Shotgun pleadings are pleadings that

17  incorporate every antecedent allegation by reference to each subsequent claim for relief or

18  affirmative defense."  *SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 U.S. Dist. LEXIS

19  70198, at *44-45 (D. Ariz. Aug. 11, 2009) (internal quotation marks and citation omitted).

20  Shotgun pleadings "do not meet Rule 9(b)'s particularity requirement."  *Id.* at *45.[5]

21         Instructive here is *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th

22  Cir. 2006), in which the Eleventh Circuit addressed a complaint with a lengthy fact section that

23  _____

24  [4]  The Complaint alleges eight causes of action, but Count Four is not alleged against
    Mr. Daifotis.

25  [5]  In addition, courts have required plaintiffs to provide a "more definitive statement" of the
26  claims contained in a "shotgun pleading," pursuant to Federal Rule of Civil Procedure 12(e).
    *See, e.g.*, *Destfino v. Kennedy*, No. CV-F-08-1269 LJO DLB, 2008 U.S. Dist. LEXIS 109691, at
27  *11-12 (E.D. Cal. Nov. 3, 2008).  The SEC should be forced to re-plead its Complaint under
    Rule 12(e).

28

3

preceded the causes of action.  Finding that the complaint was a "shotgun" pleading, the court

specifically called out one fraud count that simply incorporated factual material by reference,

"leaving the reader to wonder which prior paragraphs support the elements of the fraud claim."

*Id.* at 1279.  The court explained that "[t]he central problem [was] that the factual particularity

of the first 175 paragraphs is not connected to the otherwise generally pled claim in any

meaningful way."  *Id.*

Courts have regularly dismissed SEC complaints that engage in such "shotgun

pleading."  In *SEC v. Solow*, No. 06-81041-CIV, 2007 U.S. Dist. LEXIS 20751, at *7-8 (S.D.

Fla. Mar. 23, 2007), the court dismissed the SEC's securities fraud complaint because there was

"no linkage between the facts summary and the substantive counts," explaining that the factual

allegations "must be tied directly to each individual count to give proper notice to Solow."  *Id.*

at *7-9.  Similarly, in *Fraser*, the SEC complaint "set[] forth a lengthy narrative facts section,

next incorporate[d] the facts section into each claim by reference, and then simply state[d] that

'defendants' violated various provisions of the securities laws 'by engaging in the conduct

alleged above.'"  2009 U.S. Dist. LEXIS 70198, at *43.  The court dismissed the complaint,

because it "made no attempt to lay out which conduct constitutes the violations alleged.  Rather,

the claims sections simply paraphrase[d] or quote[d] the language of the statutes and rules,

leaving Defendants (and the Court) with the task of combing the Complaint and inferring,

rightly or wrongly, what specific conduct the SEC intended to assert as a violation."  *Id.* at *45-

46.

Likewise, in *SEC v. Patel*, Civil No. 07-cv-39-SM, 2009 U.S. Dist. LEXIS

64394, at *4 (D.N.H. July 7, 2009), the court was faced with an SEC complaint containing "374

paragraphs of factual background followed by a recitation or paraphrase of the statute or rule on

which it is based."  The court directed the SEC to present its allegations "defendant by

defendant, and distinct legal theory by distinct legal theory, pointing out, element by element,

the specific factual allegations pled in the amended complaint (by paragraph number) that

support each claim."  *Id.* at *7.  The court subsequently dismissed many of the counts alleged,

because, despite the court's directive, the SEC placed the defendants in "the untenable position

1   of not being able to determine what precise conduct each is said to have engaged in that

2   allegedly gives rise to liability under the various claims brought against them."  2009 U.S. Dist.

3   LEXIS 90558, at *9 (D.N.H. Sept. 30, 2009).

4              Like in *Solow* and *Patel*, the Complaint in this case contains a lengthy factual

5   narrative (48 pages of 172 paragraphs) that are not "tied directly to each individual count."

6   *Solow*, U.S. Dist. LEXIS 20751, at *8-9.  The SEC alleges seven causes of action against

7   Mr. Daifotis that differ from each other in terms of statutes, elements and available remedies.

8   Counts One and Three allege securities fraud under the Securities Exchange Act of 1934

9   ("Exchange Act") and Count Two alleges aiding and abetting securities fraud under that same

10  statute.  Count Five alleges aiding and abetting a third-party's violation of a September 2007

11  Rule issued under the IAA.  Count Six alleges a primary violation of section 34(b) of the ICA.

12  Finally, Counts Seven and Eight allege aiding and abetting violations of two different provisions

13  of the ICA – sections 34(b) and 13(a).  So, Mr. Daifotis and this Court are left to "guess" at

14  which factual allegations are addressed to which causes of action and to which elements of these

15  causes of action.  And, as explained in detail below, Mr. Daifotis is also forced to guess at

16  which factual allegations are directed toward the SEC's primary liability claims, as opposed to

17  its secondary liability claims.  This is improper.

18             Shotgun pleading is especially egregious here given that the SEC has been

19  investigating this matter, behind closed doors, for years – subpoenaing millions of documents

20  and taking sworn testimony from dozens of witnesses.  Mr. Daifotis, of course, had no access to

21  the SEC's investigative files during this time.  Thus, the SEC's burden of matching its factual

22  allegations to its legal theories is especially pronounced in this case.  *See SEC v. Parnes*, No. 01

23  Civ. 0763 (LLS) (THK), 2001 U.S. Dist. LEXIS 21722, at *14 (S.D.N.Y. Dec. 26, 2001) (after

24  three years of discovery and investigation, the SEC had no excuse for failing to meet pleading

25  requirements).

26             In sum, the SEC must clearly delineate, for each cause of action, which

27  allegations are relevant to which cause of action, which defendant, and which element of the

28  cause of action.  The Complaint fails to do this, and so it must be dismissed.

**II.    THE SEC'S COMPLAINT VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 9(B) BY FAILING TO PLEAD BOTH FRAUD AND AIDING AND ABETTING WITH PARTICULARITY.**

Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity.  A complaint alleging fraud must aver "the time, place and nature of the alleged fraudulent activities."  *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).  Not only must the specific statements themselves be alleged, but also the complaint must set forth who made the misstatement and whose scienter is the basis for the alleged fraud.  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Rule 9(b) unquestionably applies to Counts One and Three, both of which allege federal securities fraud.  Likewise, it applies to Count Two, which alleges aiding and abetting federal securities fraud.  Rule 9(b) also applies to Count Six, the alleged violation of section 34(b) of the ICA, because that cause of action "prohibits material misrepresentations or omission in terms similar to Section 10b-5."  *SEC v. Pimco Advisors Fund Mgmt., LLC*, 341 F. Supp. 2d 454, 471 (S.D.N.Y. 2004).

Rule 9(b) also applies to a pleading as a whole where a plaintiff "[alleges] a unified course of fraudulent conduct and [relies] entirely on the course of conduct as the basis of that claim."  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess*, 317 F.3d at 1103-04).  Here, the entire Complaint is grounded in alleged fraudulent conduct.  Indeed, the fact that the SEC incorporated all factual allegations for all causes of action (while constituting improper shotgun pleading) confirms that fraud allegations are the essence of its case.  Thus, all causes of action must be pled with Rule 9(b) particularity.

**A.    The Complaint Fails to Allege With Particularity That Mr. Daifotis Is Primarily Liable for Alleged Third-Party Misstatements.**

The SEC alleges numerous misstatements, but, significantly, only five of those statements were made by Mr. Daifotis.[6]  (*See* Compl. ¶¶ 68, 74(b), 74(f), 141-42.)  But the

_____

[6]  The SEC also suggests that Mr. Daifotis made misstatements about the Fund's positioning of itself relative to money market funds, and that "[e]xamples of [such misstatements] include, but (continued…)

1   Complaint fails to allege specific facts that, if true, show that Mr. Daifotis is otherwise primarily

2   liable for third-party misstatements – the vast majority of the alleged misstatements in this case.

3          One can only be subject to primary liability for the misstatement of another

4   where one "either (a) signed a public filing containing a misstatement or (b) substantially

5   participated or was intricately involved in the preparation of [the] allegedly false statement[]."

6   *New York City Employees' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 993 (N.D. Cal. 2009) (citing

7   *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 & n.5 (9th Cir. 2000)) (hereafter, "*Berry I*").

8   In this case, the SEC does not allege that Mr. Daifotis signed *any* public filings.  Thus, in order

9   state a claim for primary securities fraud liability, the SEC must allege that Mr. Daifotis

10  "substantially participated" in making the misstatements alleged in the Complaint.

11          The Ninth Circuit has found "substantial participation" where evidence

12  demonstrated that one misstatement-containing document "was prepared after *extensive* review

13  and discussions" with the defendant, and that the defendant "played a *significant* role in drafting

14  and editing" another such document.  *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615,

15  628 n.3 (9th Cir. 1994) (emphasis added); *see also Fraser*, 2009 U.S. Dist. LEXIS 70198 at

16  *20-22 (requiring allegations of "specific facts" showing a defendant's "significant role in

17  drafting and editing" or "extensive review and discussions" to state a claim for primary liability

18  in connection with another's misstatement).  This Court has confirmed that mere allegations of

19  "participat[ion]" in the creation of a misrepresentation-containing document are insufficient.

20  *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 21935, at *61

21  (N.D. Cal. Mar. 9, 2007).  Instead, there must be "allegation[s] of substantial and intricate

22  involvement" in preparing the allegedly misleading portions of a document.  *Id.*

23          Other courts in this District are in accord.  In *SEC v. Berry*, 580 F. Supp. 2d 911,

24  922 (N.D. Cal. 2008) (hereafter, "*Berry II*"), the court held that the SEC's "conclusory

25  _____

26  are not limited to, [Mr.] Daifotis's comparing YieldPlus to money market funds in August 2007
    conference calls . . . ."  (Compl. ¶ 69.)  To the extent that the SEC is making general allegations

27  about a class of misstatements – rather than highlighting specific misstatements – this reflects a
    clear failure to plead fraud with particularity.

28

pleadings" that a defendant "reviewed," "discussed," or "finalized" misrepresentation-containing documents is "insufficient to plead [the defendant's] role in the purported fraud." And another court in this District recently dismissed allegations (made by private plaintiffs) that the same defendant "substantially participated" in and was "substantially involved" in the preparation of various documents containing misstatements. *Berry I*, 616 F. Supp. 2d at 994-95. In that case, the court ruled that such allegations were "legal conclusion[s] couched in the form of . . . factual allegation[s]," and refused to allow them to go forward absent further allegations relating to the defendant's "specific role in the preparation of each of the allegedly misleading statements." *Id.* In contrast, the *Berry I* court found sufficient allegations of substantial participation where it was alleged that the defendant "actually *drafted* [one particular] false and misleading statement." *Id.* at 994 (emphasis in original).

Similarly, courts have dismissed allegations that a defendant participated in editing, approving and evaluating SEC filings, finding that such allegations, "fall[] significantly short of the type of participation that the Ninth Circuit found suffic[ient] to establish liability under a substantial participation theory. . . ." *In re Seracare Life Sci., Inc.*, No. 3:05-cv-02335-JLS-CAB, 2007 U.S. Dist. LEXIS 19654, at *32 (S.D. Cal. Mar. 19, 2007). Nor do courts permit a claim of primary liability to be sustained simply based on allegations that a defendant was present for discussions that ultimately lead to a misstatement. *See, e.g.*, *Fraser*, 2009 U.S. Dist. LEXIS 70198, at *21 (SEC's allegations that defendant was generally involved in reviews and discussions fell short of alleging "extensive reviews and discussions," as required in the Ninth Circuit); *Commc'ns Workers of Am. v. CSK Auto Corp.*, No. 2:06-cv-01580-DGC, 2007 U.S. Dist. LEXIS 22782, at *11-12 (D. Ariz. Mar. 28, 2007) (dismissing complaint where plaintiffs alleged primary liability based on presence and participation in conference calls in which the company's financials were misrepresented, but did not explain the defendant's "involvement or participation in any of the phone calls, other than claiming he was present").

The SEC has alleged that Mr. Daifotis is primarily liable for three categories of purported misstatements made by others: (1) the nature and risks of the YP Fund, including certain statements made during the Fund's decline in late 2007; (2) the weighted average

maturity and duration of the Fund; and (3) the Fund's concentration policy.  As shown below, the SEC has not pled Mr. Daifotis' substantial participation in the preparation of any of these alleged third-party misstatements, requiring dismissal of the SEC's primary liability claims as they relate to these misstatements.

1.   **The Complaint Fails to Allege Facts Showing Mr. Daifotis' Substantial Participation in the Preparation of Alleged Third-Party Misstatements About the Nature and Risks of the YP Fund.**

The Complaint sets forth numerous alleged misstatements about the nature and risks of the YP Fund, and specifically, about the relationship of the YP Fund to money market funds and to certificates of deposits.  (*See generally*, Compl. ¶¶ 74-78.)  Various advertisements and website postings contain Mr. Daifotis' picture but do not quote him.  (Compl. ¶¶ 74(g), 74(i); Bayless Decl., Exs. 1-2.)  Two brochures mailed to investors contain no quote from Mr. Daifotis and no picture.  (Compl. ¶¶ 74(c), 74(h); Bayless Decl., Exs. 3-4.)  An e-mail from Mr. Charles Schwab never even mentions Mr. Daifotis.  (Compl. ¶ 74(e); Bayless Decl., Ex. 5.)  Various postings on Schwab's website make no mention of Mr. Daifotis.  (Compl. ¶¶ 74(a), 74(d); Bayless Decl., Exs. 6-7.)  A Dow Jones magazine article (not even a Schwab publication) contains quotes from Mr. Daifotis, but the alleged misstatement is *not* attributed to Mr. Daifotis.  (Compl. ¶ 55; Bayless Decl., Ex. 8.)  An August 2006 press release does not mention or quote Mr. Daifotis.  (Compl. ¶¶ 50, 66; Bayless Decl., Ex. 9.)  Finally, there is an internal (not publicly-issued) "talking points" document that neither mentions nor quotes Mr. Daifotis.  (Compl. ¶¶ 149-50; Bayless Decl., Ex. 10.)[7]

The Complaint otherwise contains no specific allegations that Mr. Daifotis substantially participated in or was intricately involved with these advertisements, brochures, web pages, or press releases.  Instead, the SEC makes *precisely* the type of conclusory allegations that have been repeatedly rejected by courts in the Ninth Circuit.  Specifically, the

---

[7] The only alleged misstatements on this issue made by Mr. Daifotis are limited to one advertisement in September 2005 (Compl. ¶ 74(f)), one brochure in the Spring of 2006 (Compl. ¶ 74(b), and one conference call in August 2007 (Compl. ¶¶ 68-69).

1   Complaint alleges that Mr. Daifotis (1) "directly and substantially participated in the issuance"

2   of a particular press release and "participated in discussions about and drafting of the press

3   release" (Compl. ¶ 66); (2) "substantially participated in making various" of the misstatements

4   alleged in paragraph 74 of the Complaint (Compl. ¶ 78);[8] and (3) "reviewed" a talking points

5   document containing alleged misstatements (Compl. ¶ 149).

6            Examination of several specific allegations regarding third-party misstatements

7   makes the SEC's pleading deficiencies abundantly clear.  For example, the SEC alleges that an

8   e-mail from Mr. Charles Schwab to investors contained misrepresentations.  (Compl. ¶ 74(e).)

9   But there is no allegation that Mr. Schwab spoke to or had any communication with

10  Mr. Daifotis before he sent his e-mail, only the conclusory allegation that Mr. Daifotis

11  "substantially participated" in making this alleged misstatement.  (*Compare* Compl. ¶ 74(e) *with*

12  Compl. ¶ 78.)  Similarly, there is no allegation that the supposed misstatement in a Dow Jones

13  article was made by Mr. Daifotis, only that the article itself was "based in part upon an

14  interview with" Mr. Daifotis.  (Compl. ¶ 55.)  It is impossible to see how a third-party magazine

15  article can be a basis to hold Mr. Daifotis primarily liable for securities fraud, especially where

16  there is no allegation that he provided specific misinformation that was reproduced in that

17  article.

18           These allegations are nothing more than "legal conclusion[s] couched in the form

19  of . . . factual allegation[s]," which utterly fail to articulate Mr. Daifotis' "specific role in the

20  preparation of each of the allegedly misleading statements."  *Berry I*, 616 F. Supp. 2d at 994-95

21  (dismissing bare allegations of "substantial participation" and "substantial involvement").

22           **2.    The SEC Fails to Allege Mr. Daifotis' Substantial Participation in
23                   Alleged Misstatements About Weighted Average Maturity and
                     Duration.**

24

25

---

26  [8]  Although the SEC alternately alleges that Mr. Daifotis "made" the misstatements alleged in
27  paragraph 74 of the Complaint, there are *no* allegations suggesting that Mr. Daifotis did, in fact,
    make the majority of those purported misstatements.  (*See* Compl. ¶ 74.)

28

1    The Complaint's allegations of supposed misstatements about weighted average

2    maturity ("WAM") and duration are also deficient.  (*See generally* Compl. ¶¶ 79-102.)  First,

3    the Complaint alleges that certain alleged misstatements were posted on Schwab's website, but

4    there is no allegation that these web postings even mentioned Mr. Daifotis.  (Compl. ¶¶ 81, 89,

5    94.)  Second, a Schwab Corporation magazine, "On Investing," dated March 21, 2007,

6    supposedly misled investors about WAM and duration.  (Compl. ¶ 93.)  But this magazine

7    article does not mention Mr. Daifotis in connection with this alleged misstatement.  (*See*

8    Bayless Decl., Ex. 11.)  Finally, the SEC alleges that a Schwab SEC filing dated August 31,

9    2007 misled investors about WAM and duration.  (Compl. ¶¶ 81, 92.)  This SEC filing contains

10   Mr. Daifotis' picture (Compl. ¶ 98), but no statement in the filing is attributed to him.  (*See*

11   Bayless Decl., Ex. 12.)  And Mr. Daifotis did not sign this (or any other) SEC filing.  (*See id.*,

12   Exs. 13-26.)

13   So, *none* of the alleged misstatements about WAM and duration are Mr. Daifotis'

14   statements.  But, as with the purported misstatements about the nature and risks of the Fund, the

15   Complaint fails to allege facts showing Mr. Daifotis' substantial participation, or intricate

16   involvement, in the website postings, magazine article, and SEC filing.  Instead, the SEC merely

17   asserts the legal conclusion that these alleged misstatements were made with Mr. Daifotis'

18   "substantial participation."  (Compl. ¶ 81.)  Such allegations are plainly insufficient under the

19   governing law of this Circuit.

20           **3.    The Complaint Fails to Allege Mr. Daifotis' Substantial Participation
                     in the Alleged Misstatements About the Fund's Concentration Policy.**

21

22   The Complaint likewise relies on conclusory statements about Mr. Daifotis'

23   substantial participation in Schwab's change to the YieldPlus concentration policy without

24   shareholder approval, effective September 1, 2006 (whereby non-agency mortgage backed

25   securities would no longer be considered an industry and so not subject to the 25%

26   concentration limit), and Schwab's subsequent disclosure of this change.  (*See generally*,

27   Compl. ¶¶ 103-26.)

28

NOTICE OF MOTION AND MOTION TO DISMISS          11
COMPLAINT
Civil Case No.: 11-cv-00137-WHA

1    The alleged misstatements that the YP Fund had not exceeded 25% of its

2  holdings in non-agency mortgage backed securities are in SEC filings.  (Compl. ¶ 113.)

3  Likewise, the alleged misstatement relating to the Fund's concentration policy is also in an SEC

4  filing.  (Compl. ¶¶ 123, 125.)  But Mr. Daifotis did not sign these, or any other, SEC filings.

5  (*See* Bayless Decl., Exs. 12-27.)

6    Moreover, the allegations that Mr. Daifotis "substantially participated" in the

7  preparation of these purported misstatements are, as before, wholly deficient.  For example, the

8  SEC alleges that Mr. Daifotis "substantially participated in the creation of" the SEC filings

9  referred to in paragraph 113, but the factual basis for this allegation is that he "knew or was

10  reckless in not knowing" that "improper" treatment of investments he directed was "causing

11  such reports to be filed" with the SEC.  (Compl. ¶ 114.)  But this is a far cry from alleging

12  specific facts showing that Mr. Daifotis played a "significant role in drafting and editing" the

13  SEC filings at issue, or that he participated in "extensive review and discussions" those filings.

14  *Software Toolworks,* 50 F.3d at 628 n.3.

15    The Complaint also alleges that a Quarterly Review power point presentation

16  supposedly showed that the YP Fund had exceeded the Fund's 25% concentration limit.

17  (Compl. ¶ 108.)  As an initial matter, it shows no such thing.  Nothing in this presentation

18  indicated, as the SEC claims, that the Fund had exceeded 25% of its holdings in non-agency

19  mortgage-backed securities.  (*See* Bayless Decl., Exs. 28-29.)  More to the point, however, this

20  document never mentions or quotes Mr. Daifotis.  The SEC even concedes that this document

21  was "created by Fund portfolio managers."  (Compl. ¶ 108.)  Mr. Daifotis' only connection to

22  this document is that he allegedly "reviewed or was reckless if he did not review" it.  (*Id.*)  But

23  if mere allegations of "reviewing" a document are insufficient to state a claim for primary

24  liability in this Circuit, *Berry II*, 580 F. Supp. 2d at 922, allegations that a defendant *did not*

25  review a document (but should have) do not even come close.[9]

26  ───────────────

27  [9]  In addition, the SEC's Complaint is deficient for another reason.  Many of the alleged
    misstatements were not public disclosures to investors, but were (as the SEC's allegations
    concede) part of *internal* communications within Schwab and do not constitute misstatements

28  (continued…)

### 4.      Any SEC Attempt to Directly Attribute These Third-Party Statements to Mr. Daifotis Fails.

Recognizing that Mr. Daifotis did not make almost all of the misstatements alleged in its Complaint, the SEC tries to attribute third-party statements directly to Mr. Daifotis.  These attempts to avoid pleading specific facts showing Mr. Daifotis' "substantial participation" in making third-party misstatements fail.

*First*, the SEC alleges that Mr. Daifotis is primarily liable for misstatements in certain Schwab Corporation documents because his picture is in the documents.  (Compl. ¶ 74(g) (Schwab advertisement) and ¶ 98 (Schwab SEC Filing).)  But the presence of a person's picture in a document that contains a misrepresentation is by itself insufficient to attribute primary liability to that person.  *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 390-91 (D. Del. 2010).

In *Roseville*, the court rejected the argument that alleged misstatements in an advertisement should be attributed to an individual defendant, simply because the defendant was "quoted directly elsewhere in the [document] and that his picture [was] embedded in the text."  *Id.*.  To the contrary, the court saw "nothing in [the alleged] statement to indicate that it is attributable to [the individual defendant]," and instead found that where the individual defendant was quoted, his statements were "identified with quotation marks and specifically reference[d] him by name."[10]  The court concluded that to attribute a statement issued by the corporation to

---

made "in connection with the purchase or sale of any security" under section 10(b).  As the Ninth Circuit has held, the "'in connection with' requirement is met if the fraud alleged 'somehow touches upon' or has 'some nexus' with 'any securities transaction.'"  *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993) (quoting *SEC v. Clark*, 915 F.2d 439, 449 (9th Cir. 1990)).  The Quarterly Review power point alleged in paragraph 108 is one example of such a non-actionable internal communication.  As is the allegation in paragraph 117 that Mr. Daifotis purportedly failed to inform the Board of Trustees of Schwab Investments that YP had already exceeded its concentration policy.  Such an alleged omission simply is not actionable as securities fraud, as it is not alleged to have any connection whatsoever to the investing public.

[10]  The SEC here tries to pull the same trick.  In paragraph 98 it says Schwab Corporation included Mr. Daifotis' picture in the SEC filing, "thus attributing the content to him."  This is nonsense.

1   the individual defendant, "without some facts identifying [him] as its author or as having

2   personally signed-off on it, amounts to non-specific group pleading." *Id.*

3           The situation here is identical.  Both the advertisement cited in paragraph 74(g)

4   and the SEC filing cited in paragraph 98 are Schwab Corporation documents, which do not

5   attribute statements to Mr. Daifotis.  (*See* Bayless Decl., Exs. 1 and 12.)  Liability cannot be

6   imposed on Mr. Daifotis for Schwab's statements just because it chose to include Mr. Daifotis'

7   picture in these documents.[11]

8           *Second*, the SEC improperly attempts to attribute alleged third-party

9   misstatements to Mr. Daifotis, alleging that he provided information that ultimately became

10  incorporated in a public misstatement.  But, the law is clear that merely providing information to

11  another party who ultimately makes a misstatement is insufficient to subject the provider of

12  information to primary securities fraud liability.  In *In re Int'l Rectifier Corp. Sec. Litig.*, No.

13  CV-07-2544-JFW (VBKx), 2008 U.S. Dist. LEXIS 44872 (C.D. Cal. May 23, 2008), the court

14  granted a motion to dismiss two of the defendants because the plaintiffs merely alleged that they

15  "furnished" information that caused the company to issue false or misleading statements.  *Id.* at

16  *34.  The court reasoned:

17              [C]orporate documents that have no stated author or statements
               not attributed to any individual may be charged to one or more
18              corporate officers provided specific factual allegations link the
               individual to the statement at issue. *Such specific facts tying a*
19              *corporate officer to a statement would include a signature on the*
               *document or particular factual allegations explaining the*
20              *individual's involvement in the formulation of either the entire*
               *document, or that specific portion of the document, containing the*
21              *statement.*

22

23  _____

24  [11]  An analogous situation involves claims under Section 14(a) of the Exchange Act, which
        prohibits anyone from using their name to solicit a proxy.  The Ninth Circuit has held that "to
25      hold a person liable for proxy violations, one must show, at the very least, a substantial
        connection between the use of the person's name and the solicitation effort." *Yamamoto v. Kim*,
26      564 F.2d 1319, 1323 (9th Cir. 1977).  In *Yamamoto*, the court held that "[t]he mere presence of
        Lee's name in the materials (probably required by the SEC) did not reveal any significant
27      control by Lee over the statement, or his adoption of it that was sufficient to justify attaching
        liability to him." *Id.*

28

1   *Id.* (citing *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 365 (5th Cir. 2004))

2   (emphasis added).

3          The SEC engages in this type of deficient pleading.  For example, the SEC

4   alleges that a Dow Jones article containing an alleged misstatement, was based "in part upon an

5   interview" with Mr. Daifotis.  (Compl. ¶ 55.)  But the SEC does not allege that Mr. Daifotis had

6   anything to do with the allegedly misleading portion of the article.  Similarly, the SEC makes

7   the vague allegation that "[i]n the normal course of business, Daifotis regularly . . . contributed

8   to sales and marketing materials regarding YieldPlus and made suggestions and edits to some of

9   them, many of which contained misrepresentations . . . ."  (Compl. ¶ 64.)  This allegation, of

10  course, does not remotely specify whether Mr. Daifotis provided particular misleading

11  information that was incorporated in any particular misleading document.

12          *Third*, the SEC cannot – as it attempts to do – attribute third-party statements to

13  Mr. Daifotis simply because of his status as a senior executive at CSIM.  (*See, e.g.*, Compl. ¶

14  78.)  Courts in the Ninth Circuit have refused to impute primary liability to a defendant solely

15  based on that individual's position or role in a corporation that issued misstatements.  *See, e.g.*,

16  *Berry I*, 616 F. Supp. 2d at 995 (refusing, at the pleading stage, to infer that "by virtue of her

17  position at [the company] . . . that [the d]efendant participated in the preparation of the

18  company's financial disclosures"); *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1100 (N.D.

19  Cal. 1994) (allegation that company's long-serving director and chair of finance committee was

20  subject to primary liability did "not satisfy Rule 9(b)" because there were allegations of neither

21  director's "operational involvement," nor "participat[ion] in the preparation of the [allegedly

22  misleading] documents"); *Roberts v. Heim*, 670 F. Supp. 1466, 1478 (N.D. Cal. 1987)

23  (allegations of primary Securities Act § 12 liability, based on defendants' executive positions,

24  failed to state a claim for substantial participation).  Thus, the SEC cannot use Mr. Daifotis'

25  position as a hook to plead primary liability; it must still allege specific facts detailing his

26  "substantial participation" in any alleged third-party misstatement.

27          There is simply no allegation that Mr. Daifotis substantially participated, or was

28  intricately involved, in preparing Schwab Corporation's SEC filings, advertisements, brochures,

1   website posts, or any other Schwab Corporation public document that supposedly contains

2   misstatements.  The SEC must allege specific facts showing his "substantial or intricate

3   involvement" in the alleged misstatements in these public disclosures.  *Siemers*, 2007 U.S. Dist.

4   LEXIS 21935, at *61.  It has done no such thing.

5                                          *   *   *

6           In sum, there are no allegations in the SEC's Complaint sufficient to directly

7   attribute all but a handful of the alleged misstatements to Mr. Daifotis.  And the allegations that

8   Mr. Daifotis "substantially participated" in such alleged third-party misstatements are nothing

9   more than non-actionable legal conclusions.  Mr. Daifotis is not the Charles Schwab

10  Corporation.  Nor is he the Dow Jones organization.  And he certainly is not Mr. Charles

11  Schwab.  The law of this Circuit compels the conclusion that the SEC has not pled primary

12  liability against Mr. Daifotis for statements he did not make.

13      **B.       The SEC Complaint Fails to Allege the Elements of Aiding and Abetting
                   Liability with Particularity.**
14

15          The SEC's aiding and abetting claims (Counts Two, Five, Seven, and Eight) have

16  three elements: (1) a primary violation of the relevant securities law; (2) actual knowledge by

17  the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3)

18  substantial assistance in the primary violation.  *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir.

19  2003).

20          The first and third elements – the primary violation and substantial assistance –

21  must be pled with the particularity required by Rule 9(b).  *See, e.g.*, *Allstate Life Ins. Co. v.*

22  *Robert W. Baird & Co., Inc.*, Nos. CV-09-8162-PCT-GMS, CV-09-8174-PCT-GMS, 2010 U.S.

23  Dist. LEXIS 123834, at *136 (D. Ariz. Nov. 4, 2010) ( "a misrepresentation of fact [underlying

24  an aiding and abetting claim] must be set forth with particularity, as required by Rule 9(b)");

25  *Wisdom v. Nevada*, No. 3:06-CV-00094-PMP-RAM, 2010 U.S. Dist. LEXIS 107993, at *21 (D.

26  Nev. Oct. 8, 2010) (dismissing aiding and abetting claims for failing to allege the "what, when,

27  where, and how" of the substantial assistance in the fraudulent conduct); *Berry II*, 580 F. Supp.

28

2d at 924 ("To the extent the aiding and abetting claims are grounded in fraud, they require particularized allegations.").

The SEC's Complaint fails to allege the first and third elements of its aiding and abetting claims with the requisite particularity.[12]

### 1. The SEC's Complaint Fails to Allege The Primary Violations That Mr. Daifotis Supposedly Aided and Abetted.

The SEC has alleged that Mr. Daifotis aided and abetted primary violations of section 10(b) of the Exchange Act.  (*See* Compl. ¶¶ 176-79.)  Accordingly, the SEC must allege facts showing that the alleged primary violator made "(1) a misrepresentation or omission (where a duty to speak exists); (2) of material fact; (3) made with scienter; and (4) made in connection with the sale or purchase of securities."  *SEC v. Leslie*, No. C 07-03444, 2008 U.S. Dist. LEXIS 79790, at *17 (N.D. Cal. Aug. 19, 2008); *SEC v. Trabulse*, 526 F. Supp. 2d 1001, 1004 (N.D. Cal. 2007) (Alsup, J.) (same); *see also SEC v. Druffner*, 353 F. Supp. 2d 141, 150-51 (D. Mass. 2005) (dismissing aiding and abetting claim where primary violation insufficiently pled).  The SEC has also alleged that Mr. Daifotis aided and abetted violations of two other fraud-based provisions of the securities laws – IAA Rule 206(4)-8 and ICA § 34(b).

Here, the SEC fails to allege with specificity *who* committed the alleged fraud that Mr. Daifotis aided and abetted.  For most of the alleged misstatements, the SEC Complaint only identifies a Schwab entity that made the fraudulent statement.  It does not identify the specific individual (or individuals) at the entity who committed the fraud.  (*See, e.g.*, Compl. ¶¶ 74(a)-(i), 81, 89-90, 92, 94, 97, 113, 123, 125, 149, 154, and 159).

---

[12]  As to the second element of the SEC's aiding and abetting claim, courts in the Ninth Circuit uniformly require "actual knowledge," as opposed to mere recklessness.  However, the SEC repeatedly alleges that Mr. Daifotis "knew or was reckless in not knowing" about the alleged primary violations that others committed.  (*See, e.g.*, Compl. ¶¶ 71, 78, 99, 100, 101, 115, 125, 143, 151, 154, 160.)  In his accompanying Motion to Strike under Rule 12(f), Mr. Daifotis moves to strike these superfluous allegations that he recklessly aided and abetted violations of the federal securities laws.

But, without this specific factual allegation of who committed the fraud, no scienter can be pled, because intent to commit fraud can only be attributed to a corporation if the requisite state of mind is possessed by a specific individual in the corporation. *See First Equity Corp. v. Standard & Poor's Corp.,* 690 F. Supp. 256, 260 (S.D.N.Y. 1988) (dismissing attempt to attribute to defendant corporation the combined knowledge of several of its employees because "[a] corporation can be held to have a particular state of mind only when that state of mind is possessed by a single individual), *aff'd*, 869 F.2d 175 (2d Cir. 1989).  Courts in this District are in accord.  *See, e.g.*, *In re Nvidia Sec. Litig.*, No. 08-CV-04260-RS, 2010 U.S. Dist. LEXIS 114230, at *39-40 n.10 (N.D. Cal. Oct. 19, 2010) (citing *Glazer Capital Mgmt., L.P. v. Magistri*, 549 F.3d 736 (9th Cir. 2008)) (refusing to impute scienter to corporation absent sufficient allegations of scienter on the part of individuals who actually made purported misrepresentations).

In other words, pleading that "Charles Schwab Corporation" or "CSIM" made a fraudulent statement is insufficient to plead the first element (the fraud) of the aiding and abetting claim.  Rather, the SEC must identify the particular individual (or individuals) whose scienter is the basis for the misstatement being fraudulent.  Absent this, fraud has not been pled.  And that means that aiding and abetting fraud has not been pled.

## 2. The SEC Fails To Allege With Particularity that Mr. Daifotis Substantially Assisted the Alleged Primary Violations.

The SEC's Complaint fails to allege, with the requisite particularity, Mr. Daifotis' role in allegedly providing "substantial assistance" to third-parties' violations of the federal securities laws.  Instead, the SEC's aiding and abetting allegations appear to be largely coextensive with its primary liability allegations, which, as discussed above, are nothing more than "legal conclusion[s] couched in the form of . . . factual allegation[s]."  *Berry I*, 616 F. Supp. 2d at 994-95.  Indeed, it is entirely unclear (because of the "shotgun" pleading) which of the SEC's factual allegations are directed to its primary liability claims as opposed to its secondary liability claims.  The *only* factual allegations that even use the language of aiding and abetting (i.e., "substantial assistance") are found in paragraphs 25, 131, 134, and 204

1    (incorporating paragraphs 103-26) of the Complaint.  As to the remainder of the Complaint,

2    Mr. Daifotis (and the Court) are left to guess whether Mr. Daifotis is accused of a primary

3    violation or of aiding and abetting a third-party's primary violation.

4            For example, the SEC attempts to hold Mr. Daifotis liable for Schwab's

5    purported unlawful change to the Fund's concentration policy and subsequent alleged failure to

6    disclose that change.  (*See* Compl. ¶¶ 116-26.)  But the SEC does not allege with particularity

7    Mr. Daifotis' supposed substantial assistance in Schwab's allegedly illegal changing of the

8    concentration policy.  Instead of alleging that Mr. Daifotis authorized the change (the Board of

9    Trustees did this), the SEC merely alleges that Mr. Daifotis failed to inform the Board that the

10   Fund had previously violated the concentration policy.  (Compl. ¶ 117.)  This allegation, of

11   course, has nothing to do with the Board's later decision to change the concentration policy

12   without a shareholder vote.  Nor does the SEC allege that Mr. Daifotis decided that shareholder

13   approval was not legally required (the lawyers did this).  Finally, the SEC does not allege that

14   Mr. Daifotis drafted or signed the SEC filing that disclosed the change, instead alleging only

15   that he "reviewed" the relevant filing.  (Compl. ¶ 125.)

16           As another example, the Complaint alleges in a conclusory fashion that

17   Mr. Daifotis "provided substantial assistance" in the making of various misstatements and

18   omissions during the decline of YieldPlus in 2007.  (Compl. ¶ 134.)  But the supposed

19   "substantial assistance" amounts to nothing more than the allegations that Mr. Daifotis

20   "reviewed" documents containing purported misstatements (Compl. ¶¶ 149, 159) and that he

21   "did not correct" another purported misstatement in an *internal* Schwab email (Compl. ¶ 155).

22   Such allegations are not sufficiently particularized to pass muster under Rule 9(b).

23           Similarly, the SEC fails to allege facts showing Mr. Daifotis' "substantial

24   assistance" in making the alleged misstatements about WAM and duration.  The SEC simply

25   asserts that CSIM and Schwab "with Daifotis' substantial participation" misstated weighted

26   average maturity in various communications with investors.  (Compl. ¶ 81.)  But what,

27   precisely, did Mr. Daifotis do?  The only hints of Mr. Daifotis' purported conduct are the

28   allegations that he recommended that Schwab disclose duration instead of weighted average

1   maturity (Compl. ¶ 87) and that he "failed to correct the misrepresentations and omissions

2   regarding the listing of duration figures . . . ." (Compl. ¶ 101). But there is no allegation that

3   Mr. Daifotis' conduct brought about the Schwab Corporation's alleged misstatement about

4   WAM and duration. Rather, the SEC simply alleges that Mr. Daifotis recommended making a

5   change (a separate issue from how that change was communicated to investors) and that he

6   "failed to correct" purported misstatements and omissions. These allegations fail to allege the

7   nature of Mr. Daifotis' "substantial assistance" with the required particularity.

8           Finally, the same pleading deficiencies exist as to Schwab's alleged

9   misstatements about the YP Fund being a cash alternative. The SEC alleges that "Daifotis . . .

10  directly and substantially participated" in the issuance of a press release. (Compl. ¶ 66.) But

11  the Complaint nowhere specifies exactly what Mr. Daifotis did that constitutes his substantial

12  assistance to the issuance of the alleged fraudulent statement in this advertisement (or other

13  advertisements, brochures or web site postings that contain this alleged misstatement). Instead,

14  the SEC merely alleges that Mr. Daifotis "participated in the discussions about and drafting of

15  the press release" and that he "saw one or more drafts and the final language" of that press

16  release. (*Id.* ¶¶ 66-67.) But there is no allegation that Mr. Daifotis himself was involved in

17  drafting the allegedly misleading language in that press release. And an allegation that he "saw"

18  the press release before it went out hardly constitutes a particularized allegation of "substantial

19  assistance."

20          The Complaint also alleges that, with respect to certain of these documents,

21  Mr. Daifotis was "relied [upon]" by the marketing, compliance and other personnel." (Compl. ¶

22  63.) But who relied on Mr. Daifotis, and for what specific information? And for which specific

23  alleged misrepresentations? For example, did Mr. Charles Schwab rely on Mr. Daifotis in

24  sending his e-mail (Compl. ¶ 74(e))? And what exactly did this so-called reliance consist of?

25  None of these basic items are pled with particularity. This is a fatal deficiency.

26          **3.      The SEC's Reliance on Mr. Daifotis' Position and Job
                       Responsibilities Is Legally Insufficient to Plead Substantial

27                     Assistance.**

28

1    The SEC relies heavily on Mr. Daifotis' position and job responsibilities to

2    support its allegations that he aided and abetted certain underlying securities violations by

3    others.  (*See* Compl. ¶¶ 78, 98, 126, 132, 152, 160.)   As noted above, however, "substantial

4    assistance" must be pled with particularity.  *See Berry II*, 580 F. Supp. 2d at 924.  And given

5    that allegations based on a defendant's position are insufficient to infer "substantial

6    participation" in making third-party misstatements for purposes of primary liability, they are

7    equally insufficient to infer that he "substantially assisted" in making such statements for

8    purposes of secondary liability.  *See* Section II.A, *supra*; *see also Fezzani v. Bear Stearns &*

9    *Co., Inc.*, 592 F. Supp. 2d 410, 432 (S.D.N.Y. 2008) (dismissing aiding and abetting claim

10   against the father of CEO who was alleged to have been a "*de facto* executive" of son's firm

11   based on "his influence over his son, and his value to the firm as a source of business deals").

12   Ultimately, the SEC has failed to plead with any modicum of particularity that

13   Mr. Daifotis substantially assisted in any third-party's primary violations.  The aiding and

14   abetting claims (Counts Two, Five, Seven, and Eight,) should be dismissed.

15   **III.    COUNT FIVE MUST BE DISMISSED BECAUSE SEC RULE 206(4)-8 WAS NOT**
16   **EFFECTIVE AT THE TIME OF THE ALLEGED MISCONDUCT.**

17   Count Five of the SEC's Complaint alleges that Mr. Daifotis aided and abetted

18   violations of Section 206(4) of the Investment Advisers Act and Rule 206(4)-8 promulgated

19   thereunder.  *See* 17 C.F.R. § 275.206(4)-8.  But Rule 206(4)-8 did not become effective until

20   September 10, 2007.  Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles,

21   Rel. No. IA-2628 at 1 (Aug. 3, 2007); *accord SEC v. Rabinovich & Assocs., LP*, No. 07 Civ.

22   10547 (GEL), 2008 U.S. Dist. LEXIS 93595, at *11 (S.D.N.Y. Nov. 18, 2008).  Nothing in the

23   Rule provides that it operates retroactively.  Thus, only Mr. Daifotis' conduct after September

24   10, 2007 can be actionable under Count Five.

25   But the Complaint alleges that *all* of the factual allegations in paragraphs 1-187

26   are the basis for Count Five.  (*See* Compl. ¶¶ 188-92.)  Yet, almost all of these factual

27

28

NOTICE OF MOTION AND MOTION TO DISMISS                              21
COMPLAINT
Civil Case No.: 11-cv-00137-WHA

1    allegations occurred before September 10, 2007, thus predating the effective date of the Rule.

2    Accordingly, Count Five must be dismissed.[13]

3    **IV.    COUNTS SEVEN AND EIGHT MUST BE DISMISSED WITH PREJUDICE**
     **BECAUSE THE SEC HAS NO AUTHORITY TO BRING THESE CLAIMS.**

4

5            Counts Seven and Eight both allege causes of action against Mr. Daifotis for

6    aiding and abetting primary violations of sections 34(b) and 13(a), respectively, of the ICA.

7    Both causes of action must be dismissed because the SEC had no right to bring a cause of action

8    for aiding and abetting a violation of the ICA at the time of the alleged misconduct.

9            **1.    The SEC Had No Authority to Bring Claims for Aiding and Abetting**
             **a Violation of the ICA at the Time of the Alleged Misconduct.**

10           Prior to July 2010, nothing in sections 13 or 34 of the ICA gave the SEC the

11   authority to bring aiding and abetting claims in federal court. Likewise, nothing in section 42 of

12   the ICA – which sets forth the jurisdictional authority for the SEC to bring enforcement actions

13   in federal court for violations of the ICA – provided the SEC with such authority. Finally,

14   nothing in section 48 of the ICA (which defines the scope of violations of the ICA) provided the

15   SEC with the authority to bring enforcement actions for aiding and abetting violations of the

16   ICA. This stands in sharp contrast with the explicit statutory authority that Congress gave the

17   SEC to bring aiding and abetting claims for violations of the Exchange Act and the IAA. *See*

18   Exchange Act § 20(e), 15 U.S.C. § 78t(e); IAA § 209(d), 15 U.S.C. § 80b-9(d).[14]

19           On July 21, 2010, however, Congress passed the Dodd-Frank Wall Street Reform

20   and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376–2223 (2010) ("Dodd-

21   Frank"), which made numerous changes to the federal securities laws. In particular, Section

22   929M of Dodd-Frank gave the SEC – for the first time – the right to bring a cause of action for

23   aiding and abetting a violation of the ICA. *Id.* § 929M(2)(b), 124 Stat. at 1861 (amending ICA

24

25   _____

     [13] This illustrates the problem with shotgun pleading. The SEC fails to identify which factual
26   allegations after September 10, 2007 form the basis for this cause of action.

27   [14] As the Supreme Court observed, "Congress knew how to impose aiding and abetting liability
     when it chose to do so" by using express words, such as "aid" and "abet" in the statutory text.
28   *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 176 (1994).

1  § 48 to read, "[f]or purposes of any action brought by the [SEC] . . . any person that knowingly

2  or recklessly provides substantial assistance to another person in violation of a provision of this

3  Act, or of any rule or regulation issued under this Act, shall be deemed to be in violation of such

4  provision to the same extent as the person to whom such assistance is provided.").

5         Dodd-Frank's legislative history (including testimony from the SEC's Chair)

6  confirms that, before the passage of Dodd-Frank, the SEC did *not* have authority to bring aiding

7  and abetting claims under the ICA.  The only Congressional discussion on this issue was a

8  statement by Representative Kanjorski, who made clear that that, prior to Dodd-Frank, the SEC

9  had no right to bring aiding and abetting claims under the ICA:

10             The Securities Exchange Act of 1934 and the Investment Advisers
               Act of 1940 presently permit the SEC to bring actions for aiding
11             and abetting violations of those statutes in civil enforcement
               cases, and this bill provides the SEC with the power to bring
12             similar actions for aiding and abetting violations of the Securities
               Act of 1933 and the Investment Company Act of 1940.
13

14  156 Cong. Rec. H5,237 (June 30, 2010) (statement of Rep. Kanjorski).  There were no

15  challenges to Representative Kanjorski's statement.

16         In fact, the SEC *itself* admitted to Congress that, prior to Dodd-Frank, it had no

17  right to bring a cause of action for aiding and abetting a violation of the ICA.  In her testimony

18  to Congress on July 22, 2009, the SEC *Chair* stated, in clear and express terms, that:

19             The Exchange Act and the Investment Advisers Act permit the
               SEC to bring actions for aiding and abetting violations of those
20             statutes in civil enforcement actions.  The Administration's
               proposal would provide the SEC with authority to bring actions
21             for aiding and abetting violations of the Securities Act and the
               Investment Company Act, *which authority the SEC currently does*
22             *not have*.

23  *Regulatory Perspectives on the Obama Administration's Financial Regulatory Reform*

24  *Proposals, Testimony Before the H. Comm. on Fin. Servs.*, 111th Cong. (2009) (prepared

25  statement of Mary L. Schapiro, SEC Chair) (emphasis added).[15]

26  _____

27  [15] *See also SEC Oversight: Current State and Agenda, Testimony Before the H. Comm. on Fin. Servs., Subcomm. on Capital Mkts., Ins., and Gov.-Sponsored Enters.*, 111th Cong. (2009)
28  (prepared statement of Mary L. Schapiro, SEC Chair) ("Finally, there are a number of possible (continued…)

### 2.   Dodd-Frank's Provision Giving the SEC the Right to Bring Claims for Aiding and Abetting an ICA Violation Is Not Retroactive.

The effective date of Dodd-Frank is July 22, 2010.  Indeed, section 4 of Dodd-Frank states that "except as otherwise specifically provided," all amendments pursuant to the Act "shall take effect 1 day after the date of enactment of this Act."  Dodd-Frank § 4, 124 Stat. at 1390.  But section 929M of Dodd-Frank, the relevant provision amending the ICA, does not include any language remotely suggesting retroactive application of these amendments.

In contrast, section 335 of the Dodd-Frank (concerning the permanent increase of the amount of bank deposit insurance) was expressly made retroactive to January 1, 2008.  *See* Dodd-Frank § 335, 124 Stat. at 1540.  That Congress expressly provided for retroactivity in section 335, but omitted such language in section 929M, demonstrates that Congress did not intend section 929M to apply retroactively.  *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted)   The plain language of Dodd-Frank demonstrates that Congress did *not* intend to retroactively apply section 929M to conduct that predates the July 22, 2010 effective date.  *Cf. Riddle v. Dyncorp Int'l Inc.*, 733 F. Supp. 2d 743, 748 (N.D. Tex. 2010) (concluding that the Act's three-year statute of limitations for section 3730(h) claims is not retroactive).

Because "[r]etroactivity is not favored in the law . . ., congressional enactments and administrative rules will *not* be construed to have retroactive effect unless their language *requires* this result."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (emphasis

---

legislative changes that the Commission staff have identified to help the Commission to better protect investors.  These include: . . . Establishing 'aider and abettor' Commission causes of action in those areas of the law in which it does not currently exists (e.g., Securities Act and the Investment Company Act)"); U.S. Dept. of Treasury, Fact Sheet: Administration's Regulatory Reform Agenda Moves Forward Legislation for Strengthening Investor Protection Delivered to Capital Hill (2009) ("The SEC currently has the ability to pursue action against those who aid and abet securities fraud in cases brought under the Securities Exchange Act of 1934 and the [IAA], but not under the Securities Act of 1933 nor the Investment Company Act of 1940.").

1   added).  This is because, as the Supreme Court has held, "[e]lementary considerations of

2   fairness dictate that individuals should have an opportunity to know what the law is and to

3   conform their conduct accordingly; settled expectations should not be lightly disrupted."

4   *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).  Retroactive application of Dodd-Frank

5   would have the impact of subjecting Mr. Daifotis to liability to which he could not have been

6   subject at the time of the conduct at issue.  Such an outcome runs counter to "elementary

7   considerations of fairness" as it would deprive Mr. Daifotis of the opportunity to conform his

8   conduct to the law.  *Id.*

9        Thus, the text of the ICA before the Dodd-Frank amendments did not provide for

10   the SEC's right to bring aiding and abetting claims.  Legislative history, including the SEC

11   Chair's admission to Congress, confirms this point.  Nor is there *any* suggestion either in Dodd-

12   Frank itself or in its legislative history that the SEC's new enforcement authority is retroactive.

13   Here, *all* of Mr. Daifotis' alleged misconduct occurred before the passage of Dodd-Frank.

14   Counts Seven and Eight should be dismissed with prejudice.

15                                   **CONCLUSION**

16        For these reasons, Mr. Daifotis requests that this Court dismiss the SEC's

17   Complaint.

18

19   Dated:  April 7, 2011                    COVINGTON & BURLING LLP

20

21                                   By:   */s/ David B. Bayless*
                                              DAVID B. BAYLESS

22

23                                   Attorneys for Defendant KIMON P. DAIFOTIS

24

25

26

27

28