1   Laurie Edelstein (Bar No. 164466)
    Lee Taylor (Bar No. 243863)
2   BRUNE & RICHARD LLP
    235 Montgomery Street, Suite 1130
3   San Francisco, California 94104
    Telephone: (415) 563-0600
4   Facsimile:  (415) 563-0613
    ledelstein@bruneandrichard.com
5   ltaylor@bruneandrichard.com

6   Susan E. Brune (*pro hac vice*)
    David Elbaum (*pro hac vice*)
7   MaryAnn Sung (*pro hac vice*)
    BRUNE & RICHARD LLP
8   One Battery Park Plaza
    New York, New York 10004
9   Telephone: (212) 668-1900
    Facsimile:  (212) 668-0315
10  sbrune@bruneandrichard.com
    delbaum@bruneandrichard.com
11  msung@bruneandrichard.com

12  *Attorneys for Randall Merk*

13

**BRUNE & RICHARD LLP**
**235 Montgomery Street, Suite 1130**
**San Francisco, CA 94104**

14                **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
15                 **SAN FRANCISCO DIVISION**

16  Securities and Exchange Commission,        No. 3:11-cv-00137-WHA

17                              Plaintiff,     **RANDALL MERK'S NOTICE OF**
                                               **MOTION AND MOTION TO DISMISS;**
18            v.                               **MEMORANDUM OF POINTS AND**
                                               **AUTHORITIES IN SUPPORT OF**
19  Kimon P. Daifotis and Randall Merk,        **MOTION**

20                             Defendants.
                                               Date:   June 2, 2011
21                                             Time:   2:00 pm
                                               Judge:  Hon. William H. Alsup
22

23                                             Complaint Filed:    January 11, 2011
                                               Trial Date:         July 9, 2012
24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2011 at 2:00 pm, or as soon thereafter as the matter may be heard, before the Honorable William H. Alsup, United States District Court, Northern District of California, 450 Golden Gate Street, San Francisco, California, Defendant Randall Merk will, and hereby does, move the Court pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss portions or all of the First, Second, Third, Fourth, Fifth, and Seventh Claims for Relief in the complaint. The motion is based on this notice of motion and motion, the memorandum of points and authorities set forth below, the accompanying declaration of Lee Taylor and the exhibits attached thereto, the accompanying request for judicial notice, the papers and pleadings on file with the Court, and any other written or oral arguments or documents presented to the Court before the motion is taken under submission.[1]

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

---

[1] Mr. Merk joins in the motion to dismiss and arguments made by defendant Kimon Daifotis to the extent the arguments are applicable to the SEC's claims against Mr. Merk.

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

## STATEMENT OF ISSUES

1.      Whether the SEC's claims of primary liability for securities fraud based on misstatements and omissions should be dismissed pursuant to Federal Rule of Civil Procedure 9(b) because the complaint fails to allege with particularity facts showing that Mr. Merk made, or substantially participated in making, the challenged November 2007 statements and the challenged statements in the marketing materials.  (Claim One, Section 10(b) of the Exchange Act and Rule 10b-5(b); Claim Three, Section 17(a) of the Securities Act; Claim Six, Section 34(b) of the Investment Company Act ("ICA").)

2.      Whether the SEC's claims of primary liability for securities fraud based on certain statements in the marketing materials, the August 2007 Q&A, and the November 2007 Manager's Discussion should be dismissed pursuant to Federal Rule of Civil Procedure 9(b) because the complaint fails to allege with particularity facts showing that those statements were materially false or misleading.  (Claim One, Section 10(b) of the Exchange Act and Rule 10b-5(b); Claim Three, Section 17(a) of the Securities Act; Claim Six, Section 34(b) of the ICA.)

3.      Whether the SEC's claim of primary liability under Section 17(a)(2) of the Securities Act should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) because the complaint fails to allege any facts showing that Mr. Merk obtained any money or property by means of the alleged misstatements.  (Claim Three, Section 17(a)(2) of the Securities Act.)

4.      Whether the SEC's claims of primary liability based on a fraudulent scheme should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) because the complaint fails to allege with particularity facts showing (i) the existence of any sham or inherently deceptive transactions distinct from the alleged misrepresentations or (ii) that Mr. Merk's own conduct had a deceptive purpose and effect.  (Claim One, Section 10(b) of the Exchange Act and Rule 10b-5; Claim Three, Section 17(a) of the Securities Act.)

5.      Whether the SEC's claims of aiding and abetting securities fraud should be dismissed pursuant to Federal Rule of Civil Procedure 9(b) because the complaint fails to allege with particularity facts showing that Mr. Merk substantially assisted any primary violation under

the securities laws. (Claim Two, Section 20(e) and Section 10(b) of the Exchange Act and Rule 10b-5; Claim Five, Section 209 and Section 206(4) of the Investment Advisers Act ("IAA") and Rule 206(4)-8; Claim Seven, Section 48 and Section 34(b) of the ICA.)

6. Whether the SEC's claim of aiding and abetting securities fraud based on conduct predating Rule 206(4) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Rule 206(4) did not become effective until September 10, 2007 and cannot be applied to any conduct occurring before the effective date. (Claim Five, Section 209 and Section 206(4) of the IAA and Rule 206(4)-8.)

7. Whether the SEC's claim for aiding and abetting a violation of Sections 206(1) and 206(2) of the IAA based on an alleged selective disclosure of nonpublic material information should be dismissed because the complaint fails to allege with particularity facts showing that (i) any entity or individual breached a duty of trust and confidence by acting for an improper purpose or personal benefit, (ii) any material nonpublic information was disclosed, or (iii) Mr. Merk substantially assisted any primary violation by the investment adviser entities. (Claim Four, Section 209, Sections 206(1) and (2) of the IAA.)

8. Where all of the alleged conduct was completed before the enactment of the Dodd-Frank Act, whether Claim Seven and the SEC's other aiding and abetting claims, to the extent they are based on alleged conduct that was reckless and not knowing, should be dismissed with prejudice because Sections 929M, 929N, and 929O of the Dodd-Frank Act may not be applied retroactively (i) to create a new cause of action for aiding and abetting a violation of the ICA or (ii) to permit claims of aiding and abetting violations of Section 10(b) of the Exchange Act, Rule 10b-5, and Section 206 of the IAA based on conduct that was reckless and not knowing. (Claim Two, Section 20(e) and Section 10(b) of the Exchange Act and Rule 10b-5; Claim Five, Section 209 and Section 206(4) of the IAA and Rule 206(4)-8; Claim Seven, Section 48 and Section 34(b) of the ICA.)

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. i

STATEMENT OF ISSUES ................................................................ ii

TABLE OF CONTENTS.............................................................. iv

TABLE OF AUTHORITIES ................................................................ vi

PRELIMINARY STATEMENT ................................................ 1

BACKGROUND ..................................................................... 3

    A.    The Marketing of YieldPlus.......................................................... 4

        1.    YieldPlus Marketing Materials .................................................. 4

        2.    YieldPlus Prospectus and Other SEC Filings .............................................. 4

        3.    Schwab Markets YieldPlus as a Cash Alternative in 2005........................ 5

        4.    YieldPlus Marketing Materials Issued After the Cash Council Is Formed in Mid-2006 ..................................................... 6

    B.    Change in the Non-Agency MBS Limits ............................................. 7

    C.    YieldPlus' Decline and the Fund's Statements in August and November 2007.............................................................................. 7

    D.    The Redemption by Other Schwab Funds from YieldPlus in March 2008.............................................................................. 9

ARGUMENT ........................................................................ 10

I.    THE CLAIMS OF PRIMARY LIABILITY BASED ON CERTAIN ALLEGED FRAUDULENT MISSTATEMENTS MUST BE DISMISSED (CLAIMS ONE, THREE, AND SIX)...................................................... 10

    A.    The Complaint Fails to Allege with Particularity that Mr. Merk Had Substantial Participation in the Preparation of the November 2007 Statements or the YieldPlus Marketing Materials .................................. 11

        1.    The November 2007 Statements.............................................. 12

        2.    The YieldPlus Marketing Materials........................................ 13

    B.    The Complaint Fails to Allege with Particularity Why Certain of the Challenged Statements Were Materially False or Misleading.............................. 14

II.    THE SECTION 17(a)(2) CLAIM MUST BE DISMISSED FOR FAILURE TO ALLEGE RECEIPT OF MONEY OR PROPERTY (CLAIM THREE).......................... 17

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

III.   THE CLAIMS FOR SCHEME LIABILITY MUST BE DISMISSED FOR
       FAILURE TO ALLEGE DECEPTIVE CONDUCT (CLAIMS TWO AND
       THREE) ....................................................................................................... 17

IV.    THE CLAIMS FOR AIDING AND ABETTING SECURITIES FRAUD
       BASED ON CERTAIN MISSTATEMENTS AND OMISSIONS MUST BE
       DISMISSED (CLAIMS TWO, FIVE, AND SEVEN) ...................................... 19

V.     THE CLAIM FOR AIDING AND ABETTING BASED ON REDEMPTIONS
       BY THE TARGET DATE FUNDS MUST BE DISMISSED (CLAIM FOUR) ............. 22

VI.    THE DODD-FRANK ACT CANNOT BE APPLIED RETROACTIVELY
       (CLAIMS TWO, FOUR, FIVE, AND SEVEN)................................................. 24

CONCLUSION........................................................................................................... 25

**BRUNE & RICHARD LLP**
**235 Montgomery Street, Suite 1130**
**San Francisco, CA 94104**

1

**TABLE OF AUTHORITIES**

2

<u>**Page**</u>

3

**CASES**

4

*Basic, Inc.* v. *Levinson*,
  485 U.S. 224 (1988)............................................................................................. 16

5

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)............................................................................................. 10

6

*Brody* v. *Transitional Hosp. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ........................................................................... 14, 16

7

8

*Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)............................................................................................. 24

9

*Desai* v. *Deutsche Bank Sec. Ltd.*,
  573 F.3d 931 (9th Cir. 2009) ............................................................................... 18

10

11

*Dirks* v. *SEC*,
  463 U.S. 646 (1983)............................................................................................. 22

12

*Howard* v. *Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ......................................................................... 11, 12

13

14

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ............................................................................. 15

15

*In re AST Research Sec. Litig.*,
  887 F. Supp. 231 (C.D. Cal. 1995) ...................................................................... 23

16

17

*In re Brocade Commc'n Sys., Inc. Deriv. Litig.*,
  615 F. Supp. 2d 1018 (N.D. Cal. 2009) ........................................................ 12, 14, 18, 19

18

*In re Citigroup Sec. Litig., Inc.*,
  09-md-2070(SHS), 2010 WL 4484650 (S.D.N.Y. Nov. 9, 2010)..................... 16, 17

19

20

*In re Citigroup, Inc., Auction Rate Sec. Mktg. Litig.*,
  09 Md 2043(LTS), 2011 WL 744745 (S.D.N.Y. Mar. 1, 2011).............................. 15

21

*In re Crocs, Inc. Sec. Litig.*,
  No. 07-cv-02351-PAB, 2011 WL 782485 (D. Colo. Feb. 28, 2011) ...................... 23

22

23

*In re Duane Reade Inc. Sec. Litig.*,
  No. 02 Civ. 6478(NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) .............. 15

24

*In re Gilead Scis. Sec. Litig.*,
  C03-4999, 2009 WL 3320492 (N.D. Cal. Oct. 13, 2009) ........................... 11, 12, 14

25

26

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ............................................................................... 10

27

28

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y 2006) ............................................................... 15

*In re Software Toolworks, Inc. Sec. Litig.*,
    50 F.3d 615 (9th Cir. 1994) ............................................................... 11, 13, 14

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ............................................................... 16

*Kearns* v. *Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................... 10

*Koch* v. *SEC*,
    177 F.3d 784 (9th Cir. 1999) ............................................................... 25

*Landgraf* v. *USI Film Products*,
    511 U.S. 244 (1994) ............................................................... 24, 25

*Lentell* v. *Merrill Lynch & Co. Inc.*,
    396 F.3d 161 (2d Cir. 2005) ............................................................... 18

*Megino* v. *Linear Fin.*,
    2:09-CV-00370-KJD-GWF, 2011 WL 53086 (D. Nev. Jan. 6, 2011) ................................. 25

*Mendelsohn* v. *Capital Underwriters, Inc.*,
    490 F. Supp. 1069 (N.D. Cal. 1979) ............................................................... 20

*Nadoff* v. *Duane Reade Inc.*,
    107 F. App'x 250 (2d Cir. 2004) ............................................................... 15

*Plumbers' Union Local No. 12 Pension Fund* v. *Swiss Reinsurance Co.*,
    08 Civ. 1958 (JGK), 2010 WL 3860397 (S.D.N.Y. Oct. 4, 2010) ............................. 16

*Raab* v. *Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) ............................................................... 15

*Ronconi* v. *Larkin*,
    253 F.3d 423 (9th Cir. 2001) ............................................................... 14

*SEC* v. *Apuzzo*,
    3:07CV1910(AWT), 2010 WL 5359928 (D. Conn. Dec. 20, 2010) ............................. 20, 23

*SEC* v. *Burns*,
    No. 84-0454, 1986 WL 36318 (S.D. Cal. Feb. 19, 1986) ............................. 17

*SEC* v. *Espuelas*,
    579 F. Supp. 2d 461 (S.D.N.Y. 2008) ............................................................... 20

*SEC* v. *Fehn*,
    97 F.3d 1276 (9th Cir. 1996) ............................................................... 19, 25

*SEC* v. *Forman*,
    07-11151-RWZ, 2010 WL 2367372 (D. Mass. June 9, 2010) ............................. 17

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

*SEC* v. *Fraser*,
   09-cv-00443-PHX-GMS, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ............... 11, 12, 14, 19

*SEC* v. *Glantz*,
   94 Civ. 5737 (CSH), 1995 WL 562180 (S.D.N.Y. Sept. 20, 1995) ........................................ 17

*SEC* v. *Hopper*,
   Civ.A. H-04-1054, 2006 WL 778640 (S.D. Tex. Mar. 24, 2006) ....................................... 17, 20

*SEC* v. *KPMG LLP*,
   412 F. Supp. 2d 349 (S.D.N.Y. 2006) ................................................................................. 18

*SEC* v. *Leslie*,
   C 07-3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010)............................................... 18, 20

*SEC* v. *Lucent Techs., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009) ........................................................................... 18, 21, 25

*SEC* v. *Pasternak*,
   561 F. Supp. 2d 459 (D.N.J. 2008) ..................................................................................... 21

*SEC* v. *Patel*,
   No. 07-cv-39-SM, 2008 WL 782483 (D.N.H. Mar. 24, 2008) ............................................ 20

*SEC* v. *Phan*,
   500 F.3d 895 (9th Cir. 2007) ...................................................................................... 10, 14

*SEC* v. *PIMCO Advisors Fund Mgmt. LLC*,
   341 F. Supp. 2d 454 (S.D.N.Y. 2004) .......................................................................... 10, 22

*SEC* v. *Tambone*,
   417 F. Supp. 2d 127 (D. Mass. 2006) ................................................................................. 18

*SEC* v. *Treadway*,
   430 F. Supp. 2d 293 (S.D.N.Y. 2006) ................................................................................. 21

*Shurkin* v. *Golden State Vintners, Inc.*,
   471 F. Supp. 2d 998 (N.D. Cal. 2006) ................................................................................. 23

*Simpson* v. *AOL Time Warner Inc.*,
   452 F.3d 1040 (9th Cir. 2006) ............................................................................................ 18

*Sprewell* v. *Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ......................................................................................... 3, 14

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................. 10

*Toia* v. *Fasano*,
   334 F.3d 917 (9th Cir. 2003) .............................................................................................. 24

*United States* v. *O'Hagan*,
   521 U.S. 642 (1997)............................................................................................................. 22

**BRUNE & RICHARD LLP**
**235 Montgomery Street, Suite 1130**
**San Francisco, CA 94104**

*Vernazza* v. *SEC*,
    327 F.3d 851 (9th Cir. 2003) .................................................................................. 22

*Vess* v. *Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................... 10

*Wenger* v. *Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ................................................................... 15

**OTHER AUTHORITIES**

Disclosure Regarding Market Timing and Selective Disclosure of Portfolio Holdings,
    Release No. 33-8343, 68 Fed. Reg. 70402 (Dec. 17, 2003) .................................... 23

Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles,
    Release No. IA-2628, 91 SEC Docket 938 (Aug. 3, 2007) .................................... 21

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

**PRELIMINARY STATEMENT**

This is a new case relating to the decline of the Schwab YieldPlus Fund ("YieldPlus" or the "Fund"). Although some of the allegations in the SEC's complaint overlap with the class action, here the SEC alleges that Randall Merk, an Executive Vice President of Charles Schwab Corp. (together with its affiliates, "Schwab"), committed fraud in violation of various securities laws. Consequently, the SEC's complaint is subject to heightened pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure, and this motion raises legal issues that the Court did not previously consider in the class action.

There is no dispute that the Fund experienced substantial Net Asset Value ("NAV") declines and investors suffered losses as a result. Mr. Merk, an investor in the Fund, knows that well. Indeed, three days after the SEC claims he made fraudulent misstatements in August 2007, Mr. Merk quintupled his personal investment by adding $500,000 to the Fund. And he has never sold a single share. Those facts are wholly inconsistent with an intent to defraud. It is thus not surprising that the complaint utterly fails to allege any motive to commit fraud or personal benefit received by Mr. Merk.

The SEC filed its complaint after completing a detailed investigation relating to the YieldPlus Fund. The SEC collected roughly 20 million pages of documents and deposed or interviewed at least 26 individuals, including Mr. Merk for two days. Nonetheless, the SEC's complaint, despite its length, does not satisfy Rule 9(b)'s particularity requirements with respect to the core elements of the SEC's claims against Mr. Merk.

The complaint asserts claims of primary liability against Mr. Merk under the Exchange Act, the Securities Act, and the ICA (Claims One, Three, and Six) for alleged misstatements and omissions in the Fund's marketing materials beginning in 2005 and alleged misstatements and omissions during the early months of the Fund's decline in August and November 2007. But the SEC has no basis to single out Mr. Merk for the vast majority of the challenged statements. Mr. Merk did not make any of the challenged marketing statements, and he did not make any of the alleged misstatements in November 2007 relating to the decline of the Fund. The SEC concedes those statements were made by others. To hold Mr. Merk primarily liable under those

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    circumstances, the Ninth Circuit requires the SEC to allege facts showing that Mr. Merk had an

2    "extensive" and "significant" role in creating the alleged misstatements.  The SEC fails to do so.

3    For example, despite its prior investigation, review of emails, and depositions, the SEC alleges

4    nothing more than that Mr. Merk "reviewed" or "received a copy" of many of the challenged

5    statements.  As a matter of law, that is not enough.  In addition, the SEC fails to allege how

6    certain of the challenged statements were false or misleading when made.  Accordingly, to the

7    extent that Claims One, Three, and Six are based on those statements, they should be dismissed.

8           Recognizing that its claims of primary liability are defective, the SEC also proceeds on

9    an aiding and abetting fraud theory based on the same alleged misstatements.  But those claims

10   (Claims Two, Five, and Seven) must be dismissed because they fail to allege with particularity

11   facts showing that Mr. Merk's conduct was a substantial cause of any primary violation.  The

12   SEC's claim appears to be that Mr. Merk substantially assisted securities fraud through inaction,

13   rather than affirmative conduct.  But the complaint does not specify why Mr. Merk, as a senior

14   executive, had a legal duty to screen every email or marketing piece and correct isolated word

15   choices made by others.  In addition, the SEC alleges no facts to support its theory that unknown

16   individuals within Schwab were relying on Mr. Merk to play a marketing compliance function.

17   Again, despite the breadth of its prior investigation, the SEC has not identified a single

18   individual who actually relied on Mr. Merk to perform that function or any other facts to support

19   its repeated, but wholly unsupported, assertion of reliance.  In the absence of any established

20   duty, the SEC must show that Mr. Merk consciously intended to assist someone else to commit

21   fraud.  The SEC does not even try to meet that burden.

22          The SEC also cannot recast its fraudulent misstatement claims into scheme liability

23   claims (Claims One and Three).  A scheme liability claim must involve sham or inherently

24   deceptive transactions.  But there are no allegations that Mr. Merk engaged in any such deceptive

25   transactions or that his own conduct had a deceptive purpose and effect.

26          Additionally, the SEC's claim that Mr. Merk aided and abetted securities fraud based on

27   selective disclosure of material nonpublic information in connection with redemptions from

28   YieldPlus (Claim Four) is foreclosed as a matter of law.  The SEC's novel theory of liability fails

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   because Mr. Merk did not violate any duty when one of his reports (Kimon Daifotis) allegedly

2   disclosed information to another Schwab officer during meetings that Mr. Merk held in the

3   ordinary course of business.  The SEC also does not allege, as it must, that Mr. Merk, or the

4   adviser entities, acted with an improper purpose or for personal benefit.  Absent any personal

5   gain, there is no breach of duty.

6           Finally, the SEC cannot use the Dodd-Frank Act to create new aiding and abetting

7   liability for conduct that was completed before the Act became effective in July 2010.  The

8   Dodd-Frank Act amended the ICA to give the SEC authority to bring aiding and abetting claims.

9   But the SEC's authority is not retroactive.  Thus, Claim Seven of the complaint, which alleges

10  aiding and abetting a violation of the ICA based on conduct that occurred more than two years

11  before the amendment, must be dismissed with prejudice.  Likewise, to the extent the SEC is

12  relying on the Dodd-Frank Act to impose aiding and abetting liability under the IAA (Claims

13  Four and Five) and the Exchange Act (Claim Two) on a theory of recklessness, those claims

14  must be dismissed as well.

15                          **BACKGROUND**[2]

16          As an Executive Vice President, Mr. Merk was a member of Schwab's senior

17  management.  (Compl. ¶ 21.)  He was also a member of the Board of Trustees for Schwab

18  Investments, the issuer of YieldPlus and other Schwab Funds.  (*Id*. ¶¶ 21, 24; Ex. 1 at 46.)  In

19  2005 and 2006, Mr. Merk had indirect management responsibility over the Schwab Funds in that

20  the President of Charles Schwab Investment Management ("CSIM"), the Schwab Funds'

21  investment adviser, reported to him.  (Compl. ¶¶ 22, 39.)  The head of Charles Schwab & Co.'s

22  ("CS&Co.") product development and management group also allegedly reported directly to

23  him.  (*Id*.)  Although Mr. Merk is alleged to have been involved in the marketing of YieldPlus,

24  ────────────

25  [2]   This factual summary is based on the allegations in the complaint, documents cited therein,
        and other documents that the Court can properly consider on this motion for the reasons set

26      forth in the accompanying Request for Judicial Notice.  The documents are annexed to the
        Declaration of Lee Taylor, dated April 7, 2011, and referenced as "Ex. ___."  The well-

27      pleaded allegations of the complaint are accepted as true for purposes of this motion only,
        except where the allegations are contradicted by documents properly before the Court.  *See*

28      *Sprewell* v. *Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001).

─────────────────────────────────────────────────────────

1    he did not have any formal or direct responsibility for sales and marketing functions or the

2    compliance and legal functions that CS&Co. provided for the Schwab Funds.  (*See id.* ¶ 23.)  Mr.

3    Merk also had no personal role in the portfolio management or monitoring of the funds.

4         **A.**    **The Marketing of YieldPlus**

5            **1.**    **YieldPlus Marketing Materials**

6         YieldPlus is an ultra-short bond mutual fund that invested in, among other things,

7    corporate, mortgage-backed and asset-backed debt securities, and collateralized mortgage

8    obligations.  (*See* Compl. ¶ 2; Ex. 2 at 2.)  The complaint alleges that the marketing materials for

9    YieldPlus contained false and misleading statements.  It identifies eight advertisements,

10   brochures, and website materials issued by Schwab as containing the following false or

11   misleading statements about the nature and risks of the Fund:

- Identification of YieldPlus as a "cash-alternative" or "cash-equivalent investment" with only "slightly" or "marginally" higher risk than CDs and money market funds;

- Statements that YieldPlus "offered enhanced diversification";

- Statements that YieldPlus "consisted primarily of ultrashort duration bonds that matured frequently"; and

- Statements that  YieldPlus' NAV "fluctuated by only $0.03 in the year ending June 30, 2006."

17   (Compl. ¶¶ 74-75.)[3]

18        In addition, the SEC alleges that the use of the Lehman Brothers U.S. Treasury 9-12

19   Month Index as a benchmark in the Fund's fact sheets was false and misleading.  (*Id.* ¶ 74(i).)

20           **2.**    **YieldPlus Prospectus and Other SEC Filings**

21        The SEC's claims that the fundamental risks of the Fund as a variable NAV mutual fund

22   were not disclosed are contradicted by the Fund's prospectus and other SEC filings.  The Fund's

23   prospectus specifically disclosed and explained the risks:

- "The fund has a higher risk profile than a money market fund (please see the Principal risks section)."

---

3       The SEC does not allege that Mr. Merk was involved in any of the alleged misstatements relating to the Fund's weighted average maturity.  (Compl. ¶¶ 79-102.)

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

- "As an ultra-short bond fund, the fund is not subject to the maturity, credit or diversification limitations of a money market fund and may invest in financial instruments that a money market fund may not purchase."

- "**Investment Risk**. The fund is not a money market fund or a bank deposit. Its shares are not insured or guaranteed by the Federal Deposit Insurance Corporation (FDIC) or any other government agency."

- "**Market Risk**. Bond markets and the values of the securities owned by the fund rise and fall daily. As with any investment whose performance is tied to these markets, the value of your investment in the fund will fluctuate, which means that you could lose money."

- "**Interest Rate Risk**. The fund is subject to the risk that interest rates rise and fall over time. . . . When interest rates rise, bond prices usually fall which could cause the fund's share price to fall."

- "**Credit Risk**. The fund is subject to the risk that a decline in the credit quality of a portfolio investment could cause the fund's share price to fall."

- "**Prepayment and Extension Risk**. The fund's investments are subject to the risk that the securities may be paid off earlier or later than expected. Either situation could cause the fund to hold securities paying lower-than-market rates of interest, which could hurt the fund's yield or share price."

- "**Management Risk**. The fund is an actively managed mutual fund. Any actively managed mutual fund is subject to the risk that its investment adviser will make poor security selections."

(*See* Ex. 2 at 2-5.)

The prospectus also provided information about YieldPlus' performance and historical NAV. The prospectus included a chart showing opening and closing NAV values for each year beginning September 1, 2001 through August 31, 2006. (*Id.* at 7.) That chart showed that, for the period September 1, 2001 to August 31, 2002, the value of YieldPlus declined by $0.25 (from $10.00 to $9.75). (*Id.*) For subsequent 12-month periods, the prospectus showed NAV changes of $0.05, $0.01, and $0.03. (*Id.*)

The Fund also disclosed each of the assets held in its portfolio, including non-agency MBS, in annual reports and Form N-Qs filed with the SEC. (*See, e.g.*, Exs. 3 and 4.)

### 3. Schwab Markets YieldPlus as a Cash Alternative in 2005

The SEC focuses on the YieldPlus marketing efforts in mid-2006 as a cash alternative. But the complaint's allegations indicate that YieldPlus was marketed as a cash alternative as early as 2005. (Compl. ¶¶ 25, 74(f)-(h).)

In September 2005, Schwab issued an advertisement that described the Fund as "an

ultrashort bond fund, not a money market fund.  It seeks to provide higher yield with slightly higher risk than a money market fund, but maintains minimal fluctuation in share price and lower risk than a longer-term bond fund."  (*Id.* ¶ 74(g); Ex. 5.)  Similarly, in another advertisement, Schwab advertised YieldPlus to professionals as "a smart cash alternative for your clients in the current rising-rate market, providing enhanced yield potential over money market funds."  (Compl. ¶ 74(f); Ex. 6.)[4]

In or about January 2006, Schwab mailed a brochure to investors entitled "Smart cash strategies" for "investment cash" identifying certain Schwab money market funds, CDs and YieldPlus as options (the "January 2006 brochure").  (Compl. ¶ 74(h); Ex. 7.)  The brochure identified YieldPlus as a higher-yielding option for those who could invest for longer periods of time, and said:  "If you're comfortable accepting a slightly higher amount of risk in exchange for a return that's generally better than other cash-equivalent investments, consider this ultra-short-term bond fund.  The net asset value of the Schwab YieldPlus Fund will fluctuate."  (Ex. 7.)  The brochure also directed investors to visit the "'cash' page on the web . . . www.schwab.com/cash" for more information, and cautioned investors to review the Fund's prospectus.  (*Id.*)

Mr. Merk is not alleged to have had any involvement in those advertisements.

### 4.   YieldPlus Marketing Materials Issued After the Cash Council Is Formed in Mid-2006

According to the complaint, Mr. Merk first became involved in the marketing of YieldPlus in mid-2006 when Schwab established a committee of high-level executives across the organization called the Cash Council.  (Compl. ¶ 40.)  Mr. Merk was one of the members.  (*Id.*)

The complaint alleges that in May 2006, Mr. Merk "identified" and "directly and substantially participated in the decision to include YieldPlus on the cash page of the Schwab website," and "endorsed the selection of Yield Plus."  (*Id.* ¶¶ 41-43.)  The complaint alleges that

---

[4]   Those advertisements warned potential investors that "[i]nvestment value will fluctuate and shares, when redeemed, may be worth more or less than their original cost."  (Ex. 5; *see also* Ex. 6 (similar language).)  Schwab also advised potential investors to "consider carefully the investment objectives, risks and charges before investing" and directed them to "read carefully" the prospectus.  (*Id.*)

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   the website included similar misstatements to those challenged in the January 2006 brochure. (*Id.*

2   ¶ 45.)  As discussed above, the January 2006 brochure itself shows that YieldPlus had been on

3   the "cash page" of the website along with money market funds and CDs for months before the

4   Cash Council was formed.

5       The SEC also challenges similar statements in other Schwab marketing materials:  an

6   August 2006 press release (Compl. ¶¶ 49-50; Ex. 8), a September 2006 brochure (Compl. ¶

7   74(c); Ex. 9), and a September 2006 email from Charles Schwab (Compl. ¶ 74(e); Ex. 10).  The

8   SEC claims that these materials understated the potential risks and volatility of the YieldPlus

9   Fund.  No facts are alleged that Mr. Merk participated in their preparation or reviewed them.

10  Mr. Merk is only alleged to have been the "source of the idea" for the August 2006 press release

11  and to have seen it. (Compl. ¶ 49.)

12      **B.      Change in the Non-Agency MBS Limits**

13      In August 2006, the Board of Trustees voted to allow YieldPlus and other Schwab bond

14  funds to hold more than 25% in non-agency MBS.  (*Id.* ¶ 116.)  On November 15, 2006, Schwab

15  Investments filed an amendment to the registration statement on Form 485B stating that non-

16  agency MBS was not classified as an industry for purposes of the Fund's concentration policies.

17  (*Id.* ¶ 123; Ex. 1 at 6.)  Counsel for Schwab Investments signed the amendment on behalf of the

18  nine Trustees, including Mr. Merk, as well as on behalf of two CSIM officers.  (Ex. 1 at

19  Signatures.)  The complaint alleges that this disclosure was made on Form 485B, rather than

20  Form 485A, and improperly certified that it did not include any material modifications, but does

21  not allege that Mr. Merk knew of any potential securities law violations.  (Compl. ¶¶ 123-24.)[5]

22      **C.      YieldPlus' Decline and the Fund's Statements in August and November 2007**

23      In July 2007, Merk was appointed President of CSIM and Schwab Investments, while

24  retaining his other roles within CS&Co.  (*Id.* ¶ 21.)  Although Mr. Merk continued to have no

25

26  [5]    The SEC asserts a claim under Section 34(b) relating to this November 2006 filing.  Mr.
        Merk does not move to dismiss that claim here.  The complaint also alleges that YieldPlus
27      had deviated from the 25% limit prior to the August 2006 vote, but the SEC does not allege
        that Mr. Merk knew or was informed about the alleged deviation. (*Id.* ¶¶108-15.)
28

personal role in portfolio management, CSIM's and Schwab Investments' two Chief Investment Officers ("CIOs") began to report directly to him.  (*Id.* ¶¶ 20, 163.)  Kimon Daifotis was the CIO for Fixed Income funds, including YieldPlus, and the CIO for Equities supervised the portfolio management of equities funds.  (*Id.* ¶¶ 20, 162.)

In 2007, with the onset of the financial credit crisis, the YieldPlus NAV began to decline.  (*See* Ex. 11 at 3.)  The SEC alleges that during this period of decline four documents were issued containing misstatements and omissions about YieldPlus:  (1) an August 7, 2007 Q&A, (2) a November 15, 2007 internal email, (3) a November 21, 2007 Talking Points, and (4) a Manager's Discussion circulated in late November 2007.  (Compl. ¶¶ 145-160.)[6]

**The August 7, 2007 Q&A**:  On August 7, 2007, Schwab posted on its website a Q&A attributed to Mr. Merk.  (Compl. ¶ 145; Ex. 11.)  The August 2007 Q&A addressed commonly asked questions concerning the recent market volatility.  Three days after it was posted, on August 10, Mr. Merk invested an additional $500,000 in YieldPlus.  (Ex. 12 at 5.)

The Q&A discussed the "crisis in the subprime mortgage market" and collateralized debt obligations, as well as the overall economy and how various investment types were affected by the market volatility.  (Ex. 11 at 1-2.)  The Q&A stated that YieldPlus was the Schwab "bond fund with the largest price decline over the month," although its total return was "basically flat" and its NAV declined by $0.05.  (*Id.* at 3.)

The SEC challenges only two statements in the August 2007 Q&A.  First, the Q&A stated that YieldPlus "does not hold any subprime CDOs and, overall, has less than 5% subprime exposure with nearly all holdings rated Aa/AA or A/A."  (*Id.* at 4.)  Second, the SEC challenges the statement that "[t]he fund's short maturity structure has mitigated much of the price erosion that some other ultrashort bond funds have experienced."  (Compl. ¶ 145.)

**The November 15, 2007 Email**:  Between August and mid-November 2007, although YieldPlus' total returns for the year remained positive, it experienced NAV declines.  (*See* Ex.

---

[6] The complaint alleges misrepresentations regarding redemptions on certain August 2007 conference calls, but does not allege that Mr. Merk was involved in making those statements or even allege that he heard them.  (Compl. ¶¶ 135-144.)

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

13.)  The SEC alleges that a November 15, 2007 email sent by a Schwab employee to Schwab's financial consultants incorrectly stated that "[t]he portfolio managers have not been forced into selling securities at distressed prices to meet client redemptions."  (Compl. ¶ 153.)  Mr. Merk was copied on the email but did not play any role in drafting, editing, or disseminating it.  (*Id.*)

**The November 21, 2007 Talking Points**:  The complaint alleges that in late November 2007, a document entitled "Schwab YieldPlus Fund – Talking Points as of November 21, 2007" (the "November 2007 TP") was distributed to Schwab employees.  (Compl. ¶ 149.)  Mr. Merk allegedly "suggested an edit" to the document and "approved" it, although the SEC does not identify the specific edit.  (*Id.*)  The November 2007 TP reported that YieldPlus had recently "under-performed its peers" but that "[t]he year-to-date cumulative monthly dividend income exceeds the reduction in share price and investors have realized a positive total return."  (Ex. 13.)  The SEC alleges that the TP included misleading statements about the portfolio management team's "confidence"; the diversification of the portfolio; the description of "unrealized" losses; and the purposes of "maintain[ing] a higher than normal cash position."  (Compl. ¶¶ 149-50.)

**The November 2007 Manager's Discussion**:  A "Manager's Discussion," circulated in late November 2007, contained similar language to the November 2007 TP.  (Compl. ¶ 150(c); Ex. 14 at 2.)  The SEC alleges Mr. Merk received a copy of the Manager's Discussion, but does not claim that he was involved in any way in its preparation.  (Compl. ¶ 159.)

**D.     The Redemption by Other Schwab Funds from YieldPlus in March 2008**

YieldPlus' NAV continued to decline.  By the end of March 2008, the Fund's NAV had declined sharply in value, and its net holdings were down to $1.8 billion.  (*See* Compl. ¶ 15.)  At an unidentified time in March 2008, a portfolio manager for the Schwab Target Date Funds recommended that the funds redeem from YieldPlus.  (*Id.* ¶ 165.)  The complaint does not allege that the portfolio manager had any material nonpublic information when she made her recommendation.  Instead, the complaint alleges that Mr. Daifotis disclosed certain unspecified information to the CIO for Equities during "regular meetings" held by Mr. Merk, and the CIO approved the recommended trade while in possession of that information.  (*Id.* ¶¶ 163-65.)  Mr. Merk allegedly was "informed" of and "approved" the redemption.  (*Id.* ¶¶ 166, 168.)  The SEC

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    has not alleged that Mr. Merk, CSIM, or CS&Co. acted to obtain any personal benefit from the

2    redemptions.

3                                    **ARGUMENT**

4    **I.    THE CLAIMS OF PRIMARY LIABILITY BASED ON CERTAIN ALLEGED
          FRAUDULENT MISSTATEMENTS MUST BE DISMISSED (CLAIMS ONE,
5          THREE, AND SIX)**

6            To state a claim for securities fraud under Section 17(a) of the Securities Act, Section

7    10(b) of the Securities and Exchange Act and Rule 10b-5, and Section 34(b) of the ICA on a

8    primary liability theory, the SEC must allege, with particularity, facts showing that Mr. Merk

9    made a material misstatement or omission, in connection with the purchase or sale of a security,

10   by means of interstate commerce.  *SEC* v. *Phan*, 500 F.3d 895, 907-08 (9th Cir. 2007); *SEC* v.

11   *PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 471 (S.D.N.Y. 2004) (finding Section

12   34(b) tracks language and interpretation of Rule 10b-5).  Rule 9(b) applies to all of the SEC's

13   claims because the entire complaint sounds in fraud.  *Kearns* v. *Ford Motor Co.*, 567 F.3d 1120,

14   1125 (9th Cir. 2009).  Rule 9(b) requires that the complaint state "the who, what, when, where,

15   and how of the misconduct charged."  *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

16   Cir. 2003).[7]  The complaint also "must set forth, as part of the circumstances constituting fraud,

17   an explanation as to why the disputed statement was untrue or misleading *when made*."  *In re*

18   *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc).[8]

19           The SEC's complaint fails to meet these pleading requirements.  It fails to allege with

20   particularity that Mr. Merk made or substantially participated in making the challenged

21   November 2007 statements or the challenged statements in the YieldPlus marketing materials.  It

22   also does not allege with particularity why certain of the challenged statements were materially

23   false or misleading when made.

24   _____

     [7]    Internal citations and quotations omitted unless otherwise stated.

25   [8]    The SEC's fraud claims also require allegations and proof of scienter, which the Supreme
            Court has defined as "a mental state embracing intent to deceive, manipulate, or defraud."
26          *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); *see Phan*, 500 F.3d at
            908.  With respect to scienter, the complaint must allege facts that "raise a right to relief
27          above the speculative level," and "state a claim to relief that is plausible on its face."  *Bell
            Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007).

28

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

A.     **The Complaint Fails to Allege with Particularity that Mr. Merk Had Substantial Participation in the Preparation of the November 2007 Statements or the YieldPlus Marketing Materials**

The SEC does not allege that Mr. Merk personally made any of the challenged statements in November 2007, when the Fund was in the early stages of its decline, or that he personally made the challenged statements in the YieldPlus marketing materials.  Accordingly, the claims for primary liability can proceed only if the SEC alleges with particularity that Mr. Merk had "substantial participation or intricate involvement" in the challenged statements made by others. *Howard* v. *Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000).  And substantial participation means just that.  The complaint must allege facts showing that Mr. Merk was involved in "extensive review and discussions" and had "a significant role in drafting and editing" the statements.  *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 628-29 & n.3 (9th Cir. 1994).

Recent case law applying this standard is instructive.  Courts require that the complaint show with particularized allegations that the defendant had a substantial role in preparing the specific alleged misrepresentation and have rejected as insufficient complaints that were more detailed than the SEC's here.  For example:

- *In re Gilead Scis. Sec. Litig.*, C03-4999, 2009 WL 3320492, at *4 (N.D. Cal. Oct. 13, 2009).  The *Gilead* court dismissed a complaint alleging that drug company executives substantially participated in false marketing statements about off-label use that increased sales.  The court held that allegations that the "defendants were involved in drafting, producing, reviewing, and/or disseminating the materially false and misleading statements" were not enough.  *Id.*

- *SEC* v. *Fraser*, 09-cv-00443-PHX-GMS, 2009 WL 2450508, at *8 (D. Ariz. Aug. 11, 2009).  The *Fraser* court dismissed a complaint that alleged the defendant "review[ed] and discuss[ed] the Forms 10-K" at issue.  The court found that there were "no allegations of the nature of those reviews and discussions, that Fraser suggested what the forms should state, or that any such suggestion, if it occurred, was heeded.  Rather, the SEC offers only the vague assertion that Fraser was somehow

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    involved in reviews and discussions.  This falls short of the '*extensive* review and

2    discussions' required by *Software Toolworks*."  *Id.* (emphasis in original).

3    • *In re Brocade Commc'n Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1044 (N.D.

4    Cal. 2009).  The *Brocade* court dismissed a complaint alleging that the company's

5    CFO was "responsible for maintaining accurate records of stock-option grants," failed

6    "to investigate after receiving emails indicating possible manipulation of option

7    grants," and "understood that new hires were granted stock options with exercise

8    prices based on dates before their full-time employment began."  *Id*.  The court held

9    that while those "allegations may show that [he] was complicit in the backdating

10   scheme, they do not show that his conduct was primarily responsible for any specific

11   material misrepresentation."  *Id*. at 1045.

12       The SEC's complaint does not make the particularized allegations that the Ninth Circuit

13   requires to show that Mr. Merk had substantial participation or intricate involvement in either the

14   November 2007 statements or the YieldPlus marketing materials.  The SEC's claims for primary

15   liability based on those statements must therefore be dismissed.

16           **1.    The November 2007 Statements**

17       The complaint challenges three statements that were concededly made by others in

18   November 2007.  With respect to the November 2007 TP, the SEC alleges that Mr. Merk

19   "reviewed" the document provided to Schwab employees and that he "suggested an edit and then

20   approved the talking points."  (Compl. ¶ 149.)  That is the sum total of Mr. Merk's alleged

21   involvement with the document.  This allegation does not come close to the "substantial

22   participation" bar the Ninth Circuit has established, particularly since the SEC does not even

23   suggest that the alleged edit had anything to do with the alleged misstatement in the talking

24   points.  *Howard*, 228 F.3d at 1061 n.5; *see also Gilead*, 2009 WL 3320492, at *4; *Brocade*, 615

25   F. Supp. 2d at 1044.

26       With respect to the other two November 2007 statements, all the SEC can muster is that

27   Mr. Merk "received a copy" of the November 15, 2007 email and the November 2007 Manager's

28   Discussion.  (Compl. ¶¶ 153, 159.)  On that thin reed, the SEC seeks to impose primary liability.

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    But the SEC fails to allege a single fact showing that Mr. Merk had "a significant role in drafting

2    and editing" the statements.  *Software Toolworks*, 50 F.3d at 628-29 & n.3.  The SEC's

3    boilerplate allegation of "substantial participation" (*see, e.g.*, Compl. ¶ 134) cannot save these

4    claims.  The SEC's theory would gut the "substantial participation" requirement of any meaning

5    at all and cannot support a primary liability fraud claim.

6                    **2.    The YieldPlus Marketing Materials**

7            The SEC's complaint also falls far short of the Ninth Circuit's "substantial participation"

8    standard in connection with the YieldPlus marketing materials.  Rather than allege facts that

9    show Mr. Merk was involved in "extensive review and discussions" and had a "significant role

10   in drafting and editing" each of the specific challenged statements, the SEC merely focuses on

11   Schwab's Cash Council and its general discussions of the Fund's marketing plans.  (*Id.* ¶ 40.)

12   The complaint alleges that the Cash Council "directed an effort to highlight YieldPlus on

13   portions of the Schwab website" that discussed cash products (*id.* ¶ 44; *see also id.* ¶ 74(a)), and

14   "directed that sales materials emphasize claims that YieldPlus had a stable NAV."  (*Id.* ¶ 46.)

15   The SEC then claims that Mr. Merk, as a member of the Cash Council, participated in those

16   efforts by (a) selecting YieldPlus for inclusion "on the cash page of the Schwab website" at the

17   Cash Council's request (*id.* ¶ 42); (b) "receiv[ing] a summary of the '[p]roposed cHome cash

18   promotion'" (*id.* ¶ 43); (c) "review[ing] and agree[ing]" to marketing plans, proposed website

19   changes, and the contents of websites and communications that represented YieldPlus as a cash

20   alternative (*id.* ¶¶ 44, 46); and (d) seeing a "draft and the final language" of a

21   "cash/CD/YieldPlus related press release" issued on August 1, 2006.  (*Id.* ¶ 49.)[9]

22           The documents cited in the complaint, however, establish that Schwab began marketing

23   YieldPlus as a cash alternative as early as 2005 and included the Fund on a "cash" page on

24   Schwab's website before the Cash Council was formed and before Mr. Merk had any

25   involvement.  The January 2006 brochure identified YieldPlus among the options for investment

26

27   _____
     [9]   The SEC also alleges that Mr. Merk "received documents and presentations" concerning
28         YieldPlus marketing at the August 2006 Board of Trustees meeting.  (Compl. ¶¶ 51-52.)

1  cash, along with money market funds and CDs, and directed investors to Schwab's cash webpage

2  for more information.  (Ex. 7.)  The SEC thus cannot claim that Mr. Merk was responsible for

3  selecting the YieldPlus Fund for the cash webpage.  *See Sprewell*, 266 F.3d at 989.

4          In any event, none of the allegations is sufficient to show "substantial participation" by

5  Mr. Merk personally.  The complaint does not allege a single fact showing that Mr. Merk had an

6  "extensive" and "significant" role in preparing the statements, *Software Toolworks*, 50 F.3d at

7  628-29, or that "his conduct was primarily responsible for any specific material

8  misrepresentation."  *Brocade*, 615 F. Supp. 2d at 1045.  The allegation that Mr. Merk helped

9  select YieldPlus for a webpage, even if credited, says nothing about his role in preparing the

10  challenged statements on that webpage.  Similarly, the generalized allegations that Mr. Merk

11  "received a summary" of documents or "reviewed and agreed to" marketing materials are not

12  sufficient as a matter of law to support a primary fraud claim.  *See Gilead*, 2009 WL 3320492, at

13  *4; *Fraser*, 2009 WL 2450508, at *8.  The allegations that Mr. Merk was "the source of the

14  idea" for a press release and "saw the draft and the final language" (Compl. ¶ 49) do not even

15  suggest that he was involved in drafting the release at all, let alone that he prepared the specific

16  alleged misstatements.  *See Brocade*, 615 F. Supp. 2d at 1044-45.[10]

17          **B.      The Complaint Fails to Allege with Particularity Why Certain of the
                      Challenged Statements Were Materially False or Misleading**

18

19          As mentioned above, Rule 9(b) also requires that the complaint allege with particularity

20  facts that show the challenged statements were false or misleading when made or omitted

21  information that was required to be disclosed.  *See, e.g.*, *Phan*, 500 F.3d at 907-08; *Brody* v.

22  *Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *Ronconi* v. *Larkin*, 253 F.3d 423,

23  434 (9th Cir. 2001).  The SEC's complaint fails to meet this settled standard with respect to the

24  following challenged statements and omissions:

25          •     The statements in a September 2006 brochure and an email to investors from Charles
                  Schwab that the Fund's NAV "has fluctuated by no more than $0.03 (between $9.65
                  and $9.68) over the past year ending 06/30/2006."  (Compl. ¶¶ 74(c)(iii), 74(e)(iii),

26

27  _____

    [10]   The SEC does not allege that Mr. Merk reviewed Mr. Schwab's September 2006 email
28          before it was sent or even that he received it.  (Compl. ¶74(e).)

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

75(d).)

- The Fund's listing of "the Lehman Brothers U.S. Treasury 9-12 Month Index as the benchmark for measurement of YieldPlus's performance" on publicly available fact sheets for the Fund.  (*Id.* ¶ 74(i).)

- The Fund's omission of details relating to its holdings of MBS backed by Alt-A mortgages in statements about subprime holdings in the August 2007 Q&A and the November 2007 Manager's Discussion.  (*Id.* ¶¶ 157-159.)

*First*, the SEC does not dispute the truth of the statement that the Fund's NAV changed by only $0.03 in the year ending June 30, 2006.  (*Id.* ¶ 75(d).)  That statement, thus, cannot form the basis of the SEC's claim because "disclosure of accurate historical data" is "not actionable" under the securities laws.  *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 395 (S.D.N.Y 2006); *accord Wenger* v. *Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244-45 (N.D. Cal. 1998). Consequently, the SEC asserts only that the Fund should have disclosed the fluctuations during other periods.  (Compl. ¶ 75(d).)  But the SEC does not identify the source of any such duty. Courts have long recognized that "[d]efendants may not be held liable under the securities law for accurate reports of past successes even if present circumstances are less rosy."  *In re Duane Reade Inc. Sec. Litig.*, No. 02 Civ. 6478(NRB), 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003), *aff 'd sub nom.*, *Nadoff* v. *Duane Reade Inc.*, 107 F. App'x 250, 252 (2d Cir. 2004).  And in any event, five years of historical information was disclosed in the prospectus.  Thus, investors were on notice that the Fund had experienced greater volatility in the past, including a decline of $0.25 in the year ending August 31, 2002.  (Ex. 2 at 7.)  In light of those disclosures, the SEC's claim fails because "a plaintiff cannot premise a claim of securities fraud on conduct and risks that were previously disclosed to the investing public."  *In re Citigroup, Inc., Auction Rate Sec. Mktg. Litig.*, 09 Md 2043(LTS), 2011 WL 744745, at *6 (S.D.N.Y. Mar. 1, 2011); *see also Raab* v. *Gen. Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993) (citing *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989)).

*Second*, the cited fact sheets directly refute the SEC's claim that the use of the U.S. Treasury Index was misleading.  The SEC alleges that the Index suggested that the Fund invested "regularly and substantially" in U.S. securities and that the Fund's "performance and risk profile" would be similar to Treasury securities.  (Compl. ¶ 74(i).)  But the first paragraph of the

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1  fact sheets informed investors that "[t]he fund primarily invests in corporate, mortgage-backed,

2  asset-backed debt securities and collateralized mortgage obligations," without any mention of

3  Treasury securities at all.  (*See, e.g.*, Ex. 15 at 1.)  The fact sheets clearly stated – with both

4  numbers and a pie chart – that only 0.1% of the Fund was invested in Treasury securities.  (*See,

5  e.g.*, *id.* at 2.)  They also provided a breakdown of the credit rating of the Fund's portfolio,

6  showing that the assets had a range of credit ratings, with an average rating that was below the

7  AAA rating of U.S. Treasury securities.  (*See, e.g.*, *id.*)  In addition to those disclosures in the

8  fact sheets, the November 15, 2006 Prospectus further disclosed that "The Lehman Brothers

9  Short 9-12 Month U.S. Treasury Index is composed of only U.S. Treasury securities, which are

10  … considered free of credit risk.  The fund may invest in debt instruments that are subject to

11  credit risk (please see the discussion of credit risk in the Principal risks section)."  (Ex. 2 at 6.)

12       *Third*, the Fund had no duty to disclose its Alt-A holdings in either the August 2007

13  Q&A or the November 2007 Manager's Discussion.  There can be no liability for an omission in

14  the absence of a duty to disclose.  *See, e.g.*, *Basic, Inc.* v. *Levinson*, 485 U.S. 224, 230-31 (1988);

15  *see also Brody*, 280 F.3d at 1006; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir.

16  2002).  Contrary to the SEC's claim, a statement about the level of one type of assets does not

17  imply anything about other types of assets and cannot support a fraud claim.  Both of the

18  challenged documents were limited on their face to subprime assets and never attempted to

19  address the Fund's other mortgage-backed securities.  Viewed in context, the Q&A did not

20  address the Fund's holdings of securities backed by Alt-A mortgages.  And courts have rejected

21  attempts to impose a duty to disclose in similar contexts.

22       For example, in *In re Citigroup Sec. Litig., Inc.*, 09-md-2070(SHS), 2010 WL 4484650,

23  at *30-31 (S.D.N.Y. Nov. 9, 2010), the court held that a challenged statement about the bank's

24  holdings of Alt-A *mortgages* was not misleading even though the bank did not state that it also

25  had large holdings of Alt-A *mortgage-backed securities* because they are different assets.

26  Similarly, in *Plumbers' Union Local No. 12 Pension Fund* v. *Swiss Reinsurance Co.*, 08 Civ.

27  1958 (JGK), 2010 WL 3860397, at *14 (S.D.N.Y. Oct. 4, 2010), the court rejected a claim that

28  an executive's response to a question about subprime holdings was misleading.  The court found

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   that, in context, the question related to direct subprime holdings and did not encompass the

2   firm's exposure to subprime-related risks via credit default swaps that were held elsewhere on

3   the company's balance sheet.  *Id.*  Here, the challenged statements in the Q&A and Manager's

4   Discussion addressed only subprime holdings.  Those statements do not, by themselves, create a

5   duty to address other asset classes held in the Fund.  That is so even if, as the SEC alleges

6   (Compl. ¶ 157), the alleged risk profile of the other assets is similar or related to subprime assets.

7   *See Citigroup Sec. Litig.*, 2010 WL 4484650, at *31.

8           Liability cannot be imposed on Mr. Merk because of these statements.

9   **II.     THE SECTION 17(a)(2) CLAIM MUST BE DISMISSED FOR FAILURE TO
            ALLEGE RECEIPT OF MONEY OR PROPERTY (CLAIM THREE)**

10          The SEC's claim for primary liability under Section 17(a)(2) of the Securities Act (Claim

11  Three) must be dismissed for the independent reason that the complaint fails to allege any facts

12  showing that Mr. Merk obtained money or property by means of untrue statements.  Receipt of

13  money or property is an essential element of any claim under Section 17(a)(2), and the SEC

14  utterly fails to meet its pleading burden.  *SEC* v. *Hopper*, Civ.A. H-04-1054, 2006 WL 778640,

15  at *12 & n.19 (S.D. Tex. Mar. 24, 2006); *SEC* v. *Glantz*, 94 Civ. 5737 (CSH), 1995 WL 562180,

16  at *5 (S.D.N.Y. Sept. 20, 1995).  The SEC does not allege a single fact showing that Mr. Merk

17  personally received any money or property or benefited from the alleged fraud in any way.  The

18  SEC also does not allege that Mr. Merk's compensation was attributable to the size or

19  performance of the Fund.  This claim should be dismissed.  *See Hopper*, 2006 WL 778640, at

20  *12; *SEC* v. *Burns*, No. 84-0454, 1986 WL 36318, at *4 (S.D. Cal. Feb. 19, 1986) (finding no

21  violation of Section 17(a)(2) because "[t]here is no evidence … that Mr. Burns personally

22  acquired money or property"); *SEC* v. *Forman*, 07-11151-RWZ, 2010 WL 2367372, at * 8 (D.

23  Mass. June 9, 2010) (granting summary judgment in accounting fraud case where there was "no

24  evidence that the employee bonus was tied to company performance").

25  **III.    THE CLAIMS FOR SCHEME LIABILITY MUST BE DISMISSED FOR
            FAILURE TO ALLEGE DECEPTIVE CONDUCT (CLAIMS TWO AND THREE)**

26

27          As an alternative to its primary liability theory based on misstatements and omissions, the

28  SEC also asserts that Mr. Merk is subject to liability for a fraudulent scheme under Rule 10b-5(a)

---

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

and (c) or Section 17(a).  (Compl. ¶¶ 61, 174, 181.)  But the SEC's scheme claim fares no better. Scheme liability is a "theory of liability separate and distinct from liability resulting from making misstatements."  *SEC* v. *Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 354 (D.N.J. 2009).  To state a claim for scheme liability, the SEC must allege with particularity facts showing that Mr. Merk "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme.  It is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or the overall scheme must have had a deceptive purpose and effect."  *Simpson* v. *AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, 552 U.S. 1162 (2008) (emphasis in original).

The SEC's scheme claim fails because it merely recasts the alleged misrepresentations. (*Compare* Compl. ¶ 60 *with* ¶ 61.)  To state a scheme claim, the alleged scheme "must be more than a reiteration of the misrepresentations that underlie the misstatement claims."  *SEC* v. *Leslie*, C 07-3444, 2010 WL 2991038, at *34 (N.D. Cal. July 29, 2010); *see also Lentell* v. *Merrill Lynch & Co. Inc.*, 396 F.3d 161, 177-78 (2d Cir. 2005); *SEC* v. *KPMG LLP*, 412 F. Supp. 2d 349, 377-78 (S.D.N.Y. 2006).  It "must involve 'sham' or 'inherently deceptive' transactions."  *Lucent*, 610 F. Supp. 2d at 360; *see Desai* v. *Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938-39 (9th Cir. 2009) (scheme liability under Rule 10b-5(a) and (c) involves manipulative acts such as "wash sales, matched orders or rigged prices"); *SEC* v. *Tambone*, 417 F. Supp. 2d 127, 135-36 (D. Mass. 2006) (mutual fund market timing arrangements not "clearly illegal" and not a scheme to defraud).  The SEC does not identify any sham or inherently deceptive transactions.  The marketing of an ultra-short bond fund is not inherently deceptive, especially where the Fund's risks and holdings were fully disclosed in SEC filings.

The complaint also does not allege facts showing that Mr. Merk's own conduct had a deceptive purpose and effect.  The decision in *Brocade*, 615 F. Supp. 2d 1018, is instructive. There, the complaint alleged that the head of the corporate finance department was aware of and involved in the granting of backdated options.  *Id.* at 1044-45.  The court nonetheless dismissed the claim because the complaint failed to show that the defendant's "own conduct had a

1    deceptive purpose." *Id.*  Similarly, in *Fraser*, the court dismissed an SEC complaint that merely

2    alleged the defendant's acquiescence in a revenue scheme "principally by attending meetings and

3    signing certifications."  2009 WL 2450508, at *11.

4         Here, the SEC focuses on the alleged marketing activities of the Cash Council.  But there

5    are no facts alleged that show the purpose and effect of Mr. Merk's role and actions on the

6    Council were to deceive.  The SEC's conclusory assertion (Compl. ¶ 61) is wholly unsupported

7    and insufficient.  *See, e.g.*, *Fraser*, 2009 WL 2450508, at *11.  Nothing in the complaint suggests

8    that Mr. Merk's generalized review of webpages or emails had an improper purpose of

9    advancing the alleged scheme.

10   **IV.   THE CLAIMS FOR AIDING AND ABETTING SECURITIES FRAUD BASED**
     **ON CERTAIN MISSTATEMENTS AND OMISSIONS MUST BE DISMISSED**

11   **(CLAIMS TWO, FIVE, AND SEVEN)**

12        In addition to the primary liability claims discussed above, the SEC also asserts claims of

13   aiding and abetting securities fraud, apparently for the same statements underlying the primary

14   liability claims.  Because the complaint does not make any effort to delineate between the two

15   distinct legal theories, Mr. Merk and the Court are forced to guess which allegations the SEC

16   may suggest support a claim of secondary liability.  The SEC's theory appears to be that Mr.

17   Merk aided and abetted securities fraud because he was a senior executive and failed to correct

18   isolated word choices made by others in a variety of documents.  This generalized theory of

19   fraud by inaction and by executive position is repeated at least nine times in the complaint

20   (Compl. ¶¶ 49, 57, 58, 59, 78, 126, 152, 155, 160), but it is insufficient as a matter of law to

21   support a claim against Mr. Merk.

22        To state a claim for aiding and abetting securities fraud, the complaint must allege, with

23   particularity, facts showing "(1) the existence of an independent primary violation; (2) actual

24   knowledge by the alleged aider and abettor of the primary violation and of his or her own role in

25   furthering it; and (3) 'substantial assistance' by the defendant in the commission of the primary

26   violation."  *SEC* v. *Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996); *see Leslie*, 2010 WL 2991038, at

27

28

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

*17; *SEC* v. *Apuzzo*, 3:07CV1910(AWT), 2010 WL 5359928, at *8 (D. Conn. Dec. 20, 2010).[11]

The SEC's claims of secondary liability should be dismissed because the complaint fails to allege facts that show Mr. Merk "substantially assisted" anyone to commit securities fraud. "To allege substantial assistance, the complaint must allege that the aider and abettor's conduct was a substantial causal factor in the perpetuation of the underlying violation." *SEC* v. *Espuelas*, 579 F. Supp. 2d 461, 471 (S.D.N.Y. 2008); *Hopper*, 2006 WL 778640, at *15; *see also Mendelsohn* v. *Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (plaintiff must show that "the assistance provided by the alleged aider and abettor was a substantial factor in bringing about the [primary] violation"). Allegations showing "[m]ere awareness and approval of the primary violation" are insufficient. *Apuzzo*, 2010 WL 5359928, at *12; *accord SEC* v. *Patel*, No. 07-cv-39-SM, 2008 WL 782483, at *10 (D.N.H. Mar. 24, 2008).

Those established rules foreclose the SEC's claims. The complaint's general allegations that Mr. Merk was a member of the Cash Council, was involved in YieldPlus marketing discussions, and received or reviewed various documents do not show, with the required particularity, that Mr. Merk's actions were a substantial causal factor of any primary violation. Similarly, the SEC does not show that Mr. Merk substantially caused any of the alleged misstatements in August or November 2007 (other than the August Q&A that is attributed to Mr. Merk). The SEC's conclusory allegations (Compl. ¶¶ 25, 134) do not satisfy the requirements of Rule 9(b). *See Apuzzo*, 2010 WL 5359928, at *8.

Instead of alleging affirmative assistance, the complaint faults Mr. Merk for failing to correct alleged misstatements made by others, who were supposedly relying on him based on his experience and position within the organization. (*See, e.g.*, Compl. ¶ 57.) The SEC goes so far as to suggest that Mr. Merk may be liable for "substantial assistance" if he failed to correct documents "of which he was aware," even if he never actually received or reviewed them. (*Id.* ¶ 58.) But the securities laws do not impose on senior executives a generalized duty to screen all

---

[11]   As noted, Mr. Merk joins Mr. Daifotis's motion to dismiss, including his argument that the SEC has failed to allege a primary violation with sufficient particularity.

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1  emails and marketing materials and correct isolated word choices, especially when, as here, the

2  Fund has fully disclosed its risks in its SEC filings.  And the SEC does not allege that Mr.

3  Merk's job responsibilities – which the SEC does not claim included any formal marketing or

4  compliance function – imposed a duty to act as a compliance officer or to ensure the accuracy of

5  every "characterization[] of the Fund" in every marketing piece.  (*Id.* ¶ 39.)  Indeed, the SEC

6  concedes that CS&Co. provided personnel who performed compliance and legal functions to the

7  Fund.  (*Id.* ¶ 23.)

8         Notably, the SEC has already conducted a thorough investigation that included the

9  collection of roughly 20 million pages of documents and the depositions or interviews of at least

10  26 individuals.  Yet the SEC fails to identify a single individual who allegedly relied on Mr.

11  Merk personally to play the supposed marketing compliance role.  The SEC has also not alleged

12  a single instance in which such reliance ever occurred, how such reliance occurred, or how it was

13  made apparent to Mr. Merk.  The SEC fails to show that anyone actually relied on Mr. Merk to

14  perform that compliance function with respect to the specific statements challenged in the

15  complaint.  Under Rule 9(b), far more particularity is required to allege the existence of a legal

16  duty and potential secondary fraud liability.

17         In the absence of an affirmative duty, courts have recognized that "inaction, without

18  conscious intent to assist in the perpetration of a wrongful act, cannot predicate liability."

19  *Lucent*, 610 F. Supp. 2d at 362; *SEC* v. *Pasternak*, 561 F. Supp. 2d 459, 501-02 (D.N.J. 2008);

20  *SEC* v. *Treadway*, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006).  The SEC does not even attempt to

21  meet that burden.  The complaint does not allege any facts that even plausibly suggest Mr. Merk

22  failed to correct statements by others because he "conscious[ly] inten[ded] to assist" in securities

23  fraud.  *See Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

24         Finally, the SEC's claim for aiding and abetting violations of Section 206(4) of the IAA

25  and Rule 206(4)-8 (Claim Four) fails for an additional reason:  Rule 206(4)-8 (17 C.F.R.

26  § 275.206(4)-8) did not become effective until September 10, 2007.  *See* Prohibition of Fraud by

27  Advisers to Certain Pooled Investment Vehicles, Release No. IA-2628, 91 SEC Docket 938

28  (Aug. 3, 2007).  There can be no secondary (or primary) liability under Rule 206(4)-8 based on

conduct before the Rule became effective.  And for the reasons discussed above, the SEC has failed to allege any aiding and abetting liability based on the few allegations of conduct after the effective date.  (Compl. ¶¶ 149, 153, 159).

## V.   THE CLAIM FOR AIDING AND ABETTING BASED ON REDEMPTIONS BY THE TARGET DATE FUNDS MUST BE DISMISSED (CLAIM FOUR)

The SEC alleges that Mr. Merk also aided and abetted securities fraud by CSIM and CS&Co. (as investment advisers) under Sections 206(1) and (2) of the IAA (Claim Four).  The SEC claims that in March 2008, eight months into the Fund's decline, the Target Date Funds redeemed from YieldPlus while the CIO for Equities allegedly possessed material nonpublic information.  (Compl. ¶¶ 170, 172.)  The SEC acknowledges that Mr. Merk did not disclose any information, but instead alleges that Mr. Daifotis disclosed information during regular group meetings that Mr. Merk held with his direct reports.  (*Id*. ¶ 163.)  Mr. Merk is then alleged to have been informed of and approved the redemptions while knowing the CIO had material nonpublic information.  (*Id.* ¶¶ 166, 168.)  This novel theory fails as a matter of law.

Even if Mr. Merk could be charged with making an inside disclosure (and he cannot), an insider violates the anti-fraud laws only if he violates a duty of trust and confidence.  "Whether disclosure is a breach of duty . . . depends in large part on the purpose of the disclosure. . . . [T]he test is whether the insider personally will benefit, directly or indirectly, from his disclosure."  *Dirks* v. *SEC*, 463 U.S. 646, 662-64 (1983).[12]  The SEC does not allege that anyone – not CSIM, not CS&Co., and not Mr. Merk – acted for an improper purpose, much less any personal benefit.  "Absent some personal gain, there has been no breach of duty to [YieldPlus]." *Id.* at 662; *accord United States* v. *O'Hagan*, 521 U.S. 642, 653 (1997) (no claim for misappropriation unless information was improperly used "for personal gain").

The SEC appears to suggest that the alleged disclosure of YieldPlus information to the CIO for Equities was a breach of fiduciary duty.  (Compl. ¶ 170.)  But the CIO was an officer of

---

[12]  Elements of Section 206(1) and (2) of the IAA are similar to those for Section 10(b) and Section 17(a).  *Vernazza* v. *SEC*, 327 F.3d 851, 858-60 (9th Cir. 2003).  Claims for aiding and abetting 206(1) and (2) violations also must meet the Rule 9(b) standards that apply to aiding and abetting Rule 10(b) violations.  *See, e.g.*, *PIMCO*, 341 F. Supp. 2d at 463, 470.

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   Schwab Investments, the Trust that issued the YieldPlus shares.  (Ex. 1 at 48.)  There can be no

2   liability for improper tipping where, as here, information is shared within the corporate entities,

3   and not with any outsiders.  *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB, 2011 WL

4   782485, at *32-33 (D. Colo. Feb. 28, 2011); *In re AST Research Sec. Litig.*, 887 F. Supp. 231,

5   235 (C.D. Cal. 1995).[13]

6          In addition, the complaint fails to allege facts that show any material nonpublic

7   information was in fact disclosed.  The SEC makes generalized, vague allegations about the

8   *topics* alleged to have been discussed during the meetings – "YieldPlus, its NAV decline, high

9   redemption levels, and plans to satisfy redemptions by selling assets" – but it does not state with

10  particularity what YieldPlus material secrets were allegedly disclosed.  (Compl. ¶164.)  *See*

11  *Shurkin* v. *Golden State Vintners, Inc.*, 471 F. Supp. 2d 998, 1025-26 (N.D. Cal. 2006).  Those

12  topics are neither inherently material nor nonpublic.  NAV is reported daily.  High net

13  redemptions that have occurred can be determined from the Fund's periodic reports, and selling

14  assets to satisfy redemptions can be deduced from the same reports.

15         Finally, similar to the other aiding and abetting claims, the complaint fails to allege facts

16  showing that Mr. Merk was a substantial cause of any primary violation.  The complaint alleges

17  only that Mr. Merk held meetings with his direct reports, "was informed" of, and "approved" the

18  redemption.  (Compl. ¶¶ 163, 166, 168.)  The SEC does not allege that Mr. Merk's approval was

19  necessary for any redemption.[14]  In any event, "[m]ere awareness and approval of the primary

20  violation" is insufficient as a matter of law.  *Apuzzo*, 2010 WL 5359928, at *12.

21

22  13   Contrary to the SEC's claim that the disclosures were unauthorized, no rule was violated.
    Regulation FD, which governs selective disclosures, "does not … apply to mutual funds."
23  Disclosure Regarding Market Timing and Selective Disclosure of Portfolio Holdings,
    Release No. 33-8343, 68 Fed. Reg. 70402, 70405 (Dec. 17, 2003); *see* 17 C.F.R. §
24  243.101(b) (term "issuer" excludes investment companies other than a "closed-end
    investment company").  Regulation FD also can only be applied to "a disclosure made to [a]
25  person outside the issuer."  17 C.F.R. § 243.100(b)(1).

26  14   The SEC also fails to allege facts showing that Mr. Merk had an affirmative duty to
    YieldPlus to *prevent* the redemption that the portfolio manager of the Target Date Funds
27  independently recommended.  The SEC does not allege that the portfolio manager herself
    was in possession of any material nonpublic information or breached any duty by redeeming.
28  (Compl. ¶ 165.)

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

## VI.   THE DODD-FRANK ACT CANNOT BE APPLIED RETROACTIVELY (CLAIMS TWO, FOUR, FIVE, AND SEVEN)

The SEC's aiding and abetting claim under Section 34(b) of the ICA (Claim Seven) is based on an amendment adopted in Section 929M of the Dodd-Frank Act in July 2010 that gave the SEC authority to bring aiding and abetting claims under the ICA.  *See* Pub. L. No. 111-203, § 929M (codified at 15 U.S.C. § 80a-47(b) (2010)).  (Compl. ¶ 200.)  In addition, it appears that the SEC may be relying on Sections 929N and 929O of the Dodd-Frank Act to impose aiding and abetting liability under Section 206 of the IAA (Claims Four and Five) and Section 10(b) of the Exchange Act (Claim Two) based on recklessness, not actual knowledge.  *See* 15 U.S.C. §§ 80b-9(f), 78t(e).  These amendments cannot be applied retroactively to create new aiding and abetting liability for conduct that was completed before Dodd-Frank was enacted.  *See Landgraf* v. *USI Film Products*, 511 U.S. 244 (1994).

The Dodd-Frank Act does not state that it will have retroactive effect.  To find the required clear statement of congressional intent to apply a statute retroactively, "the express language of the statute must be capable of only one interpretation."  *Toia* v. *Fasano*, 334 F.3d 917, 919 (9th Cir. 2003).  Section 4 states only that it will be effective one day after the date of enactment.  *See* 12 U.S.C. § 5301 note (2010).  No other provision applies to Sections 929M, 929N, or 929O.  As the Supreme Court found in *Landgraf*, "[a] statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."  511 U.S. at 257.

Because there is no clear statement of Congressional intent, the Court must apply the "deeply rooted" "presumption against retroactive legislation."  *Id.*  The complaint alleges conduct that was completed by mid-2008.  (Compl. ¶ 1.)  At that time, the ICA did not create a cause of action for aiding and abetting a violation of Section 34(b).  Nothing in the text of the ICA before Dodd-Frank supports the SEC's claim, as the SEC appears to concede by expressly relying on the ICA "as amended" by Dodd-Frank.  *See Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (there can be no aiding and abetting claim in the absence of a specific statutory grant).  Indeed, in support of what became the Dodd-

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    Frank Act, SEC Chairman Mary Schapiro testified before a House Committee that: "The

2    Administration's proposal would provide the SEC with authority to bring actions for aiding and

3    abetting violations of . . . the Investment Company Act, *which authority the SEC currently does*

4    *not have*."  (Ex. 16 at 8 (emphasis added).)   Likewise, prior to the Dodd-Frank Act, actual

5    knowledge, not recklessness, was the required standard for aiding and abetting liability under the

6    securities laws.  *See Fehn*, 97 F.3d at 1287-88; *Leslie*, 2010 WL 2991038, at *17.

7         The SEC cannot use Sections 929M, 929N, or 929O to "attach[] new legal consequences

8    to events completed before" Dodd-Frank was enacted.  *Landgraf*, 511 U.S. at 270; *see also Koch*

9    v. *SEC*, 177 F.3d 784, 789 (9th Cir. 1999) (lifetime bar authorized in the Securities Enforcement

10   Remedies Act could not be imposed based on pre-Act conduct); *Megino* v. *Linear Fin.*, 2:09-

11   CV-00370-KJD-GWF, 2011 WL 53086, at *8 n.1 (D. Nev. Jan. 6, 2011) (refusing to apply

12   provision of Dodd-Frank retroactively).  As *Landgraf* recognized, "[e]lementary considerations

13   of fairness" preclude application of the Dodd-Frank Act to the pre-enactment conduct at issue in

14   this case.  511 U.S. at 265.  Accordingly, Claim Seven of the complaint must be dismissed with

15   prejudice.  To the extent the SEC is relying on the Dodd-Frank Act to impose aiding and abetting

16   liability under the IAA and the Exchange Act on a theory of recklessness, rather than actual

17   knowledge, those claims must be dismissed as well.

18                                      **CONCLUSION**

19        For the foregoing reasons, the First, Second, Third, Fourth, Fifth, and Seventh Claims for

20   Relief against Mr. Merk should be dismissed.

21   DATED:  April 7, 2011                    BRUNE & RICHARD LLP

22

23                                    By:   /s/ Susan E. Brune
                                            Susan E. Brune (*pro hac vice*)
24                                          Laurie Edelstein (Bar No. 164466)
                                            David Elbaum (*pro hac vice*)
25                                          MaryAnn Sung (*pro hac vice*)
                                            Lee Taylor (Bar No. 243863)

26                                          *Attorneys for Randall Merk*

27

28

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104