1 David J. Gottesman (Trial Counsel) (Illinois Bar No. 6182719)
  (gottesmand@sec.gov)
2 Frederick L. Block (blockf@sec.gov)
  Robert A. Cohen (cohenr@sec.gov)
3 Melissa R. Hodgman (hodgmanm@sec.gov)

4 Attorneys for Plaintiff
  SECURITIES AND EXCHANGE COMMISSION
5 100 F Street, N.E.
  Washington, DC 20549-4030
6 Telephone: (202) 551-4470 (Gottesman)
  Facsimile: (202) 772-9245 (Gottesman)

7

8

9

10                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
11                     SAN FRANCISCO DIVISION

12

13 SECURITIES AND EXCHANGE                    Case No. CV-11-0137 WHA
   COMMISSION,

14          Plaintiff,

15                                            **PLAINTIFF'S OPPOSITION TO**
        vs.                                   **DEFENDANT DAIFOTIS'S MOTION TO**
16                                            **DISMISS**
   KIMON P. DAIFOTIS and RANDALL MERK,
17                                            Date:    June 2, 2011
          Defendants.                         Time:    2:00 p.m.
18                                            Judge:   William H. Alsup
                                              Courtroom: 9
19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S STATEMENT OF ISSUES REGARDING
DEFENDANT DAIFOTIS'S MOTION TO DISMISS**

(1)     Whether Daifotis's motion to dismiss lacks merit in seeking dismissal of the SEC's Complaint, where the Complaint amply specifies which allegations are asserted under which claims against which Defendant.

(2)     Whether Daifotis's motion to dismiss lacks merit in seeking dismissal of the SEC's claims for primary liability (the First, Third and Sixth Claims for Relief) where the Complaint alleges ample details showing that Daifotis (a) personally made various misrepresentations or omissions of material fact; (b) is liable for other statements under the "group pleading" doctrine under Ninth Circuit law; and (c) provided substantial assistance in preparing, creating, drafting, editing, or making materially false statements.

(3)     Whether Daifotis's motion to dismiss lacks merit in seeking dismissal of the SEC's claims for aiding-and-abetting liability (the Second, Fifth, Seventh, and Eighth Claims for Relief) where they contain allegations sufficient to establish the elements of those claims.

(4)     Whether Daifotis's motion to dismiss lacks merit in seeking dismissal of the SEC's Fifth Claim for Relief, where that claim specifies a number of violations by Daifotis that occurred after September 10, 2007, the effective date of the operative Rule, i.e., Rule 206(4)-8.

(5)     Whether Daifotis's motion to dismiss lacks merit in seeking dismissal of the SEC's Seventh and Eighth Claims for Relief, where those claims do not create new liabilities but merely add an additional forum (the district court) in which the SEC may bring claims that it previously could have brought in administrative proceedings.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

    A.    Background Facts ............................................................................................ 1

    B.    The SEC's Claims .......................................................................................... 2

    C.    Daifotis's Motion to Dismiss ........................................................................ 2

ARGUMENT .................................................................................................................... 4

I.       STANDARD OF REVIEW ...................................................................................... 4

II.      THE COMPLAINT'S FORMAT IS PROPER ........................................................ 4

III.     THE COMPLAINT SUFFICIENTLY ALLEGES PRIMARY LIABILITY
        AND AIDING-AND-ABETTING WITH PARTICULARITY ................................. 7

    A.    The Complaint Sufficiently Alleges Direct Statements By Daifotis ..................... 7

    B.    Daifotis Is Liable as a Primary Violator Under the
          Group Published or Group Pleading Doctrine ............................................... 8

        1.    The Group Pleading Doctrine Is Particularly Applicable
             in SEC Enforcement Cases Such as the Present Case ............................... 8

        2.    Daifotis Relies Upon Inapposite Case Law
             to Challenge His Primary Liability ........................................................ 11

    C.    Daifotis Is Liable for Statements That He Substantially
          Participated In Preparing, Creating, Drafting, Editing, or Making ..................... 14

        1.    Daifotis Substantially Participated In Misrepresentations
             and Omissions Regarding the Nature, Risks, and
             Maturity Characteristics of the YieldPlus Fund ...................................... 15

        2.    Daifotis Substantially Participated In Misrepresentations
             and Omissions Regarding the Concentration Policy ................................. 15

        3.    Daifotis Substantially Participated in Misrepresentations
             and Omissions During YieldPlus's Decline .............................................. 18

        4.    Daifotis Is Liable for Remaining Silent When He
             Knew That False Statements Were Being Made ...................................... 18

    D.    The Complaint Alleges Aiding-and-Abetting With Sufficient Particularity ........ 19

        1.    The Complaint Sufficiently Alleges Primary Violations ........................... 20

2.    The Complaint Specifies How Daifotis Provided
Substantial Assistance to the Primary Violations ...................................... 21

IV.   COUNT FIVE IS PROPER BECAUSE DEFENDANTS COMMITTED
VIOLATIONS AFTER RULE 206(4)-8 TOOK EFFECT ................................................ 22

V.    COUNTS SEVEN AND EIGHT UNDER THE DODD-FRANK ACT
DO NOT VIOLATE RETROACTIVITY PRINCIPLES ................................................. 22

CONCLUSION ............................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*In re Aftermarket Filters Antitrust Litigation*, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .............................................................................................................. 17

*Allstate Life Ins. Co. v. Robt. W. Baird & Co., Inc.*, Nos. CV-09-8162-PCT-GMS and CV-09-8174-PCT-GMS, 2010 WL 4581242 (D. Ariz. Nov. 4, 2010) ................................................................................................................................ 14

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ........................................................................ 4

*Barrie v. Intervoice-Brite, Inc.*, 409 F.3d 653 (5th Cir. 2005)......................................... 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2001) ...................................................... 4

*Bernhardt v. County of Los Angeles,*, 279 F.3d 862 (9th Cir. 2002) ......................... 4, 18

*In the Matter of Jason G. Burks,* Admin. Proc. File No. 3-13419, Release Nos. 34-58644A, IA-2862A, IC-38681A, 2009 WL 1605426 (March 27, 2009).............. 23

*In re Cadence Design Systems, Inc. Sec. Litig.*, 692 F. Supp. 2d 1181 (N.D. Cal. 2010)......................................................................................................................... 9, 14

*In re Charles Schwab Sec. Litig.*, No. C 08-01510 WHA, 2010 WL 1261705 (N.D. Cal. Mar. 30, 2010) ..................................................................................... 16

*In re Charles Schwab Sec. Litig.*, No. C 08-01510 WHA, 2010 WL 1445445 (N.D. Cal. Apr. 8, 2010) ....................................................................................... 14

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378 (D. Del. 2010) ................................................................................................. 12

*Communications Workers of America Plan v. CSK Auto Corp.*, No. 2:06-cv-01580-DGC, 2007 U.S. Dist. LEXIS 22782, 2007 WL 951968 (D. Ariz. Mar. 28, 2007)...................................................................................................... 15

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997).................................................. 7, 15, 16

*In the Matter of Evergreen Investment Management Co., LLC*, Admin. Proc. File No. 3-12805, Release Nos. 34-56462, IA-2648, IC-27973 (Sep. 19, 2007) ....................................................................................................................... 23

*Facciola v. Greenberg Traurig, LLP*, No. CV 10-1025-PHX-MHM, 2011 WL 1253656 (D. Ariz. Mar. 31, 2011) ........................................................................ 5

*Freudenberg v. E\*Trade Financial Corp.*, 712 F. Supp.2d 171 (S.D.N.Y. 2010) ...................................................................................................................... 19

*Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010) ........................................................... 20

*In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591 (9th Cir. 1995).............................................. 9

*Hallowell v. Commons*, 239 U.S. 506 (1916) ................................................................. 23

iv

*In re Homestore.com Sec. Litig.*, 347 F. Supp. 2d 790 (C.D. Cal. 2004) .................. 14, 17

*In re Int'l Rectifier Corp. Sec. Litig.,* Case No. CV-07-2544-JFW (VBKx),
    2008 U.S. Dist. LEXIS 44872, 2008 WL 4555794 (C.D. Cal. May 23,
    2008) ........................................................................................................... 12, 13

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ......................................... 22, 23, 24

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ...................................................... 4

*Mellette v. Branch*, No. 07-cv-01065-WDM-KMT, 2008 WL 4001044 (D.
    Colo. Aug. 26, 2008) ....................................................................................... 4, 5

*Molecular Technol. Corp. v. Valentine*, 925 F.2d 910 (6th Cir. 1991) ........................... 22

*Moore v. Kayport Package Exp, Inc.*, 885 F.2d 531 (9th Cir. 1989) ............................... 10

*In re New Century*, 588 F. Supp. 2d 1206 (C.D. Cal. 2008) ........................................ 8

*In re Omnivision Tech., Inc.*, No. C-04-2297 SC, 2005 WL 1867717 (N.D.
    Cal. Jul. 29, 2005) ......................................................................................... 9

*In the Matter of Pax World Management Corp.,* Admin. Proc. File No. 3-
    13107, Release Nos. IA-2761, IC-28344 (Jul. 30, 2008).............................. 23

*Plumbers Union Local No. 12 Pension Fund v. Ambassador's Group*, 717 F.
    Supp. 2d 1170 (E.D. Wash. 2010) ................................................................ 19

*Roberts v. Heim*, 670 F. Supp. 1466 (N.D. Cal. 1987), *aff'd in part and rev'd
    in part sub nom. Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F2d 646
    (9th Cir. 1988) ............................................................................................. 13, 14

*SEC v. Advance Growth Capital Growth Corp.*, 470 F.2d 40 (7th Cir. 1972) ............... 20

*SEC v. Baxter*, No. C-05-03843 RMW, 2007 WL 2013958 (N.D. Cal. Jul. 11,
    2007) ............................................................................................................. 9, 10

*SEC v. Berry*, 580 F. Supp. 2d 911 (N.D. Cal. 2008) .............................................. 13

*SEC v. Das*, No. 8:10CV102, 2010 WL 4615336 (D. Neb. Nov. 4, 2010)...................... 5

*SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996) ............................................................ 20, 22

*SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 U.S. Dist. LEXIS 70198,
    2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ................................................ 5, 7

*SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2010 WL 5776401 (D. Ariz.
    Jan. 28, 2010) ("*Fraser II*")......................................................................... 14, 15

*SEC v. ICN Pharmaceuticals, Inc.*, 84 F. Supp. 2d 1097 (C.D. Cal. 2000)...................... 9

*SEC v. Johnson*, 565 F. Supp. 2d 82 (D.D.C. 2008)................................................ 20

*SEC v. Levin*, 232 F.R.D. 619 (C.D. Cal. 2005) ...................................................... 7

v

*SEC v. Mercury Interactive, LLC*, No. C 07-2811 JF (RS), 2009 WL 2984769 (N.D. Cal. Sep. 15, 2009) .................................................................................... 20

*SEC v. Mozilo*, No. CV 09-3994-JFW (MANx), 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) .............................................................................................................. 9

*SEC v. Phan*, 500 F.3d 895 (9th Cir. 2007) ............................................................ 20

*SEC v. SBM Inv. Certificates, Inc.,* No. DKC 2006-0866, 2007 WL 609888 (D. Md. Feb. 23, 2007) ................................................................................................. 20

*SEC v. Steadman*, 967 F.2d 636 (D.C. Cir. 1992) .................................................. 20

*SEC v. Trabulse*, 526 F. Supp. 2d 1001 (N.D. Cal. 2007) ...................................... 16

*SEC v. Yuen*, 221 F.R.D. 631 (C.D. Cal. 2004) ...................................................... 11

*In re Secure Computing Corp. Sec. Litig.*, 120 F. Supp. 2d 810 (N.D. Cal. 2000) .................................................................................................................... 9

*In re Seracare Life Sci., Inc.*, No. 05-CV-2335-H (CAB), 2007 U.S. Dist. LEXIS 19654, 2007 WL 935583 (S.D. Cal. Mar. 19, 2007) ................................ 15

*In re Silicon Storage Tech., Inc. Sec. Litig.*, No. C 05-0295 PJH, 2006 WL 648683 (C.D. Cal. Mar. 10, 2006) ........................................................................ 9

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp.2d 527 (S.D. Ohio 2000) .................................................................................................................... 19

*In re Software Toolworks Inc.*, 50 F.3d 615 (9th Cir. 1994)................................... 20

*Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004) .................................................................................................................... 13

*In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086 (N.D. Cal. 1994)...................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ........................................................................................ 17

*United States ex.rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004)................................................................................................. 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...................... 7, 8

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006) ........... 7

*In the Matter of Robert Ward*, Admin. Proc. No. 3-13283, Release Nos. 34-58882, IC-38477, 2008 WL 4754029 (Oct. 30, 2008)............................................. 23

*Warsha v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996)............................................. 16

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007).................................. 12

*Wool v. Tandem Computers Inc.*, 818 F.2d 1433 (9th Cir.1987)........................... 13

*Zaluski v. United American Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008) .................. 8

vi

**STATUTES**

Fed.R.Civ.P. 9 ................................................................................................ 20

Fed.R.Civ.P. 9(b) ........................................................................................ 7, 8

Securities Act of 1933

Section 17(a)(2) [15 U.S.C. § 77q(a)(2)] ...................................................... 20

Section 17(a)(3) [15 U.S.C. § 77q(a)(3)] ...................................................... 20

Securities Exchange Act of 1934

Section 21(d)(5) [15 U.S.C. § 78u(d)(5)] ...................................................... 24

Section 21D [15 U.S.C. § 78u-4] .................................................................. 9

Section 21D(b)(2) [15 U.S.C. § 78u-4(b)(2)] ............................................... 9

Investment Advisers Act of 1940

    Section 206(2) [15 U.S.C. § 80b-6(1)]................................................................ 20

    Section 206(4) [15 U.S.C. § 80b-6(4)]................................................................ 20

    Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8] ..................................................... 6, 22

Investment Company Act of 1940

    Section 9(b)(3) [15 U.S.C. § 80a-9(b)(3)] .......................................................... 23

    Section 9(d) [15 U.S.C. §§ 80a-9(d)] ................................................................. 23

    Section 9(d)(2) [15 U.S.C. § 80a-9(d)(2)] .......................................................... 24

    Section 9(e) [15 U.S.C. §§ 80a-9(e)] ................................................................. 23

    Section 13(a) [15 U.S.C. § 80a-13(a)] ........................................................ 16, 21

    Section 24 [15 U.S.C. § 80a-24] .......................................................................... 6

    Section 34(b) [15 U.S.C. §80a-33(b)].................................................................. 20

    Section 42(e)(2) [15 U.S.C. § 80a-41] ................................................................ 24

    Section 44 [15 U.S.C. § 80a-43] ......................................................................... 24

    Section 48(b) [15 U.S.C. § 80a-47(b)]................................................................ 23

    Rule 24b-3 [17 C.F.R. § 270.24b-3] ..................................................................... 6

Dodd-Frank Wall Street Reform and Consumer Protection Act [P.L. 111-203, 2010
HR 4173 (July 2010)] ................................................................................................. 22

    Section 929M ..................................................................................................... 23

Plaintiff, the United States Securities and Exchange Commission ("SEC") responds as follows to the Motion to Dismiss and Memorandum of Points and Authorities in Support thereof ("Mem.") filed by Defendant Kimon P. Daifotis ("Daifotis").

## **INTRODUCTION**

### A.    **Background Facts**

During the relevant time period, Daifotis was the lead portfolio manager of the Schwab YieldPlus Fund ("YieldPlus"), and was a Senior Vice-President and Chief Investment Officer – Fixed Income of the Schwab entity that was the primary investment adviser to YieldPlus.  The Complaint ("Compl.") details a series of misleading statements and other fraudulent acts by Daifotis related to YieldPlus, including an effort to portray YieldPlus as a "cash-alternative" or "cash-equivalent" investment, without fully or properly disclosing to investors how YieldPlus was fundamentally different from and significantly riskier than cash-like investments.  Compl. ¶¶ 62-73, 74-102.  Further, in a wrongful effort to boost YieldPlus's performance, Daifotis directed investments that caused YieldPlus to violate its own published policy against concentrating too much of its holdings in a single industry, and then caused the submission of false documents to the SEC and to the public, that masked what had occurred. *Id.* ¶¶ 108-125.

When YieldPlus began to decline in value in 2007, Daifotis made further misleading statements about YieldPlus in order to dissuade investors from redeeming their investments. *Id.* ¶¶ 127-160.  YieldPlus's value dropped 28 percent in an eight-month period in 2007 and 2008, and its assets dropped from $13.5 billion to $1.8 billion.  As of the time of the filing of the Complaint, YieldPlus's value had declined by 50%, and its assets were below $200 million.  YieldPlus investors lost hundreds of millions of dollars. *Id.* ¶¶ 15-16.

**B.**     <u>The SEC's Claims</u>

As alleged in the Compliant, Daifotis violated, or aided and abetted violations of, the Securities Exchange Act of 1934 ("Exchange Act"), the Securities Act of 1933 ("Securities Act"), the Investment Company Act of 1940 ("ICA"), and the Investment Advisers Act of 1940 ("Advisers Act").

Specifically, the Complaint alleges that Daifotis (i) violated the anti-fraud provisions Section10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5](the First Claim); (ii) aided and abetted violations of those provisions (the Second Claim); (iii) violated the anti-fraud provisions of Section 17(a) of the Securities Act (Third Claim); (iv) aided and abetted violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 [17 CFR 275.206(4)-8] (Fifth Claim); (v) violated Section 34(b) of the ICA [15 U.S.C. §80a-33(b)] (Sixth Claim); (vi) aided and abetted violations of that provision of the ICA (Seventh Claim); and (vii) aided and abetted violations of Section 13(a) of the ICA [15 U.S.C. § 80a-13(a)] (Eighth Claim).

**C.**     <u>Daifotis's Motion to Dismiss</u>

Daifotis has moved to dismiss the SEC's Complaint, arguing (a) that the Complaint engages in "shotgun" pleading," (b) that the Complaint fails to plead facts giving rise to an inference that Daifotis "made" the false statements at issue, (c) that the Complaint is based on a regulation not in effect at the relevant times, and (d) that the SEC's aiding-and-abetting claims impermissibly apply the law retroactively.  Daifotis's arguments are all without merit.

First, the Complaint is clear about which factual allegations relate to which claims for relief against which Defendant.  Despite Daifotis's use of the catch-phrase "shotgun" pleading, the Complaint complies with the rules of pleading and Daifotis cites no case that dismissed any comparable complaint.

1   Second, the Complaint's allegations are sufficiently specific to establish liability for

2   making misrepresentations and omissions.  Daifotis faces primary liability because he

3   personally made particular false statements identified in the Complaint, he is responsible

4   under the "group pleading" doctrine for other misrepresentations and omissions, and he

5   substantially participated in Schwab's misrepresentations or omissions, for which he is also

6   responsible. The Complaint also contains ample detail to establish Daifotis's liability for

7   aiding and abetting primary violations of the securities laws.

8

9   Third, although Daifotis is correct that Claim Five of the Complaint is based upon

10  Rule 206(4)-8 under the Advisors Act, which did not take effect until September 10, 2007, the

11  Complaint alleges a number of violations by Defendants after that date.  There is no doubt

12  that Rule 206(4)-8 can be applied to that post-enactment conduct.

13  Finally, Daifotis challenges the Seventh and Eighth Claims in the Complaint, which

14  assert that Defendants aided-and-abetted violations of the ICA.  Daifotis points out that the

15  Dodd-Frank Act, enacted in July 2010, added provisions for such aiding and abetting claims

16  and, Daifotis asserts, the SEC's Seventh and Eights claims are impermissibly being applied

17  retroactively.  The SEC has long had the ability to bring such aiding-and-abetting claims in

18  administrative proceedings, and Daifotis was subject to aiding-and-abetting liability at the

19  time of his conduct.  The Dodd-Frank Act did not create any new liability; it merely added an

20  additional forum (the district court) in which the SEC could bring an action for such

21  violations.  The mere addition of another forum for such claims does not violate any

22  principles of retroactive application of the law.

# ARGUMENT

## I.    STANDARD OF REVIEW

A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) so long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 129 U.S. at 1949. In ruling on a motion to dismiss, the court "must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party...." *Bernhardt v. County of Los Angeles,* 279 F.3d 862, 867 (9th Cir. 2002) (internal quotation marks omitted). The Complaint meets these standards.[1]

## II.    THE COMPLAINT'S FORMAT IS PROPER

Daifotis asserts that the Complaint reflects so-called "shotgun" or "puzzle" pleading. Such a catch-phrase is of little help in analyzing whether a particular complaint meets the applicable pleading requirements. In *Mellette v. Branch,* No. 07-cv-02065-WDM-KMT, 2008 WL 4001044, at *9 (D. Colo. Aug. 26, 2008), the court rejected the defense argument that the complaint was a shotgun or puzzle pleading. The court noted that the classic form of a "shotgun" pleading "begins with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Id.* at 8. (citation omitted). But the complaint in *Mellette* did not suffer from that problem, because "most, if not all of the general and specific

---

[1] Even if the Court were to find that the Complaint is defective, the appropriate remedy would be to permit the SEC to file an amended complaint. *See Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts") (internal quotation and citations omitted).

1   allegations do support the various claims for relief to one degree or another" and repeating

2   general and specific allegations in succeeding claims did not make the complaint defective.

3   *Id.* at 9.  Similarly in the present case, the facts alleged are material to the claims for relief and

4   the incorporation of the factual allegations into each claim does not make the Complaint

5   faulty.

6

7          Nor is the Complaint a "puzzle" pleading.  The Complaint is sufficiently

8   straightforward so that the defendants can answer its allegations.  *See Facciola v. Greenberg*

9   *Traurig, LLP*, No. CV 10-1025-PHX-MHM, 2011 WL 1253656, at *5 (D. Ariz. Mar. 31,

10  2011) (holding that, even though the complaint "does bear some elements of puzzle or

11  shotgun pleading, the Court does not find the complaint so unruly that it is difficult for [the

12  two defendants] to determine which allegations support which claims or to properly formulate

13  an answer to the complaint"); *SEC v. Das,* No. 8:10CV102, 2010 WL 4615336, at *6 (D. Neb.

14  Nov. 4, 2010) (rejecting attack on SEC complaint as being a "shotgun pleading," because the

15  complaint asserted claims against only two defendants and it was not difficult to discern

16  "which . . . act(s) engaged in by which . . . defendant(s) applies to which (if any) claims")

17  (quoting and distinguishing *SEC v. Fraser,* No. CV -09-443, 2009 WL 2450508, at *13 (D.

18  Ariz. Aug. 11, 2009) ("Fraser I")).

19

20         The Complaint here easily satisfies the applicable pleading standards.  The Complaint

21  makes clear which claims are asserted against which defendant.  Each claim for relief

22  specifies in its title which defendants are charged.  In those instances in which a particular

23  claim for relief in the Complaint is based upon fewer than all of the categories of factual

24  allegations, the Complaint specifies that.  The Eighth Claim (Compl. p. 54, ¶ 204) specifies

25  that it is based upon "Daifotis's conduct as described in Section B, above."  The Fourth Claim

26  (Compl. p. 51, ¶ 185) specifically states that it is based on "Merk's conduct as specified in

27

28

1   Section D, above."  Paragraph 172 of the Complaint makes clear that the factual allegations in

2   Section D apply only to the claim against Merk with regard to Sections 206(1) and (2) of the

3   Advisers Act (i.e., the Fourth Claim).  Thus, the Fourth and Eighth claims make perfectly

4   clear that they are based on the factual allegations in the specified sections of the Complaint.[2]

5        The remaining six claims are grounded on defendants' misrepresentations, omissions

6   and fraudulent schemes or devices described throughout the Complaint.  Thus (subject to the

7   exceptions noted below), wherever the Complaint alleges a misrepresentation, omission or

8   fraudulent act, it is the basis for the First, Second, Third, Fifth, Sixth and Seventh Claims.

9        The Fifth, Sixth and Seventh Claims are limited as follows.  The Fifth Claim applies

10  to violations on or after September 10, 2007 (the effective date of the relevant regulation,

11  Rule 206(4)-8 [17 CFR § 275.206(4)-8)]).  The Complaint specifically limits the Sixth and

12  Seventh Claims to misrepresentations or omissions in "registration statements, applications,

13  reports, accounts, records, or other documents filed or transmitted pursuant to the ICA

14  (Compl. ¶¶ 194 & 197).  Thus, wherever the Complaint specifies misrepresentations or

15  omissions in documents filed with the SEC, or advertisements or other sales literature to

16  prospective investors (which items are deemed filed[3]), those would be within the scope of the

17  Sixth and Seventh Claims.  Because there is no difficulty in determining which factual

18  allegations form the basis for the claims in the SEC's Complaint, the present case is

19  distinguishable from all of the cases cited by Daifotis (Mem. at 4-5), in which it was simply

---

[2]  Section B of the Complaint is a clearly defined section entitled, "Unlawful Deviation From Concentration Policy," and consists of paragraphs 103 through 126.  Section D is entitled "Redemptions by Schwab-Related Funds" and consists of paragraphs 161 through 172.

[3]  Under Section 24 of the ICA and Rule 24b-3 thereunder [17 C.F.R. § 270.24b-3] sales literature for distribution to prospective investors that is filed with the Financial Industry Regulatory Authority (FINRA) is treated as filed with the SEC.

1   too difficult to ascertain which factual allegations against which defendants formed the basis

2   for which claims.[4]

3        In short, the Complaint is sufficiently straightforward that Defendants should be able

4   to answer its allegations.

### III.   THE COMPLAINT SUFFICIENTLY ALLEGES PRIMARY LIABILITY AND AIDING-AND-ABETTING WITH PARTICULARITY

7        Daifotis also challenges the Complaint as failing to plead fraud with the particularity

8   required by Fed.R.Civ.P. 9(b).  Mem. at 6.  Under Rule 9(b), a complaint must aver the time,

9   place and nature of the fraud.  *Vess v. Ciba-Geigy Corp USA,* 317 F.3d 1097, 1106 (9th Cir.

10  2003).  But "[l]ength and grueling exaction is not the purpose of Rule 9(b)." *United States*

11  *ex.rel. Yannacopolous v. General Dynamics,* 315 F. Supp. 2d 939, 946 (N.D. Ill. 2004).

12  Moreover, even under Rule 9(b), the "SEC is not required to plead detailed evidence

13  concerning each and every fraudulent act alleged."  *SEC v. Levin,* 232 F.R.D. 619, 624 (C.D.

14  Cal. 2005) (*citing Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)).  The Complaint's

15  allegations are sufficiently detailed.

### A.   The Complaint Sufficiently Alleges Direct Statements By Daifotis

19       In a telling admission, Daifotis's states that he "did not make *almost* all of the

20  misstatements" alleged in the Complaint.  Mem. at 13 (emphasis added).   But "almost" is not

21  good enough to prevail on a motion to dismiss.  Daifotis concedes that, at least by his count,

22  the Complaint alleges that he personally made five alleged misstatements.  Mem. at 6.  A

23  defendant's making of even a single misrepresentation or misleading omission of material fact

---

[4]    *See, e.g., SEC v. Fraser,* Nov. CV-09-00443-PHX-GMS, 2009 U.S. Dist. LEXIS 70198, at *44-45, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) (case involved "multiple defendants . . . in each claim, [a] lack of clarity about which actions apply to each claim, and [a] general vagueness of the factual allegations"); *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273 (11th Cir. 2006) (court was not able to "connect[] Plaintiff's causes of action with the allegata underlying those causes").

1   is a sufficient basis for liability.  *See, e.g., Zaluski v. United American Healthcare Corp.,* 527

2   F.3d 564, 573 (6th Cir. 2008) (noting case law holding that "a single statement" that was false

3   was actionable).

4           As Daifotis thus concedes, the Complaint alleges a number of instances in which he

5   personally made misrepresentations or omissions of material fact.  For example, in August

6   2007, when YieldPlus was suffering massive, unprecedented redemptions, Daifotis held two

7   conference calls in which he falsely stated that "we've got very, very, very slight negative

8   flows" and that "outflows have been minimal."  Compl. ¶¶ 140-141.  Daifotis also made

9   misrepresentations in written materials in which he was directly quoted or in which statements

10  were directly attributed to him by name or by his title.[5]  *See In re New Century*, 588 F. Supp.

11  2d 1206, 1224 (C.D. Cal. 2008) (officers can be liable for "specific statements attributed to

12  them").  Those allegations include all the requisite specificity, such as the "who, what, when,

13  where, and how of the misconduct charged."  *Vess,* 317 F.3d at 1106.

14          In short, the allegations cited above meet Rule 9(b)'s requirements for pleading with

15  particularity.  That should spell the end for Daifotis's challenge to the specificity of the

16  Complaint, without even needing to consider the following sections showing additional bases

17  for Daifotis to be held responsible for the misrepresentations and omissions.

18  **B.      Daifotis Is Liable as a Primary Violator Under the**
            **Group Published or Group Pleading Doctrine**

19          **1.      The Group Pleading Doctrine Is Particularly Applicable**
                    **in SEC Enforcement Cases Such as the Present Case**

---

[5] *See* Compl. ¶ 74(f) (September 2005 brochure directly quoting Daifotis), ¶ 74(b) (quoting from Spring 2006 brochure attributing statement to Daifotis); ¶ 159 (quoting from November 2007 document entitled "Manager's Discussion," which identified Daifotis by his title, "Manager").

The Complaint's allegations also establish that Daifotis is liable for Schwab's false statements and omissions under the "group published" or "group pleading" doctrine. That doctrine holds that a complaint may "rely 'upon a presumption that . . . allegedly false and misleading 'group published information' complained of is the collective action of officers and directors.'" *In re Secure Computing Corp. Sec. Litig.,* 120 F. Supp. 2d 810, 821 (N.D. Cal. 2000) (quoting *In re GlenFed, Inc. Sec. Litig.,* 60 F.3d 591, 593 (9th Cir. 1995)). "Group published information" includes "prospectuses, registration statements, annual reports, press releases, or other" group-published materials. *In re Silicon Storage Tech., Inc. Sec. Litig.,* No. C 05-0295 PJH, 2006 WL 648683, at *21 (C.D. Cal. Mar. 10, 2006); *Secure Computing Corp.,* 120 F. Supp. 2d at 821.

Other cases in this circuit applying the group-published doctrine, include *SEC v. Mozilo,* No. CV 09-3994-JFW (MANx), 2009 WL 3807124, at *13 (C.D. Cal. Nov. 3, 2009) (applying group pleading doctrine where defendant was president, COO and involved in day-to-day operations); *SEC v. Baxter,* No. C-05-03843 RMW, 2007 WL 2013958, at *6 (N.D. Cal. Jul. 11, 2007); and *In re Omnivision Tech., Inc.,* No. C-04-2297 SC, 2005 WL 1867717, at * 5 (N.D. Cal. Jul. 29, 2005).[6]

As stated in *SEC v. Baxter,* 2007 WL 2013958, at *6:

> [T]he Ninth Circuit has recognized that it is difficult to attribute
> particular fraudulent conduct to each defendant individually in

---

[6] Some courts have questioned whether, in *private*-plaintiff cases, the group-published information doctrine survived passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), [*see, e.g.,* 15 U.S.C. § 78u-4]. *See, e.g., In re Cadence Design Systems, Inc. Sec. Litig.,* 692 F. Supp. 2d 1181, 1193 (N.D. Cal. 2010). But, the PSLRA applies only to private-plaintiff cases, and has no impact on SEC enforcement cases. *See* 15 U.S.C. § 78u-4(b)(2) (heightened pleading applies to "private action[s]" only); *SEC v. ICN Pharmaceuticals, Inc.,* 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000) (pleading requirements of PSLRA "only apply to private securities fraud actions; they do not apply to a case, such as this, brought by the SEC"). And, as noted above, many courts within this district still apply the group pleading doctrine even in private plaintiff cases.

1
2
3
4

cases where corporate fraud is alleged.  *Moore v. Kayport Package Exp, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).  Therefore, '[t]o overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations.'  *Id.*

5
6
7
8
9
10
11
12

The SEC's Complaint does precisely what the *Baxter* and *Moore* cases indicate, for the Complaint provides the details of numerous group-published misrepresentations along with descriptions of Daifotis's role.  These group-published materials include, for example, specified items on the Schwab website (Compl. ¶¶ 74(a), 74(d), 74(i), 89, 94), in brochures (¶¶ 74(c), 74(h)), in advertisements (¶¶ 74(f), 74(g)), in publicly disseminated emails (¶ 74(e)), in Schwab's publicly distributed magazine (¶ 93), and in documents filed and deemed filed with the SEC (¶¶ 92, 123-125).

13
14
15
16
17
18
19
20
21

The Complaint also sets forth facts regarding Daifotis's role in the misrepresentations and omissions.  First, the Complaint details his active and deep involvement in YieldPlus. The Complaint alleges that Daifotis was an officer, the lead portfolio manager for YieldPlus and other funds involved in this case (¶ 20), was involved in the day-to-day operations of YieldPlus (¶ 62), was relied upon by the marketing, compliance and other personnel within Schwab to substantially participate in ensuring that marketing and sales materials were accurate and complete (¶ 63), regularly received, reviewed, and contributed to sales and marketing materials regarding YieldPlus, and made suggestions and edits (¶ 64).

22
23
24
25
26
27
28

Second, the Complaint details Daifotis's involvement in specific statements at issue. In addition to the misleading statements that Daifotis personally made (see above), the Complaint details Daifotis's involvement in other specific misrepresentations and omissions. *See* Compl. ¶¶ 66-67 (describing Daifotis involvement in August 1, 2006 press release); 74(i) (involvement in selecting benchmark index); 83, 87, 98 (role in misstatements and omissions regarding "maturity" and "duration"); 108, 110, 115 (describing role in misstatements about

concentration), 125 (role in November 2006 Form 485B), 140 (role in August 2007 questions-and-answers document ("Q&As")).

Although a few courts have refused to apply the group pleading doctrine in specific SEC cases, they are factually distinguishable.  For example, in *SEC v. Yuen,* 221 F.R.D. 631, 636 (C.D. Cal. 2004), the court refused to apply the group-pleading doctrine because the court found that the SEC had "not plead any specifics as to the individual Defendants' alleged participation."  221 F.R.D. at 636.  But as discussed throughout this section II, the Complaint in this case includes ample detail about Daifotis's involvement in the misrepresentations and omissions.

Daifotis suggests that, because the SEC conducted an investigation before filing suit, the SEC ought to have alleged every fact that might be presented at trial.  *See* Mem. at 5.  Such a suggestion fundamentally miscomprehends the nature and purpose of civil complaints and SEC investigations.  SEC investigations are intended to find out whether the securities laws were violated and, if so, by whom.  SEC investigations are not intended to uncover and document every piece of evidence that could support each charge against a defendant.  That task is left to discovery in litigation.

### 2.    Daifotis Relies Upon Inapposite Case Law to Challenge His Primary Liability

Daifotis's brief (in Section II.A.4., at pages 13-16) relies upon a compendium of case law that is either inapposite or contrary to the law of the Ninth Circuit.  For example, in challenging whether a publication can be attributed to an officer whose picture appears in the publication, Daifotis relies on one case, *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.,* 713 F. Supp. 2d  378, 390-91 (D. Del. 2010).  But Daifotis fails to give the full holding of the case, which reveals its inapplicability.  *City of Roseville* stated:

1
2
3
4

> To attribute to [the officer-defendant] a statement issued by [the company], without some facts identifying [the officer] as its author or as having personally signed-off on it, amounts to non-specific *group pleading of the kind that has been rejected by our Court of Appeals as inconsistent with the particularity requirements of the PSLRA. See Winer Family Trust v. Queen,* 503 F.3d 319, 337 (3d Cir. 2007).

5

*Id.* at 391 (emphasis added).

6

7       Thus, *City of Roseville* was based upon Third Circuit precedent that, under the

8   PSLRA, rejected the group pleading doctrine.  But, as discussed above, Ninth Circuit law is to

9   the contrary, because it recognizes the group pleading doctrine even in private-plaintiff cases

10  under the PSLRA, and especially in SEC enforcement cases, which are not subject to the

11  PSLRA.

12      Daifotis argues (Mem. at 14) that the law is "clear" that providing information to

13  another party who then makes a misstatement is insufficient to subject the provider to primary

14  securities fraud liability.  Daifotis has it wrong; the weight of authority holds that primary

15  liability *can* attach for supplying false information that others disseminate to the public.  *See*

16

17  section II.C.2., below.

18      As support for his statement, Daifotis relies on *In re Int'l Rectifier Corp. Sec. Litig.,*

19  Case No. CV-07-2544-JFW (VBKx), 2008 U.S. Dist. LEXIS 44872, 2008 WL 4555794 (C.D.

20  Cal. May 23, 2008).  *Int'l Rectifier* refused to apply the group-pleading doctrine because, the

21  court claimed, the doctrine "did not survive the PSLRA."  But that case is inapposite for at

22  least two reasons.  First, the PSLRA has no bearing at all on SEC enforcement cases.  Second,

23  the *Int'l Rectifier* court was simply wrong; a number of courts in this circuit have applied the

24  group-pleading doctrine notwithstanding the PSLRA.[7]  *See* cases cited above.

25

26

27      ⁷ Also, in rejecting the principle that primary liability can flow from supplying false
   information that is used by others within the organization, the *Int'l Rectifier* court relied on
28  nothing but a Fifth Circuit case that itself is directly contrary to Ninth Circuit law.  *Int'l*

Daifotis stretches, without success, to find other cases supporting his argument that he cannot face primary liability for corporate statements that do not bear his name. For example, Daifotis cites *SEC v. Berry,* 580 F. Supp. 2d 911, (N.D. Cal. 2008), but that case merely held that, aside from the defendant's signing certain documents for which she *could* be liable, the SEC had not pled enough facts to show defendant's substantial participation in the fraud. 580 F. Supp. 2d at 922-23. The case did not consider the group pleading doctrine, so it furnishes no guidance on the applicability of that doctrine.

In *In re Syntex Corp. Sec. Litig.,* 855 F. Supp. 1086, 1100 (N.D. Cal. 1994), the court acknowledged the validity of the group pleading doctrine, but simply held that it did not apply to a defendant who was merely an outside director (not an officer) who had no "operational involvement" in the company. *Id.* at 1100. That is inapposite to this case, in which Daifotis was an officer with deep operational involvement. *See, e.g.,* Compl. ¶¶ 20, 62-73, 98-10, 109-110, 117, 125.

*Roberts v. Heim*, 670 F. Supp. 1466 (N.D. Cal. 1987), *aff'd in part and rev'd in part sub nom. Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646 (9th Cir. 1988), is completely inapposite, for it addressed the issue of whether the defendant was a "seller" under Section 12 of the Securities Act, which involved considerations such as whether the defendant was "a substantial factor in the direct sale" of the securities. 670 F. Supp. at 1478. That simply is not the relevant issue in this case. But in any event, this Court already determined in the related class-action case that the facts are sufficient to create at least a jury question

---

*Rectifier,* 2008 WL 4555794, at *11-12, relied on *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.,* 365 F.3d 353 (5th Cir. 2004), in which the Fifth Circuit stated, "this court has never adopted the 'group pleading' doctrine, even before the PSLRA." But the Fifth Circuit in *Southland* even noted that the law in the Ninth Circuit is quite different, recognizing that "the Ninth Circuit fashioned the 'group pleading' doctrine." 365 F.3d at 364 (citing *Wool v. Tandem Computers Inc.,* 818 F.2d 1433 (9th Cir.1987)). Thus, *Southland* is not valid law in this circuit, and *Int'l Rectifier* thus had no legitimate basis for its ruling.

over whether Daifotis was a "seller." *See In re Charles Schwab Sec. Litig.,* No. C 08-01510 WHA,  2010 WL 1445445, at *7 (N.D. Cal. Apr. 8, 2010).

**C.      Daifotis Is Liable for Statements That He Substantially
            <u>Participated In Preparing, Creating, Drafting, Editing, or Making</u>**

In addition to the direct false statements made by Daifotis, the Complaint also alleges that he substantially participated in other false statements, as detailed below.

> In the Ninth Circuit, a corporate officer may be held primarily liable for violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act if the officer "substantially participated" in the ***preparation, "creation, drafting, editing, or making"*** of materially false statements, even if that officer does not actually utter or otherwise sign the statement.

*SEC v. Fraser,* No. CV-09-00443-PHX-GMS, 2010 WL 5776401, at *4 (D. Ariz. Jan. 28, 2010) ("*Fraser II*") (emphasis added) (quoting *In re Homestore.com Sec. Litig.*, 347 F. Supp 2d 790, 800 (C.D. Cal. 2004)); *see also In re Cadence Design Sys., Inc. Sec. Litig.,* 692 F. Supp. 2d 1181, 1192 n.8 (N.D. Cal. 2010) (quoting *Fraser II*); *Allstate Life Ins. Co. v. Robt. W. Baird & Co., Inc.,* No. CV-09-8162-PCT-GMS and CV-09-8174-PCT-GMS, 2010 WL 4581242, at *16 (D. Ariz. Nov. 4, 2010).

Daifotis argues that, if he did not make or sign a misstatement, he can only be liable for it if he substantially participated in "making" the misstatement.  Mem. at 7.  But this is not the law.  A defendant can be liable not only for substantially participating in the "making" of a false statement, but also in its "preparation, creation, drafting or editing."  *Fraser II,* 2010 WL 5776401, at *4.[8]

---

[8]   Daifotis (Mem. at 8) cites cases in which complaints, unlike the Complaint here, lacked sufficient details about the nature of a defendant's participation in the offending statements.  *See In re Seracare Life Sci., Inc.,* No. 05-cv-2335-H (CAB), 2007 U.S. Dist. LEXIS 19654, at *32, 2007 WL 935583, at *10 (S.D. Cal. Mar. 19, 2007) (generalized allegations that defendant "participated in editing and approving" statement were insufficient); *Communications Workers of America Plan v. CSK Auto Corp.,* No. 2:06-cv-01580-DGC, 2007 U.S. Dist. LEXIS 22782, at *11-12, 2007 WL 951968 (D. Ariz. Mar. 28, 2007)

### 1. Daifotis Substantially Participated In Misrepresentations and Omissions Regarding the Nature, Risks, and Maturity Characteristics of the YieldPlus Fund

As discussed in section II.A., above, some of Schwab's misleading ads or brochures directly quoted Daifotis or attributed statements directly to him.  Understandably, Daifotis's Memorandum says little if anything about those, and he instead draws attention to statements that do not on their face directly name or refer to him.  But as discussed in section III.B., above, the Complaint's allegations in that regard are sufficient under the group-pleading doctrine.  Accordingly, the Complaint need not specifically tie Daifotis to every group-published advertisement or brochure.

### 2. Daifotis Substantially Participated In Misrepresentations and Omissions Regarding the Concentration Policy

A defendant is liable for substantially participating in a false statement if he "created or caused to be created" false information that he knew would be included in materials disseminated by others.  *Fraser II,* 2010 WL 5776401, at *5; *Cooper v. Pickett,* 137 F.3d at 624 (primary liability for defendant who made misleading statements to analysts with the intent that they communicate the statements to the market).  Thus, "[a defendant] cannot escape liability simply because it carried out its alleged fraud through the public statements of third parties."  *SEC v. Trabulse,* 526 F. Supp. 2d 1001, 1007 (N.D. Cal. 2007) (quoting *Warsha v. Xoma Corp.,* 74 F.3d 955, 959-60 (9th Cir. 1996)); *see also Cooper v. Pickett,* 137 F.3d 616, 624 (9th Cir. 1998) *Fraser II,* 2010 WL 5776401, at *5 (primary liability exists for a defendant who "created, or caused to be created, the false information included in [a company's] financial statements").

---

(generalized allegations insufficient; plaintiff "did not explain [defendant's] involvement or participation in any of the phone calls, other than claiming he was present").

The Complaint alleges that Daifotis created or caused to be created false information about YieldPlus's deviation from its concentration policy, which was used to create false filings with the SEC.  As this Court determined in the related class action, pursuant to Section 13(a) of the ICA, YieldPlus was obligated to follow its concentration policy that provided that no more than 25 percent of its assets would be invested in non-agency mortgage backed securities ("MBS"), unless and until it obtained shareholder approval for such a change.  *In re Charles Schwab Sec. Litig.,* 2010 WL 1261705, at *5-6 (Mar. 30, 2010).  By at least March 2006, Daifotis directed YieldPlus's investments that caused it to deviate from that concentration policy by investing more than 25% of its assets in non-agency mortgage-backed securities.  Compl. ¶¶ 109-110.

The Complaint (¶ 109) alleges that not only did Daifotis direct the investments that caused YieldPlus to hold more than the allowable amount of non-agency MBS, he also manipulated the way that certain of those investments were categorized to make it appear that the fund had not over-concentrated.  Compl. ¶ 110.  For example, Daifotis (along with persons he supervised) excluded entire categories of securities (i.e., commercial and sub-prime mortgage-backed securities) from the "non-agency MBS" category, thus masking the overconcentration in that area.  Compl. ¶ 110.

As a result of the false information that Daifotis created or supplied regarding the categorization of YieldPlus's over-concentrated investments, YieldPlus submitted false reports.  From at least late 2005 through mid-2008, YieldPlus filed a series of annual and semi-annual reports with the SEC that were false and misleading in indicating that YieldPlus's non-agency MBS holdings did not exceed 25 percent.  Compl. ¶ 113.  This resulted from the efforts described above to miscategorize YieldPlus's holdings.  As alleged in paragraph 114,

1   Daifotis knew or was reckless in not knowing that his actions "were causing such false reports

2   to be filed. . . ."

3        Other allegations in the Complaint further establish Daifotis's substantial participation

4   in the false statements regarding the concentration policy.  Paragraph 125 explains that

5   Daifotis was specifically asked to review and comment on language in a November 2006

6   filing regarding the concentration policy, and that he failed to make the changes needed to

7   make the statements non-misleading.  This is ample detail to reflect his "substantial

8   participation" in the preparing, drafting, editing or making of those false statements.  As noted

9   in *In re Homestore.com Inc. Sec. Litig.,* 347 F. Supp. 2d 790, 803 (C.D. Cal. 2004), "what

10  defines editing versus review is not a bright line."  The Complaint's allegations are sufficient

11  at this stage of the case.[9]

12

13              **3.      Daifotis Substantially Participated in Misrepresentations**
                      **and Omissions During YieldPlus's Decline**

14

15       In addition to the false statements directly made by Daifotis (*see* section II.A., above)

16  in August 2007 to hide the fact that YieldPlus was suffering massive redemptions, Daifotis

17

18  _____

19       [9] Daifotis (Mem. at 12) observes that paragraph 108 of the Complaint refers to a
    particular document that he claims that he was not involved in creating.  Daifotis cannot

20  obtain dismissal by cherry-picking a few allegations to attack.  As stated in *In re Aftermarket
    Filters Antitrust Litigation*, 2009 WL 3754041 at *3 (N.D. Ill. Nov. 5, 2009):

21
            Like all complaints, the court must read the instant complaint in its
22          entirety, and must not "scrutinize each allegation in isolation but
            [must] assess all of the allegations holistically."  *See Tellabs, Inc. v.*
23          *Makor Issues & Rights, Ltd.,* 551 U.S. 308, 325, 127 S.Ct. 2499, 168
            L.Ed.2d 179 (2007). In other words, as plaintiffs argue, ***defendants***
24          ***may not "cherry pick" specific allegations in the complaint that***
            ***might be insufficient standing alone."*** (Emphasis added).
25

26       Daifotis (Mem. at 12) also argues about how to interpret the document referred to in
    paragraph 108.  But that is not proper in a motion to dismiss, in which the Court "must
27  'accept all factual allegations of the complaint as true and draw all reasonable inferences in
    favor of the nonmoving party....'"  *Bernhardt*, 279 F.3d at 867.
28

substantially participated in editing an August 2007 Q&A, removing information about redemptions, which he did because, in his words, "I don't want anyone to sense that we are having outflows." Compl. ¶ 140. This was substantial participation in the "editing" of the Q&A.

### 4. Daifotis Is Liable for Remaining Silent When He Knew That False Statements Were Being Made

The Complaint alleges a number of instances in which Daifotis reviewed documents that he knew or was reckless in not knowing contained false or misleading statements. For example, Daifotis reviewed a form later filed with the SEC that contained false and misleading information about compliance with the concentration policy. Compl. ¶ 125. Daifotis saw one or more drafts and the final language of an August 1, 2006 Schwab press release that was misleading in calling YieldPlus a "cash alternative" and stating that it was "subject to minimal price fluctuations," without disclosing the material facts regarding the substantially greater riskiness and price fluctuations associated with YieldPlus. Compl. ¶¶ 66-67. He also participated in discussions within Schwab about that press release. Compl. ¶ 66. He reviewed other documents that were sent to Schwab representatives that, as Daifotis knew or was reckless in not knowing, contained false information that the representatives would communicate to the public. *See, e.g.,* Compl. ¶¶ 153-155.

Daifotis also remained silent when he knew or was reckless in not knowing that Schwab entities were disseminating false and misleading information about the maturity of assets held by YieldPlus (Compl. ¶¶ 98-101), and misleading information about the risks and characteristics of YieldPlus (*Id.* ¶¶ 66-67). Again, he stood by idly, letting Schwab mislead the public.

Daifotis's failure to speak up and tell the truth under the circumstances alleged was itself a primary violation. "Corporate officers, however, may not stand idly by as investors

and analysts, upon whose recommendations other investors rely, are mislead (sic)." *Plumbers Union Local No. 12 Pension Fund v. Ambassador's Group,* 717 F. Supp. 2d 1170, 1180 (E.D. Wash. 2010) (officer remained silent while his colleagues on a conference call made misleading statements) (relying upon *SmarTalk Teleservices, Inc. Sec. Litig.,* 124 F. Supp. 2d 527, 543 (S.D. Ohio 2000)); *Barrie v. Intervoice-Brite, Inc.,* 409 F.3d 653, 656 (5th Cir. 2005); *Freudenberg v. E\*Trade Fin. Corp.,* 712 F. Supp. 2d 171, 194-196 (S.D.N.Y. 2010)). Although those cases involved conference calls, the same principles should apply to written materials.

### D.     The Complaint Alleges Aiding-and-Abetting With Sufficient Particularity

Daifotis also challenges the sufficiency of the Complaint's allegations of aiding-and-abetting liability in the Second, Fifth, Seventh and Eighth Claims.  The elements for aiding and abetting liability are (1) a primary violation, (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) substantial assistance by the defendant in the commission of the primary violation.  *SEC v. Fehn,* 97 F.3d 1276, 1288 (9th Cir. 1996).  The Complaint satisfies these elements.[10]

#### 1.     The Complaint Sufficiently Alleges Primary Violations

Daifotis argues that, to allege a primary violation by Schwab, the Complaint must allege that a particular person in Schwab held the requisite level of scienter.  Even if that were the correct legal principle, the Complaint does so, for Merk and Daifotis each had the requisite scienter.

---

[10]     Daifotis (Mem. at 16-17) only challenges the sufficiency of the allegations regarding the first and third elements, implicitly conceding that the second element (scienter) is adequately pled.  *See also* Fed.R.Civ.P. 9; *SEC v. Mercury Interactive, LLC,* No. C 07-2811 JF (RS), 2009 WL 2984769, at \*3 (N.D. Cal. Sep. 15, 2009) ("the SEC may allege scienter in conclusory fashion").

Primary violations require, at most, only recklessness.[11] *Gebhart v. SEC,* 595 F.3d 1034, 1040 (9th Cir. 2010) ("The plaintiffs may establish scienter by proving either actual knowledge or recklessness") (*citing In re Software Toolworks Inc.,* 50 F.3d 615, 626 (9th Cir.1994)). Scienter of the corporation may exist on the part of those who supply the false information that the corporation disseminates to the public, not just those who actually make the misrepresentations. *SEC v. Johnson,* 565 F. Supp. 2d 82, 91 (D.D.C. 2008) (corporate scienter includes the scienter of those "who furnish information" for the statement at issue). The Complaint alleges that Merk and Daifotis supplied much of the false information, and it alleges that they acted with the requisite level of scienter for a primary violation (at least recklessness). Thus, Merk's and Daifotis's knowledge provides the scienter necessary to establish a primary violation.

### 2. The Complaint Specifies How Daifotis Provided Substantial Assistance to the Primary Violations

Daifotis claims he cannot determine what the Complaint alleges he did to aid and abet the violation of Section 13(a) of the ICA. But the allegations actually are plenty clear. First, he directed investments that caused YieldPlus to deviate from the concentration policy, which was a

---

[11] Some of the claims in this case are based upon statutes or rules that do not require scienter. These include:

- Securities Act Sections 17(a)(2) and (3) [15 U.S.C. § 77q(a)] (Claim 3) (*see SEC v. Phan,* 500 F.3d 895, 908 (9th Cir. 2007) (negligence sufficient);

- Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)] (Claim 4) (*see SEC v. SBM Inv. Certificates, Inc.,* No. DKC 2006-0866, 2007 WL 609888, at *16 (D. Md. Feb. 23, 2007) (at least negligence must be shown);

- Section 206(4)of the Advisers Act and [[15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 (Claim 5)(*see SEC v. Steadman,* 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4));

- Section 34(b) of the Investment Company Act[15 U.S.C. §80a-33(b)](Claims 6 and 7) (*see SEC v. Advance Growth Capital Growth Corp.,* 470 F.2d 40, 52 (7th Cir. 1972) (violation of 34(b) need not be willful).

violation of Section 13(a).  Compl. ¶ 109.  Second, he improperly classified securities to hide the deviation from the concentration policy, thus further providing substantial assistance to the violation.  *Id.* ¶ 110.  Third, when he recommended to the YieldPlus trustees that they change the concentration policy, he hid the fact that he had caused YieldPlus to deviate already, and that fact was material to the consideration of Daifotis's recommendation to change the policy.  *Id.* ¶ 117.  For example, the trustees should have been enabled to consider whether Daifotis wanted the policy changed to help cover up his existing improper conduct.  These allegations amply describe Daifotis's providing substantial assistance to the violations of Section 13(a).

Daifotis fails in his challenge to aiding-and-abetting misrepresentations and omissions during YieldPlus's decline.  Mem. at 19.  The Complaint alleges that Daifotis personally made misrepresentations and omissions of material fact (Compl. ¶¶ 141, 142), that a misleading document was published under his title (*Id.* ¶ 159), and he edited Q&As to remove material facts about redemptions (*Id.* ¶ 140).  Daifotis's editing was "substantial assistance" to a primary violation.  *SEC v. Fehn,* 97 F.3d 1276, 1293 (9th Cir. 1996) ("The term 'substantial assistance' has been interpreted to include 'participation in the editing' of information for the purpose of marketing securities.'") (*quoting Molecular Technol. Corp. v. Valentine,* 925 F.2d 910, 918 (6th Cir. 1991)).

## IV.   COUNT FIVE IS PROPER BECAUSE DEFENDANTS COMMITTED VIOLATIONS AFTER RULE 206(4)-8 TOOK EFFECT

Daifotis is correct that Rule 206(4)-8 (17 C.F.R. § 275.206(4)-8) did not become effective until September 10, 2007, but Daifotis's conduct on or after that date can be actionable under Count Five.  Mem. at 21.  The Complaint alleges ample conduct by Daifotis after September 10, 2007 that substantially assisted primary violations of the Advisers Act and Rule 206(4)-8.  *See, e.g.,* Compl.¶¶ 149, 152, 153, 155, 159.  Accordingly, the claims under Rule 206(4)-8 are cognizable as to that post-September 10, 2007 conduct.

## V.   COUNTS SEVEN AND EIGHT UNDER THE DODD-FRANK ACT
## DO NOT VIOLATE RETROACTIVITY PRINCIPLES

Daifotis notes that the aiding-and-abetting claims in the Seventh and Eighth Claims are based upon provisions enacted in July 2010 under the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") [P.L. 111-203, 2010 HR 4173 (July 2010)]. However, because Daifotis already faced liability for aiding and abetting these violations at the time of his conduct, and the Dodd-Frank Act merely added the district court as an additional forum in which the SEC may bring such claims, the claims are not barred by retroactivity principles.

Daifotis correctly notes that courts generally disfavor retroactive application of statutory provisions to avoid imposing new liability or denial of substantive rights. However, while citing *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), Daifotis does not outline how the Supreme Court determines whether application of a provision would have impermissible retroactive effect. In *Landgraf*, the Supreme Court held that, if Congress has not expressly indicated that a statute applies retroactively, the question is whether the statute would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.  511 U.S. at 280.  In that context, the Supreme Court found that a "forum-shifting" provision, which merely confers or ousts jurisdiction, generally does not have an impermissible retroactive effect, as it "usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Landgraf,* 511 U.S. at 274 (*quoting Hallowell v. Commons*, 239 U.S. 506, 508 (1916)).

Since 1940, the SEC has had authority under Section 9(b)(3) of the ICA [15 U.S.C. § 80a-9(b)(3)] to institute administrative proceedings against persons who aided and abetted violations of the ICA.  Similarly, ICA Sections 9(d) and 9(e), respectively [15 U.S.C. §§ 80a-

1   9(d) and 80a-9(e)], have long given the SEC authority to assess civil money penalties and

2   disgorgement in administrative proceedings for such violations.

3       The SEC often has used its authority to allege such aiding and abetting of violations of

4   the ICA in administrative proceedings.  *See, e.g., In the Matter of Jason G. Burks,* Admin.

5   Proc. File No. 3-13419, Release Nos. 34-58644A, IA-2862A, IC-38681A, 2009 WL 1605426

6   (March 27, 2009)*; In the Matter of Robert Ward*, Admin. Proc. No. 3-13283, Release Nos.

7   34-58882, IC-38477, 2008 WL 4754029  (October 30, 2008)*; In the Matter of Evergreen*

8   *Investment Mgt. Co., LLC*, Admin. Proc. File No. 3-12805, Release Nos. 34-56462, IA-2648,

9   IC-2797, 2007 WL 2726790 (Sep. 19, 2007); *In the Matter of Pax World Mgt. Corp.,* Admin.

10   Proc. File No. 3-13107, Release Nos. IA-2761, IC-28344, 2008 WL 2917614 (Jul. 30, 2008).

11       Accordingly, Daifotis already faced liability (in an administrative proceeding) for

12   aiding and abetting these violations at the time of his conduct.  Section 929M of the Dodd-

13   Frank Act amended Section 48(b) of the ICA [15 U.S.C. § 80a-47] simply to allow the SEC to

14   allege aiding and abetting violations of the ICA in district court actions as well as

15   administrative proceedings.  Simply put, it is a "forum-shifting provision" that, as *Landgraf*

16   explained, raises no retroactivity concerns.  It would not impose new liability for past

17   conduct; it merely allows the SEC to enforce statutory obligations in one forum instead of

18   being forced to expend its limited resources on bringing a concurrent or follow-on

19   administrative proceeding solely to address the aiding and abetting violations of the ICA in

20   addition to litigating against the same defendants based on the same facts in a district court.

21       The SEC seeks in the Seventh and Eighth Claims no more in remedies than it could

22   have obtained had it brought those aiding-and-abetting claims in an administrative

1  proceeding.  In this district court action, the SEC seeks disgorgement of ill-gotten gains[12] and

2  seeks civil money penalties only up to the same amount that would have been available in an

3  administrative proceeding.[13]  The SEC does not seek an injunction under those claims.[14]

4       Thus, contrary to Daifotis's assertions (Mem. at 25), defendants are not being

5  subjected to new liability or deprived of the opportunity to conform their conduct to the law.

6  Rather, they are simply litigating the aiding-and-abetting claims in a different forum than

7

8  would have been possible prior to the Dodd-Frank Act.

9                              **<u>CONCLUSION</u>**

10      For the foregoing reasons, Daifotis's Motion to Dismiss the Complaint should be denied.

11  But even if the Court were to determine that the SEC's Complaint needed more facts, the

12  appropriate action would be to permit the SEC to file an amended complaint.

13  DATED:  April 28, 2011                     Respectfully submitted,

14

15                                    _____/s/ David J. Gottesman_____

16                                    David J. Gottesman

17  _____

18      [12] Disgorgement is available in a district court action under Section 44 of the ICA [15 U.S.C. § 80a-43] and Section 21(d)(5) of the Exchange Act as appropriate and necessary equitable relief.

19

20      [13] The approach to calculating the maximum penalties allowed in administrative proceedings by ICA Section 9(d)(2) [15 U.S.C. § 80a-9(d)(2)] differs from the maximum

21  amount of penalties allowed in district court actions under ICA Section 42(e)(2) [15 U.S.C. § 80a-41].  In particular, Section 42(e)(2) allows penalties up to the wrongdoer's gross

22  pecuniary gain, while Section 9(d)(2) is a calculation based on the formula delineated in the statute.  That makes no practical difference in this case, however, because the same amount

23  can be reached under either method of calculation.  Nonetheless, the SEC is not seeking under the Seventh and Eighth Claims in this case any more in penalties than would be available to

24  the SEC in an administrative proceeding.

25

26      [14] In an administrative proceeding, the SEC could seek cease-and-desist orders as well as bars, suspensions and other remedies, but of course, not a district court "injunction." In

27  section II of the Complaint's Prayer for Relief, we inadvertently included a request for an injunction against Daifotis's "aiding and abetting violations of Section 13(a)" of the ICA.

28  The SEC hereby confirms it is not seeking that particular injunctive relief.

1

Frederick L. Block
Robert A. Cohen
2
Melissa R. Hodgman

3

Attorneys for Plaintiff
4
SECURITIES AND EXCHANGE
COMMISSION
5
100 F Street, N.E.
Washington, DC 20549-4030
6
Telephone:  (202) 551-4470 (Gottesman)
Facsimile:  (202) 772-9245 (Gottesman)
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28