1  David J. Gottesman (Trial Counsel) (Illinois Bar No. 6182719)
   (gottesmand@sec.gov)
2  Frederick L. Block (blockf@sec.gov)
   Robert A. Cohen (cohenr@sec.gov)
3  Melissa R. Hodgman (hodgmanm@sec.gov)

4  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
5  100 F Street, N.E.
   Washington, DC 20549-4030
6  Telephone:  (202) 551-4470 (Gottesman)
   Facsimile:  (202) 772-9245 (Gottesman)

7

8

9

10                      UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF CALIFORNIA
11                         SAN FRANCISCO DIVISION

12

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV-11-0137 WHA |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT MERK'S MOTION TO DISMISS** |
| vs. | |
| KIMON P. DAIFOTIS and RANDALL MERK, | Date:     June 2, 2011<br>Time:     2:00 p.m.<br>Judge:    William H. Alsup<br>Courtroom:  9 |
| Defendants. | |

## PLAINTIFF'S STATEMENT OF ISSUES REGARDING
## DEFENDANT MERK'S MOTION TO DISMISS

(1)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the SEC's claims of primary liability where the Complaint alleges with ample particularity that Merk (a) personally made various misrepresentations or omissions of material fact; (b) is liable for other statements under the "group pleading" doctrine under Ninth Circuit law; and (c) provided substantial assistance in preparing, creating, drafting, editing, or making materially false statements.

(2)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the SEC's claims, where Merk simply quarrels with the Complaint's allegations about the misleading nature of a few of the misrepresentations or omissions.

(3)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the SEC's claim for primary liability under Section 17(a)(2) of the Securities Act, where the Complaint alleges facts showing that Merk obtained money for the YieldPlus Fund through the misrepresentations and omissions for which Merk is liable.

(4)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the SEC's claims for primary liability based upon a fraudulent scheme, where the Complaint contains ample allegations showing that Merk engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme.

(5)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the SEC's claims for aiding and abetting securities law violations, where the Complaint sufficiently alleges facts showing that Merk knowingly provided substantial assistance to primary violations of the securities laws.

1

(6)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the

2

SEC's claim for aiding and abetting securities law violations under Rule 206(4)-8, where the

3

Complaint alleges a number of violations by Merk after the effective date of that rule.

4

(7)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the

5

SEC's claim for aiding and abetting violations of Sections 206(1) and (2) of the Investment

6

Advisors Act, where the Complaint alleges all of the necessary elements of such violations.

7

8

(8)     Whether Merk's motion to dismiss lacks merit in seeking dismissal of the

9

SEC's claim for aiding and abetting violations of the Investment Company Act, based upon

10

Section 929M of the Dodd-Frank Act, where that statute did not create new liabilities, but

11

merely added the district court as an additional forum in which the SEC may bring such

12

aiding-and-abetting claims.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

    A.    Background Facts ......................................................................................... 1

    B.    The SEC's Claims ...................................................................................... 2

    C.    Merk's Flawed Statement of Facts ........................................................... 2

ARGUMENT ....................................................................................................................... 4

I.    THE COMPLAINT SUFFICIENTLY ALLEGES PRIMARY
    LIABILTY FOR MISREPRESENTATIONS AND OMISSIONS OF
    MATERIAL FACT (CLAIMS ONE, THREE AND SIX) ................................. 4

    A.    Primary Violations for Misrepresentations and Omissions ..................... 4

    B.    Merk Personally Made Misrepresentations or Omissions ....................... 5

    C.    Merk Is Liable as a Primary Violator Under the
        Group-Published or Group-Pleading Doctrine ......................................... 5

    D.    Merk Substantially Participated in the Misrepresentations ...................... 7

        1.    Merk's Substantial Participation in Connection
             With the Sale and Marketing of YieldPlus ................................. 9

        2.    Merk's Substantial Participation in Connection
             With Misrepresentations and Omissions
             Concerning the Decline of YieldPlus ........................................ 10

    E.    The Complaint Sufficiently Alleges How the
        Statements Were False and Misleading ................................................. 11

        1.    Misleading Statements and Omissions
             Regarding Fluctuations in Net Asset Value ............................. 11

        2.    Misleading Statements and Omissions Regarding
             Use of a U.S. Treasury Index as a Benchmark ........................ 15

        3.    Misleading Statements and Omissions Regarding Alt-A Holdings .......... 16

II.    SECTION 17(a)(2) APPLIES BECAUSE MERK OBTAINED
    MONEY FOR YIELDPLUS OR SCHWAB BY
    MEANS OF MISREPRESENTATIONS AND OMISSIONS ......................... 17

III.    THE CLAIMS FOR SCHEME LIABILITY
    ARE PROPER (CLAIMS TWO AND THREE) ......................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.      THE CLAIMS FOR AIDING-AND-ABETTING LIABILITY
ARE PROPER (CLAIMS TWO, FIVE AND SEVEN) .................................................. 20

V.       THE CLAIM RELATED TO REDEMPTIONS BY
OTHER SCHWAB FUNDS IS PROPER (CLAIM FOUR) ........................................... 22

VI.     THE SEC'S CLAIMS DO NOT IMPROPERLY
APPLY RETROACTIVITY PRINCIPLES...................................................................... 24

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*In re Aftermarket Filters Antitrust Litigation*, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .................................................................................................. 11

*Allison v. Brooktree Corp.*, 999 F. Supp. 1342 (S.D. Cal. 1998)........................................ 3

*Allstate Life Ins. Co. v. Robt. W. Baird & Co., Inc.*, Nos. CV-09-8162-PCT-GMS and CV-09-8174-PCT-GMS, 2010 WL 4581242 (D. Ariz. Nov. 4, 2010) ........................................................................................................................ 7

*In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989) ............................. 14, 15

*Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002) ............................... 3, 9

*In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148 (S.D.N.Y. 2008) ...................................................................................................................... 20

*In re Brocade Communications Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018 (N.D. Cal. 2009)......................................................................................... 8, 19

*In re Cadence Design Systems, Inc. Sec. Litig.*, 692 F. Supp. 2d 1181 (N.D. Cal. 2010)........................................................................................................... 7

*In re Citigroup, Inc.*, No. 08 Civ. 3095(LTS), 2011 WL 744745 (S.D.N.Y. Mar. 1, 2011)............................................................................................... 14, 15

*In re Citigroup*, No. 09 md 2070 (SHS), 2010 WL 4484650 (S.D.N.Y. Nov. 9, 2010) ...................................................................................................................... 16

*In re Convergent Tech. Sec. Litig.*, 948 F.2d 507 (9th Cir.1991) ................................... 12

*Cummings v. Paramount Partners, LP*, 715 F. Supp. 2d 880 (D. Minn. 2010) ................. 3

*In re Duane Reade Inc. Sec. Litig.*, No. 02 Civ. 6478(NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) ...................................................................... 14

*Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010) ............................................................... 3

*In re Gilead Sciences Sec. Litig.*, No. C03-4999, 2009 WL 3320492 (N.D. Cal. Oct. 13, 2009)............................................................................................... 7, 8

*In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591 (9th Cir. 1995)............................................ 6

*Hawaii Ironworkers Annuity Trust Fund v. Cole*, No. 3:10CV371, 2011 WL 1257756 (N.D. Ohio Mar. 31, 2011)............................................................... 20

*In re Homestore.com Sec. Litig.*, 347 F. Supp. 2d 790 (C.D. Cal. 2004) ................ 7, 9, 11

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1995) ................................................................ 12

*In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566 (S.D.N.Y. 2010) .............................. 12

*Marx v. Computer Sciences Corp.*, 507 F.3d 485 (9th Cir. 1974) ................................... 13

*McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576 (2d Cir.1990) ............... 12, 13

*McQueen v. Woodstream Corp.*, 248 F.R.D. 73 (D.D.C. 2008) ........................................ 22

*Miller v. Thane Int'l, Inc.*, 519 F.3d 879 (9th Cir. 2008)...................................... 12, 13, 14

*In re MoneyGram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947 (D. Minn. 2009).......... 16, 17

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989) ................................ 6

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund*, 595 F.3d 86
    (2d Cir. 2010)......................................................................................................... 12

*Plumbers Union Local No. 12 Pension Fund v. Ambassador's Group*, 717 F.
    Supp. 2d 1170 (E.D. Wash. 2010) ........................................................................ 10

*Raab v. General Physics Corp.*, 4 F.3d 286 (4th Cir. 1993)............................................ 15

*SEC v. Appuzo*, No. 3:07CV1910(AWT), 2010 WL 5359928 (D. Conn. Dec.
    20, 2010) ............................................................................................................... 21

*SEC v. Baxter*, No. C-05-03843 RMW, 2007 WL 2013958 (N.D. Cal. Jul. 11,
    2007) ........................................................................................................................ 6

*SEC v. Burns,* No. 84-0454, 1986 WL 36318 (S.D. Cal. Feb. 19, 1986) ........................ 18

*SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963)................................ 24

*SEC v. C.R. Richmond & Co.*, 565 F.2d 1101 (9th Cir. 1977)........................................ 12

*SEC v. Delphi*, No. 06-14891, 2008 WL 4539519 (E.D. Mich. Oct. 8, 2008) ........... 17, 18

*SEC v. DiBella*, 587 F.3d 553 (2d Cir. 2009) ................................................................. 24

*SEC v. Durgarian*, 477 F. Supp. 2d 342 (D. Mass. 2007) ............................................. 20

*SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996) .............................................................. 10, 20

*SEC v. Forman*, No. 07-11151-RWZ, 2010 WL 2367372 (D. Mass. Jun.9,
    2010) ..................................................................................................................... 18

*SEC v. Fraser*, No. CV-09-443, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009)................. 8

*SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2010 WL 5776401 (D. Ariz.
    Jan. 28, 2010)................................................................................................. 7, 8, 10

*SEC v. Gabelli*, 2010 WL 1253603 (S.D.N.Y. Mar. 17, 2010) ...................................... 23

*SEC v. Glantz,* No. 94 Civ. 5737 (CSH), 1995 WL 562180 (S.D.N.Y. 1995) ................ 18

*SEC v. Hopper*, No. Civ.A. H-04-1054, 2006 WL 778640 (S.D. Tex. 2006) ................ 18

*SEC v. ICN Pharmaceuticals, Inc.*, 84 F. Supp. 2d 1097 (C.D. Cal. 2000)..................... 24

*SEC v. Leslie*, No. C 07-3444, 2010 WL 2991038 (N.D. Cal. Jul. 29, 2010)............ 18, 19

*SEC v. Lucent Technologies, Inc.*, 610 F. Supp. 2d 342 (D.N.J. 2009) ............... 19, 20, 21

*SEC v. Mercury Interactive, LLC,* No. C 07-2811 JF (RS), 2009 WL 2984769
(N.D. Cal. Sep. 15, 2009) .................................................................................. 21

*SEC v. Patel*, No. 07-cv-39-SM, 2008 WL 782483 (D.N.H. Mar. 24, 2008) .................. 22

*SEC v. Power*, 525 F. Supp. 2d 415 (S.D.N.Y. 2007) ...................................................... 10

*SEC v. Trabulse*, 526 F. Supp. 2d 1001 (N.D. Cal. 2007) ................................................ 23

*SEC v. Treadway*, 430 F. Supp. 2d 293 (S.D.N.Y. 2006) ........................................... 22, 23

*SEC v. Wall Street Transcript Corp.*, 422 F.2d 1371 (2d Cir. 1970) ............................... 24

*In re Secure Computing Corp. Sec. Litig.*, 120 F. Supp. 2d 810 (N.D. Cal.
2000) ..................................................................................................................... 6

*Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998 (N.D. Cal. 2006) ............... 24

*In re Silicon Storage Tech., Inc. Sec. Litig.,* No. C 05-0295 PJH, 2006 WL
648683 (C.D. Cal. Mar. 10, 2006) ........................................................................ 6

*In re Software Toolworks*, 50 F.3d 615 (9th Cir. 1994) ................................................... 10

*Spear & Staff, Inc.*, 42 S.E.C. 549 (1965) ....................................................................... 12

*In re Sturn, Ruger & Co. Sec. Litig.,* No. 3:09-cv-1293 (CFD), 2011 WL
494753 (D. Conn. Feb.7, 2011) .......................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499,
168 L. Ed. 2d 179 (2007)] ................................................................................... 11

*Whitehurst v. All Wallgreen's Co. Stores*, No. C 10-4195 PJG, 2010 WL
5422567 (N.D. Cal. Dec. 28, 2010) ...................................................................... 3

## STATUTES

Fed.R.Civ.P. 9 .................................................................................................................. 21

Securities Act of 1933

    Section 17(a) [15 U.S.C. § 77(q)(a)] ......................................................................... 4

    Section 17(a)(1) [15 U.S.C. § 77(q)(a)(1)] .............................................................. 19

    Section 17(a)(2) [15 U.S.C. § 77(q)(a)(2)] .......................................................... 4, 17

    Section 17(a)(3) [15 U.S.C. § 77(q)(a)(3)] .............................................................. 19

Securities Exchange Act of 1934

    Section 10(b) [15 U.S.C. § 78j(b)] ........................................................................... 4

    Rule 10b-5 [17 C.F.R. § 240.10b-5] ......................................................................... 4

Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)] ....................................................... 19

Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)] ....................................................... 19

Investment Advisers Act of 1940

Section 206(1) [15 U.S.C. § 80b-6(1)] .......................................................... 22

Section 206(2) [15 U.S.C. § 80b-6(2)] .......................................................... 22

Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8] ...................................................... 22

Investment Company Act of 1940

Section 24 [15 U.S.C. §80a-24] ................................................................... 4

Section 34(b) [15 U.S.C. §80a-33(b)] ........................................................... 4

Rule 24b-3 [17 C.F.R. § 270.24b-3] ............................................................. 5

1    Plaintiff, the United States Securities and Exchange Commission ("SEC") responds as

2  follows to the Motion to Dismiss and Memorandum of Points and Authorities in support

3  thereof ("Mem.") filed by Defendant Randall Merk ("Merk").

4                              **INTRODUCTION**

5    A.    **Background Facts**

6

7    At the relevant times, Merk was an Executive Vice President of Charles Schwab

8  Corporation, held senior positions at the Schwab entities that provided investment advisory

9  and other services to the Schwab YieldPlus Fund ("YieldPlus"), and until 2007 he was a

10  trustee of YieldPlus.  The Complaint ("Compl.") details a series of misleading statements and

11  other fraudulent acts by Merk related to YieldPlus, including an effort to portray it as a "cash-

12  alternative" or "cash-equivalent" investment, without fully or properly disclosing how

13  YieldPlus was fundamentally different and significantly riskier.  Compl. *e.g.,* ¶¶ 42-55, 58-61,

14  74-78.  Further, Merk voted to approve a plan to allow YieldPlus to violate its own policy

15  against concentrating too much of its holdings in a single industry, and then signed one or

16  more false documents that masked what occurred.  *Id.* ¶¶ 56, 116-124, 126.

17

18    When YieldPlus began to decline in 2007, Merk made further misleading statements

19  about YieldPlus in order to dissuade investors from redeeming their investments.  *Id.* ¶¶ 127-

20  134, 145-160.  Finally, Merk permitted certain Schwab mutual funds to redeem their

21  YieldPlus investments after obtaining material, non-public information about the fund, while

22  trying to keep outside investors – who were not given the benefit of that information – from

23  redeeming their investments.  *Id.* ¶¶ 161-172.

24

25    YieldPlus's value dropped 28 percent in an eight-month period in 2007 and 2008, and

26  its assets dropped from $13.5 billion to $1.8 billion.  As of the time of the filing of the

27

28

Complaint, YieldPlus's value declined by 50%, and its assets were below $200 million. YieldPlus investors lost hundreds of millions of dollars. *Id.* ¶¶ 15-16.

### B.    The SEC's Claims

Merk violated or aided and abetted violations of the Securities Exchange Act of 1934 ("Exchange Act"), the Securities Act of 1933 ("Securities Act"), the Investment Company Act of 1940 ("ICA"), and the Investment Advisers Act of 1940 ("Advisers Act"), all as detailed in the Complaint.

Merk shows no basis to dismiss the Complaint.  First, contrary to Merk's assertions, the Complaint contains ample facts establishing several bases on which Merk is responsible for the misrepresentations and omissions.  Merk personally made a number of the misrepresentations and omissions (his wrongdoing was *not* mere "inaction," as he claims), he is responsible under the "group pleading" doctrine, and he substantially participated in the misleading statements.  Second, Merk erroneously attacks the claim under Section 17(a)(2) of the Complaint; YieldPlus obtained money by reason of Merk's misleading statements, thus satisfying the requirements of that section.  Third, the Complaint's allegations sufficiently allege scheme liability and liability for aiding and abetting violations of the securities laws. Finally, none of the claims run afoul of legal principles regarding retroactive application of the law.

### C.    Merk's Flawed Statement of Facts

Merk's rendition of the facts is flawed in a number of ways, including a number of errors.  We will simply point out two of them.  Merk erroneously relies on allegations that either cannot be considered or are improper support for a motion to dismiss.  For example, in an effort to paint himself as lacking scienter, Merk improperly strays from the record in arguing that he purchased and held investments in YieldPlus.  Mem. at 1.  That allegation

cannot be considered on this motion to dismiss because the Complaint makes absolutely no reference to any such allegation. *See Whitehurst v. All Wallgreen's Co. Stores,* No. C 10-4195 PJG, 2010 WL 5422567, at *3 (N.D. Cal. Dec. 28, 2010) (on a Rule 12(b)(6) motion to dismiss, "[r]eview is limited to the contents of the complaint"). Although a court may consider matters referenced in the complaint, or matters "subject to judicial notice, such as public records," *Allison v. Brooktree Corp.,* 999 F. Supp. 1342, 1347 (S.D. Cal. 1998), no basis exists to consider private documents, not referred to in the complaint, such as Merk's individual account statement.

Moreover, Merk's allegation about his personal investment is insufficient support for a motion to dismiss, in which all reasonable inferences must be drawn in favor of the SEC, as non-movant. *See Bernhardt v. County of Los Angeles,* 279 F.3d 862, 867 (9th Cir. 2002). Merk suggests that his investment in YieldPlus is something of a trump card that negates any possible claims against him. Not so. The significance of his alleged investment is not conclusive and it just as reasonably can lead to inferences against Merk. *See, e.g., Cummings v. Paramount Partners, LP,* 715 F. Supp. 2d 880, 902 (D. Minn. 2010) ("it is not implausible that [defendant] used his own investment in the fund as a sales tool to snare investors"); *see also Gebhart v. SEC,* 595 F.3d 1034, 1043-44 (9th Cir. 2010) (even though respondent's investment of his own money "tends to negate scienter," it does not necessarily overcome other evidence of recklessness).

Another flaw in Merk's statement of facts (Mem. at 4-5) is his erroneous reliance on disclosures that he claims are in the YieldPlus prospectus or elsewhere. But as discussed in section I.E.1., below, Ninth Circuit law holds that material misleading statements and omissions in one document are not cured by disclosures elsewhere.

## ARGUMENT[1]

**I.    THE COMPLAINT SUFFICIENTLY ALLEGES PRIMARY
       LIABILTY FOR MISREPRESENTATIONS AND OMISSIONS OF
       MATERIAL FACT (CLAIMS ONE, THREE AND SIX)**

**A.    Primary Violations for Misrepresentations and Omissions**

The First, Third and Sixth Claims for Relief are based, respectively, upon Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5[2] thereunder [17 C.F.R. § 240.10b-5] (First Claim), Section 17(a)[3] of the Securities Act [15 U.S.C. § 77q(a)] (Second Claim), and Section 34(b) of the ICA [15 U.S.C. §80a-33(b)].

Section 10(b), Rule 10b-5(b), and Section 17(a)(2) prohibit conduct including the making of untrue statements or misleading omissions of material fact.[4]  Section 34(b) of the ICA creates liability for making untrue statements of material fact in registration statements and other documents filed or deemed filed with the SEC.  Under Section 24 of the ICA and

---

[1]  *See* the SEC's Opposition to Defendant Daifotis's motion to dismiss for a discussion of the standard of review for motions under Fed.R.Civ.P. 12(b)(6).

[2]  Rule 10b-5 [17 C.F.R. § 240.10b-5] makes it unlawful:
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

[3]  Section 17(a) [15 U.S.C. § 77(q)(a)] makes it unlawful to:
(1) to employ any device, scheme, or artifice to defraud,
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

[4]  As discussed in Section III below, Rule 10b-5(a) and (c), and Section 17(a)(1) and (3) prohibit schemes and other artifices or devices that defraud.

1   Rule 24b-3 thereunder [17 C.F.R. § 270.24b-3] sales literature for distribution to prospective

2   investors, if filed with FINRA, also is treated as filed with the SEC.

3        This section addresses Merk's argument that he cannot face primary liability[5] for

4   "making" misrepresentations or omissions, and demonstrates that Merk is liable because, first,

5   he personally made misrepresentations or omissions, second, as a senior officer, Merk is

6   liable under the "group pleading" doctrine for Schwab's false statements or omissions, and

7

8   third, Merk substantially participated in false statements and omissions.

9        **B.      Merk Personally Made Misrepresentations or Omissions**

10        The Complaint alleges that Merk personally made a number of the misrepresentations

11  or omissions.  For example, Merk signed a filing with the SEC on November 25, 2006 that

12  included a false certification by Schwab that the form contained no material changes.  Compl.

13  ¶¶ 123-124.  As another example, Merk was named as the author in an August 2007 set of

14

15  questions and answers ("Q&A") on the Schwab website, including the misleading assertion

16  that YieldPlus had a "short maturity structure that mitigated much . . . price erosion."  Compl.

17  ¶ 145.  These statements by Merk are sufficient to establish his responsibility for

18  misrepresentations and omissions of material fact, without even having to consider the many

19  other allegations discussed below that show his responsibility for and his substantial

20  participation in connection with many other statements.

21

22        **C.      Merk Is Liable as a Primary Violator Under the**
             **Group-Published or Group-Pleading Doctrine**

23        The Complaint's allegations also establish that Merk is liable for Schwab's false

24

25  statements and omissions under the "group published" or "group pleading" doctrine.  That

26  doctrine holds that a complaint may "rely 'upon a presumption that . . . allegedly false and

27  _____

28        [5]   Section III, below, responds to Merk's argument that he cannot face "scheme"
      liability.

1  misleading 'group published information' complained of is the collective action of officers

2  and directors.'"  *In re Secure Computing Corp. Sec. Litig.,* 120 F. Supp. 2d 810, 821 (N.D.

3  Cal. 2000) (quoting *In re GlenFed, Inc. Sec. Litig.,* 60 F.3d 591, 593 (9th Cir. 1995)).  "Group

4  published information" includes "prospectuses, registration statements, annual reports, press

5  releases, or other" group-published materials.  *In re Silicon Storage Tech., Inc. Sec. Litig.,* No.

6  C 05-0295 PJH, 2006 WL 648683, at *21 (C.D. Cal. Mar. 10, 2006).[6]

7

8          To employ the group-pleading doctrine, the complaint's "allegations should include

9  the misrepresentations themselves with particularity and, where possible, the roles of the

10  individual defendants in the misrepresentations."  *SEC v. Baxter,* No. C-05-03843 RMW,

11  2007 WL 2013958, at *6 (N.D. Cal. Jul. 11, 2007) (quoting *Moore v. Kayport Package Exp.,*

12  *Inc.,* 885 F.2d 531, 540 (9th Cir. 1989)).

13

14          The SEC's Complaint specifies – with great particularity – a host of

15  misrepresentations and omissions of material facts in group-published materials for which

16  Merk, as a senior officer (Compl. ¶ 21), is responsible.  These include specified items on the

17  Schwab website (Compl. ¶¶ 74(a), 74(d), 74(i), 89, 94), in brochures (¶¶ 74(c), 74(h)), in

18  advertisements (¶¶ 74(f), 74(g)), in publicly disseminated emails (¶ 74(e)), in Schwab's

19  publicly distributed magazine (¶ 93), and in documents filed or deemed filed with the SEC (¶¶

20  92, 123-125).  The Complaint also details Merk's role.  *See* Compl. ¶¶ 43-44 (Merk's role in

21  the heightened – and misleading – emphasis of YieldPlus as a cash product on the Schwab

22  website); 49-50 (Merk's role in an August 1, 2006 press release that included

23  misrepresentations and omissions); 46-48, 51-52 (Merk's role in Schwab's plans to market

24  YieldPlus as a "cash" product); and 145, 149, 153-159 (Merk's role in reviewing other false

25  and misleading statements).  The allegations are sufficient to invoke the group-pleading

26

27

28          [6]  *See* SEC's Opposition to Daifotis's motion at section III.B. for other pertinent case
law.

doctrine, making Merk liable as a primary violator with regard to Schwab's

misrepresentations and omissions about YieldPlus.

### D.  Merk Substantially Participated in the Misrepresentations

Finally, the Complaint alleges facts sufficient to establish liability for Merk as a

substantial participant in various false statements and omissions.  A defendant-officer faces

primary liability not only if he *makes*, but alternatively if he "'substantially participate[s]' in

the preparation, 'creation, drafting, editing, or making' of materially false statements, even if

the officer does not actually utter or otherwise sign the statement."  *SEC v. Fraser,* No. CV-

09-00443-PHX-GMS, 2010 WL 5776401, at *4 (D. Ariz. Jan. 28, 2010) ("Fraser II")

(quoting *In re Homestore.com Sec. Litig.*, 347 F. Supp 2d 790, 800 (C.D. Cal. 2004)); *see also*

*In re Cadence Design Systems, Inc. Sec. Litig.,* 692 F. Supp. 2d 1181, 1192 n.8 (N.D. Cal.

2010) (quoting *Fraser*); *Allstate Life Ins. Co. v. Robt. W. Baird & Co., Inc.,* Nos. CV-09-

8162-PCT-GMS and CV-09-8174-PCT-GMS, 2010 WL 4581242, at *16 (D. Ariz. Nov. 4,

2010).

In arguing that the SEC has not alleged facts sufficient to constitute his "substantial

participation," Merk relies on three cases that he claims rejected complaints that were "more

detailed" than the SEC's Complaint in this case.  Mem. at 11.  But the cases Merk cites

involved complaints with only generalized allegations that fell short of the specificity in the

SEC's Complaint here.

- In *In re Gilead Sciences Sec. Litig.,* No. C03-4999, 2009 WL 3320492, at *4 (N.D.
  Cal. Oct. 13, 2009), the court stated, "[t]he only allegation in the complaint is a
  general one that 'The individual defendants were involved in drafting, producing,
  reviewing and/or disseminating the materially false and misleading statements'" and
  that they "approved, ratified and/or failed to correct those statements."  *Id.* at *4.

- Similarly, in *SEC v. Fraser,* No. CV -09-443, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ("Fraser I"), the court dismissed a complaint because it alleged only that the defendant had "some involvement" or included only vague allegations that defendant "was somehow involved in reviews and discussions." 2009 WL 2450508, at 7-8. For example, the complaint did not allege "specific facts regarding the nature of [defendant's] involvement in . . . meetings, beyond the mere assertion that he was present and somehow involved." *Id.* at 8. *See also Fraser II,* 2010 WL 5776401, at *4 (D. Ariz. Jan. 28, 2010) (upholding amended complaint).

- In *In re Brocade Communications Sys., Inc. Derivative Litig.,* 615 F. Supp. 2d 1018, (N.D. Cal. 2009), which involved backdating stock options, the complaint contained generalized allegations that a defendant was "involved in" granting of options, and that he approved certain backdating, but it did not make clear the specific misrepresentations for which the defendant was responsible. *Id.* at 1045.

In contrast to the cases cited by Merk, the SEC's Complaint (as discussed below) details specific facts showing Merk's substantial participation in the "preparation, 'creation, drafting, editing, or making'" of particular misrepresentations or omissions. *Fraser II,* 2010 WL 5776401, at *4.

1.   **Merk's Substantial Participation in Connection**
     **With the Sale and Marketing of YieldPlus**

The Complaint details Merk's substantial participation in creating, editing and making false statements on Schwab's website to the effect that YieldPlus was a cash equivalent. Merk personally informed the "Cash Council" that he and his team had identified YieldPlus for inclusion in Schwab's "increased cash promotion" efforts (Compl. ¶ 43), reviewed and agreed to marketing plans and website changes that highlighted YieldPlus as an alternative to CDs and money market funds (*id.* ¶ 44), and reviewed and agreed to content (Compl., section A.3) that represented YieldPlus as being a cash equivalent or cash alternative investment without fully or properly disclosing the risks or other differences between the products (*id.* ¶¶ 46 & 48). The resulting characterizations of YieldPlus were false and misleading because YieldPlus was not a true cash investment and it was fundamentally riskier, yet the risks were hidden. Merk's actions constitute substantial participation. *See In re Homestore.com.,* 347 F. Supp. 2d at 803 ("what defines editing versus review is not a bright line").

 Merk quibbles over whether YieldPlus was on an earlier (2005) "cash page" on Schwab's website. Mem. at 13. But, in the context of a motion to dismiss, Merk cannot argue over the allegations in the Complaint. *Bernhardt,* 279 F.3d at 867. Moreover, the Complaint alleges that Merk and the Cash Council were seeking to have an "*increased* cash promotion" (Compl. ¶ 43 (emphasis added)) and to "highlight" YieldPlus through various website changes *(id.* ¶ 44)). Thus, whether some part of the Schwab website previously referenced YieldPlus is irrelevant.

 Merk also substantially participated in an August 1, 2006, press release that described YieldPlus as a "cash alternative" and suggested that it was only subject to "minimal price fluctuations." This was misleading because YieldPlus was nothing like a genuine cash investment and was subject to large price fluctuations. Compl. ¶¶ 49-50. Merk was the

1  source of the idea for the press release, and he saw it but failed to correct the misleading

2  statements in it. This also reflects Merk's substantial participation in the creation or making

3  of the misleading statements.

4      Merk argues over whether his involvement was significant *enough*. But the facts cited

5  above show extensive, significant involvement. Moreover, Merk only had to "substantially

6  participate"; he did not have to be "primarily" or more responsible for the false statements

7  than anyone else. *See Fraser II,* 2010 WL 5776401, at *6 ("The fact that others may have

8  participated in [the alleged fraud] . . . does not absolve [the defendant] at the pleadings stage")

9

10  (quoting *SEC v. Power,* 525 F. Supp. 2d 415, 422 (S.D.N.Y. 2007)).[7]

11

12              **2.      Merk's Substantial Participation in Connection
                          With Misrepresentations and Omissions
                          <u>Concerning the Decline of YieldPlus</u>**

13

14      The Complaint also contains detailed allegations showing Merk's substantial

15  participation in the misrepresentations and omissions during the decline of YieldPlus in 2007.

16  For example, Merk reviewed, suggested an edit and approved the November 2007 "talking

17  points" used by Schwab employees in discussing YieldPlus with investors and which contained

18  false and misleading statements and omissions. Compl. ¶¶ 149-150. Such allegations are

19  sufficient to establish that Merk substantially participated in the "editing" and making of the

20  false statements. *See SEC v. Fehn,* 97 F.3d 1276, 1293 (9th Cir. 1996) ("substantial assistance"

21  includes "participation in the editing" of information) (citation omitted); *In re Software*

22  *Toolworks,* 50 F.3d 615, 628 n.3 (liability where defendant played significant role in "drafting

23

24  _____

25      [7]  Moreover, even Merk's failure to speak up and tell the truth under the circumstances
    alleged in the Complaint was itself a primary violation. "Corporate officers, however, may

26  not stand idly by as investors and analysts, upon whose recommendations other investors rely,
    are mislead (sic)." *Plumbers Union Local No. 12 Pension Fund v. Ambassador's Group,* 717

27  F. Supp. 2d 1170, 1180 (E.D. Wash. 2010) (officer remained silent while his colleagues on a
    conference call made misleading statements).

28

1   and editing"); *In re Homestore.com,* 347 F. Supp. 2d at 803 (fact question existed over whether

2   defendant's review of false document created liability).

3         **E.   The Complaint Sufficiently Alleges How the**

4                  **Statements Were False and Misleading**

5         Merk (Mem. at 14-15) erroneously asserts that the Complaint does not allege facts

6   showing that three specific topics were misleading when made.  He apparently does not

7   challenge the misleading nature of the rest of the statements alleged in the Complaint.  Merk

8   cannot obtain dismissal by cherry-picking a few allegations to attack.  As stated in *In re*

9   *Aftermarket Filters Antitrust Litigation*, 2009 WL 3754041 at *3 (N.D. Ill. Nov. 5, 2009):

10

11         Like all complaints, the court must read the instant complaint in its
      entirety, and must not "scrutinize each allegation in isolation but

12         [must] assess all of the allegations holistically." *See Tellabs, Inc. v.*
      *Makor Issues & Rights, Ltd.,* 551 U.S. 308, 325, 127 S.Ct. 2499, 168

13         L.Ed.2d 179 (2007).  In other words, as plaintiffs argue, ***defendants***
      ***may not "cherry pick" specific allegations in the complaint that***

14         ***might be insufficient standing alone."*** (Emphasis added).

15   In any event, Merk is wrong, because the challenged statements were materially misleading.

16

17         **1.   Misleading Statements and Omissions**
              **Regarding Fluctuations in Net Asset Value**

18         Merk first challenges the Complaint's allegations (¶¶ 74(c)(iii) and 74(e)(iii)) about

19   misrepresentations or omissions concerning fluctuations in YieldPlus's net asset value

20   ("NAV").  Mem. at 14-15.  Paragraph 74(c)(iii) of the Complaint alleges that a September

21   2006 brochure about YieldPlus stated:

22

23         YieldPlus is an actively managed mutual fund consisting primarily
      of ***ultrashort duration bonds that mature frequently*** to limit

24         interest rate exposure.  Its net asset value (NAV) has fluctuated by
      no more than $0.03 (between $9.65 and $9.68) over the last year

25         ending 06/30/2006, giving it the performance potential and ***relative***

26         ***stability*** necessary in today's market.  (Emphasis added).[8]

27           [8] Merk filed a copy of the September 2006 brochure as Exhibit 9 to his Motion

28   (docket number 42-9, filed 4/7/11).

Paragraph 74(e)(iii) alleges that a September 2006 email contained similar statements.

Merk claims that it is historically true that YieldPlus's NAV fluctuated by no more than three cents in the year ending June 30, 2006.  But the Ninth Circuit repeatedly has held that a statement that happens to include a literally true fact can still be materially misleading.  In *SEC v. C.R. Richmond & Co.,* 565 F.2d 1101, 1106-07 (9th Cir. 1977), the court stated that advertisements can be "deceptive and misleading in their overall effect even though when narrowly and literally read, no single statement of a material fact was false."  (*quoting Spear & Staff, Inc.,* 42 S.E.C. 549 (1965)).  And the Ninth Circuit also has stated:

> We have recognized that statements literally true on their face may nonetheless be misleading when considered in context, warning: [A]n issuer's public statements cannot be analyzed in complete isolation. "Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors. For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers."

*Miller v. Thane Int'l, Inc.,* 519 F.3d 879, 886 (9th Cir. 2008) (quoting *In re Convergent Tech. Sec. Litig.,* 948 F.2d 507, 512 (9th Cir. 1991) (internally quoting *McMahan & Co. v. Wherehouse Entm't, Inc.,* 900 F.2d 576, 579 (2d Cir.1990)).[9]  *See also Kaplan v. Rose,* 49 F.3d 1363, 1372 (9th Cir. 1995) (although literally true for a medical-device company to state that system was "used successfully" to treat patients, there was a jury question over whether it

---

[9]  Other cases with similar holdings include *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund,* 595 F.3d 86, 92 (2d Cir. 2010) ("The veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers"); *McMahan & Co.,* 900 F.2d at 579-80 (statements about the right to tender stock were literally true, but misleading because the right was practically illusory, which was not disclosed);  *In re Sturm, Ruger & Co. Sec. Litig.,* No. 3:09-cv-1293 (CFD), 2011 WL 494753, at *6 (D. Conn. Feb.7, 2011) ("'A statement can be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact'") (quoting *In re MBIA, Inc., Sec. Litig.,* 700 F. Supp. 2d 566, 578 (S.D.N.Y. 2010) (internal citations and quotation omitted)).

1    was a misleading statement because of the limited number of patients for whom it had been

2    successful).

3        Challenged statements must be considered in context.  *Miller v. Thane,* 948 F.3d at

4    886- 888 (prospectus made literally true statements that company stock had been approved or

5    qualified for listing on the NASDAQ, but "context and manner of presentation" implied that

6    the stock would *actually* be listed on the NASDAQ, which was misleading); *Marx v.*

7    *Computer Sciences Corp.,*  507 F.2d 485, 491-92 (9th Cir. 1974) (statements together may be

8    materially misleading even if individually such statements are not); *McMahan & Co.,* 900

9    F.2d at 579 ("when read as a whole, the defendants' representations connoted a richer

10   message than that conveyed by a literal reading of the statements").

11

12       In the present case, the context and manner of presentation make the statements about

13   NAV misleading.  The challenged statement about the three-cent fluctuation appears just after

14   a sentence (quoted above) that states that YieldPlus "consist[s] primarily of ultrashort duration

15   bonds that mature frequently to limit interest rate exposure."  That statement, which itself is

16   false, sets up the reader to believe that YieldPlus was a stable investment.  The next sentence

17   purports to prove it by stating, "[i]ts net asset value (NAV) has fluctuated by no more than

18   $0.03 (between $9.65 and $9.68) over the last year ending 06/30/2006, giving it the

19   performance potential and ***relative stability necessary in today's market***." (Emphasis added).

20

21       The quoted statements about YieldPlus's stability and its NAV, particularly when

22   taken as a whole, were materially misleading in suggesting that the fund had a stable value

23   over time.  Thus, the three-cent fluctuation figure was not merely stated as an historical fact, it

24   was offered as part of a representation about *ongoing stability,* i.e., that YieldPlus had the

25   "relative stability necessary in today's market."  In the context of a brochure to prospective

26   investors, that statement reasonably would be interpreted as referring to ongoing stability.

27

28

At a minimum, it was misleading to use the three-cent fluctuation in 2006 as support for the supposed stability of the fund without also disclosing that the fund had suffered much greater fluctuations in earlier periods  (Compl. ¶ 28) and was at risk for significantly greater fluctuations because of its inherent riskiness  (*see* Compl. ¶ 75).

Merk (Mem. at 15) claims that five years of historical performance were included in the YieldPlus prospectus.  But that makes no difference.  The documents at issue are the September 2006 brochure and email cited above, and they contain no such disclosures.  The law in this circuit is that, "[o]rdinarily, omissions by corporate insiders are not rendered immaterial by the fact that the omitted facts are otherwise available to the public."  *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1114 (9th Cir. 1989); *see also Miller v. Thane,* 519 F.3d at 887 ("investors are not generally required to look beyond a given document to discover what is true and what is not").[10]

The cases cited by Merk (Mem. at 15) are inapposite.  In *In re Duane Reade Inc. Sec. Litig.,* No. 02 Civ. 6478(NRB), 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003), the court held that plaintiffs could not maintain claims for defendants' "'self-laudatory' statements about how they accurately predicted past financial performance."  But the present case is different because the citation to recent figures was offered as part of an overall effort to misrepresent the current and future riskiness of YieldPlus.

Merk cites *In re Citigroup, Inc.,* No. 08 Civ 3095(LTS), 2011 WL 744745, at *7 (S.D.N.Y. Mar. 1, 2011), but that case involved alleged market manipulation in which the "extensive public information and disclosures" already had revealed to the public that "rate-setting" and "auction-saving" techniques were used in connection with auction-rate securities,

---

[10] The exception is in fraud-on-the-market cases, in which the plaintiff complains about an artificial stock price resulting from all material information that has entered the market, whether directly from defendant or otherwise.  *In re Apple,* 886 F.2d at 1114.  That is not involved in the present case.

1    so there was no undisclosed market manipulation.  *Id.*  The present case, in contrast, involves

2    specific deceptive statements, not market manipulation.

3              Finally, Merk cites *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993),

4    which, unlike the present case, relied on the "fraud-on-the-market" theory to establish

5    reliance.  Under Ninth Circuit law, "fraud on the market" is an exception to the rule that

6    omissions in one document are not cured by disclosures in another document.  *In re Apple,*

7    886 F.2d at 1114, explained in note 10 above.

8

9                         **2.      Misleading Statements and Omissions Regarding**
                                    **Use of a U.S. Treasury Index as a Benchmark**

10

11             The Complaint alleges that it was misleading to use the Lehman Brothers U.S.

12   Treasury 9-12 Month Index ("U.S. Treasury Index") as the benchmark for YieldPlus because

13   it suggested that the Fund invested regularly and substantially in bonds issued by the U.S.

14   Treasury, and that YieldPlus's performance and risk profile would be similar to that of

15   Treasury bonds, neither of which was true.  Compl. ¶ 74(i).  Merk argues (Mem. at 15-16) that

16   YieldPlus "fact sheets" refer to that benchmark but disclose the actual holdings of YieldPlus.

17   But nothing in the fact sheets informs investors that YieldPlus's risk profile is fundamentally

18   different from that of Treasury bonds.

19

20             Moreover, other YieldPlus documents also list the same U.S. Treasury Index as the

21   benchmark for YieldPlus without disclosing the fund's actual holdings.  For example, Exhibit

22   1 submitted with this memorandum is a document that was included as a link on Schwab's

23   website for months in 2006.  Page 4 includes a table comparing YieldPlus to the U.S.

24   Treasury Index, without disclosing the actual YieldPlus investments.[11]

25

26             [11]   Although the cited document is not listed in the Complaint as one of the examples,
27   if the Court believes that the inclusion of this document would be dispositive of the motion to
     dismiss, then the SEC requests leave to amend the Complaint to include the cited document
28   and other similar documents.

### 3.    <u>Misleading Statements and Omissions Regarding Alt-A Holdings</u>

Defendants stressed to investors that YieldPlus had minimal sub-prime mortgage holdings, while misleadingly failing to disclose that YieldPlus held a high percentage of Alt-A securities, another type of security backed by lower quality residential mortgages, which posed risks similar to those of subprime mortgages and were suffering declining prices. Compl. ¶¶ 157 *et seq.*  Merk claims that Defendants had no obligation to disclose that.  Mem. at 16-17.

The Complaint specifies two documents that failed to disclose the exposure to Alt-A investments:  Merk's August 2007 Q&A (Compl. ¶ 158) and Daifotis's November 2007 "Manager's Discussion" (Compl. ¶ 159).  Significantly, both documents were prepared within Schwab, and were not mere responses to investor questions.  This distinguishes this case from *In re Citigroup,* No. 09 md 2070 (SHS), 2010 WL 4484650, at *31 (S.D.N.Y. Nov. 9, 2010), cited by Merk (Mem. at 9), in which the court held that defendant's officer was not obligated to mention exposure to "Alt-A RMBS" (i.e., residential mortgage-backed securities) in a live conference call because he was answering a direct question from an analyst specifically about *individual* Alt-A mortgages, not "Alt-A RMBS."  The plaintiff's counsel in that case specifically conceded the limitation in the analyst's question.  *Id.*

The present case is different.  The two documents were prepared within Schwab, so they reflected internal decisions about what to disclose.  The present case is similar to *In re MoneyGram Int'l, Inc. Sec. Litig.,* 626 F. Supp. 2d 947, 976-77 (D. Minn. 2009), in which a defendant-officer made statements in a conference call addressing exposure "to the faltering subprime mortgage market," and stated that the downturn had very little impact on the portfolio's securities because they were rated "A or better" and downturns were temporary. The court held that "a duty existed to disclose enough information about that market" to

prevent misleading the public, including "detailed information about the Portfolio's content and exposure to the subprime *and Alt-A market* . . . ." *Id.* at 976-77 (emphasis added).

Similarly, Merk and Daifotis published pieces downplaying the impact of the subprime market.  Merk's August 2007 Q&A (page 4 of Exhibit 11 to Merk's Motion) stated that "The fund . . . has less than 5% subprime exposure with nearly all holdings rated Aaa/AAA, Aa/AA or A/A."  Daifotis's November 19, 2007 "Manager's Discussion" (a copy is filed herewith as Exhibit 2) contains similar statements at page 4.  Having undertaken to affirmatively minimize the threats posed by subprime mortgage holdings, they were obliged to give "detailed information about [YieldPlus's portfolio's] content and exposure to the subprime *and Alt-A market* . . . ."  *Moneygram,* 626 F. Supp. 2d at 976-77 (emphasis added).

## II.   SECTION 17(a)(2) APPLIES BECAUSE MERK OBTAINED MONEY FOR YIELDPLUS OR SCHWAB BY MEANS OF MISREPRESENTATIONS AND OMISSIONS

The Complaint's Third Claim is based in part upon Section 17(a)(2) of the Securities Act, which provides that it is unlawful "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact . . . ."

Merk moves to dismiss this claim by misinterpreting Section 17(a)(2) as requiring that he *personally* obtained money or property by means of the misrepresentations or omissions. Mem. at 17.  In fact, it is sufficient if Merk's misrepresentations or omissions caused Schwab or YieldPlus to obtain money.  As stated in *SEC v. Delphi,* No. 06-14891, 2008 WL 4539519, at *9 (E.D. Mich. Oct. 8, 2008),

> Section 17(a)(2) does not require that the person who makes the false or misleading statement in an offering document needs to obtain a financial benefit. Rather, it is sufficient that [defendant-officer's] actions resulted in a benefit to [the company's] efforts to raise money through its public offerings.

1    In the present case, the Defendants' frauds resulted in huge inflows of money to

2   YieldPlus.  YieldPlus's assets grew from under $7.5 billion to over $13 billion from mid-2006

3   to mid-2007, the year following Merk's and the Cash Council's efforts to promote YieldPlus.

4   Compl. ¶ 54.  Under *Delphi,* this is sufficient to state a claim under Section 17(a)(2).

5    The cases cited by Merk (Mem. at 17) do not call for a different result.  *See SEC v.*

6   *Glantz,* No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. 1995) (the defendants

7   obtained control over funds obtained through fraud, but the court noted that it was not

8   necessary that they "profit" from the fraud).  Moreover, all of the cases cited by Merk[12] are

9   silent as to whether Section 17(a)(2) could be satisfied by a company receiving the funds

10  where the defendant is a senior executive officer, as is Merk.  Therefore, they cannot

11  overcome the case law (*Delphi, supra)* that expressly considered the issue and decided it.

12
13  **III.    THE CLAIMS FOR SCHEME LIABILITY**
            **ARE PROPER (CLAIMS TWO AND THREE)**
14

15    In addition to allegations that Merk is liable for the making of false statements and

16  omissions, the Complaint also alleges that he engaged in schemes to defraud, in violation of

17  Rules 10b-5(a) and (c) and Securities Act Section 17(a)(1) and (3)  (quoted in notes 2 and 3,

18  above).  Scheme liability under those provisions exists where one "engaged in conduct that

19  had the principal purpose and effect of creating a false appearance of fact in furtherance of the

20  scheme."  *SEC v. Leslie,* No. C 07-3444, 2010 WL 2991038, at *34 (N.D. Cal. Jul. 29, 2010).

21    Contrary to Merk's assertion (Mem. at 17-19), the Complaint amply alleges that he

22  engaged in "deceptive conduct."  For example, section I.D.1., above, details Merk's role in

23  the "Cash Council," reflecting his role in a scheme to wrongfully market YieldPlus as a cash

24
25
26
27
28  _____
       [12] *See SEC v. Hopper,* No. Civ.A. H-04-1054, 2006 WL 778640, at *12 (S.D. Tex.
    2006), *SEC v. Burns,* No. 84-0454, 1986 WL 36318, at *4 (S.D. Cal. Feb. 19, 1986), and *SEC v. Forman,* No. 07-11151-RWZ, 2010 WL 2367372, at *8 (D. Mass Jun. 9, 2010).

product without full and proper disclosures of the characteristics and risks that made it fundamentally unlike a cash product.

Moreover, Merk came up with the idea to issue an August 1, 2006 press release that called YieldPlus a "cash alternative" (*id.* ¶ 50), but "substantially understated the riskiness of the fund and its prior [price] fluctuations." *Id.* Merk did not correct any of the misleading statements. *Id.* ¶¶ 57-59. The Complaint alleges that Merk's actions and failures to act "had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme to mislead the public about YieldPlus." *Id.* ¶ 61. Simply put, Merk's conduct made it necessary and inevitable that misrepresentations would be made to innocent investors.[13] The Complaint's allegations thus establish scheme liability.

Merk (Mem. at 18) relies on cases such as *SEC v. Lucent Technologies, Inc.,* 610 F. Supp. 2d 342, 360 (D.N.J. 2009), for the proposition that scheme liability can exist only if it involves "sham" or "'inherently deceptive' transactions," separate from the misleading statements. *Lucent* and other cases so holding simply strayed too far from the plain language of Rule 10b-5 and Section 17(a), and were incorrectly decided on that point. Rule 10b-5(a) and Section 17(a)(1) prohibit "any device, scheme, or artifice to defraud." Rule 10b-5(c) and Section 17(a)(3) prohibit "any [act or transaction], practice, or course of business which operates or would operate as a fraud or deceit." The plain and simple interpretation of such broad language is that it captures *all* activities that lead to any sort of fraud, even if the activities would not have been inherently wrongful, absent a misleading statement about

---

[13] Because Merk's conduct made it "necessary and inevitable" that misrepresentations would be made to innocent investors, the case law relied upon by Merk is inapposite. *See e.g., In re Brocade Comm. Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1045 (N.D. Cal. 2009) (dismissing a defendant when the allegations did not show the defendant's "conduct was primarily responsible for any specific material misrepresentation").

them.  *See SEC v. Durgarian,* 477 F. Supp. 2d 342, 352 (D. Mass. 2007) ("the terms of Rule 10b-5(c) militate against requiring a fraudulent scheme to involve clearly illegal conduct").

In contrast to *Lucent's* holding, a number of recent cases have held that scheme liability exists as a result of false statements or omissions that did not involve otherwise illegal conduct.  *See Hawaii Ironworkers Annuity Trust Fund v. Cole,* No. 3:10CV371, 2011 WL 1257756, at *6-8 (N.D. Ohio Mar. 31, 2011) (scheme liability for misstating financial results); *In re Bristol Myers Squibb Co. Sec. Litig.,* 586 F. Supp. 2d 148, 169-70 (S.D.N.Y. 2008) (scheme liability for false statements and omissions about a settlement that failed to disclose side agreements).  Thus, in the present case, it is not necessary to allege that Merk engaged in illegal conduct other than conduct resulting in the misrepresentations and omissions about YieldPlus.

## IV.   THE CLAIMS FOR AIDING-AND-ABETTING LIABILITY ARE PROPER (CLAIMS TWO, FIVE AND SEVEN)

Merk next challenges the sufficiency of the claims that he aided and abetted violations of the securities laws cited in the Second, Fifth and Seventh Claims.  The elements for aiding and abetting liability are (1) a primary violation, (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it, and (3) substantial assistance by the defendant in the commission of the primary violation.  *SEC v. Fehn,* 97 F.3d 1276, 1288 (9th Cir. 1996).  The Complaint satisfies these elements.

The primary violations consist of the misrepresentations and omissions of material fact, and other fraudulent devices to mislead regarding YieldPlus.  Merk knowingly provided substantial assistance through the conduct described above.  Merk unsuccessfully tries to minimize his role by asserting that he simply "failed to correct isolated word choices made by others."  Mem. at 19.  His role was far more than that.  For example, the same actions that

1  constituted Merk's substantial participation (see section I.D, above) in the primary violations

2  also constituted "substantial assistance" to the primary violations.

3        Merk erroneously downplays his role by claiming it was simply "inaction," which he

4  contends is insufficient to create liability unless he had "conscious intent to assist in the

5  perpetration" of the wrong.  Mem. at 21, *quoting Lucent,* 610 F. Supp. 2d at 362.  First,

6  Merk's conduct was not mere inaction; it included affirmative steps, detailed in section I.D.,

7  above.  Second, even if "conscious intent" were required, to the extent that his conduct

8  involved "inaction," he had the requisite intent to trigger aiding-and-abetting liability.  The

9  Complaint alleges that Merk's actions and "failures to act . . . had the principal purpose and

10  effect of creating a false appearance of fact."    Compl. ¶ 61.  Intent can be averred generally.

11  Fed.R.Civ.P. 9; *SEC v. Mercury Interactive, LLC,* No. C 07-2811 JF (RS), 2009 WL 2984769,

12  at *3 (N.D. Cal. Sep. 15, 2009).  Third, as Merk was aware, he was relied upon by, among

13  others, members of the "Cash Council" and the marketing group that he supervised, to correct

14

15  misrepresentations and omissions of material fact.  Compl. ¶¶ 39 & 57.

16

17        Thus, the Complaint's allegations are sufficient for an aiding-and-abetting claim.  *See*

18  *SEC v. Lucent,* 610 F. Supp. 2d at 363 (cited by Merk at Mem., p. 21) (court denied summary

19  judgment to a defendant on an aiding-and-abetting claim because the defendant failed to

20  inform the financial officials of accounting improprieties in her group).  Similarly in the

21  present case, the Complaint (which must be taken as true) alleges that Merk was obligated to

22  make sure that his department gave a truthful and accurate picture of YieldPlus.

23

24        Unlike other cases cited by Merk (Mem. at 20), the Complaint alleges "affirmative

25  conduct" that was a "substantial causal factor" of the misrepresentations and omissions.  *See*

26  *SEC v. Appuzo,* No. 3:07CV1910(AWT), 2010 WL 5359928, at *15 (D. Conn. Dec. 20, 2010)

27  (defendant only had "awareness and approval" of the primary violation, but had not engaged

28

in affirmative conduct to cause the violations); *SEC v. Patel,* No. 07-cv-39-SM, 2008 WL 782483, at *11 (D.N.H. Mar. 24, 2008) ("few, if any" of the allegations amounted to affirmative conduct, and "none of those that arguably do rise to that level specifically link [defendant]" to the particular false statement at issue).

Merk attacks the Complaint for not naming people who relied on him.  Mem. at 21. The Complaint  (¶ 39) sufficiently alleges the organizational components (e.g., Cash Council, department descriptions) that relied on Merk.  Additional detail is not needed.  "To comply with the requirements of Rule 9(b), a plaintiff does not need to recite the evidence or plead detailed evidentiary matters." *McQueen v. Woodstream Corp.,* 248 F.R.D. 73, 78 (D.D.C. 2008) (citation omitted).

Finally, Merk argues that there can be no claim for aiding-and-abetting violations of Rule 206(4)-8 under the Advisers Act (the Fifth Claim), because that rule did not take effect until September 10, 2007.  But a number of the misrepresentations and omissions occurred after that date (see, e.g., Compl. ¶¶ 113, 149, 153), and the Fifth Claim is based upon the aiding and abetting of violations that occurred on or after September 10, 2007.

## V.   THE CLAIM RELATED TO REDEMPTIONS BY OTHER SCHWAB FUNDS IS PROPER (CLAIM FOUR)

Merk also challenges the allegations that he aided and abetted violations of the Advisers Act.  Merk aided and abetted a violation of Advisers Act by permitting other Schwab mutual funds to learn material, non-public information and then redeem their investments in YieldPlus.[14]  Merk thus breached the fiduciary duty that he owed the fund

---

[14]   Section 206(1) of the Advisers Act, [15 U.S.C. § 80b-6(1)] prohibits advisers from "employ[ing] any device, scheme or artifice to defraud any client or prospective client." Section 206(2) [15 U.S.C. § 80b-6(2)] prohibits investment advisers from "engag[ing] in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client."  "Section 206(1) requires fraudulent intent, while § 206(2) requires only negligence." *SEC v. Treadway*, 430 F. Supp. 2d 293, 338 (S.D.N.Y. 2006) (citations

(and caused the Schwab entities to breach their fiduciary duties) as a result of his position as a senior officer and trustee. Compl. ¶¶ 163-168, 172. Merk failed to inform YieldPlus's other trustees of the facts surrounding these redemptions. *Id*. ¶¶ 169-70. The redemptions by other Schwab funds "came at a time when YieldPlus was struggling to raise cash to meet redemptions by selling bonds in a declining market." *Id*. ¶ 171.

In short, Merk allowed one shareholder of YieldPlus to use material, non-public information for its benefit at the expense of other shareholders. This is enough to create liability for aiding and abetting violations of Section 206(1) and (2). *See SEC v. Gabelli*, 2010 WL 1253603, at *9-10 (S.D.N.Y. Mar. 17, 2010) (denying motion to dismiss in a market timing case where adviser was alleged to have allowed one shareholder to market time at expense of other shareholders of the fund); *Treadway*, 430 F. Supp. 2d at 338-39 (claim over whether adviser "provided preferential treatment to one shareholder" at the expense of others).

Merk fails to assert any valid challenge to the claim. First, Merk asserts that there must be a "violat[ion] of trust and confidence." Mem. at 22. But the Complaint (¶¶ 167, 172) alleges that Merk, and the Schwab entities violated their fiduciary duty to YieldPlus. Second, Merk cites insider trading cases under the Exchange Act to argue that the SEC has to allege a personal benefit. Mem. at 22. But this claim is not based upon the Exchange Act. Rather it is based upon the quite different requirements of the Advisers Act, which does not require that the actor actually receive a personal benefit. Rather, the act "reflects . . . a congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline an

omitted); *SEC v. Trabulse*, 526 F. Supp. 2d 1001, 1007 n.3 (N.D. Cal. 2007) (same). As the court in *Treadway* held, "[t]he extent of conduct subject to liability under the Advisers Act is broad." 430 F. Supp. 2d at 338. Here, the complaint alleges sufficient facts to demonstrate that Merk is liable for aiding and abetting violations of Sections 206(1) and (2).

1    investment adviser – consciously or unconsciously – to render advice which was not

2    disinterested." *SEC v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009) (quoting *SEC v. Wall Street*

3    *Transcript Corp.*, 422 F.2d 1371, 1376 (2d Cir. 1970)).  The SEC does not have to establish

4    there was even an intention to defraud.  *SEC v. Capital Gains Research Bureau, Inc.*, 375

5    U.S. 180, 193 (1963) ("Fraud has a broader meaning in equity (than at law) and intention to

6    defraud or to misrepresent is not a necessary element.") (quotations omitted).

7            Third, for these same reasons, Merk errs in relying on insider trading law to claim that

8    there can be no "improper tipping" when the information is "shared within the corporate

9    entities."  Mem. at 22-23.  As noted above, the allegations in this case are that Merk allowed

10   Schwab entities access to material non-public information belonging to *YieldPlus*, not

11   belonging to every Schwab entity.  Also, while Merk claims that the officer of the Target Date

12   Funds "was an officer of Schwab Investments, the Trust that issued the YieldPlus shares,"

13   that is an allegation outside of the Complaint, so it cannot be considered for the present

14   motion.

15           Finally, Merk claims that the Complaint does not provide enough detail about the

16   specific facts disclosed.  He cites *Shurkin v. Golden State Vintners, Inc.,* 471 F. Supp. 2d 998,

17   1026 (N.D. Cal. 2006), but that was a private-plaintiff case subject to heightened pleading

18   requirements of the Private Securities Litigation Reform Act.  The SEC is not subject to those

19   requirements.  *See SEC v. ICN Pharmaceuticals, Inc.,*  84 F. Supp. 2d 1097, 1099 (C.D. Cal.

20   2000).  The Complaint in the present case contains ample detail.

21   **VI.    THE SEC'S CLAIMS DO NOT IMPROPERLY
            APPLY RETROACTIVITY PRINCIPLES**

22           Merk essentially repeats Daifotis's argument that the provisions of the Dodd-Frank

23   Act that allow claims for aiding-and-abetting violations of the ICA are impermissibly

24   retroactive.  The SEC's Opposition to Daifotis's Motion to Dismiss (in section V,

incorporated herein) explains that the argument is incorrect because those provisions of the

Dodd-Frank Act merely create an additional forum (the district court) in which the SEC may

bring such claims, in addition to the SEC's long-standing ability to bring such claims in

administrative proceedings.  Because those provisions merely create an additional forum,

rather than creating a new liability, the claims do not run afoul of retroactivity principles.

Merk questions whether the SEC relies upon certain sections of the Dodd-Frank Act to

apply recklessness as the standard for aiding-and-abetting claims. Mem. at 24.  Without

conceding that such provisions of the Dodd-Frank Act do not apply to conduct predating the

statute's enactment, the SEC is not arguing in this particular case that recklessness is the

standard for aiding-and-abetting claims, so the Court need not address that issue.[15]

## <u>CONCLUSION</u>

For the above reasons, Merk's motion to dismiss should be denied.

DATED: April 28, 2011                Respectfully submitted,

                                     _____/s/ David J. Gottesman_____
                                     David J. Gottesman
                                     Frederick L. Block
                                     Robert A. Cohen
                                     Melissa R. Hodgman

                                     Attorneys for Plaintiff
                                     SECURITIES AND EXCHANGE
                                     COMMISSION
                                     100 F Street, N.E.
                                     Washington, DC 20549-4030
                                     Telephone:  (202) 551-4470 (Gottesman)
                                     Facsimile:  (202) 772-9245 (Gottesman)

---

[15] As discussed in the SEC's Consolidated Opposition to Defendants' Motions to Strike, filed herewith, recklessness is the appropriate standard with regard to a number of the primary violations alleged in the Complaint, and with regard to primary violations that form the predicate for certain of the aiding and abetting claims.