Laurie Edelstein (Bar No. 164466)
Lee Taylor (Bar No. 243863)
BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, California 94104
Telephone: (415) 563-0600
Facsimile:  (415) 563-0613
ledelstein@bruneandrichard.com
ltaylor@bruneandrichard.com

Susan E. Brune (*pro hac vice*)
David Elbaum (*pro hac vice*)
MaryAnn Sung (*pro hac vice*)
BRUNE & RICHARD LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 668-1900
Facsimile:  (212) 668-0315
sbrune@bruneandrichard.com
delbaum@bruneandrichard.com
msung@bruneandrichard.com

*Attorneys for Randall Merk*

**BRUNE & RICHARD LLP**
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Securities and Exchange Commission, | No. 3:11-cv-00137-WHA |
| Plaintiff, | **REPLY MEMORANDUM IN SUPPORT OF RANDALL MERK'S MOTION TO DISMISS** |
| v. | |
| Kimon P. Daifotis and Randall Merk, | Date:   June 2, 2011 |
| Defendants. | Time:  2:00 pm |
| | Judge: Hon. William H. Alsup |
| | Complaint Filed:   January 11, 2011 |
| | Trial Date:   July 9, 2012 |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

REPLY STATEMENT OF FACTS..................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.   THE CLAIMS OF PRIMARY LIABILITY BASED ON CERTAIN
     ALLEGED FRAUDULENT MISSTATEMENTS MUST BE DISMISSED
     (CLAIMS ONE, THREE, AND SIX)........................................................................ 2

     A.   Rule 9(b) Requires a Statement-by-Statement Analysis................................. 2

     B.   The Complaint Fails to Allege Substantial Participation with
          Particularity.................................................................................................... 3

          1.   The November 2007 Statements ................................................... 3

          2.   The YieldPlus Marketing Materials ............................................. 4

     C.   The SEC Cannot Rely on the Group Pleading Doctrine................................. 5

     D.   The Complaint Fails to Allege with Particularity Why Certain of the
          Challenged Statements Were Materially False or Misleading.......................... 7

          1.   Historical Statement of NAV Fluctuations .................................. 7

          2.   Use of a U.S. Treasury Index as a Performance Benchmark........ 8

          3.   Failure to Disclose Alt-A Holdings ............................................. 9

II.  THE SECTION 17(a)(2) CLAIM MUST BE DISMISSED FOR FAILURE TO
     ALLEGE RECEIPT OF MONEY OR PROPERTY (CLAIM THREE)........................ 10

III. THE CLAIMS FOR SCHEME LIABILITY MUST BE DISMISSED FOR
     FAILURE TO ALLEGE DECEPTIVE CONDUCT (CLAIMS TWO AND
     THREE) ................................................................................................................ 11

IV.  THE CLAIMS FOR AIDING AND ABETTING SECURITIES FRAUD
     BASED ON CERTAIN MISSTATEMENTS AND OMISSIONS MUST BE
     DISMISSED (CLAIMS TWO, FIVE, AND SEVEN) ...................................... 12

V.   THE CLAIM FOR AIDING AND ABETTING BASED ON REDEMPTIONS
     BY THE TARGET DATE FUNDS MUST BE DISMISSED (CLAIM FOUR) ............. 13

CONCLUSION.................................................................................................................. 15

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

i

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Alfus* v. *Pyramid Tech. Corp.*,
   745 F. Supp. 1511 (N.D. Cal. 1990) ................................................................. 2, 3

5

*Am. Fin. Int'l Grp.-Asia, L.L.C.* v. *Bennett*,
   No. 05 Civ. 8988(GEL), 2007 WL 1732427 (S.D.N.Y. June 14, 2007) ................... 6

6

7

*Dirks* v. *SEC*,
   463 U.S. 646 (1983) .................................................................................... 13, 14

8

*Elliott Assocs., L.P.* v. *Hayes*,
   141 F. Supp. 2d 344 (S.D.N.Y. 2000) .................................................................. 5

9

*Hawaii Ironworkers Annuity Trust Fund* v. *Cole*,
   No. 3:10-CV-371, 2011 WL 1257756 (N.D. Ohio Mar. 31, 2011) ........................ 11

10

11

*Howard* v. *Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ............................................................................ 3

12

*Hunt* v. *Alliance N. Am. Gov't Income Trust, Inc.*,
   159 F.3d 723 (2d Cir. 1998) ............................................................................... 7

13

14

*In re Aftermarket Filters Antitrust Litig.*,
   No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .................................. 2

15

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) ............................................................................ 7

16

17

*In re Apple Computer, Inc.*,
   127 F. App'x 296 (9th Cir. 2005) ........................................................................ 8

18

19

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*,
   No. 08 MDL 1963, 2011 WL 223540 (S.D.N.Y. Jan. 19, 2011) ............................ 2

20

21

*In re Bristol Myers Squibb Co. Sec. Litig.*,
   586 F. Supp. 2d 148 (S.D.N.Y. 2008) ................................................................ 11

22

*In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*,
   615 F. Supp. 2d 1018 (N.D. Cal. 2009) ........................................................... 4, 5

23

24

*In re Calpine Corp. Sec. Litig.*,
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) .............................................................. 2

25

*In re Citigroup Inc. Sec. Litig.*,
   No. 09-md-2070 (SHS), 2010 WL 4484650 (S.D.N.Y. Nov. 9, 2010) ................... 9

26

27

*In re GlenFed, Inc. Sec. Litig.*,
   60 F.3d 591 (9th Cir. 1995) ............................................................................... 5

28

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

ii

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

*In re MoneyGram Int'l, Inc. Sec. Litig.*,
   626 F. Supp. 2d 947 (D. Minn. 2009) ................................................................ 9

*In re Network Equip. Techs., Inc., Litig.*,
   762 F. Supp. 1359 (N.D. Cal. 1991) ................................................................... 6

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d 472 (S.D.N.Y. 2005) ............................................................. 11

*In re Rasterops Corp. Sec. Litig.*,
   No. C-92-20349 RMW (EAI), 1993 WL 183510 (N.D. Cal. Jan. 6, 1993) ............ 2

*In re Ross Sys. Sec. Litig.*,
   No. C-94-0017-DLJ, 1994 WL 583114 (N.D. Cal. July 21, 1994) ........................ 8

*In re Seracare Life Scis., Inc. Sec. Litig.*,
   No. 05-cv-2335-H (CAB), 2007 WL 935583 (S.D. Cal. Mar. 19, 2007) ................ 3

*In re Software Toolworks Inc. Sec. Litig.*,
   50 F.3d 615 (9th Cir. 1994) ............................................................................. 3

*In re Splash Tech. Holdings Inc. Sec. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........................................................... 15

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ................................................................... 6, 7, 15

*In re Sun Microsys., Inc. Sec. Litig.*,
   No. C-89-20351-RPA, 1990 WL 169140 (N.D. Cal. Aug. 20, 1990) ..................... 3

*In re Syntex Corp. Sec. Litig.*,
   95 F.3d 922 (9th Cir. 1996) ............................................................................. 8

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) ........................................................... 15

*Kaplan* v. *Rose*,
   49 F.3d 1363 (9th Cir. 1995) ........................................................................... 8

*Miller* v. *Thane*,
   519 F.3d 879 (9th Cir. 2008) ....................................................................... 7, 8

*Molinari* v. *Symantec Corp.*,
   No. C-97-20021-JW, 1998 WL 78120 (N.D. Cal. Feb. 17, 1998) ........................ 6

*Neubronner* v. *Milken*,
   6 F.3d 666 (9th Cir. 1993) ............................................................................. 15

*Pegasus Holdings* v. *Veterinary Ctrs. of Am.*,
   38 F. Supp. 2d 1158 (C.D. Cal. 1998) ............................................................... 6

*Plumbers Union Local No. 12 Pension Fund* v. *Ambassador's Grp.*,
   717 F. Supp. 2d 1170 (E.D. Wash. 2010) ......................................................... 4

*Rothman* v. *Gregor*,
   220 F.3d 81 (2d Cir. 2000) ............................................................................. 2

*SEC* v. *Baxter*,
No. C-05-03843 RMW, 2007 WL 2013958 (N.D. Cal. July 11, 2007) ............................... 6

*SEC* v. *Berry*,
580 F. Supp. 2d 911 (N.D. Cal. 2008) .................................................................... 3

*SEC* v. *Burns*,
No. 84-0454, 1986 WL 36318 (S.D. Cal. Feb. 19, 1986).............................................. 10

*SEC* v. *C.R. Richmond & Co.*,
565 F.2d 1101 (9th Cir. 1977) ............................................................................. 8

*SEC* v. *Capital Gains Research Bureau, Inc.*,
375 U.S. 180 (1963)........................................................................................... 14

*SEC* v. *Delphi Corp.*,
No. 06-14891, 2008 WL 4539519 (E.D. Mich. Oct. 8, 2008)........................................ 10, 11

*SEC* v. *DiBella*,
587 F.3d 553 (2d Cir. 2009) ................................................................................ 14

*SEC* v. *Durgarian*,
477 F. Supp. 2d 342 (D. Mass. 2007) .................................................................... 12

*SEC* v. *Fehn*,
97 F.3d 1276 (9th Cir. 1996) ............................................................................... 4

*SEC* v. *Forman*,
No. 07-11151-RWZ, 2010 WL 2367372 (D. Mass. June 9, 2010) ................................... 10, 11

*SEC* v. *Fraser*,
No. CV-09-00443-PHX-GMS, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ......................... 5

*SEC* v. *Fraser*,
No. CV-09-00443-PHX-GMS, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010)..................... 5, 10

*SEC* v. *Gabelli*,
No. 08 CV 3868 (DAB), 2010 WL 1253603 (S.D.N.Y. Mar. 17, 2010) ............................. 14

*SEC* v. *Gane*,
No. 03-61553-CIV-SEITZ, 2005 WL 90154 (S.D. Fla. Jan. 4, 2005) ............................... 8

*SEC* v. *Glantz*,
No. 94-cv-5737 (CSH), 1995 WL 562180 (S.D.N.Y. Sept. 20, 1995).............................. 10

*SEC* v. *Lucent Techs., Inc.*,
610 F. Supp. 2d 342 (D.N.J. 2009) .................................................................. 11, 13

*SEC* v. *Moran*,
922 F. Supp. 867 (S.D.N.Y. 1996) ....................................................................... 14

*SEC* v. *Mozilo*,
No. CV 09-3994-JFW (MANx), 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009)....................... 7

*SEC* v. *Norton*,
No. 95 Civ. 4451 (SHS), 1997 WL 611556 (S.D.N.Y. Oct. 3, 1997) ............................... 10

**BRUNE & RICHARD LLP**
**235 Montgomery Street, Suite 1130**
**San Francisco, CA 94104**

iv

*SEC* v. *Treadway,*
  430 F. Supp. 2d 293 (S.D.N.Y. 2006) ............................................................................ 14

*SEC* v. *Yuen,*
  221 F.R.D. 631 (C.D. Cal. 2004) ............................................................................... 5, 6

*Siemers* v. *Wells Fargo & Co.,*
  No. C 05-04518 (WHA), 2007 WL 760750 (N.D. Cal. Mar. 9, 2007) ............................. 3, 4, 5

*Simpson* v. *AOL Time Warner Inc.,*
  452 F.3d 1040 (9th Cir. 2006) ................................................................................ 11, 13

*Sprewell* v. *Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) .................................................................................... 5, 12

*Steadman* v. *SEC,*
  603 F.2d 1126 (5th Cir. 1979) ...................................................................................... 13

*Strassman* v. *Fresh Choice, Inc.,*
  No. C-95-20017 (RPA), 1995 WL 743728 (N.D. Cal. Dec. 7, 1995) ............................... 6

*United States* v. *O'Hagan,*
  521 U.S. 642 (1997)....................................................................................................... 15

*United States* v. *Persky,*
  520 F.2d 283 (2d Cir. 1975) ........................................................................................ 13

*Vernazza* v. *SEC,*
  327 F.3d 851 (9th Cir. 2003) ....................................................................................... 13

*Wool* v. *Tandem Computers, Inc.,*
  818 F.2d 1433 (9th Cir. 1987) ........................................................................................ 5

## OTHER AUTHORITIES

Selective Disclosure and Insider Trading,
  65 Fed. Reg. 51,716 (Aug. 24, 2000) ........................................................................... 15

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

**PRELIMINARY STATEMENT**

The SEC's Opposition fails to show that Mr. Merk is responsible for the vast majority of the alleged misrepresentations in the complaint.  The SEC impliedly concedes that the complaint fails to satisfy the heightened pleading requirements of Rule 9(b).  The SEC relies on the lower standard of Rule 8, ignores the Ninth Circuit's standard for "substantial participation," and improperly seeks refuge in the group pleading doctrine.  Moreover, the SEC cannot escape the fundamental flaw in its attempt to hold Mr. Merk personally responsible for the Fund's marketing materials:  The core statements the SEC challenges were indisputably created and issued before Mr. Merk had any involvement at all in the Fund's marketing.  Further, the SEC fails to allege that certain of the alleged statements were materially false or misleading.  As a result, all misrepresentation claims against Mr. Merk should be dismissed, with two exceptions.  (This motion has not challenged the SEC's claims under Rule 10b-5(b) based on one of the alleged misstatements in the August 2007 Q&A and under Section 34(b) for the alleged misstatement in the November 15, 2006 Registration Statement.)  These two exceptions, however, do not mean that the SEC may also proceed on the more than a dozen other alleged misstatements that, after a two-year investigation, are not pled with particularity.  Finally, the SEC cannot proceed on its scheme liability, 17(a)(2), and selective disclosure claims, or the ICA aiding and abetting claim, each of which is foreclosed as a matter of law.

**REPLY STATEMENT OF FACTS**

The SEC does not dispute that the Fund disclosed facts and risks at the heart of this case in its prospectus and additional periodic filings (which the SEC does not dispute are subject to judicial notice).  Among other things, Schwab informed investors that the Fund "has a higher risk profile than a money market fund" and that "the value of your investment in the fund will fluctuate, which means that you could lose money."  (Ex. 2 at 2-3.)[1]  The Fund also disclosed its NAV data for the prior five years.  (*Id.* at 7.)  The SEC suggests that the Court should not consider the Fund's prospectus.  (SEC Br. at 3.)  But the Fund's marketing materials expressly

---

[1]   Unless otherwise stated, referenced exhibits are attached to the April 7, 2011 Taylor Declaration and internal citations in cases are omitted.

MERK'S REPLY IN SUPPORT OF MOTION TO DISMISS                    No. 3:11-cv-137-WHA

1   advised investors to read the prospectus, thus incorporating it by reference.  For example, the two

2   September 2006 documents both state:  "Investors should consider carefully information

3   contained in the prospectus, including investment objectives, risks, charges, and expenses. . . .

4   Please read the prospectus carefully before investing."  (Ex. 9 at 1; Ex. 10 at 1.)

5       The SEC also argues that the Court cannot consider Mr. Merk's account statement

6   showing that he invested $500,000 in YieldPlus on August 10, 2007, three days after the SEC

7   claims he committed fraud.  (SEC Br. at 2-3.)  The SEC does not dispute that Mr. Merk made

8   this investment, which he confirmed at his SEC deposition, or the authenticity of the account

9   statement.  The SEC objects simply because it wanted to plead its case without revealing this

10  important fact to the Court.  In these circumstances, the Court has the discretion to treat the

11  account statement as the equivalent of a Form 4.[2]  In any event, while highly relevant to the

12  SEC's claims, the statement is not necessary to the resolution of the issues raised in this motion.

**ARGUMENT**

**I.    THE CLAIMS OF PRIMARY LIABILITY BASED ON CERTAIN ALLEGED FRAUDULENT MISSTATEMENTS MUST BE DISMISSED (CLAIMS ONE, THREE, AND SIX)**

**A.    Rule 9(b) Requires a Statement-by-Statement Analysis**

17      The SEC first tries to short circuit the Court's analysis by claiming that Mr. Merk cannot

18  dispute the sufficiency of the complaint's allegations with respect to specific statements.  (SEC

19  Br. at 5, 11.)  The SEC relies solely on an antitrust case governed by Rule 8.  *See In re*

20  *Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *3 (N.D. Ill. Nov. 5,

21  2009).  Applying Rule 9(b), however, courts "routinely analyze complaints statement by

22  statement."  *Alfus* v. *Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1517 n.4 (N.D. Cal. 1990); *see*

23  *also In re Rasterops Corp. Sec. Litig.*, No. C-92-20349 RMW (EAI), 1993 WL 183510, at *3

24  (N.D. Cal. Jan. 6, 1993) (court must analyze "sufficiency of allegations by using a 'statement-by-

25

26  [2]   Courts routinely take judicial notice of Form 4s on a motion to dismiss.  *See, e.g.*, *In re Bear Stearns Cos. Sec., Deriv., and ERISA Litig.*, No. 08 MDL 1963, 2011 WL 223540, at *145

27  (S.D.N.Y. Jan. 19, 2011) (collecting cases); *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1075-76 (N.D. Cal. 2003); *see also Rothman* v. *Gregor*, 220 F.3d 81, 94 (2d Cir. 2000)

28  (taking notice that defendant bought shares).

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

2

1    statement' approach"); *In re Sun Microsys., Inc. Sec. Litig.*, No. C-89-20351-RPA, 1990 WL

2    169140, at *2 (N.D. Cal. Aug. 20, 1990) ("proper inquiry in the Ninth Circuit").  This analysis

3    applies to all the elements, including whether (i) the defendant substantially participated in

4    making the statements, *see SEC* v. *Berry*, 580 F. Supp. 2d 911, 922-23 (N.D. Cal. 2008), and (ii)

5    the statements were materially misleading.  *See Alfus*, 745 F. Supp. at 1517 n.4.

**B.     The Complaint Fails to Allege Substantial Participation with Particularity**

7            The SEC's opposition brief never mentions the actual standard for "substantial

8    participation" defined by the Ninth Circuit.  The "substantial participation" test requires that the

9    complaint allege with particularity facts that show Mr. Merk was involved in "*extensive* review

10   and discussions" and had a "*significant* role in drafting and editing" each of the statements

11   alleged to be false or misleading.  *In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 628-29

12   & n.3 (9th Cir. 1994) (emphasis added); *see also Howard* v. *Everex Sys., Inc.*, 228 F.3d 1057,

13   1061 n.5 (9th Cir. 2000).  Contradicting the Ninth Circuit's standard, the SEC complains that Mr.

14   Merk is not permitted to argue "over whether his involvement was significant enough."  (SEC

15   Br. at 10.)  But that is exactly the point of a motion to dismiss under Rule 9(b), as this Court has

16   recognized.  In *Siemers* v. *Wells Fargo & Co.*, this Court dismissed a fraud claim after finding

17   that:  "The allegations suggest that Stephens participated in the creation of the prospectuses.  But

18   there is no allegation of *substantial* or *intricate* involvement."  No. C 05-04518 (WHA), 2007

19   WL 760750, at *19 (N.D. Cal. Mar. 9, 2007) (Alsup, J.) (emphasis in original); *see also In re*

20   *Seracare Life Scis., Inc. Sec. Litig.*, No. 05-cv-2335-H (CAB), 2007 WL 935583, at *10 (S.D.

21   Cal. Mar. 19, 2007) (complaint failed "to allege with particularity the degree of substantial

22   participation or intricate involvement  required").

**1.     The November 2007 Statements**

24           The SEC does not dispute that its allegations about the November 2007 email and

25   November 2007 "Manager's Discussion" – that Mr. Merk merely received a copy – are

26   insufficient to show "substantial or intricate involvement."  *Siemers*, 2007 WL 760750, at *19.

27   (Compl. ¶¶ 153, 159.)  The SEC's allegations relating to the November 2007 Talking Points also

28   fail to meet the *Software Toolworks* standard.  The SEC asserts that Mr. Merk "suggested an edit

**BRUNE & RICHARD LLP**<br>**235 Montgomery Street, Suite 1130**<br>**San Francisco, CA 94104**

3

and approved" the talking points. (SEC Br. at 10.) But "suggesting *an* edit" is not a "*significant role in drafting and editing*," especially since the SEC never says what the edit was or that it was related to the alleged misstatement. *See In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1045 (N.D. Cal. 2009) (finding allegations failed to show defendant was "primarily responsible for any specific material misrepresentation"); *Siemers*, 2007 WL 760750, at *19 ("As importantly, there are no allegations that the passages of the prospectuses reviewed by Stephens' executives were the passages that were misleading.").[3]

### 2. The YieldPlus Marketing Materials

The SEC cannot escape the fundamental implausibility at the heart of its claims against Mr. Merk relating to the Fund's marketing materials. The SEC's complaint shows that the key statements challenged by the SEC – that the Fund "seeks to provide higher yield with slightly higher risk than a money market fund" and "is a smart cash alternative" – were used in Schwab marketing materials by September 2005 at the latest. (Compl. ¶¶ 42, 74(f)-(g); *see also* SEC Br. at 9.) This was several months before the Cash Council was formed and Mr. Merk was alleged to have had any involvement in the Fund's marketing. Those statements were then merely repeated, using almost identical words, in subsequent marketing materials. (*Compare* Compl. ¶¶ 74(a)-(e), (h).) In addition, the January 2006 brochure establishes that the Fund was included on the cash page on Schwab's website by that time. (Ex. 7.) The SEC cannot claim that Mr. Merk had "substantial or intricate involvement" in preparing statements that had already been drafted and issued long before he had *any* involvement. *Siemers*, 2007 WL 760750, at *19.

The SEC suggests that Mr. Merk cannot "quibble" with allegations in the complaint. (SEC Br. at 9.) But in the Ninth Circuit, courts "need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell* v. *Golden State*

---

[3] The SEC's reliance on *SEC* v. *Fehn*, 97 F.3d 1276, 1293 (9th Cir. 1996), is misplaced. (SEC Br. at 10.) *Fehn* addressed the "substantial assistance" test for secondary liability, not the "substantial participation" test for primary liability. In any event, the attorney-defendant in *Fehn* was retained to provide, and provided, legal advice regarding the specific disclosures at issue and had far more involvement than merely "suggesting an edit." *Plumbers Union Local No. 12 Pension Fund* v. *Ambassador's Grp.*, 717 F. Supp. 2d 1170 (E.D. Wash. 2010), also does not help the SEC. (SEC Br. at 10 n.7.) The rationale of that case was tied to the specific context of corporate conference calls, and is not applicable here.

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The SEC has no response to the *Sprewell* rule.

2       The SEC argues that the Cash Council was seeking to "increase[] cash promotion" and

3   "highlight[]" the Fund on the website at that time.  (SEC Br. at 9; Compl. ¶ 42.)  But highlighting

4   an *existing* statement does not constitute "substantial and intricate involvement" in its creation.

5   In any event, the SEC's theory fails to show that Mr. Merk's role on the Cash Council and

6   "review" of the marketing materials constitute "substantial or intricate involvement."  Finally,

7   the SEC alleges only that Mr. Merk was the source of the idea for the August 1, 2006 press

8   release and saw it.  (Compl. ¶ 49.)  Those allegations do not show he had any role in drafting or

9   editing the release.  *Brocade*, 615 F. Supp. 2d at 1044-45; *Siemers*, 2007 WL 760750, at *19.[4]

10      **C.   The SEC Cannot Rely on the Group Pleading Doctrine**

11      Implicitly conceding that the complaint fails to satisfy the substantial participation test,

12  the SEC seeks refuge in the group pleading doctrine.  But that doctrine is inapplicable here.

13  Group pleading is "disfavored" as inconsistent with Rule 9(b), *SEC* v. *Yuen*, 221 F.R.D. 631, 635

14  (C.D. Cal. 2004), and it is "extremely limited in scope."  *Elliott Assocs., L.P.* v. *Hayes*, 141 F.

15  Supp. 2d 344, 354 (S.D.N.Y. 2000).  The doctrine presumes substantial participation in limited

16  circumstances, where the defendant is a member of a narrow group that is directly involved in

17  the preparation of certain types of statements.  *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 592-

18  93 (9th Cir. 1995).  The doctrine has been applied to misstatements in "prospectuses, registration

19  statements, annual reports, press releases, or other 'group-published information,'" against "a

20  narrowly defined group of officers who had *direct involvement* not only in the *day-to-day affairs*

21  of [the company] in general but also in *[the company's] financial statements in particular*."  *Id.*

22  (citing *Wool* v. *Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987) (emphasis

23  added)); *see Strassman* v. *Fresh Choice, Inc.*, No. C-95-20017 (RPA), 1995 WL 743728, at *14-

24  ────────────────

    [4]  The SEC's superficial attempts to distinguish *SEC* v. *Fraser*, No. CV-09-00443-PHX-GMS,
25  2009 WL 2450508 (D. Ariz. Aug. 11, 2009), do not withstand scrutiny.  (SEC Br. at 8.)  The
    court dismissed a complaint that alleged Fraser participated in disclosure team meetings
26  about the 10-Ks at issue, and signed internal certifications and letters to auditors confirming
    that he was "responsible for the fair presentation of the consolidated financial statements."
27  (First Am. Compl. ¶ 59(iv), *SEC* v. *Fraser*, 2009 WL 1469290 (D. Ariz. Mar. 12, 2009).)
    The later decision in *Fraser*, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010), adds nothing
28  because the SEC relied on an entirely different theory in its amended complaint.

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

MERK'S REPLY IN SUPPORT OF MOTION TO DISMISS                    No. 3:11-cv-137-WHA

1  15 (N.D. Cal. Dec. 7, 1995) (rejecting group pleading against officers who were involved in

2  management but had no "functional relationship" with the alleged misrepresentations).

3        The SEC improperly seeks to sweep in documents that are not "group published" and

4  relies solely on Mr. Merk's status as a senior executive to hold him responsible for statements

5  that were not within his alleged day-to-day job responsibilities:  Mr. Merk is not alleged to have

6  had a day-to-day role in marketing or compliance functions.  There is no presumption that all

7  senior executives substantially participate in every company statement.  *See id.*

8        The SEC cites no authority for its proposition that advertisements, websites, or marketing

9  releases are "identified forms of group published information" that are in any way analogous to

10  recognized group publications, such as SEC filings and earnings releases.  *In re Network Equip.*

11  *Techs., Inc., Litig.*, 762 F. Supp. 1359, 1367 (N.D. Cal. 1991).  Indeed, "it is far from obvious

12  that senior corporate officers would be involved in drafting text for a corporate website."  *Am.*

13  *Fin. Int'l Grp.-Asia, L.L.C.* v. *Bennett*, No. 05 Civ. 8988(GEL), 2007 WL 1732427, at *11

14  (S.D.N.Y. June 14, 2007).  The SEC's attempt to hold Mr. Merk responsible for various

15  statements listing the Fund's WAM also fails for the independent reason that the complaint does

16  not allege he had *any* role, let alone a day-to-day role, in reporting WAM.  (SEC Br. at 6.)[5]

17        In addition, the SEC should not be permitted to apply group pleading after conducting an

18  expansive, two-year investigation.  "[G]iven the SEC's substantial pre-filing investigatory

19  powers and the significant discovery already conducted in this case, the SEC's reliance upon the

20  'group published information' doctrine is misplaced and inappropriate."  *Yuen*, 221 F.R.D. at

21  635; *see In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996) (Rule 9(b) requires

22  more particularity when extensive discovery was taken).[6]

23

24  [5]  The group pleading doctrine is also inapplicable when the statements are attributed to others.
    *See Pegasus Holdings* v. *Veterinary Ctrs. of Am.*, 38 F. Supp. 2d 1158, 1165 (C.D. Cal.

25  1998); *Molinari* v. *Symantec Corp.*, No. C-97-20021-JW, 1998 WL 78120, at *10 (N.D. Cal.
    Feb. 17, 1998).  Thus, the doctrine cannot be applied to marketing statements attributed to

26  others (*see* Compl. ¶¶ 74(b), (e)-(g)), the November 2007 email (sent by someone else), or
    the Manager's Discussion and Talking Points (referencing portfolio management's views).

27  [6]  The SEC's reliance on *SEC* v. *Baxter*, No. C-05-03843 RMW, 2007 WL 2013958, at *6 n.6
    (N.D. Cal. July 11, 2007), is misplaced because the complaint there did "not rely upon the

28  'group published doctrine.'" And in *SEC* v. *Mozilo*, No. CV 09-3994-JFW (MANx), 2009

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

MERK'S REPLY IN SUPPORT OF MOTION TO DISMISS                No. 3:11-cv-137-WHA

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

**D.    The Complaint Fails to Allege with Particularity Why Certain of the Challenged Statements Were Materially False or Misleading**

**1.    Historical Statement of NAV Fluctuations**

The SEC does not dispute that the Fund accurately disclosed that its NAV fluctuated by three cents over the year-ended June 30, 2006.  Nor does the SEC dispute that the Fund provided five years of its historic NAV in its prospectus, which is precisely the information that the SEC claims in its complaint was withheld.  (Compl. ¶ 75(d).)  Instead, the SEC answers with a broad claim that the Fund's disclosures in its prospectus "make[] no difference."  (SEC Br. at 14; *id.* at 3.)  The Second Circuit rejected this very argument in *Hunt* v. *Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998).  In *Hunt*, investors challenged statements in mutual fund sales materials as misleading.  The Second Circuit held that the statements "were immaterial as a matter of law because the materials specifically referred investors to the offering materials, which contained adequate information about the Fund's risks."  *Id.* at 727.  So too here.  The SEC cannot claim the Fund's marketing materials were materially misleading without considering the additional information disclosed in the Fund's prospectus, to which the marketing materials specifically referred.  *Cf. Stac Elecs.*, 89 F.3d at 1405, 1409 (information alleged to be concealed adequately disclosed in other portions of the prospectus).

The SEC plucks out of context an isolated statement in the Ninth Circuit's decision in *In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989).  In *Apple*, the defendants argued that their statements were not misleading because the allegedly concealed risks were disclosed in press reports.  *Id.* at 1114.  The court found that issuers may not generally rely on *third-party* documents to satisfy their own disclosure obligations.  *Id.*  But the court did not consider the issue raised here:  whether issuers satisfy their obligations when they disclose the allegedly concealed information in a prospectus and tell investors to go "read the prospectus."  (Ex. 9 at 1.)

The SEC's reliance on *Miller* v. *Thane*, 519 F.3d 879 (9th Cir. 2008), is equally misplaced.  (SEC Br. at 12-14.)  In *Miller*, the plaintiffs alleged that a prospectus misrepresented the company's plans to list its stock on NASDAQ.  The defendants argued that investors could

WL 3807124, at *13 (C.D. Cal. Nov. 3, 2009), the document at issue was a Form 10-K, a paradigmatic group-published document.

MERK'S REPLY IN SUPPORT OF MOTION TO DISMISS                                    No. 3:11-cv-137-WHA

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   have pieced together the missing information by analyzing changes they had made between a

2   preliminary draft of the prospectus and the final document.  *Id.* at 887.  While the court found

3   defendants could not avoid liability by relying on "the 'drafting history' of a prospectus," *id.*,

4   that does not mean that statements in the final prospectus itself "make no difference."

5       Alternatively, the SEC suggests that the Fund's accurate statement of historic NAV data

6   should be read, in context, as a forward-looking misleading prediction of "ongoing stability."

7   (SEC Br. at 13.)  That theory fails too.  First, the challenged clause suggesting that the Fund has

8   "the performance potential and relative stability necessary in today's market" is puffery and far

9   too vague to support a fraud claim.  *See, e.g.*, *In re Apple Computer, Inc.*, 127 F. App'x 296, 304

10  (9th Cir. 2005) (puffery not actionable); *In re Ross Sys. Sec. Litig.*, No. C-94-0017-DLJ, 1994

11  WL 583114, at *8 (N.D. Cal. July 21, 1994) (statement that "our rapidly growing prospect base

12  reflects significant opportunity in this market" was too vague).  Second, the clause only refers to

13  "today's market" and says nothing about the dislocated credit markets that developed a year

14  later.  Third, to the extent the clause implies a prediction about the future, it is not actionable

15  because it is not worded as a guarantee.  *See, e.g.*, *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922,

16  930-32 (9th Cir. 1996) (holding forecast not actionable); *SEC* v. *Gane*, No. 03-61553-CIV-

17  SEITZ, 2005 WL 90154, at *14 (S.D. Fla. Jan. 4, 2005) (collecting cases).[7]

18          **2.     Use of a U.S. Treasury Index as a Performance Benchmark**

19      The SEC abandons its theory that the Fund's fact sheets suggested the Fund "invested

20  regularly and substantially" in U.S. Treasuries because the documents show the Fund held only

21  0.1% in Treasuries.  (SEC Br. at 15; Ex. 15.)  For the same reason, the SEC cannot claim that the

22  fact sheets concealed that the Fund, with so few government-issued securities, had a different

23  risk profile than that of Treasury bonds.  The fact sheets also disclosed the average rating of the

---

24  [7]   The cases the SEC cites for the general proposition that statements can be literally true and
25  still misleading are not even close to the facts alleged here.  (SEC Br. at 12-13.)  In *SEC* v.
    *C.R. Richmond & Co.*, 565 F.2d 1101, 1105-06 (9th Cir. 1977), the marketing materials
26  violated specific SEC rules and promoted a strategy that "would guarantee … large profits."
    In *Kaplan* v. *Rose*, 49 F.3d 1363, 1372 (9th Cir. 1995), the defendants claimed that a medical
    device had been "used successfully" but did not disclose that the device had failed over 80%
27  of the time.  And in *Miller*, 519 F.3d 879, the defendants stated that the issuer was approved
28  for a NASDAQ listing, but failed to disclose that they planned to delay the listing.

---

8

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    Fund's holdings, which was below Treasuries.  (SEC Br. at 15; Ex. 15 (average rating of A).)[8]

2                      **3.      Failure to Disclose Alt-A Holdings**

3            It is well settled that there can be no liability for an omission absent a duty to disclose,

4    and the SEC does not contest this point of law.  There was no duty to disclose the Fund's Alt-A

5    holdings in either the August 2007 Q&A or the November 2007 Manager's Discussion because

6    those documents only addressed the Fund's subprime holdings.  *See In re Citigroup Inc. Sec.*

7    *Litig.*, No. 09-md-2070 (SHS), 2010 WL 4484650, at *30-31 (S.D.N.Y. Nov. 9, 2010).  The SEC

8    proposes a distinction between oral questions on a conference call and written questions drafted

9    by the issuer.  The SEC cites no authority for that distinction, and it makes no sense.  (SEC Br. at

10   16.)  In both situations, a question is raised and the answer is tailored to provide the requested

11   information.  In addition, the August 2007 Q&A states that it is a compendium of "commonly

12   asked questions" from investors.  (Ex. 11 at 1.)  There is no allegation that investors had asked

13   about the Fund's Alt-A holdings.

14           *In re MoneyGram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947 (D. Minn. 2009) does not

15   support the SEC's contention.  There, the court did not hold that the disclosure of subprime

16   holdings created a duty to also disclose Alt-A holdings.  In *MoneyGram*, the issues were whether

17   the company properly recorded unrealized losses as opposed to impairment charges as its MBS

18   declined in value and whether the company had adequate controls to value its holdings.  *Id.* at

19   975.  In response to investor questions, the CEO stated that the market downturn had very little

20   impact on the company's portfolio.  *Id.* at 961.  The court held only that in that context, the

21   company should have disclosed more detailed information about its entire portfolio, including

22   subprime and Alt-A securities.  *Id.* at 976-78.[9]

23

24   [8]   The SEC's proposed amendment to include a new document (SEC Br. at 15 n.11), should be
          rejected as futile; the new document refers to the Fund's holdings of "corporate, asset-backed
25        and non-agency mortgages." (Hodgman Ex. 1 at 7.)

26   [9]   There is no allegation that the Fund had inadequate internal valuation controls, which was
          essential to the *MoneyGram* decision.  *Id.* at 975.  And, unlike in *MoneyGram*, here the
27        August 2007 Q&A disclosed that the Fund's NAV *declines* were mainly tied to "the market's
          concerns about corporate bonds and mortgage-backed securities, causing market prices for
28        virtually all such bonds to decline."  (Ex. 11 at 3.)

                                                    9

## II.   THE SECTION 17(A)(2) CLAIM MUST BE DISMISSED FOR FAILURE TO ALLEGE RECEIPT OF MONEY OR PROPERTY (CLAIM THREE)

The SEC concedes that Mr. Merk did not personally obtain money or property by means of misstatements and argues instead that the statute is satisfied if Mr. Merk's misrepresentations "caused Schwab or YieldPlus to obtain money."  (SEC Br. at 17-18.)  This theory has no support in Section 17(a)(2), which makes it unlawful for "*any person* in the offer or sale of any securities . . . directly or indirectly . . . *to obtain money or property* by means of any untrue statement . . . ." When quoting the statute, the SEC omitted the subject, that is, the "person" who may be held liable for obtaining money by means of a misstatement, and thereby distorted the text.  (SEC Br. at 4 n.3.)  The statute does not say that it is unlawful for a person to "cause" someone else to obtain money.  The SEC's reading would impermissibly create aiding and abetting liability under Section 17(a)(2), which does not exist.  *See Fraser*, 2010 WL 5776401, at *4 n.3.

The majority of courts to decide the issue have held that Section 17(a)(2) means what it says:  a defendant must have obtained money or property.  *See, e.g.*, *SEC* v. *Norton*, No. 95 Civ. 4451 (SHS), 1997 WL 611556, at *3 (S.D.N.Y. Oct. 3, 1997) ("[P]laintiff must allege that defendant actually obtained money or property . . ."); *SEC* v. *Glantz*, No. 94-cv-5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995) ("The plain language of the statute specifically imposes liability on all those who 'obtain money or property' through fraud, not only on those who 'profit' . . ."); *SEC* v. *Burns*, No. 84-0454, 1986 WL 36318, at *3-4 (S.D. Cal. Feb. 19, 1986) ("[T]he Court agrees with Mr. Burns' attorneys that the literal language of the statute requires a finding that the Defendant, quote, 'obtain money or property,' end of quote.").

The single case the SEC cites did not analyze the actual language of Section 17(a)(2). *SEC* v. *Delphi Corp.*, No. 06-14891, 2008 WL 4539519, at *7-9 (E.D. Mich. Oct. 8, 2008).  The SEC urges the Court to ignore cases Mr. Merk cites, claiming they are "silent" about the SEC's theory that it is sufficient to "cause" someone else to obtain money.  (SEC Br. at 18.)  But the SEC made a nearly identical argument in *SEC* v. *Forman*, No. 07-11151-RWZ, 2010 WL 2367372, at * 8 (D. Mass. June 9, 2010), and it was rejected.  As here, the SEC argued:

> However, Section 17(a)(2) does not require that the person who makes the false or misleading statement obtain a financial benefit so long as the *person's actions aid the*

MERK'S REPLY IN SUPPORT OF MOTION TO DISMISS                     No. 3:11-cv-137-WHA

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   *Company's efforts* to obtain a benefit through its offer or sale of securities.

2   (SEC's Opp. to Forman's Mot. for Summ. J. at 15 n.15, 2009 WL 5802272 (D. Mass. Nov. 24,

3   2009) (citing *Delphi*, 2008 WL 4539519, at *9) (emphasis added).)  That the court rejected the

4   SEC's argument without specific discussion does not change the result:  the claim was dismissed

5   because the defendant had not obtained money or property.  *Forman*, 2010 WL 2367372, at *8.

6   **III.   THE CLAIMS FOR SCHEME LIABILITY MUST BE DISMISSED FOR FAILURE TO ALLEGE DECEPTIVE CONDUCT (CLAIMS TWO AND THREE)**

7        The SEC concedes that several courts have dismissed scheme claims because, as here, the

8   alleged scheme did not involve "sham" or "inherently deceptive" transactions.  (SEC Br. at 19.)

9   *See, e.g.*, *SEC* v. *Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 360-61 (D.N.J. 2009); *see also In re*

10  *Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 504-05 (S.D.N.Y. 2005) (upholding scheme claim

11  based on securitization of "worthless" invoices, which was "by nature deceptive," but dismissing

12  claim based on "financings and investments" that "were not shams").  The SEC argues that this

13  Court should not follow those decisions because they were "incorrectly decided."  (SEC Br. at

14  19.)  The Ninth Circuit's decision in *Simpson* v. *AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir.

15  2006), *vacated on other grounds*, 552 U.S. 1162 (2008), forecloses the SEC's position.  (*See*

16  Merk Br. at 18.)  The court held that the "defendant's conduct or role in an illegitimate

17  transaction [must have] the principal purpose and effect of creating a false appearance of fact."

18  *Id.*  The key determinant is whether the conduct had a "legitimate business purpose."  *Id.*  And

19  "[c]onduct that is consistent with the defendants' normal course of business would not typically

20  be considered to have the purpose and effect of creating a misrepresentation."  *Id.*

21       In addition, no court has held that conduct with a legitimate business purpose can be the

22  basis for scheme liability.  The cases the SEC cites are fully consistent with *Lucent*.  In *Hawaii*

23  *Ironworkers Annuity Trust Fund* v. *Cole*, No. 3:10-CV-371, 2011 WL 1257756, at *6, 8 n.9

24  (N.D. Ohio Mar. 31, 2011), the complaint alleged that the defendants "engaged in falsification of

25  financial information," "recording sham transactions," and "issuing fictitious invoices."  The

26  defendants did not argue that the complaint failed to show a fraudulent scheme.  *Id.* at *5.  In *In*

27  *re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 170 (S.D.N.Y. 2008), the court

28

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

11

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    sustained a scheme claim where the defendant "secretly negotiated a settlement with illegal oral

2    side agreements [and] knowingly withheld information about the negotiations, the terms of the

3    settlement, and the oral side agreements."[10]

4        The SEC's opposition focuses on the same allegations underlying its misrepresentation

5    claims – Mr. Merk's role on the Cash Council and the allegation that he was the "source of the

6    idea" for the August 1, 2006 press release.  (SEC Br. at 18-19.)  But the SEC does not argue that

7    those activities had no legitimate business purpose or were otherwise inherently deceptive.

8    **IV.    THE CLAIMS FOR AIDING AND ABETTING SECURITIES FRAUD BASED
         ON CERTAIN MISSTATEMENTS AND OMISSIONS MUST BE DISMISSED**

9    **(CLAIMS TWO, FIVE, AND SEVEN)**

10       The SEC argues that "the Complaint alleges 'affirmative conduct' [by Mr. Merk] that

11   was a 'substantial causal factor' of the misrepresentations and omissions."  (SEC Br. at 21.)  The

12   SEC's own allegations and the documents referenced in the complaint refute that theory.  As

13   discussed above in I.B, the SEC fails to satisfy its pleading burden with respect to the November

14   2007 statements.  (Compl. ¶¶ 149, 153, 159.)  Without further particularity, there can be no

15   inference that Mr. Merk was a "substantial causal factor" in making the supposed misstatements.

16   Indeed, the SEC's opposition does not specifically defend its aiding and abetting claims based on

17   these statements.  Similarly, the complaint shows that Schwab was already marketing the Fund

18   as a "cash alternative" before Mr. Merk and the Cash Council had any involvement in the Fund's

19   marketing.  (*Id.* ¶¶ 74(f)-(g); Ex. 7.)  The Cash Council could not have directed the creation of

20   statements that were already issued.  *See Sprewell*, 266 F.3d at 989.

21       Thus, contrary to the SEC's suggestion (SEC Br. at 20-21), the SEC's theory must be that

22   Mr. Merk should be held liable for aiding and abetting because he failed to correct isolated word

23   choices made by others.  But the securities laws do not impose on senior executives a

24   generalized duty to screen and correct every word choice in every marketing statement that a

25   company issues, a proposition that the SEC does not dispute.  And no facts about Mr. Merk's job

26   ────────────────────

27   [10]  Finally, the court in *SEC* v. *Durgarian*, 477 F. Supp. 2d 342 (D. Mass. 2007), found the
     alleged conduct was intentionally deceptive, if not "clearly illegal," where a mutual fund
     incorrectly executed a trade for one investor and then developed and carried out a plan to
28   conceal its error by shifting the resulting loss to other unsuspecting investors.  *Id.* at 351-52.

12

1   responsibilities are alleged to show such a duty existed.  In 2006, Mr. Merk was not an officer of

2   CSIM or Schwab Funds and had no day-to-day management responsibility for those businesses.

3   Merely identifying "organizational components" (SEC Br. at 22) is not an adequate substitute

4   under Rule 9(b) for identifying those who supposedly relied on Mr. Merk to correct the Fund's

5   marketing.  In these circumstances, the complaint must allege that Mr. Merk had a "conscious

6   intent to assist in the perpetration of a wrongful act."  *Lucent*, 610 F. Supp. 2d at 362.  The

7   complaint does not allege that fact, not even generally.  The SEC's boilerplate reiteration of the

8   standard for scheme liability is not sufficient.  (SEC Br. at 21; Compl. ¶ 61.)  *See Simpson*, 452

9   F.3d at 1048 n.5 ("purpose and effect" for scheme claim is distinct from scienter).

10         Finally, the SEC claims that it can base an aiding and abetting claim under Rule 206(4)-8

11   on conduct after September 10, 2007.  (SEC Br. at 22.)  But the SEC has not alleged facts to

12   show that Mr. Merk substantially caused any of the challenged statements in November 2007.[11]

13   **V.      THE CLAIM FOR AIDING AND ABETTING BASED ON REDEMPTIONS BY
            THE TARGET DATE FUNDS MUST BE DISMISSED (CLAIM FOUR)**

14

15         The SEC does not dispute that (1) Mr. Merk is not liable under the Supreme Court's

16   personal benefit test for insider trading, (2) the CIO for Equities was an insider with his own

17   duties as an officer, and (3) the complaint does not specify the material nonpublic information

18   allegedly disclosed.  The SEC incorrectly claims that these points can be disregarded.

19         First, the SEC argues that the personal benefit test set forth in *Dirks* v. *SEC*, 463 U.S. 646

20   (1983), for disclosure in breach of fiduciary duty does not apply here because the claim is under

21   the IAA rather than the Exchange Act.  But courts have recognized that the text of both Section

22   206 and Rule 10b-5 derive from Section 17(a), and Section 206(1) and Rule 10b-5(a) are nearly

23   identical.  *See Vernazza* v. *SEC*, 327 F.3d 851, 858-60 (9th Cir. 2003); *Steadman* v. *SEC*, 603

24   F.2d 1126, 1134 (5th Cir. 1979); *United States* v. *Persky*, 520 F.2d 283, 287 (2d Cir. 1975).  And

25   ───────────────

26   [11]   The SEC also cites paragraph 113, which alleges generally that the Fund's periodic reports
            misstated the percentage of non-agency MBS holdings as below 25%.  The complaint does
27          not suggest that Mr. Merk was involved in preparing any of those reports.  In any event, the
            November 2007 report disclosed that the Fund held 46.2% of its assets in total MBS, of
            which only 5.6% were agency MBS and 1.1% were commercial MBS.  (Taylor Reply Decl.
28          Ex. 1 at 5, 7.)

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

13

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1    breach of fiduciary duty is an element of any selective disclosure claim under Rule 10b-5.  *Dirks*,

2    463 U.S. at 662-64.  The SEC may not avoid the Supreme Court's controlling standards by

3    bringing this claim under the IAA.

4         The SEC strains to characterize the IAA as something other than an anti-fraud statute.

5    Liability under Section 206(1) and (2), however, is limited to fraudulent conduct or conduct that

6    "operates as a *fraud or deceit*."  Moreover, personal benefit is equally relevant to determining

7    breaches of fiduciary duty under the IAA.  In *SEC* v. *Capital Gains Research Bureau, Inc.*, 375

8    U.S. 180 (1963), the Supreme Court held that an adviser breached his duty by buying securities

9    for himself and recommending them to clients, which raised the market price and increased the

10   adviser's own profits.  Holding that scienter was not required for Section 206(2), the Court

11   explained that the IAA was intended to root out "the existence 'subconsciously (of) a prejudice'

12   *in favor of one's own financial interests*," *id.* at 188, and "conflicts of interest *between the*

13   *investment adviser and the clients* . . . which might incline a[n] investment adviser . . . to render

14   advice which was *not disinterested*."  *Id.* at 191-92 (all emphasis added).  Here, the SEC does not

15   offer any theory that even suggests Schwab or Mr. Merk had any motive to set the interests of

16   the Target Date Funds over those of YieldPlus.[12]

17        Second, the SEC makes the nonsensical claim that Mr. Merk breached his duty merely by

18   sharing information belonging to YieldPlus across the Schwab entities.  (SEC Br. at 22.)  Both

19   CSIM and CS&Co. were *investment advisers* to YieldPlus (Compl. ¶¶ 22-23), numerous

20   employees had access to information about the Fund, and each had a fiduciary duty regarding

21   any of the Fund's material nonpublic information.  Further, Mr. Merk could not breach a duty by

22   disclosing information to a Schwab Funds insider such as the CIO for Equities.  The YieldPlus

23   

24   ---

12   Rather, Mr. Merk acted consistently with his and Schwab's duty to both clients by *not*
     *preventing* the redemption by the Target Date Funds, a decision made by a portfolio manager
25   who is not alleged to be tainted.  *Compare SEC* v. *DiBella*, 587 F.3d 553 (2d Cir. 2009)
     (adviser implemented a kickback fee scheme to obtain investment); *SEC* v. *Gabelli*, No. 08
26   CV 3868 (DAB), 2010 WL 1253603, at *9-10 (S.D.N.Y. Mar. 17, 2010) (adviser permitted
     shareholder to market time "in exchange for investment in an affiliated hedge fund"); *SEC* v.
27   *Treadway*, 430 F. Supp. 2d 293, 338-39 (S.D.N.Y. 2006) (adviser allowed investor to market
     time and failed to disclose "sticky asset" arrangement); *SEC* v. *Moran*, 922 F. Supp. 867
28   (S.D.N.Y. 1996) (adviser allocated lower-priced shares to personal and family accounts).

BRUNE & RICHARD LLP
235 Montgomery Street, Suite 1130
San Francisco, CA 94104

1   registration statement identifying the CIO for Equities as an *officer* is referenced in the complaint

2   and, contrary to the SEC's assertion, subject to judicial notice in its entirety.  *Stac Elecs.*, 89 F.3d

3   at 1405 n.4.  But even assuming that Schwab was a stranger to YieldPlus, under the Supreme

4   Court's test for misappropriation, Mr. Merk could not have breached a duty to YieldPlus unless

5   he "secretly convert[ed] the principal's information for personal gain."  *United States* v.

6   *O'Hagan*, 521 U.S. 642, 653-54 (1997).

7          Finally, the SEC denies that it must particularize the material nonpublic information

8   alleged to have been disclosed.  But that is what "Rule 9(b) demands."  *Neubronner* v. *Milken*, 6

9   F.3d 666, 672 (9th Cir. 1993) (dismissing insider trading claim where plaintiff failed to "allege

10  specifically what information Milken obtained").  Contrary to the SEC's claim (SEC Br. at 24),

11  private cases are applicable because "[t]he PSLRA reiterates the particularity obligations of

12  9(b)," except scienter.  *In re Splash Tech. Holdings Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1067

13  (N.D. Cal. 2001).  Rule 9(b) is critical here because it is unclear how any information about the

14  *topics* allegedly disclosed could be material as a matter of law.  Open-ended mutual funds are not

15  traded; the per share price is determined by the value of a fund's assets.  *In re Van Wagoner*

16  *Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1188 (N.D. Cal. 2004).  To the extent that

17  redemptions impact a fund, it is reflected in the daily NAV obtained by all selling shareholders.[13]

18                              **CONCLUSION**

19         The Court should enter the proposed order granting Mr. Merk's motion to dismiss.[14]

20  DATED:  May 12, 2011                    BRUNE & RICHARD LLP

21                                          By:   /s/ Susan E. Brune
                                                  Susan E. Brune (*pro hac vice*)
22                                                Laurie Edelstein (Bar No. 164466)
                                                  David Elbaum (*pro hac vice*)
23                                                MaryAnn Sung (*pro hac vice*)
                                                  Lee Taylor (Bar No. 243863)
24
                                                  *Attorneys for Randall Merk*
25

---

26  [13]  *See also* Selective Disclosure and Insider Trading ("Regulation FD"), 65 Fed. Reg. 51,716, 51,724 (Aug. 24, 2000) (excluding mutual funds from definition of issuer subject to FD rule).

27  [14]  Mr. Merk joins and incorporates by reference Mr. Daifotis' reply arguments with respect to the retroactive application of the Dodd-Frank Act in Claim Seven, as well as Mr. Daifotis' reply arguments with respect to the motions to strike the prayer for disgorgement.

28

MERK'S REPLY IN SUPPORT OF MOTION TO DISMISS                    No. 3:11-cv-137-WHA