1  DAVID B. BAYLESS (SBN 189235)
   Email:  dbayless@cov.com
2  TAMMY ALBARRÁN (SBN 215605)
   Email:  talbarran@cov.com
3  AILEEN WHEELER (SBN 223705)
   Email:  awheeler@cov.com
4  JOSHUA D. HURWIT (SBN 263108)
   Email: jhurwit@cov.com
5  SAMANTHA J. CHOE (SBN 252002)
   Email:  schoe@cov.com
6  JOHN D. FREED (SBN 261518)
   Email:  jfreed@cov.com
7  COVINGTON & BURLING LLP
   One Front Street, 35th Floor
8  San Francisco, CA 94111
   Telephone:    415-591-6000
9  Facsimile:     415-591-6091

10 Attorneys for Defendant Kimon P. Daifotis

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>KIMON P. DAIFOTIS and RANDALL MERK,<br><br>Defendants. | Civil Case No.: 11-cv-00137-WHA<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>**Date:          June 2, 2011**<br>**Time:           2:00 p.m.**<br>**Judge:         Hon. William H. Alsup**<br>**Courtroom: 9** |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT............................................................................................................................ 2

I. THE COMPLAINT ENGAGES IN IMPROPER "SHOTGUN" PLEADING................. 2

II. THE SEC FAILS TO PLEAD PRIMARY LIABILITY WITH PARTICULARITY............................................................................................................ 3

    A. The SEC Must Allege With Particularity Mr. Daifotis' Role In Each Alleged Misstatement. ................................................................................. 4

    B. The "Group Pleading" Doctrine Does Not Excuse The SEC's Pleading Deficiencies. ................................................................................. 6

III. THE SEC COMPLAINT FAILS TO ALLEGE WITH PARTICULARITY THE ELEMENTS OF AIDING AND ABETTING LIABILITY. .................................. 9

    A. The SEC's Argument That Mr. Daifotis Possessed the Scienter for Primary Violations That He Also Aided and Abetted Is Nonsensical................... 9

    B. The SEC's "Substantial Assistance" Allegations Are Deficient. ........................ 10

IV. CLAIM FIVE MUST BE DISMISSED. ......................................................................... 11

V. CLAIMS SEVEN AND EIGHT MUST BE DISMISSED WITH PREJUDICE. ................................................................................................................... 11

    A. Section 9(b) of the ICA Does Not Give the SEC the Authority to Allege A Cause of Action for Aiding and Abetting for Violations of ICA Sections 13(b) and 34(a). ........................................................................... 12

    B. Section 929M of Dodd-Frank Increases Mr. Daifotis' Liability, Imposes New Obligations on Him, and Impairs His Rights............................... 14

CONCLUSION........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver*,
   511 U.S. 164 (1994) .................................................................................................... 12, 13

*City of Roseville Employees' Ret. Sys. v. Horizon Lines*,
   713 F. Supp. 2d 378 (D. Del. 2010) ..................................................................................... 4

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ....................................................................................... 11, 15

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
   520 U.S. 939 (1997) ....................................................................................................... 11, 15

*In re GlenFed, Inc. Sec. Litig.*,
   60 F.3d 591 (9th Cir. 1995) ................................................................................................. 6

*In the Matter of Thrasher Capital Mgmt., LLC*,
   Admin. Proc. File No. 3-14124, Release No. 3108, 2010 WL 4622447 (Nov. 16,
   2010) ................................................................................................................................... 15

*Institutional Investors Group v. Avaya, Inc.*,
   564 F.3d 242, (3d Cir. 2009) ................................................................................................ 4

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ........................................................................................................... 14

*Miss. Pub. Emples. Ret. Sys. v. Boston Sci. Corp.*,
   523 F.3d 75 (1st Cir. 2008) .................................................................................................. 4

*New York City Employees' Ret. Sys. v. Berry*,
   616 F. Supp. 2d 987 (N.D. Cal. 2009) ................................................................................. 4

*Rivers v. Roadway Express, Inc.*,
   511 U.S. 298 (1994) ........................................................................................................... 14

*Rubke v. Capitol Bancorp, Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ............................................................................................. 4

*SEC v. Baxter*,
   No. C 05-03843 RMW, 2007 WL 2013958 (N.D. Cal. Jul. 11, 2007) ................................. 8

*SEC v. Berry*,
   580 F. Supp. 2d 911 (N.D. Cal. 2008) .............................................................................. 4, 6

*SEC v. Espuelas*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................................................................. 7

*SEC v. Espuelas*,
   699 F. Supp. 2d 655 (S.D.N.Y. 2010) ..........................................................................................6

*SEC v. Fraser*,
   No. CV 09 00443 PHX GMS, 2009 U.S. Dist. LEXIS 70198 (D. Ariz Aug. 11, 2009)...........6

*SEC v. Mozilo*,
   No. CV 09-3994-JFW.................................................................................................................7

*SEC v. Patel*,
   No. 07-cv-39-SM, 2009 U.S. Dist. LEXIS 90558 (D.N.H. Sept. 30, 2009) ......................2, 7, 8

*SEC v. Rana Research, Inc.*,
   8 F.3d 1358 (9th Cir. 1993) .......................................................................................................3

*SEC v. Yuen*,
   221 F.R.D. 631 (C.D. Cal. 2004)................................................................................................7

**FEDERAL STATUTES**

15 U.S.C. § 78t(e).............................................................................................................................13

15 U.S.C. § 80a-9(b)..................................................................................................................12, 13

15 U.S.C. § 80a-9(b)(3) ...................................................................................................................12

15 U.S.C. § 80a-9(b).........................................................................................................................13

15 U.S.C. § 80a-9(d)(1) ...................................................................................................................15

15 U.S.C. § 80a-9(d)(2) ...................................................................................................................14

15 U.S.C. § 80a-9(d)(4) ...................................................................................................................15

15 U.S.C. § 80a-9(f) .........................................................................................................................14

15 U.S.C. §80a-13(a)........................................................................................................................13

15 U.S.C. § 80a-33(b).......................................................................................................................13

15 U.S.C. § 80a-41 ...........................................................................................................................14

15 U.S.C. § 80a-41(e).......................................................................................................................15

15 U.S.C. § 80a-47 ...........................................................................................................................13

15 U.S.C. § 80b-3(f) .........................................................................................................................12

**OTHER AUTHORITIES**

Local Rule 7-4(a)................................................................................................................................2

SEC Rule 206(4)-8 ..................................................................................................................2, 11

REPLY MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

iv

# INTRODUCTION

The SEC has investigated this case for over three years, subpoenaing over six million documents, interviewing Mr. Daifotis and Mr. Merk under oath for two days each, and taking sworn testimony from twenty-four other witnesses. Yet, despite the sweeping scope of its pre-suit investigation, the SEC has not met its burden of pleading fraud with the particularity required by Rule 9(b). Except for the few statements that Mr. Daifotis uttered, the Complaint is devoid of specific factual allegations tying Mr. Daifotis to the alleged misrepresentations made by Charles Schwab Investment Management and Charles Schwab & Co.

The SEC does nothing to explain Mr. Daifotis' specific role in these corporate statements. Instead, it claims that it does not have to. First, the SEC asserts that, because it has alleged a handful of statements directly attributable to Mr. Daifotis, this "should spell the end for [Mr.] Daifotis' challenge to the specificity of the Complaint . . . ." (Dkt. No. 48, hereafter "Opp'n," at 8.) That is, so long as it sufficiently alleges even a single actionable misstatement, its *entire* Complaint is somehow immunized from review under Rule 9(b). Second, the SEC invokes the "group pleading" doctrine, arguing that it "need not specifically tie [Mr.] Daifotis" to alleged misrepresentations that are not directly attributable to him. (Opp'n at 15.) The SEC's arguments are wrong. It must plead with particularity the elements of *each and every misstatement* alleged in its Complaint, and it cannot avoid doing so simply by invoking the mantra of "group pleading."

Indeed, the SEC's arguments only highlight the flaws in its approach. The SEC has spent years investigating all aspects of the YieldPlus Fund and now stubbornly wants to pin every purported misstatement on Mr. Daifotis, regardless of whether there is a legal or factual basis for doing so. This has led to a 200-plus paragraph "shotgun" Complaint without structure or specificity. Mr. Daifotis is entitled to a clear and specific complaint that informs him of exactly what conduct forms the basis each accusation. This Court should dismiss all alleged misstatements that do not meet the standards of Rule 9(b).

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

1

Additionally, three of the other claims in the SEC's Complaint must be dismissed. The Fifth Claim cannot proceed as pleaded because it alleges misconduct that occurred before the effective date of SEC Rule 206(4)-8. The Seventh and Eighth Claims should be dismissed with prejudice because the recent Dodd-Frank amendments to the Investment Company Act of 1940 ("ICA"), upon which both Claims are based, were not in effect at the time of the purported misconduct and do not have retroactive effect.[1]

**ARGUMENT**

**I.   THE COMPLAINT ENGAGES IN IMPROPER "SHOTGUN" PLEADING.**

The majority of the alleged misrepresentations in the Complaint are not directly attributable to either Mr. Daifotis or Mr. Merk, and the SEC's allegations do not meaningfully distinguish between the Defendants. The Complaint also completely fails to articulate what conduct supports the SEC's primary liability claims (Claims One, Three, and Six) as opposed to what conduct supports its secondary liability claims (Claims Two, Five, Seven, and Eight). Mr. Daifotis and Mr. Merk are thus in "the untenable position of not being able to determine what precise conduct each is said to have engaged in that allegedly gives rise to liability under the various claims brought against them." *SEC v. Patel*, No. 07-cv-39-SM, 2009 U.S. Dist. LEXIS 90558, at *9 (D.N.H. Sept. 30, 2009). This constitutes an improper shotgun pleading.

The SEC asserts that "wherever the Complaint alleges a misrepresentation, omission, or fraudulent act, it is the basis for the First, Second, Third, Fifth, Sixth and Seventh Claims." (Opp'n at 6.) This statement proves Mr. Daifotis' point: the SEC intends its Complaint to allege that Mr. Daifotis *and* Mr. Merk are both primarily liable *and* secondarily liable for each and every incidence of alleged fraud. This is plainly insufficient under Rule 9(b).

The SEC's attempt to clarify further the scope of its fraud claims is of no help, as the SEC states that "wherever the Complaint specifies misrepresentations or omissions in

---

[1] Pursuant to Civil Local Rule 7-4(a), Mr. Daifotis incorporates by reference the statement of issues and the statement of facts contained in his opening brief in support of his motion to dismiss. (*See* Dkt. No. 38.) Further, Mr. Daifotis joins in and incorporates by reference Mr. Merk's reply arguments to the extent they are applicable to the allegations against him.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

2

documents filed with the SEC, or advertisements or sales literature to prospective investors (which are deemed filed), those would be within the scope of the Sixth and Seventh Claims." (Opp'n at 6.) Thus, the SEC leaves Mr. Daifotis to "guess" at which of the many documents cited in the Complaint are filed or "deemed filed" with the SEC for purposes of Counts Six and Seven.

In sum, the SEC's confidence that "there is no difficulty in determining which factual allegations form the basis for the claims in [its] Complaint," is belied by its broad assertion that each and every allegation relating to a "misrepresentation, omission, or fraudulent act" can be the basis for each of six distinct causes of action against two distinct defendants. (Opp'n at 6.) The Court should require the SEC to replead.

## II. THE SEC FAILS TO PLEAD PRIMARY LIABILITY WITH PARTICULARITY.

The alleged misstatements that the SEC fails to connect to Mr. Daifotis with particularity should be stripped from this case.[2] Mr. Daifotis has identified specific allegations, and has shown why each is deficient. (*See* Dkt. No. 38, hereafter "MTD," at 9-16.) The SEC responds first by claiming that, so long as it has alleged *some* misstatements with particularity, the Court need not consider whether it has alleged *all* statements with particularity. (Opp'n at 8.) The SEC then claims, in wholly conclusory fashion, that it "need not specifically tie" Mr. Daifotis to misstatements that he did not directly make, because the "group pleading" doctrine gives it a free pass. (Opp'n at 15.)[3] Relying on both flawed arguments, the SEC fails to explain how each misstatement in its Complaint is alleged with the specificity required by Rule 9(b).[4]

---

[2] Mr. Daifotis focused his Motion on the SEC's failure to allege an actionable connection between him and a majority of the alleged misstatements. Although Mr. Daifotis did not specifically move to dismiss the few statements alleged to be directly attributable to him, he does not concede that he is subject to liability for any alleged misstatement.

[3] Further, the SEC fails to respond to Mr. Daifotis' argument that securities fraud liability cannot arise from *internal* Schwab communications, as such communications have no "nexus with any securities transaction." (MTD at 12-13 n.9 (quoting *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993)).) Mr. Daifotis cited paragraphs 108 and 117 of the Complaint as examples of such non-actionable internal communications. Thus, these must be dismissed.

[4] The SEC asserts that "the PSLRA has no bearing at all on SEC enforcement cases." (Opp'n at 12.) Not so. The Court absolutely may look to PSLRA cases in evaluating the SEC's Complaint because, for most elements of securities fraud, there is *no difference* between the (continued…)

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

3

**A.     The SEC Must Allege With Particularity Mr. Daifotis' Role In Each Alleged Misstatement.**

The Complaint contains at least twenty (20) alleged misstatements that are not directly attributable to Mr. Daifotis.  Accordingly, the SEC must allege with particularity that Mr. Daifotis "substantially participated or was intricately involved" in the preparation of *each* of these allegedly false statements.  *New York City Employees' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 993 (N.D. Cal. 2009) (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 994-95 (9th Cir. 2000)) (hereafter, "*Berry I*").  The SEC's contention to the contrary finds no support in either logic or the law.

Mr. Daifotis showed that the allegations in at least the following paragraphs are deficient:  50, 55, 66, 74, 81, 89, 92-94, 98, 108, 113-14, 123, 125, and 149-50.  For these allegations, the SEC alleges that, *at most*, Mr. Daifotis "reviewed" or "participated in discussions about" particular alleged misstatements.  (MTD at 9-10.)  And in many cases, the SEC alleges nothing more than the legal conclusion that Mr. Daifotis "substantially participated" in making the purported misstatements.  (*See* MTD at 9-16.)  But such "conclusory pleadings" that a defendant "reviewed," "discussed," or "finalized" misrepresentation-containing documents are insufficient.  *SEC v. Berry*, 580 F. Supp. 2d 911, 922 (N.D. Cal. 2008) (hereafter, "*Berry II*").

The SEC's limited discussion of its actual allegations generally consists of unquoted references to the Complaint, coupled with the self-affirming assertion that the cited paragraphs sufficiently allege Mr. Daifotis' role in the alleged misstatements.  (*See, e.g.*, Opp'n

---

standard of Rule 9(b) and that of the PSLRA.  *See, e.g.*, *Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1165 (9th Cir. 2009) ("the inquiry into whether plaintiffs have pled falsity with the requisite particularity under the PSLRA is nearly identical to that under Federal Rule of Civil Procedure 9(b)"); *Miss. Pub. Emples. Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 85 n.5 (1st Cir. 2008) ("Rule 9(b) requires that in alleging fraud or mistake, 'a party must state with particularity the circumstances constituting fraud or mistake.' In securities fraud cases, this requirement is comparable to and effectively subsumed by the requirements of the PSLRA."). The key difference between the PSLRA and Rule 9(b) – heightened requirements for pleading scienter – is not relevant to Mr. Daifotis's Motion.  *See Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).  Thus, the analysis contained in PSLRA cases, such as *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378 (D. Del. 2010), is wholly relevant to the Court's determination.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

4

at 10-11, 15-18.)[5]  In arguing, for example, that the Complaint "sets forth facts regarding [Mr.] Daifotis' role in the misrepresentations and omissions[,]" the SEC merely cites to allegations relating to (1) Mr. Daifotis' general role overseeing the YieldPlus fund, (2) the unspecified "reliance" of unspecified Schwab officials on Mr. Daifotis to "substantially participate in ensuring that marketing and sales materials were accurate and complete," and (3) Mr. Daifotis' general involvement with sales and marketing materials.  (Opp'n at 10.)  Of course, none of these allegations explain Mr. Daifotis' role in connection with any particular misstatement alleged in the Complaint.  After examining six million documents, the SEC should be able to allege, for example, specific communications on a specific day where a Schwab official sought and obtained Mr. Daifotis' approval to publish a specific misstatement.  But the Complaint contains nothing like this for any of the alleged misstatements.

Even when the SEC tries to assign Mr. Daifotis a role in preparing a particular statement, it does so in conclusory fashion, simply citing back to the Complaint with no discussion of the substance of the Complaint's allegations.  (*See, e.g.*, Opp'n at 10, 21 (citing, *inter alia*, Compl. ¶ 66 (Mr. Daifotis "participated in discussions about and drafting of the press release"); ¶ 67 (Mr. Daifotis "saw one or more drafts and the final language" of a press release); ¶ 125 (Mr. Daifotis "reviewed" a public filing); ¶ 149 (Mr. Daifotis "reviewed" talking points document))).  Again, no details on dates or communications are present to support the SEC's allegations.  As *Berry II* makes clear, "conclusory pleadings" that a defendant "reviewed," "discussed," or "finalized" a document or statement are not enough.

When actually examined, none of the SEC's allegations show that Mr. Daifotis substantially participated in any *particular* third-party misstatement alleged in the Complaint.

---

[5]     Mr. Daifotis challenged the allegation that he is liable for alleged misstatements in a Dow Jones magazine article because that article was "based in part upon an interview with" him.  (MTD at 9 (citing Compl. ¶ 55).)  The SEC fails to respond to this point, and so concedes it.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

5

### B. The "Group Pleading" Doctrine Does Not Excuse The SEC's Pleading Deficiencies.

Recognizing the Complaint's failure to tie Mr. Daifotis to these third-party statements, the SEC invokes the "group-pleading doctrine" to argue that "the Complaint need not specifically tie [Mr.] Daifotis to every group-published advertisement or brochure." (Opp'n at 15.) But the SEC's discussion of the group pleading doctrine is incomplete, and its effort to apply the doctrine here is misplaced.

As an initial matter, the SEC does not address the pleading standard set forth in the *Berry* cases or any of the other "substantial participation" cases cited. Instead, it simply concludes that such cases are irrelevant because they "did not consider the group pleading doctrine." (Opp'n at 13.) But the SEC ignores the fact that *Berry II* and *SEC v. Fraser*, No. CV 09 00443 PHX GMS, 2009 U.S. Dist. LEXIS 70198 (D. Ariz Aug. 11, 2009) are right on point. Both involved SEC allegations that a corporate official was primarily liable for misstatements made by their respective corporate entities. Such cases are absolutely applicable here.

Moreover, the "group pleading" doctrine only has been used where it is "reasonable to presume" that misleading information conveyed in "prospectuses, registration statements, annual reports,' press releases, or other 'group-published information' . . . are the collective actions of [corporate] officers." *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995) (citation omitted). In such situations, "a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and *where possible the roles of the individual defendants in the misrepresentations*." *Id.* (emphasis added). Thus, *GlenFed* itself made clear that the group pleading doctrine is not a free pass to avoid specifying the role of a defendant in a group-published misstatement. *Id.* Rather, the doctrine recognizes that "*especially before discovery*," plaintiffs "will often have no way of knowing which person prepared what, just that somebody in the company did." *SEC v. Espuelas*, 699 F. Supp. 2d 655, 660 (S.D.N.Y. 2010) (emphasis added). It follows that, *after* discovery – as in this case – the rationale for group pleading is significantly diminished.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

6

Further, the doctrine "is extremely limited in scope" and "applies only to a limited number of corporate insiders" and limited types of documents. *Id.* (citations omitted). The SEC has rarely invoked the doctrine with success, and, when it has, it is used only to link very high-level corporate officials to corporate financial statements for which they were responsible. *See, e.g.*, *SEC v. Mozilo*, No. CV 09-3994-JFW (MANx), 2009 WL 3807124, at *13 (C.D. Cal. Nov. 3, 2009) (use of group pleading to tie President and COO to corporation's Form 10-K).[6]

In fact, several courts – including one in this Circuit – have heavily criticized the SEC for attempting to evade its pleading burden by conclusory reliance on "group pleading." In *SEC v. Yuen*, 221 F.R.D. 631 (C.D. Cal. 2004), the court expressed "concern" over the SEC's attempted use of this "disfavored" doctrine. The court chastised the SEC for "seek[ing] to get around the stringent pleading requirements of 9(b)" and refused to "allow the SEC to abuse the group pleading doctrine by asserting non-specific claims." *Id.* at 636. The court found the SEC's approach "misplaced and inappropriate," given "the SEC's substantial pre-filing investigatory powers and the significant discovery already conducted in [that] case." *Id.* at 637. Finally, the court noted that the group pleading doctrine is grounded in reasonableness, and that "conclusory allegations of job title, purported general involvement with [] day-to-day activities, and alleged participation in disclosure of public statements" were unreasonable bases to invoke the group pleading doctrine. *Id.*

Similarly, another court dismissed SEC allegations under Rule 9(b) where the SEC had already collected "nearly everything that could possibly be relevant" to its case. *Patel*, 2009 U.S. Dist. LEXIS 90558, at *45. The court held that "all Rule 9(b) requires is a modest degree of clarity – who did what, said what, to whom, and when? At this stage, inference, innuendo, resort to the passive voice, group pleading, and vague conclusory language all tend to

---

[6] *See also, e.g.*, *SEC v. Espuelas*, 579 F. Supp. 2d 461, 473 (S.D.N.Y. 2008) (use of group pleading to tie corporation's CEO, chairman, and executive vice president to corporation's SEC filings).

1  suggest that the SEC does not have, and has little hope of finding, evidence necessary to support
2  its claims." *Id.* at *45-46.

3  There is simply no precedent for applying the group pleading doctrine to this
4  case. The SEC has offered neither legal nor factual support for the blanket application of this
5  doctrine to each of the many alleged misstatements to which the SEC contends it applies.[7]
6  Rather, as noted, the few cases that successfully invoke the group pleading doctrine involve
7  very high-level senior corporate officials and key corporate financial documents. The SEC has
8  cited no cases subjecting an employee to the group pleading presumption in connection with the
9  wide range of document types at issue here: website postings, emails, advertisements,
10 brochures, and magazine articles.

11 In particular, the SEC tries to use group pleading to salvage paragraph 74 of the
12 Complaint, which surveys a long list of Schwab-published materials, most of which are not
13 alleged to have any specific connection to Mr. Daifotis. The SEC simply makes the conclusory
14 statement that Mr. Daifotis "was involved in the day-to-day operations of YieldPlus" and had
15 some general and unspecified involvement with YieldPlus marketing. (Opp'n at 10.) But,
16 although Mr. Daifotis managed Schwab's fixed-income mutual funds, there is no factual
17 allegation that he was sufficiently involved in Schwab's day-to-day advertising or was part of
18 Schwab's distinct marketing department that the SEC acknowledges was "largely responsible
19 for creating and reviewing the statements about YieldPlus that are the subject of [the]
20 Complaint." (Compl. ¶ 39.) The SEC's effort to attribute to Mr. Daifotis statements made in
21 any and all YieldPlus marketing materials fails.

22 Finally, the SEC filed this case only after conducting discovery that would be the
23 envy of any private plaintiff, collecting "nearly everything that could possibly be relevant" (over

24 ---

25 [7] Indeed, one of the main cases the SEC relies on to support its group pleading thesis, *SEC v. Baxter*, No. C 05-03843 RMW, 2007 WL 2013958 (N.D. Cal. Jul. 11, 2007), did *not* even
26 apply the doctrine. (Opp'n at 9.) To the contrary, the *Baxter* Court expressly noted that "the SEC does not rely upon the 'group published doctrine' . . . since it does not attribute
27 responsibility for false and misleading statements to a group of defendants." *Id.* at *6 n.6.

28

REPLY MEMORANDUM IN SUPPORT OF MOTION TO      8
DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

6 million documents) through its subpoena power and taking sworn testimony from dozens of witnesses. *Patel*, 2009 U.S. Dist. LEXIS 90558, at *45. This makes the SEC's decision to use group pleading even more unacceptable. The SEC cannot avoid its obligation to inform Mr. Daifotis of the basis for the claims against him.[8] The Court should reject the SEC's group pleading argument.

### III. THE SEC COMPLAINT FAILS TO ALLEGE WITH PARTICULARITY THE ELEMENTS OF AIDING AND ABETTING LIABILITY.

The SEC fails to allege its aiding and abetting claims (Claims Two, Five, Seven, and Eight) with sufficient particularity both because the SEC fails to sufficiently allege underlying primary violations and because the SEC has not alleged Mr. Daifotis' supposed "substantial assistance" to those primary violations. (MTD at 16-21.) The SEC's Opposition fails to show that its Complaint is sufficient on either point.

#### A. The SEC's Argument That Mr. Daifotis Possessed the Scienter for Primary Violations That He Also Aided and Abetted Is Nonsensical.

Mr. Daifotis demonstrated that the SEC has not alleged that there is an *individual* responsible for making most of the misstatements alleged in the Complaint. (MTD at 17 (citing Compl. ¶¶ 74(a)-(i), 81, 89-90, 92, 94, 97, 113, 123, 125, 149, 154, and 159).) This is a critical deficiency because the intent to commit fraud can only be attributed to an entity if a specific individual within the entity has the requisite state of mind. (*See* MTD at 17.)

In response, the SEC makes the strange and circular argument that "[Mr.] Daifotis' knowledge provides the scienter necessary to establish a primary violation." (Opp'n at 20.) In other words, the SEC contends that Mr. Daifotis aided and abetted himself. The SEC cites no cases in support of this novel and nonsensical theory that conflates primary and secondary liability.

---

[8] The SEC even argues that an email Mr. Charles Schwab sent is a "group published" misrepresentation that, for no apparent reason, is attributable to Mr. Daifotis. (Opp'n. at 10 (citing Compl. ¶ 74(e)).) It provides zero factual or legal basis for this astonishing proposition that an email from a particular corporate executive can constitute "group-published" information.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

9

Nor does the SEC cite to a single paragraph of its Complaint to support its assertion that "the Complaint sufficiently alleges primary liability." (Opp'n at 19.) Instead, it makes the blanket assertion that Mr. Daifotis and Mr. Merk (in some unspecified combination) contributed the scienter for *every* primary violation alleged, and that they then proceeded to aid and abet those primary violations. The SEC does not state which Defendant contributed scienter to which primary violation, or which primary violations each is purported to have aided and abetted. This "shotgunning" does not come close to meeting the requirements of Rule 9(b).

### B. The SEC's "Substantial Assistance" Allegations Are Deficient.

Mr. Daifotis also demonstrated that the SEC's "substantial assistance" allegations are deficient because the Complaint does not set forth with particularity Mr. Daifotis' role in the primary violations he is alleged to have aided and abetted, including statements relating to (1) the YieldPlus concentration policy; (2) the YieldPlus decline; (3) WAM and duration, and (4) the marketing of YieldPlus. (MTD at 19-20.) Moreover, the SEC cannot overcome these deficiencies simply by relying on Mr. Daifotis' position and job responsibilities. (MTD at 20-21.)

The SEC's Opposition sidesteps these points. The SEC completely ignores Mr. Daifotis' arguments regarding WAM/duration and the marketing of YieldPlus. (*See* Opp'n at 20-21.) It also does not address the point that it cannot allege "substantial assistance" simply on the basis of Mr. Daifotis' position and job responsibilities. (*See* Opp'n at 20-21.) Although the SEC does mention allegations relating to concentration policy and the YieldPlus decline, it does not show how the Complaint's *existing* allegations sufficiently allege substantial assistance.[9]

---

[9] Mr. Daifotis' motion calls out specific representative allegations in the Complaint that are deficient. (*See* MTD at 19-20 (citing Compl. ¶¶ 63, 66-67, 74(e), 81, 101, 117, 125, 134, 149, 155, 159).) Of this list, the SEC's Opposition only addresses paragraphs 117 and 159. (*See* Opp'n at 20.) Instead of addressing the allegations that Mr. Daifotis challenges, the SEC attempts to show that he "substantially assisted" in making statements that he is alleged to have made personally. (Opp'n at 20 (citing Compl. ¶¶ 141-42).) This use of *primary* liability allegations to support unrelated *secondary* liability allegations makes no sense.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

10

1    Instead, the SEC improperly attempts to amend these allegations in its
2    Opposition.[10]  For example, the Complaint contains no allegation that Mr. Daifotis "hid"
3    YieldPlus' alleged deviation from its concentration policy.  (*Compare* Opp'n at 21 *with* Compl.
4    ¶¶ 110, 117.)  Nor does the Complaint allege that an August 2007 Q&A itself contains
5    actionable misrepresentations, so it is impossible for any liability (primary or secondary) to be
6    based on that document.  (*Compare* Opp'n at 21 *with*  Compl. ¶ 140.)

7    Because the SEC's aiding and abetting allegations are not tied to a separate
8    underlying primary violation and do not set forth with specificity Mr. Daifotis' conduct that
9    constitutes "substantial assistance," they should be dismissed.

### IV.   CLAIM FIVE MUST BE DISMISSED.

11   The SEC concedes that Rule 206(4)-8 did not become effective until September
12   10, 2007, and that conduct prior to this date cannot subject Mr. Daifotis for liability under this
13   provision.  (Opp'n at 21.)  But the Fifth Claim is expressly based on the preceding 187
14   paragraphs of the Complaint, with no date limitation.  (*See* Compl. ¶¶ 188-92.)  The SEC
15   cannot amend its pleading through its Opposition.  Claim Five as pled should be dismissed.

### V.    CLAIMS SEVEN AND EIGHT MUST BE DISMISSED WITH PREJUDICE.

17   The SEC does not dispute that, before Dodd-Frank, it could not bring aiding and
18   abetting claims under the ICA in federal court.  Nor does it dispute that there is no congressional
19   intent to retroactively apply Dodd-Frank's ICA aiding and abetting provisions.  Nevertheless, it
20   seeks to retroactively apply Dodd-Frank against Mr. Daifotis.

21   The SEC contends – without citation to statutory text or controlling authority –
22   that it has long had ability under ICA section 9(b)(3) to pursue a cause of action for aiding and
23   abetting in administrative proceedings.  It then asserts that section 929M of Dodd-Frank merely

---

[10]    The SEC repeatedly engages in this tactic.  It states that Claim Five is limited to factual allegations on or after September 10, 2007 and that Claim Eight is limited to conduct in Section B of the Complaint.  (Oppo. at 5-6).  But the *actual* language of the Complaint is not so limited.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA                          11

1  provides an additional forum in which to bring such claims, and so it can be applied
2  retroactively. (Opp'n at 22-23.)
3  But, as discussed below, before Dodd-Frank, the statutory language of the ICA
4  did not create a cause of action for aiding and abetting. Thus, section 929M is not a mere
5  forum-shifting provision; rather, it "*creates* jurisdiction where none previously existed[.]"
6  *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 951 (1997). Moreover,
7  Section 929M of Dodd-Frank substantively changes the ICA by impairing rights and imposing
8  new obligations for past conduct. Thus, it cannot be applied retroactively.

**A.  Section 9(b) of the ICA Does Not Give the SEC the Authority to Allege A Cause of Action for Aiding and Abetting for Violations of ICA Sections 13(b) and 34(a).**

11 The SEC told Congress that, before Dodd-Frank, it had no authority to pursue
12 aiding and abetting claims under the ICA. (*See* MTD at 23-24.) But now the SEC tells this
13 Court that it did have such authority in administrative proceedings, pursuant to ICA section
14 9(b). But the SEC's reliance on section 9(b) is misplaced, for at least three reasons.
15 First, section 9(b) does not create a cause of action for aiding and abetting.
16 Rather, it is a provision regarding *remedies* – specifically it gives the SEC the authority to seek
17 from an ALJ an industry bar if a person has violated or aided and abetted a violation of various
18 statutes, not just the ICA. 15 U.S.C. § 80a-9(b) (Declaration of David B. Bayless in Support of
19 Reply Memorandum of Law In Support of Motion to Dismiss Complaint ("Bayless Decl."), Ex.
20 2).[11] The SEC typically invokes section 9(b) to seek this remedy after a district court has found
21 that other securities statutes were violated.[12]

---

[11]   To aid the Court's review of the relevant statutory texts, Mr. Daifotis respectfully submits them as exhibits to the Declaration of David B. Bayless submitted herewith.

[12]   The title of section 9(b), "Certain persons serving investment companies; administrative action of Commission," makes clear that this provision simply governs the SEC's authority to prohibit individuals from being employed by investment companies. Moreover, the text of section 9(b)(3) does not authorize the SEC to make findings of aiding and abetting violations because it omits the word "find." *Compare* 15 U.S.C. § 80a-9(b)(3) ("The Commission may … for such period of time as in its discretion shall deem appropriate in the public interest [impose an industry bar] if such person – has willfully aided, abetted ….") *with* 15 U.S.C. § 80b-3(f) (The Commission [] shall censure … if the Commission *finds* … that such censure is in the (continued…)

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Civil Case No.: 11-cv-00137-WHA

12

Second, the text of section 9(b) of the ICA does not create an "administrative" cause of action for aiding and abetting ICA violations. As the Supreme Court admonished in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), "the text of the statute controls" the scope of conduct it prohibits. *Id.* at 173. There, after examining the text of Exchange Act section 10(b), the Court held that it did not reach those who aid and abet a section 10(b) violation. Likewise, nothing in sections 9(b), 13(a), 34(b), or the pre-Dodd-Frank version of ICA section 48, makes aiding and abetting violations of these sections unlawful. *See* 15 U.S.C. §§ 80a-9(b), 80a-13(a), 80a-33(b), 80a-47 (Bayless Decl., Exhs. 2-4, 6).[13]

Third, Congress clearly provided for a new aiding and abetting cause of action through section 929M – something completely unnecessary if the SEC could already bring such causes of action under section 9(b). Section 929M of Dodd-Frank provides that "any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this Act . . . shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." Dodd-Frank, § 929M, 15 U.S.C. § 80a-47 (Bayless Decl. Exhs 1, 7). This language is substantively *identical* to the words that Congress used when, in response to *Central Bank*, it codified the SEC's authority to bring aiding and abetting claims under the Exchange Act.[14] In both instances, Congress was not merely conferring an additional forum to adjudicate aiding and abetting claims but was creating a new cause of action.

Before 2010, the ICA did not give the SEC the right to bring claims for aiding and abetting. Dodd-Frank has now so provided. This change cannot be applied retroactively.

---

public interest and that such person has committed ….") (emphasis added).

[13] Indeed, all cases that the SEC cites to support its purported administrative authority to pursue ICA aiding and abetting claims were consent orders entered after a settlement had been reached. (*See* Opp'n at 23.) None were actually litigated. Thus, the SEC's authorities have no precedential value.

[14] *See* 15 U.S.C. § 78t(e) ("any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this chapter . . . shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided").

**B.      Section 929M of Dodd-Frank Increases Mr. Daifotis' Liability, Imposes New Obligations on Him, and Impairs His Rights.**

Further, section 929M of Dodd-Frank is not a mere "forum shifting" statute. Rather, it substantively changes the law, affecting Mr. Daifotis' liabilities, remedies, and rights.

First, the liabilities have changed. Dodd-Frank amended section 48 to provide that anyone who aids and abets another person in violating the ICA is "deemed to be in violation *to the same extent as* the person to whom such assistance is provided. 15 U.S.C. § 80a-47 (emphasis added) (Bayless Decl. Exh. 7). Thus, a person secondarily liable under the ICA is now subject to all of the consequences that a primary violator faces. A statute that increases the extent of a party's liability, which Dodd-Frank plainly does, cannot be applied retroactively. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 303 (1994) (holding that an increase in monetary liability could not be applied retroactively even though the "normative scope of Title VII's prohibition on workplace discrimination" was not altered); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 283 (1994) ("The *extent* of a party's liability, in the civil context as well as the criminal, is an important legal consequence that cannot be ignored.").

Second, the remedies have changed. As the SEC concedes, (Opp'n at 24 & nn.13-14), the Dodd-Frank amendment to the ICA subjects a person charged with aiding and abetting to injunctive relief – a remedy not available in an administrative proceeding. Unlike a cease and desist order in an administrative forum, an injunction exposes the enjoined person to civil or criminal contempt charges. Further, as the SEC also admits, the method of calculating damages in an administrative proceeding differs from the methodology prescribed for federal courts, a change that increases the potential maximum amount allowed. *Compare* 15 U.S.C. § 80a-9(d)(2) *with* 15 U.S.C. § 80a-41 (Bayless Decl. Exhs 2, 5).

The SEC attempts to avoid both retroactive changes by "withdrawing" its request for injunctive relief for Claim Eight and by saying that it will not seek any more in penalties in this action than it could have pursued in an administrative action. But the SEC's newfound position (which it can change at whim either here or in future lawsuits) does not alter the statute's effect. The substantive changes Dodd-Frank enacted cannot be applied retroactively.

Third, rights have changed. Dodd-Frank 929M eliminates a defense to the SEC's claim for monetary penalties that otherwise would be available in an administrative proceeding. Specifically, a district court may impose monetary penalties for aiding and abetting an ICA violation without finding that such penalties are in the public interest, whereas such a finding is required if an ALJ imposes penalties. *Compare* 15 U.S.C. § 80a-41(e) *with* § 80a-9(d)(1) (Bayless Decl. Exhs. 2, 5).

Further, section 9 permits a defendant to present evidence of inability to pay, which an ALJ may consider in determining whether imposing penalties is in the public interest. 15 U.S.C. § 80a-9(d)(4); *see, e.g., In the Matter of Thrasher Capital Mgmt., LLC*, Admin. Proc. File No. 3-14124, Rel. No. 3108, 2010 WL 4622447, at *2 (Nov. 16, 2010) (finding no penalties should be imposed on a defendant because he submitted evidence supporting his inability to pay). Section 42, the provision under which the SEC now may pursue aiding and abetting causes of action after Dodd-Frank, has no provision that permits a defendant to resist civil monetary penalties based on an inability to pay. *See* 15 U.S.C. § 80a-41(e) (Bayless Decl. Exh. 5). A statute eliminating a defense cannot be applied retroactively because "it attaches a new disability in respect to transactions . . . already past." *Hughes Aircraft*, 520 U.S. at 948.

So, even if the ICA before Dodd-Frank provided for an administrative cause of action for aiding and abetting (which it did not), Dodd-Frank substantively changed the ICA to impair rights and to impose new obligations for past conduct. It cannot be applied retroactively. Claims Seven and Eight must be dismissed with prejudice.

## CONCLUSION

Mr. Daifotis' Motion to Dismiss the SEC's Complaint should be granted.

Dated: May 12, 2011       COVINGTON & BURLING LLP

By: */s/ David B. Bayless*
    DAVID B. BAYLESS

Attorneys for Defendant KIMON P. DAIFOTIS