1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   SECURITIES AND EXCHANGE                    No. C 11-00137 WHA
     COMMISSION,
11
              Plaintiff,
12
      v.                                        **ORDER GRANTING IN PART
13                                              AND DENYING IN PART
     KIMON DAIFOTIS and RANDALL MERK,           DEFENDANTS' MOTIONS TO
14                                              DISMISS AND STRIKE**
              Defendants.
15
     _____/
16

**United States District Court**
For the Northern District of California

17                    **INTRODUCTION**

18          In this enforcement action by the Securities and Exchange Commission against two

19   executives at the Charles Schwab entities responsible for its YieldPlus Fund, defendants Kimon

20   Daifotis and Randall Merk move to dismiss and strike portions of the complaint against them.

21   For the following reasons, the motions are **GRANTED IN PART** and **DENIED IN PART**.

22                      **STATEMENT**

23          This enforcement action alleges securities law violations by two executives of subsidiaries

24   of Charles Schwab Corporation in their management of the Schwab YieldPlus Fund, an

25   ultra-short bond fund.  YieldPlus's value dropped 28 percent in an eight-month period in 2007

26   and 2008, and its assets dropped from $13.5 billion to $1.8 billion.  As of the time of the

27   complaint was filed, YieldPlus's value had declined by 50 percent, and its assets were below

28   $200 million (Compl. ¶ 15).

United States District Court

For the Northern District of California

From July 2007 to July 2008 defendant Kimon Daifotis reported to defendant Randall Merk at Charles Schwab Investment Management, a wholly-owned subsidiary of Charles Schwab Corporation (*id.* at ¶¶ 20, 22). CSIM is a registered investment adviser, not a broker-dealer, whereas Charles Schwab & Co., Inc. — another wholly-owned subsidiary of Schwab — is a registered broker-dealer (*id.* at ¶¶ 22–23). Charles Schwab & Co., Inc., is the entity that employed personnel who performed advisory, marketing, legal, and compliance services for the YieldPlus Fund (*id.* at ¶ 23).[1]

During the relevant time period, defendant Daifotis was the lead portfolio manager of the YieldPlus Fund, and was a Senior Vice President and Chief Investment Officer of fixed income (bond) mutual funds at Charles Schwab Investment Management (*id.* at ¶ 20). The complaint reviews a series of allegedly misleading statements and other fraudulent acts by Daifotis related to YieldPlus, including an effort to portray YieldPlus as a safe "cash-alternative" or "cash-equivalent" investment, without fully or properly disclosing to investors how YieldPlus was fundamentally different from and significantly riskier than cash-like investments (*id.* at ¶¶ 62–102). In addition, Daifotis allegedly directed investments that caused YieldPlus to violate its own published governance policy against concentrating too much of its holdings in a single industry, and then caused the submission of false documents to the SEC and to the public, that masked what had occurred (*id.* at ¶¶ 108–26). When YieldPlus began to decline in value in 2007, Daifotis allegedly made further misleading statements about YieldPlus in order to dissuade investors from redeeming their investments (*id.* at ¶¶ 127–60).

Defendant Merk was an Executive Vice President at Charles Schwab Corporation and Charles Schwab & Co., Inc., and was the President of Charles Schwab Investment Management from July 2007 through December 2010 (*id.* at ¶ 21). Prior to 2007, he was also a trustee for Schwab Investments, the issuer of YieldPlus and other Schwab funds, and he oversaw the head of

---

[1] This action follows a private certified class action against Schwab entities and affiliated individuals alleging violation of state and federal law in the management of, disclosures concerning, accounting for, and marketing and sales of the YieldPlus Fund, to which this action has been related. *In re Charles Schwab Corp. Securities Litigation*, Case No. 3:08-cv-01510-WHA. Final approval of settlement and judgment were recently entered in the class action.

1   the product development and management groups responsible for the YieldPlus Fund, as well as

2   the President of CSIM during that time, who supervised the Fund's portfolio managers (*id.* at ¶¶

3   21, 24, 39).

4       The complaint reviews a series of allegedly misleading statements and other fraudulent

5   acts by Merk related to YieldPlus, much like for Daifotis (*id.* at ¶¶ 39–61, 74–78). In addition,

6   Merk allegedly voted to approve a plan to allow YieldPlus to violate its concentration policy and

7   then allegedly signed one or more false documents that masked what had occurred (*id.* at ¶¶ 56,

8   116–24, 126). As with Daifotis, the complaint alleges that when YieldPlus began to decline in

9   2007, Merk made further misleading statements about YieldPlus in order to dissuade investors

10  from redeeming their investments (*id.* at ¶¶ 127–34, 145–60). Finally, the complaint states that

11  Merk permitted certain Schwab mutual funds to redeem their YieldPlus investments after

12  obtaining material insider information about the Fund, while trying to keep outside investors, who

13  were not given that information, from redeeming their investments (*id.* at ¶¶ 161–72).

14      The Commission's complaint states eight claims for relief against the defendants, Kimon

15  Daifotis and Randall Merk, as follows: (1) violations of Section 10(b) of the Exchange Act (15

16  U.S.C. 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5) against both defendants;

17  (2) aiding and abetting violations of Section 10(b) of the Exchange Act (15 U.S.C. 78j(b)) and

18  Rule 10b-5 thereunder (17 C.F.R. 240.10b-5) against both defendants; (3) violations of Section

19  17(a) of the Securities Act (15 U.S.C. 77q(a)) against both defendants; (4) aiding and abetting

20  violations of Sections 206(1) and (2) of the Advisers Act (15 U.S.C. 80b-6(1) and (2)) against

21  defendant Merk; (5) aiding and abetting violations of Section 206(4) (15 U.S.C. 80b-6(4)) of the

22  Advisers Act and Rule 206(4)-8 (17 C.F.R. 275.206(4)-8) against both defendants; (6) violations

23  of Section 34(b) of the Investment Company Act (15 U.S.C. 80a-33(b)) against both defendants;

24  (7) aiding and abetting violations of Section 34(b) of the Investment Company Act (15 U.S.C.

25  80a-33(b)) against both defendants; and (8) aiding and abetting violations of Section 13(a) of the

26  Investment Company Act (15 U.S.C. 80a-13(a)) against defendant Daifotis. Therefore, claims

27  one through three and five through eight are stated against defendant Daifotis, and claims one

28  through seven are stated against defendant Merk.

The complaint reviews four types of allegedly fraudulent statements defendants made about the YieldPlus Fund: (1) misstatements about the nature and risk of the Fund; (2) misstatements about the weighted average maturity and duration of the Fund; (3) misstatements about the Fund's concentration status, followed by Schwab's change in its concentration policy and failure to disclose that change; and (4) misstatements from the middle of 2007 through November 2007, when the Fund began rapidly declining in value.

**ANALYSIS**

Defendants have each — separately — filed motions to dismiss and to strike portions of the complaint. All four motions will be addressed herein.

**A.    STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

Federal Rule of Civil Procedure 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). FRCP 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). It applies to a pleading as a whole where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies]

United States District Court
For the Northern District of California

4

1   entirely on that course of conduct as the basis of [its] claim[s]." *Kearns v. Ford Motor Co.*, 567

2   F.3d 1120, 1125 (9th Cir. 2009).

3       **B.      DAIFOTIS'S "SHOTGUN" PLEADING CHALLENGE**

4       Defendant Daifotis first moves to dismiss the claims against him by arguing that the entire

5   complaint should be dismissed because it is assertedly an exercise in "shotgun" pleading that

6   violates pleading standards.  Defendant's argument here comes down to the issue of whether

7   plaintiffs in federal court should be allowed to set out all of their fact allegations and then follow

8   such allegations with their legal claims.  In this initial argument, Daifotis argues that, without the

9   necessity of assessing the adequacy of each claim, pleading in this manner necessitates dismissal

10  of the entire complaint.  This order disagrees.  Instead, the issue is whether the well-pled facts in

11  the complaint state claims for relief under the various legal claims.  As such, the general attack on

12  the Commission's mode of pleading is **DENIED**.

13      **C.      PRIMARY LIABILITY OF BOTH DEFENDANTS**

14      Both defendants move to dismiss the claims against them for primary liability for failure

15  to plead fraud with particularity under FRCP 9(b).  As to both, these include claims one, three,

16  and six.  Specifically, defendant Daifotis argues that the complaint fails to allege facts

17  demonstrating his substantial participation in the preparation of the allegedly false statements

18  about the nature and risks of the YieldPlus Fund, weighted average maturity and duration, and the

19  Fund's concentration policy.  Defendant Merk argues that the complaint fails to allege facts

20  demonstrating his substantial participation in the preparation of the November 2007 statements or

21  the YieldPlus marketing materials, as well as facts demonstrating why certain of the challenged

22  statements were materially false or misleading.  This order disagrees that these claims have not

23  been pled with sufficient particularity, as follows.

24          **1.      Misstatements Made Directly by Defendants**

25      The parties appear to agree that the complaint alleges that defendant Daifotis personally

26  made five alleged misstatements, as follows: in August 2007, when YieldPlus was suffering

27  massive, unprecedented redemptions, Daifotis held two conference calls in which he allegedly

28  falsely stated that "we've got very, very, very slight negative flows" and that "outflows have been

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   minimal" (Compl. ¶¶ 141–42).  The complaint separately sets forth other alleged misstatements

2   on those conference calls by Daifotis (*id.* at ¶¶ 68–69).  Daifotis also made alleged

3   misrepresentations in written materials in which he was directly quoted or in which statements

4   were directly attributed to him, including in a September 2005 brochure (*id.* at ¶ 74(f)), and a

5   Spring 2006 brochure (*id.* at ¶ 74(b)).  Significantly, Daifotis does not challenge these alleged

6   misstatements as inadequate as a basis for liability for claims one, three, and six (Reply 3 n.2).

7   Therefore, only the extent to which other alleged misstatements or omissions can be attributed to

8   defendant Daifotis will be examined below.

9       As to specific misstatements attributed to defendant Merk, although defendant Merk does

10  not acknowledge this in his opening brief and does not challenge it in reply, he is apparently not

11  moving to dismiss the primary-violation claims against him based on alleged misstatements that

12  he made personally.  These include: (1) signing a Commission filing on November 15, 2006, that

13  allegedly included a false certification by Schwab that the form contained no material changes

14  (Compl. ¶¶ 123–24); and (2) authoring an August 2007 set of questions and answers on the

15  Schwab website, including the allegedly misleading assertion that YieldPlus had a "short maturity

16  structure that mitigated much . . . price erosion" (*id.* at ¶ 145).  At all events, therefore, claims

17  one, three, and six as to defendant Merk cannot be dismissed entirely.[2]  Nevertheless, other

18  misstatements made by others within Schwab or Schwab entities themselves but to which

19  defendants allegedly substantially participated such that the statements can be attributed to them

20  as a basis for primary liability will be addressed below.

21           **2.**      **Other Misstatements Attributed to Defendants**

22       The complaint contains other alleged misstatements that are not directly attributable to

23  Daifotis or Merk but which the Commission asserts can be the basis for their liability anyway.

24  These are statements made by others within Schwab or Schwab entities themselves but not by

25

26

27       [2] Merk states in the introduction to his reply that "(This motion has not challenged the
    SEC's claims under Rule 10b-5(b) based on one of the alleged misstatements in the August
28  2007 Q&A and under Section 34(b) for the alleged misstatement in the November 15, 2006
    Registration Statement.)."

Daifotis or Merk personally, such as press releases and statements on Schwab's website, in sales materials, and in filings with the Commission.

To satisfy FRCP 9(b), the complaint must allege with particularity that defendants "substantial participat[ed] or [were] intricate[ly] involve[d] in the preparation of [these allegedly] fraudulent statements." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). Examples of "substantial participation" noted by our court of appeals have included when a document containing a misstatement "was prepared after extensive review and discussions" with a defendant, and when the defendant "played a significant role in drafting and editing." *In re Software Toolworks Inc.*, 50 F.3d 615, 628 n.3 (9th Cir. 1994).

### (a)   Daifotis

Daifotis's opening brief points to the following allegations and argues that they do not meet this FRCP 9(b) standard: paragraphs 55, 66–67, 74, 81, 89, 92–94, 98, 108, 113–14, 125, and 149–50 of the complaint. In response, the Commission states that the complaint includes actual allegations of "Daifotis's role in the misrepresentations and omissions." The Commission cites allegations in the complaint of Daifotis's role overseeing the YieldPlus Fund, the reliance of Schwab officials on Daifotis to "substantially participate in ensuring that marketing and sales materials were accurate and complete," and Daifotis's general involvement with sales and marketing materials (Opp. 10–11, 16–18).

These allegations set forth Daifotis's role in connection with alleged misstatements by others with sufficient particularity. We must remember that the alleged misstatements were all about the Fund Daifotis himself managed. Given Daifotis's central role in the Fund, the complaint sufficiently sets forth Daifotis's substantial participation including his significant role and contributions to the misstatements alleged to have been made by others at Schwab or by the entity itself with regard to the Fund. The following list reviews each of the alleged misstatements challenged by Daifotis and demonstrates that the complaint adequately alleges that he substantially participated in their creation:

• Paragraph 55:      Daifotis gave an interview to Dow Jones that resulted in a "Dow Jones feature story on YieldPlus."

United States District Court

For the Northern District of California

- Paragraphs 66–67:    Daifotis participated in the discussions about and the drafting of a press release issued on August 1, 2006, that called the Fund a "cash alternative" and stated it was "subject to minimal price fluctuations" but that failed to disclose material facts.

- Paragraph 74:    Daifotis received, reviewed, and contributed to sales and marketing materials regarding YieldPlus put out by Schwab and made suggestions and edits to some of them; a number of them contained statements that quoted Daifotis or that were directly attributed to him or that included his picture (*see* paragraphs 64–65, referring to Daifotis's role related to the creation of statements in paragraph 74).

- Paragraphs 81, 89, 92–94, and 98:    Daifotis substantially participated in misstatements concerning YieldPlus's weighted average maturity based on inclusion or substitution of "duration" ratios in statements to investors beginning in 2006, as explained by paragraphs 83–102, by initially suggesting the change to others at Schwab and discussing with other officials how to implement it in his role as head of the Fund.

- Paragraphs 108, 113–14, and 125:    Daifotis substantially participated in misstatements concerning YieldPlus's investment of more than 25 percent of its assets in non-agency mortgage-back securities by directing the investments that caused it to deviate and by failing to classify some securities as non-agency MBS even though they should have been included, which resulted in misstatements by Schwab reflecting these investments and classifications and which Daifotis knew but did nothing about.

- Paragraphs 149–50:    Daifotis substantially contributed to the creation of a set of November 2007 talking points by reviewing them and failing to correct material misstatements that contradicted information conveyed in internal correspondence in the days before the talking points were finalized.

These allegations are sufficient to state a claim of direct liability based on substantial participation in the alleged misstatements of others.

### (b) Merk

The complaint also contains sufficient allegations of substantial participation by defendant Merk. Daifotis, the lead manager of the Fund, reported to Merk, who was the President of Charles Schwab Investment Management and was also a trustee for the entity that issued YieldPlus and other Schwab funds.

At the hearing on the instant motions, counsel for defendant Merk stated that Merk is alleged to have made 15 misleading misstatements that are the subject of the Commission's claims for primary liability, but that all but two fail because Merk neither made them nor substantially participated in their creation. The two that Merk concedes are adequately pled are

1   identified above.  As to the other supposed 13 statements, this order shall note as an initial matter

2   that Merk's briefs lay out no such clearly circumscribed list of 13 statements.  Therefore, this

3   order can only discuss those allegations actually challenged in defendant's brief (Br. 12–13), or

4   discussed specifically at the hearing, on the point of substantial participation.  The following list

5   reviews each such alleged misstatement challenged by Merk, and again this exercise demonstrates

6   that the complaint adequately alleges that Merk substantially participated in the creation of

7   alleged misstatements:

8   •   Paragraphs 42–44      As a member of Schwab's "Cash Council," a group of executives
        and 46:                who marketed Schwab's cash products, Merk identified YieldPlus
9                              as a product to highlight on Schwab's website, and, beginning in
                               mid-2006, continued to direct an effort to highlight YieldPlus on
10                             Schwab's website.  The Cash Council, including Merk, directed that
                               sales materials emphasize the stability of YieldPlus's NAV.

11

12  •   Paragraph 49–50:       Merk was the source of the idea for a press release issued on
                               August 1, 2006, that called the Fund a "cash alternative" and stated
13                             it was "subject to minimal price fluctuations" but that failed to
                               disclose material facts.

14  •   Paragraph 74:          As a member of Cash Counsel and a trustee of the issuer of the
                               Fund, Merk was responsible for reviewing sales and marketing
15                             materials regarding YieldPlus put out by Schwab and determining
                               whether they were truthful and appropriate, and he did review and
16                             agree to the content of such websites and communications (*see*
                               paragraphs 46, 51, and 53, referring to Merk's role related to the
17                             creation of statements in paragraph 74).

18  •   Paragraphs 149–50:     Merk reviewed, suggested an edit to, and then approved a set of
                               November 2007 talking points about the Fund before they were
19                             circulated; in doing so, he failed to correct material misstatements
                               that contradicted both information conveyed in internal
20                             correspondence in the days before the talking points were finalized,
                               as well as Merk's own prior statement.

21

22  These allegations are sufficient to state a claim of direct liability based on substantial

23  participation in the alleged misstatements of others.  In contrast, two alleged misstatements made

    by others are insufficiently pled to serve as a basis for primary liability.  As to an e-mail and a

24  "Manager's Discussion" document that were only received by Merk, and nothing else, there are

25  insufficient allegations to support substantial participation (Compl. ¶¶ 153 and 159).  The

26  Commission may seek leave to file an amended complaint to cure these deficiencies.

27

28

United States District Court

For the Northern District of California

In short, the complaint sets forth not only Merk's role overseeing Daifotis and the Fund, but also specific facts about his substantial participation in the creation of various alleged misstatements made by others. His challenge to primary liability on this basis is rejected.

In addition, this order also rejects Merk's challenge to three particular alleged misstatements on the basis that the statements themselves were purportedly not materially false or misleading, because even a statement that happens to include a literally true fact can still be materially misleading by omission.

\*     \*     \*

Defense counsel also invoke a past order of the undersigned judge: *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 WL 760750, at \*19 (N.D. Cal. Mar. 9, 2007). *Siemers* considered in part the adequacy of pleading the substantial participation of Stephens Inc., one of a number of entity defendants and an underwriter and marketer of the Wells Fargo funds at issue. *Siemers* found the following allegations insufficient for purposes of pleading that Stephens was primarily liable for alleged prospectus misstatements:

> Stephens provided comments and edits to Wells Fargo Funds Management prior to dissemination of the prospectuses to the public. Two senior vice presidents of Stephens reviewed the Wells Fargo Funds Prospectuses for accuracy.

Defendants argue that this passage counsels for a contrary result as to the sufficiency of the Commission's pleading substantial participation here. Not so. The contexts of the participation in the two cases are different. Whereas *Siemers* concerned the review and limited participation of an outside underwriter and marketer as to prospectuses that other entity defendants primarily drafted and vetted, here we have the individuals internal to the entity issuer *who were responsible for the Fund*. The complaint details their involvement in the creation of the alleged misstatements reviewed above through substantial participation.

The allegations regarding alleged misstatements by others are sufficiently particular to state claims for primary liability against defendants Daifotis and Merk based on their substantial participation. Therefore, this order need not determine whether "group pleading" also applies to the alleged misstatements in the complaint to render them sufficiently pled. The motions to dismiss the primary liability claims are **DENIED**.

10

United States District Court
For the Northern District of California

**D.     AIDING AND ABETTING LIABILITY OF BOTH DEFENDANTS**

Defendants next argue that the complaint must be dismissed as to the claims against them for aiding and abetting liability, because the complaint fails to plead fraud with particularity under FRCP 9(b).  This applies to claims two, five, seven, and eight for defendant Daifotis and claims two, five, and seven for defendant Merk.  Specifically, they argue that the complaint fails to allege factual allegations of primary violations that they aided and abetted or that they substantially assisted the primary violations.  This order holds that the aiding and abetting claims are pled with sufficient particularity.

The parties agree that the aiding and abetting claims brought here have three elements: (1) a primary violation of the relevant securities law; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her role in furthering it; and (3) substantial assistance in commission of the primary violation.  *See Ponce v. S.E.C.*, 345 F.3d 722, 737 (9th Cir. 2003) (citations omitted).  Defendants challenge these claims based on the first and third prongs, which prongs must be pled with the particularity required by FRCP 9(b).  *See, e.g.*, *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 924 (N.D. Cal. 2008) (Whyte, J.) ("To the extent the aiding and abetting claims are grounded in fraud, they require particularized allegations.").

As to the first prong — the primary violation — the complaint sets forth many alleged misrepresentations, and it is undisputed that the complaint contains direct statements by Daifotis and Merk that serve as a basis for the direct liability claims against them, as set forth above.  The same alleged misrepresentations by Merk can serve as a primary violation underlying aiding and abetting by Daifotis, and vice versa.  Alternatively, as the Commission points out, the directly attributed statements are just some of the pled misstatements that can otherwise be attributed to the Schwab entities, which alleged misstatements may serve as the primary violations for aiding and abetting liability.

Defendants also argue that the third prong — substantial assistance — is also not pled with sufficient particularity.  Given the wealth of information provided in the complaint concerning their involvement in the statements put out by Schwab about the Fund, however, it is a

United States District Court

For the Northern District of California

1   reasonable inference that the complaint sufficiently states that Daifotis and Merk substantially

2   assisted each other's alleged misstatements.

3           For example, as to substantial assistance by Daifotis, one of the uncontested specific

4   misstatements attributed to Merk that is the subject of primary liability for Merk is in a

5   Commission filing on November 15, 2006, that allegedly included a false certification by Schwab

6   that the form contained no material changes (Compl. ¶¶ 123–24).  Paragraph 125 of the complaint

7   states that Daifotis reviewed that filing before it was filed and was asked to comment on the

8   language concerning the change to the concentration policy and the related additional risk

9   disclosure but that he failed to make changes to make the filing not false or misleading with

10  scienter that it was false or misleading.  This is not the only example, but it demonstrates that the

11  complaint adequately alleges substantial assistance by Daifotis.

12          In addition, as to substantial assistance by Merk, several of the uncontested specific

13  statements attributed to Daifotis that are the subject of primary liability for Daifotis are alleged

14  misstatements that Daifotis made on conference calls in August 2007 (Compl. ¶¶ 141–42, 68–69).

15  The complaint alleges that preceding the calls Daifotis communicated with Merk concerning the

16  need to assure the advisor community that the Fund was stable (*id.* at 138–39).  This is not the

17  only example, but it demonstrates that the complaint adequately alleges substantial assistance by

18  Merk.

19          Therefore, defendants' motions to dismiss the aiding and abetting claims on this basis are

20  **DENIED**.

21          **E.      SCHEME LIABILITY THEORY LACKS ALLEGATIONS OF DECEPTIVE CONDUCT**

22          Defendant Merk argues that claims two and three must be dismissed against him because

23  the complaint's alternative theory of scheme liability fails to allege deceptive conduct.  This order

24  holds that the complaint fails to sufficiently allege deceptive conduct.

25          In addition to allegations that defendant Merk violated Rule 10b-5 and Section 17(a) by

26  making false statements and omissions, the complaint alleges in the alternative that he violated

27  those laws by engaging in schemes to defraud.  Scheme liability under those provisions exists

28  when a "defendant's conduct or role *in an illegitimate transaction* has the principal purpose and

effect of creating a false appearance of fact in the furtherance of a scheme to defraud." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006) (emphasis added; vacated on other grounds). Our court of appeals further set forth the following guidance concerning the finding of scheme liability under this standard in *Simpson*:

> Conduct by the defendant that does not have a principal legitimate business purpose, such as the invention of sham corporate entities to misrepresent the flow of income, may have a principal purpose of creating a false appearance. *Conduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation.* Participation in a legitimate transaction, which does not have a deceptive purpose or effect, would not allow for a primary violation even if the defendant knew or intended that another party would manipulate the transaction to effectuate a fraud.

*Ibid.* (citations omitted and emphasis added). Consistent with these binding principles, other courts have held that "the conduct at issue must involve 'sham' or 'inherently deceptive' transactions," to be an actionable basis for scheme liability. *S.E.C. v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 360 (D.N.J. 2009); *see also In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1044–45 (N.D. Cal. 2009) (Breyer, J.).

The complaint does not meet this standard. The marketing of an ultra-short bond fund was not inherently deceptive conduct. The Commission acknowledges as much when it argues that the decisions just reviewed "were incorrectly decided," and that this order should find it sufficient to include "all activities that lead to any sort of fraud, even if the activities would not have been inherently wrongful, absent a misleading statement about them." This order declines to deviate from *Simpson*. The decisions cited by the Commission are in fact not to the contrary.

Therefore, defendant Merk's motion to dismiss the Commission's scheme liability theory from claims two and three against him is **GRANTED**.

## F.   RECEIPT OF MONEY OR PROPERTY BY MERK

Defendant Merk next argues that claim three for primary liability under Section 17(a)(2) must be dismissed against him because it fails to allege receipt of money or property. The Commission does not dispute that the complaint does not allege Merk's

United States District Court

For the Northern District of California

1   receipt of money or property.  Instead, it counters that it is sufficient for the *company* to

2   receive money or property as a result of the violation.

3       Section 17(a) states: "It shall be unlawful for any person in the offer or sale of any

4   securities . . . (2) to obtain money or property by means of any untrue statement of a

5   material fact or any omission to state a material fact necessary in order to make the

6   statements made, in light of the circumstances under which they were made, not

7   misleading."  15 U.S.C. 77q(a).  This order holds that the plain meaning of this text

8   requires that the *defendant* himself be alleged to have obtained money or property.  The

9   parties cite opposed out-of-circuit district court decisions on this question; this order finds

10  those requiring the defendant's receipt of money or property to be consistent with the

11  statutory language and thus more persuasive.

12      Therefore, defendant Merk's motion to dismiss claim three as to a Section 17(a)(2)

13  primary violation against him is **GRANTED** without prejudice to pleading that Merk

14  received money or property.

15      **G.    AIDING AND ABETTING BASED ON
             REDEMPTIONS BY THE TARGET DATE FUNDS**

16      Defendant Merk argues that claim four should be dismissed against him because

17  the complaint does not adequately allege aiding and abetting liability based on

18  redemptions by the Target Date Funds, another set of Schwab funds separate from the

19  YieldPlus Fund but which invested in YieldPlus.  The complaint alleges that Merk aided

20  and abetted a violation of the Advisers Act by permitting other Schwab mutual funds to

21  learn material, non-public information and then redeem their investments in YieldPlus.

22      Section 206 of the Advisers Act makes it "unlawful for any investment adviser . . .

23  (1) to employ any device, scheme, or artifice to defraud any client or prospective client;

24  [or] (2) to engage in any transaction, practice, or course of business which operates as a

25  fraud or deceit upon any client or prospective client."  15 U.S.C. 80b-6.  "Section 206(1)

26  requires fraudulent intent, while § 206(2) requires only negligence."  *S.E.C. v. Treadway*,

27  430 F. Supp. 2d 293, 338 (S.D.N.Y. 2006) (citations omitted).

28

14

United States District Court

For the Northern District of California

1    The complaint alleges sufficient facts to state a claim against Merk for aiding and

2    abetting violations of Sections 206(1) and (2) by CSIM and Charles Schwab & Co. as

3    investment advisers.  It states that Merk failed to inform the YieldPlus Fund's other

4    trustees of the facts surrounding these redemptions.  The redemptions by other Schwab

5    funds "came at a time when YieldPlus was struggling to raise cash to meet redemptions by

6    selling bonds in a declining market" (Compl. ¶¶ 161–72).  The gist of these allegations is

7    that Merk allowed one shareholder of YieldPlus to use material, non-public information

8    for its benefit at the expense of other shareholders.

9    Merk's challenges to this claim fail.  *First*, Merk asserts that there must be a

10   "violat[ion] of a duty of trust and confidence."  The complaint includes allegations of such

11   a violation, however, by alleging that Merk violated his fiduciary duty to YieldPlus (*id.* at

12   ¶¶ 167, 172).

13   *Second*, Merk cites insider-trading decisions under the Exchange Act to argue that

14   the Commission must allege a personal benefit to him to state a claim.  To the contrary,

15   this claim is not based upon the Exchange Act.  Rather, it is based upon the Advisers Act,

16   which does not require that the actor actually receive a personal benefit.  Instead, the

17   Advisers Act "reflects . . . a congressional intent to eliminate, or at least to expose, all

18   conflicts of interest which might incline an investment adviser — consciously or

19   unconsciously — to render advice which was not disinterested."  *S.E.C. v. DiBella*, 587

20   F.3d 553, 567 (2d Cir. 2009) (citations omitted).  Merk's assertion that Section 206 and

21   Rule 10b-5 are similar is not enough to engraft a benefit requirement.

22   *Third*, and similarly, Merk cannot properly rely on insider-trading decisions to

23   claim that there can be no "improper tipping" when the information is "shared within the

24   corporate entities."  As noted above, the allegations supporting this claim are that Merk

25   allowed Schwab entities access to material, non-public information belonging to

26   YieldPlus, not belonging to every Schwab entity.  Merk's arguments ignore the

27   importance of the corporate form in this area.

28

1    *Fourth*, Merk claims that the complaint does not provide enough detail about the

2    specific facts disclosed to the Target Date Funds.  Merk cites no authority that would

3    require the Commission to comply with PSLRA heightened pleading requirements under

4    the Advisers Act.  The factual allegations in support of this claim are sufficient at this

5    stage.  Defendant Merk's motion to dismiss claim four is **DENIED**.

6    **H.    TEMPORAL LIMITATION TO APPLICATION OF RULE 206(4)-8**

7    Defendants argue that claim five must be dismissed because Rule 206(4)-8 was not

8    in effect at the time of all of the alleged misconduct.  The parties agree that Rule 206(4)-8

9    (17 C.F.R. 275.206(4)-8) did not become effective until September 10, 2007.  The

10   Commission states that defendants' conduct on or after that date can be actionable under

11   claim five.

12   The Commission argues the complaint alleges ample actionable conduct by

13   Daifotis after the effective date (citing specifically paragraphs 149, 152, 153, 155, and 159

14   of the complaint), and a number of instances of actionable conduct by Merk after the

15   effective date (citing specifically paragraphs 113, 149, and 153 of the complaint, and

16   referencing aiding and abetting liability).  Daifotis counters that claim five should

17   nevertheless be dismissed entirely because, as pled, it "[has] no date limitation."

18   It is sufficient that this order will explicitly limit this claim to conduct subsequent

19   to September 10, 2007.  Thus, defendant's motion is **GRANTED IN PART** and **DENIED IN**

20   **PART** in that only defendants' conduct after September 10, 2007, will be actionable under

21   claim five.

22   **I.    NO AUTHORITY TO RETROACTIVELY BRING**
          **CLAIMS FOR AIDING AND ABETTING ICA VIOLATIONS**

23

24   Claims seven and eight allege that defendants Daifotis and Merk aided and abetted

25   primary violations of Sections 13(a) and 34(b) of the ICA.  On July 21, 2010, Congress

26   passed the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No.

27   111-203, 124 Stat. 1376–2223 (2010), which made changes to the federal securities laws.

28   In particular, Section 929M(2)(b) of the Act gave the Commission the right to bring a

     claim in federal court for aiding and abetting a violation of the ICA.  It states: "Section 48

United States District Court

For the Northern District of California

of the Investment Company Act of 1940 (15 U.S.C. 80a-48) is amended by . . . inserting . . . the following: '[] For purposes of any action brought by the Commission . . . any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this Act, or of any rule or regulation issued under this Act, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.'"  124 Stat. at 1861–62.

The parties debate whether the Commission had authority to prosecute aiding and abetting ICA violations before this amendment to the Act.  The Commission states: "Since 1940, the SEC has had authority under Section 9(b)(3) of the ICA [15 U.S.C. § 80a-9(b)(3)] to institute administrative proceedings against persons who aided and abetted violations of the ICA."  That subsection provided that the Commission may prohibit an individual's employment affiliation with registered investment companies if the individual "has willfully aided, abetted, counseled, commanded, induced, or procured the violation by any other person of the Securities Act of 1933, or of the Securities Exchange Act of 1934, or of subchapter II of this chapter, or of this subchapter, or of the Commodity Exchange Act, or of any rule or regulation under any of such statutes."

Regardless of the prior existence of Section 9(b)(3), it is clear that Section 929M(2)(b) of the Dodd-Frank Act created *new* authority for the Commission — and new liabilities and remedies — and that it is pursuant to this new authority that the Commission now seeks to bring claims seven and eight in district court against Daifotis and Merk, which it cannot do retroactively.  *First*, pre-existing Section 9(b)(3) did not create authority to bring a claim in district court for aiding and abetting ICA violations. Instead, it provided the Commission authority to prohibit individuals from being employed by investment companies.  The Commission points to nothing (pre-Dodd-Frank) that makes aiding and abetting ICA violations *unlawful*.  The difference in language between old Section 9(b)(3) and new Section 929M(2)(b) demonstrates that Congress has created a larger scope of authority pursuant to which the Commission may now prosecute unlawful aiding and abetting ICA violations.

17

In fact, contrary to the Commission's current position, the Commission Chairman testified to Congress on July 22, 2009, prior to Dodd-Frank, that:

> The Exchange Act and the Investment Advisers Act permit the SEC to bring actions for aiding and abetting violations of those statutes in civil enforcement actions. The Administration's proposal would provide the SEC with authority to bring actions for aiding and abetting violations of the Securities Act and the Investment Company Act, *which authority the SEC currently does not have*.

Chairman Mary L. Schapiro, U.S. Securities and Exchange Commission, *Regulatory Perspectives on the Obama Administration's Financial Regulatory Reform Proposals, Testimony Before the United States House of Representatives Committee on Financial Services* (emphasis added).

*Second*, it is illustrative that all of the examples cited by the Commission in which it has used its authority under Section 9(b)(3) in this context were orders entered with the consent of the individuals at issue. The Commission's prior use of Section 9(b)(3) demonstrates that even if the Commission had authority to take *some* administrative action against aiding and abetting ICA violations previously, the *remedies* it had authority to pursue have changed. In contrast to Section 9(b)(3)'s focus on prohibiting certain employment relationships, the Dodd-Frank Act changed and expanded the scope of remedies available to combat aiding and abetting ICA violations. Specifically, the new remedies include injunctive relief and a new method of calculating damages that increases the potential maximum. *Compare* 15 U.S.C. 80a-9(d)(2) *with* 80a-41.

The Commission attempts to beat back this problem by stating that it promises to seek "no more in remedies than it could have obtained had it brought those aiding-and-abetting claims in an administrative proceeding" (emphasis added). That is irrelevant. The question is whether the authority, liabilities, and remedies changed under the law, not what the Commission promises to do or not do here. In its opposition, the Commission acknowledges that the Dodd-Frank Act provides remedies that were not available before. Moreover, it acknowledges that on the face of the complaint, defendants are subject to greater penalties than they would have been prior to Dodd-Frank (Opp. 24 nn.13–14).

United States District Court

For the Northern District of California

1    *Third*, the Dodd-Frank Act also changed certain rights of a defendant in combating

2  a charge of aiding and abetting an ICA violation.  It eliminated the requirement in

3  administrative proceedings that before a penalty is imposed the public interest be

4  considered, which defense is not provided by Section 929M(2)(b).  *Compare* 15 U.S.C.

5  80a-41(e) *with* 80a-9(d).  It also eliminated the allowance in administrative proceedings

6  for defendants to present evidence of inability to pay as a part of the consideration of

7  whether imposing penalties is in the public interest.  15 U.S.C. 80a-9(d)(4).

8    "Elementary considerations of fairness dictate that individuals should have an

9  opportunity to know what the law is and to conform their conduct accordingly; settled

10 expectations should not be lightly disrupted."  *Landgraf v. USI Film Prods.*, 511 U.S. 244,

11 265 (1994).  Accordingly, retroactivity has long been disfavored.  A court must determine

12 whether a new statute would have retroactive effect by considering "whether it would

13 impair rights a party possessed when he acted, increase a party's liability for past conduct,

14 or impose new duties with respect to transactions already completed."  In such case the

15 statute is not applied retroactively "absent clear congressional intent favoring such a

16 result."  *Id.* at 280.

17   Here, we have no such express directive, and Section 929M(b)(2) would impair

18 rights, increase liability, and impose new duties according to the *Landgraf* factors if

19 applied retroactively.  It "create[d] jurisdiction where none previously existed."  *Hughes*

20 *Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 951 (1997) (emphasis

21 omitted).  It increased the extent of liability.  *See Rivers v. Roadway Express, Inc*., 511

22 U.S. 298, 303 (1994); *see also Landgraf*, 511 U.S. at 283–84.  And it eliminated defenses.

23 *See Hughes Aircraft*, 520 U.S. at 948.  In short, it is not a mere "forum-shifting

24 provision," as the Commission claims.

25   Section 929M of the Dodd-Frank Act does not just "simply to allow the SEC to

26 allege aiding and abetting violations of the ICA in district court actions as well as

27 administrative proceedings."  In fact, it changed the liabilities, remedies, and scope of

28 authority the Commission has to pursue such violations.  The Commission does not

19

United States District Court

For the Northern District of California

1   dispute that there is no congressional intent to retroactively apply Dodd-Frank's ICA

2   aiding and abetting provisions assuming such provisions do more than open a new forum.

3   For the reasons stated, Section 929M(2)(b) cannot be applied retroactively.  All alleged

4   misconduct occurred before Dodd-Frank.  Therefore, defendants' motions to dismiss

5   claims seven and eight against them are **GRANTED** and such claims are **DISMISSED WITH**

6   **PREJUDICE**.

7   **J.    MERK'S ADDITIONAL CHALLENGES BASED ON THE DODD-FRANK ACT**

8   Defendant Merk also argues that claims two, four, and five must be dismissed

9   against him because "it appears that the SEC may be relying on Sections 929N and 929O

10   of the Dodd-Frank Act to impose aiding and abetting liability under Section 206 of the

11   IAA (Claims Four and Five) and Section 10(b) of the Exchange Act (Claim Two) based

12   on recklessness, not actual knowledge. . . . To the extent the SEC is relying on the

13   Dodd-Frank Act to impose aiding and abetting liability under the IAA and the Exchange

14   Act on a theory of recklessness, rather than actual knowledge, those claims must be

15   dismissed as well."  The Commission responds that it is "not arguing in this particular

16   case that recklessness is the standard for aiding-and-abetting claims."  Defendant Merk

17   does not reply to this point.  As to claims two, four, and five, the motion on this basis is

18   **DENIED AS MOOT**.

19   **K.    MOTIONS TO STRIKE**

20   Defendants move to strike certain allegations in the complaint.  Namely, Daifotis

21   moves to strike allegations that he "recklessly" aided and abetted violations of the federal

22   securities laws, and both defendants move to strike the prayer for relief for disgorgement.

23   A motion to strike should be granted if "the matter to be stricken clearly could have no

24   possible bearing on the subject of the litigation."  *Castaneda v. Burger King Corp.*, 597 F.

25   Supp. 2d 1035, 1046 (N.D. Cal. 2009).

26   As to allegations that defendant Daifotis "recklessly" aided and abetted securities

27   law violations, the Commission states in opposition: "Daifotis is mistaken, for the

28   Complaint does not allege that aiding-and-abetting liability in this case is based upon

20

**United States District Court**
For the Northern District of California

1   reckless conduct."  The Commission states that allegations of recklessness are simply part

2   of the complaint's "factual allegations" and also form the basis for alleged primary

3   violations by defendant Daifotis.  With that clarification, this part of defendant's motion to

4   strike is **DENIED AS MOOT**.

5          As to the prayer for relief for disgorgement (Compl. at 56), the parties do not

6   dispute that the complaint does *not* include factual allegations of improper financial

7   benefits received by defendants.  Rather, the parties debate whether it is required at this

8   stage that the Commission plead receipt of improper financial benefits in order to include

9   this request in its prayer.  Nevertheless, it would be premature to strike this prayer for

10  relief, as we do not know how the evidence will develop.  Therefore, defendants' motions

11  to strike the prayer for disgorgement are **DENIED**.

12          **L.     DEFENDANT MERK'S REQUEST FOR JUDICIAL NOTICE**

13          Defendant Merk requests that this order take judicial notice of all of the documents

14  attached to the declaration of Lee Taylor.  FRE 201 states: "A judicially noticed fact must

15  be one not subject to reasonable dispute in that it is either (1) generally known within the

16  territorial jurisdiction of the trial court or (2) capable of accurate and ready determination

17  by resort to sources whose accuracy cannot reasonably be questioned."  Moreover, "[a]

18  court shall take judicial notice if requested by a party and supplied with the necessary

19  information."  *Ibid.*  Matters of public record may be judicially noticed.  *See Emrich v.*

20  *Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

21          Accordingly, this order takes judicial notice of all the requested items *except* for

22  exhibit 12.  Other than exhibit 12, judicial notice is only for the purpose of establishing

23  those documents' existence and contents, not for the purposes of establishing the truth or

24  relevance of the matters asserted therein.  The truth and relevance of the matters therein

25  are subject to reasonable dispute and as such judicial notice of them for these purposes is

26  inappropriate.  Consideration of exhibit 12 (excerpts from defendant Merk's IRA rollover

27  account statement) is inappropriate; judicial notice will not be taken of it and it was not

28

considered in any manner by this order.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4

(9th Cir. 1998) (superseded by statute on other grounds).

### CONCLUSION

For the reasons stated, defendants' motions to dismiss and strike are **GRANTED IN

PART** and **DENIED IN PART**.  To the extent stated above, the Commission may seek leave

to amend the complaint and will have **TWENTY-ONE CALENDAR DAYS** from the date of

this order to file a motion, noticed on the normal 35-day track, for leave to file an

amended complaint.  A proposed amended complaint must be appended to the motion.

The motion should clearly explain how the amendments to the complaint cure the

deficiencies identified herein.

Effective immediately, discovery is allowed as to all claims remaining in the case.

That one alleged false statement has been inadequately pled to support a claim by itself

does not mean that discovery will be barred as to that statement, for discovery thereon

may well bear on the claims still in play.  Discovery should commence promptly and the

parties should prepare this case for summary judgment and trial.

**IT IS SO ORDERED.**

Dated:  June 6, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

22