DAVID B. BAYLESS (SBN 189235)
Email:  dbayless@cov.com
TAMMY ALBARRÁN (SBN 215605)
Email:  talbarran@cov.com
AILEEN WHEELER (SBN 223705)
Email:  awheeler@cov.com
JOSHUA D. HURWIT (SBN 263108)
Email: jhurwit@cov.com
SAMANTHA J. CHOE (SBN 252002)
Email:  schoe@cov.com
JOHN D. FREED (SBN 261518)
Email: jfreed@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone:    415-591-6000
Facsimile:     415-591-6091

Attorneys for Defendant Kimon P. Daifotis

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>KIMON P. DAIFOTIS and RANDALL MERK,<br><br>Defendants. | Civil Case No.: 11-cv-00137-WHA<br><br>**NOTICE OF MOTION AND DEFENDANT KIMON P. DAIFOTIS'S MOTION FOR RECONSIDERATION OF CERTAIN PORTIONS OF THE COURT'S JUNE 6, 2011 ORDER DENYING HIS MOTION TO DISMISS**<br><br>Date:         July 28, 2011<br>Time:        2:00 p.m.<br>Judge:       Hon. William H. Alsup<br>**Courtroom: 9** |

**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 28, 2011, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable William H. Alsup, at the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Kimon P. Daifotis will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), 12(f), 54(b), and Civil Local Rule 7-9 to reconsider its ruling on his motion to dismiss the Plaintiff Securities and Exchange Commission's claims for violations of the federal securities laws to the extent that they are based on alleged misstatements made by others.

This Motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities; the papers and pleadings on file with this Court; and such other written or oral argument and other materials as may be presented to this Court.

**STATEMENT OF ISSUE**

On June 6, 2011, the Court applied the Ninth Circuit's "substantial participation" standard to alleged misstatements made by others and denied Kimon P. Daifotis's motion to dismiss the Securities and Exchange Commission's ("SEC") claims for primary securities fraud liability based on those alleged misstatements. But, on June 13, 2011, the Supreme Court abrogated that standard in *Janus Capital Group, Inc. v. First Derivative Traders*, No. 09-525, 2011 U.S. LEXIS 4380 (Jun. 13, 2011) and replaced it with the "ultimate authority" test.

The issue here is whether this Court should reconsider its June 6, 2011 Order now that the "substantial participation" standard has been replaced with the Supreme Court's new "ultimate authority" test.

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 2

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT............................................................................................................................. 4

I. THE U.S. SUPREME COURT'S *JANUS* DECISION ABROGATES THE NINTH CIRCUIT'S "SUBSTANTIAL PARTICIPATION" STANDARD. ................... 4

II. *JANUS* ESTABLISHES THAT MR. DAIFOTIS CANNOT BE PRIMARILY LIABLE FOR THE ALLEGED THIRD-PARTY MISSTATEMENTS. ........................ 6

    A. The SEC's Sections 10(b) and 17(a) Claims Must Be Dismissed To The Extent That They Are Based On The Substantial Participation Theory................................................................................................................ 7

    B. The SEC's Section 34(b) Claim Under the Investment Company Act Must Be Dismissed With Prejudice. ...................................................................... 8

III. THE SEC ALSO MUST REPLEAD ITS AIDING AND ABETTING CLAIMS DUE TO THE FAILURE OF ITS PRIMARY LIABILITY ALLEGATIONS............................................................................................................ 9

CONCLUSION........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Fed. Ins. Co. v. Albertson's Inc.*,
  No. C06-04000 MHP, 2007 WL 2015042 (N.D. Cal., July 6, 2007) ......................................... 2

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ................................................................................................. 6

*In re Clearly Canadian Sec. Litig.*,
  875 F. Supp. 1410 (N.D. Cal. 1995) ........................................................................................ 8

*In re ESS Tech., Inc.*,
  No. C-02-04497 RMW, 2005 WL 418548 (N.D. Cal. Feb. 22, 2005) ...................................... 8

*Janus Capital Group, Inc. v. First Derivative Traders*,
  No. 09-525, 2011 U.S. LEXIS 4380 (Jun. 13, 2011) ........................................................ passim

*Ponce v. SEC*,
  345 F.3d 722 (9th Cir. 2003) .................................................................................................. 9

*S.E.C. v. Berry*,
  580 F. Supp. 2d 911 (N.D. Cal. 2008) (Whyte, J.) ................................................................. 10

*S.E.C. v. Pimco Advisors Fund Mgmt. LLC*,
  341 F. Supp. 2d 454 (S.D.N.Y. 2004) ..................................................................................... 8

*School Dist. No. 1J, Multinomah County v. ACandS, Inc.*,
  5 F.3d 1255 (9th Cir. 1993) .................................................................................................... 2

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ................................................................................................. 7

*Stephenson v. Calpine Conifers II*,
  652 F.2d 808 (9th Cir. 1981), *overruled on other grounds by In re Washington
  Public Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (9th Cir. 1987) .................................... 7

*Teamsters Local 282 Pension Trust Fund v. Angelos*,
  762 F.2d 522 (7th Cir. 1985) .................................................................................................. 7

**FEDERAL STATUTES**

Investment Company Act of 1934 § 34(b), 15 U.S.C. § 80a-33(b) ............................................. 8

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b) ............................................... 7, 8

Securities Act of 1933 § 17(a) ............................................................................................... 7, 8

**RULES**

Civil Local Rule 7-9 ................................................................................................................1, 2

Federal Rule Rule of Civil Procedure 9(b) ..................................................................................2

Federal Rule of Civil Procedure 12(f) .........................................................................................8

**REGULATIONS**

17 C.F.R.§ 240.10b-5(b).................................................................................................4, 5, 6, 7

**INTRODUCTION**

The Supreme Court has just removed the foundation for the SEC's fraud allegations and the Court's denial of Defendant Kimon P. Daifotis' Motion to Dismiss them.

Mr. Daifotis argued that the SEC's claims for primary securities fraud liability were flawed because the SEC had failed to connect him in a meaningful way to the vast majority of the alleged misstatements made by various Schwab corporate entities and others (the "Third-Party Misstatements"). (*See* Dkt. No. 38 at 6-16.) In rejecting this argument, the Court expressly relied on the Ninth Circuit's "substantial participation" standard and held that the SEC could pursue primary liability charges against Mr. Daifotis based on the alleged Third-Party Misstatements because he allegedly received, reviewed, and/or edited them. (June 6, 2011 Order ("Order") at 7-10.)

But "substantial participation" is no longer the operative legal standard for primary liability. In *Janus Capital Group, Inc. v. First Derivative Traders*, No. 09-525, 2011 U.S. LEXIS 4380 (Jun. 13, 2011), the Supreme Court ruled that only "the person . . . with **ultimate authority** over the statement, including its content **and** whether and how to communicate it[,]" can be held liable for primary violations of the federal securities laws. *Id.* at *13.[1] Merely ***"participating in the writing and dissemination" of a statement is not enough.*** *Id.* at *9.

This decision drastically changes the scope of this case. The SEC alleges over 20 times that Mr. Daifotis "substantially participated" in the alleged Third-Party Misstatements. (*See, e.g.*, Compl. ¶¶ 9, 25, 27, 49-50, 55, 63-64, 66-67, 72, 74, 78, 81, 83, 87, 89, 92-94, 98, 101, 113-14, 125, 134, 145, 149-52, 159.) But the SEC does not—and cannot—allege that Mr. Daifotis had "ultimate authority" over the content of, and whether and how to communicate, the Third-Party Misstatements.

Thus, in light of *Janus*, the Court should dismiss the SEC's primary liability claims to the extent that they are based on Mr. Daifotis's alleged "substantial participation" in

---

[1] All emphasis is added unless stated otherwise.

the "creation" of the alleged Third Party Misstatements. The Court should strike those allegations from the complaint because they are not actionable against Mr. Daifotis. *See Janus*, 2011 U.S. LEXIS 4380 at *12 (finding one only "makes a statement by stating it").

In addition, under *Janus*, Mr. Daifotis cannot be liable for aiding and abetting the alleged Third-Party Misstatements for which Mr. Merk (or any other person) was the predicate primary violator if that primary violation is based on the "substantial participation" standard. Thus, consistent with *Janus* and Rule 9(b), the SEC must identify the person or entity that committed each primary violation (*i.e.*, actually made the alleged misstatement) that Mr. Daifotis purportedly aided and abetted. The SEC must allege facts establishing that the person or entity so identified had ultimate control over the content of the statement, and whether and how to communicate it. The SEC's complaint does not do so and so these allegations must also be dismissed.

## LEGAL STANDARD

Reconsideration is appropriate if "there is an intervening change in controlling law." *School Dist. No. 1J, Multinomah County v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993). Thus, "a change in law occurring after the time of [the interlocutory] order" favors reconsideration. Civil L.R. 7-9(b)(2); *see also Fed. Ins. Co. v. Albertson's Inc.*, No. C06-04000 MHP, 2007 WL 2015042 (N.D. Cal., July 6, 2007) (granting leave to file a motion for reconsideration of summary judgment orders in light of recently announced U.S. Supreme Court precedent).

The U.S. Supreme Court's recent decision in *Janus*, which announced a higher standard for primary securities fraud claims that are based on others' alleged misstatements, satisfies the standard for reconsideration.

## FACTUAL BACKGROUND

In light of *Janus*, it is essential to understand Schwab's corporate structure and Mr. Daifotis' limited role and authority within that structure.

Charles Schwab Corporation, a public SEC-reporting company, is the parent corporation of several wholly-owned subsidiaries. (Compl. ¶¶ 22, 23.) Two of Charles Schwab

1   Corporation's subsidiaries are relevant here:  (1) Charles Schwab Investment Management, Inc.
2   ("CSIM"), an SEC-registered investment advisor (Compl. ¶ 22); and (2) Charles Schwab & Co.
3   ("CS&Co."), an SEC registered broker-dealer that is a wholly-owned subsidiary of Schwab
4   Holdings, which in turn is a wholly-owned subsidiary of Charles Schwab Corporation (Compl.
5   ¶ 23).
6          Also relevant is Schwab Investments, which issued the Schwab family of mutual
7   funds, including the YieldPlus Fund ("YieldPlus" or the "Fund").  However, Schwab
8   Investments is not a subsidiary of Charles Schwab Corporation.  (Compl. ¶ 24.)  Rather, it is a
9   separate and independent Massachusetts business trust, registered with the SEC as an
10  investment company.  (Compl. ¶ 24.)  Schwab Investments retained CSIM to provide
11  investment advisory services for Schwab's proprietary mutual funds.  (Compl. ¶ 22.)  Schwab
12  Investments also retained CS&Co. to perform brokerage, "advisory, marketing, legal, and
13  compliance services" for Schwab's proprietary mutual funds, including YieldPlus.  (Compl.
14  ¶ 23.) (*See also* Appendix A (chart of the alleged Schwab corporate structure).)
15         Importantly, Mr. Daifotis was *not* the "ultimate authority" at CSIM, CS&Co. or
16  Schwab Investments.  Mr. Daifotis reported to the President of CSIM, who was Evelyn Dilsaver
17  (until July 2007) and thereafter Randall Merk.  (*See* Compl. ¶ 20.)  Schwab Investments' Board
18  of Trustees made decisions with respect to the Fund, not Mr. Daifotis.  (*See, e.g.*, Compl. ¶ 116
19  (trustees voted on the alleged change to the concentration policy).)  Mr. Daifotis merely
20  presented his "recommendation to the board."  (Compl. ¶ 117.)
21         Indeed, Mr. Daifotis was *not* the "ultimate authority" with respect to YieldPlus
22  marketing and advertising.  Rather, CS&Co. provided marketing, legal and compliance services
23  to the Fund.  (Compl. ¶ 23.)  Specifically, CS&Co.'s "product development and management
24  group" was "largely responsible for creating and reviewing the statements about YieldPlus that
25  are the subject of [the SEC's] Complaint."  (Compl. ¶ 39.)  Notably, the Senior Vice President
26  for Product Development who led this group did *not* directly or indirectly "report to"
27  Mr. Daifotis.  (Compl. ¶ 39.)  There is no alleged reporting relationship between Mr. Daifotis
28

1  and the advertising, legal, and compliance professionals responsible for preparing and approving
2  YieldPlus marketing materials.
3         Finally, the SEC does not allege (nor could it) that Mr. Daifotis signed any SEC
4  filing made by any Schwab corporate entity.

5  **ARGUMENT**

6         *Janus* necessarily changes this Court's analysis of the alleged Third-Party
7  Misstatements.  Of the over 50 alleged misstatements in the Complaint, Mr. Daifotis
8  purportedly made only five of them.  (*Compare* Appendix B *with* Appendix C.)  The rest were
9  "made" by *others*.  These alleged Third-Party Misstatements—listed in full in Appendix B—are
10  ***not actionable*** against Mr. Daifotis for primary liability under the Supreme Court's "ultimate
11  authority" test.  Thus, this case must be narrowed significantly.

12  **I.   THE U.S. SUPREME COURT'S *JANUS* DECISION ABROGATES THE NINTH
13  CIRCUIT'S "SUBSTANTIAL PARTICIPATION" STANDARD.**

14         In *Janus*, the Supreme Court interpreted Rule 10b-5, which states that it is
15  unlawful "[t]o ***make*** an untrue statement of a material fact . . . in connection with the purchase
16  or sale of any security."  17 C.F.R.§ 240.10b-5(b).  The Court adopted the plain meaning of the
17  word "make" and found that one only "makes a statement by stating it."  *Janus*, 2011 U.S.
18  LEXIS 4380 at *12.
19         Thus, for purposes of primary securities fraud liability, "the maker of a statement
20  is the person or entity with ***ultimate authority*** over the statement, including its content ***and***
21  whether and how to communicate it."  *Id.* at *13.  The Court made clear that "[o]ne who
22  prepares or publishes a statement on behalf of another is not its maker."  *Id*.  Indeed, "[w]ithout
23  control, a person or entity can merely suggest what to say, not 'make' a statement in its own
24  right."  *Id.* at *13.  In so holding, the Court drew an analogy to the "relationship between a
25  speechwriter and a speaker," noting that "[e]ven when a speechwriter drafts a speech, the
26  content is entirely within the control of the person who delivers it.  It is the speaker who takes
27  credit—or blame—for what is ultimately said."  *Id.* at *13-14.
28

1    The Court concluded that a contrary rule would improperly blur the line between
2 primary and secondary liability, because "[i]f persons [] without control over the content of a
3 statement could be considered primary violators who 'made' the statement, then aiders and
4 abettors would be almost non-existent." *Id.* at *14.

5    Notably, the Court explicitly rejected the SEC's argument (as *amicus curiae*) that
6 the term "'make' should be defined as 'create.'" *Id.* at *16.  The Court held that such a
7 "definition of 'make' would [] lead to results inconsistent with [the Court's] precedent." *Id.* at
8 *17.  For example, the SEC's proposed definition would improperly permit a plaintiff to "sue a
9 person who 'provides the false or misleading information that another person then puts into the
10 statement.'"[2] *Id.*  Accordingly, the Court ruled that primary securities fraud liability cannot
11 attach simply based on "participating in the drafting of a false statement." *Id.*

12    The Court then applied the new rule to allegations that Janus Capital
13 Management LLC ("JCM"), "a mutual fund investment adviser," was primarily liable for
14 alleged fraudulent statements contained in the SEC filings of an affiliated entity, the mutual
15 fund Janus Investment Fund ("JIF").  *See id.* at *4-5.  Specifically, the plaintiff alleged that JCM
16 "participat[ed] in the writing and dissemination of [JIF's] prospectuses," such that JCM "made
17 the misleading statements contained in the documents." *Id.* at *10 (quoting *In re Mutual Funds*
18 *Inv. Litig.*, 566 F.3d 111, 121 (2009)).

19    The Court rejected that argument as a matter of law.  Even with JCM's alleged
20 "significant[] involve[ment] in preparing the prospectuses," the Court held that "JCM did not
21 'make' those statements for purposes of Rule 10b-5." *Id.* at *22-23.  Rather, the prospectuses
22 were "subject to the ultimate control of" JIF, with JCM operating in the role of a "speechwriter"

---

[2] Although *Janus* involved private plaintiffs, the Court's interpretation of Rule 10b-5 applies equally to this SEC action.  The central holding of the *Janus* decision on what it means to "make" a statement within the scope of Rule 10b-5 does not depend on the nature of the plaintiff that brings a claim.  Indeed, in dissent, Justice Breyer noted that the *Janus* majority's holding applies to the SEC. *Janus*, 2011 U.S. LEXIS 4380 at *38 (Breyer, J., dissenting) (opining that the "SEC itself" would be unlikely to pursue certain types of misconduct under the majority's "ultimate control" test).

KIMON P. DAIFOTIS' MOTION FOR RECONSIDERATION       5
Civil Case No.: 11-cv-00137-WHA

that "may have assisted [JIF] with crafting" those documents but was not primarily liable for their content.  *Id.* at *23.

*Janus* overturns Ninth Circuit jurisprudence, which held that a person or entity can be subject to primary liability through "substantial participation" or "intricate involvement" in the preparation of a third-party's false statement.  *See, e.g.*, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 & n.5 (9th Cir. 2000) (*quoted in* Order at 7).  After *Janus*, the "substantial participation" test is no longer the governing law for primary liability claims based on alleged third-party misstatements.  *Janus* abrogates the "substantial participation" standard, and develops a bright-line rule that only those with "ultimate authority" over a statement (*i.e.*, the speaker), can be subject to primary liability for that statement.  *Janus*, 2011 U.S. LEXIS 4380 at *13.  Thus, "participating in the drafting of a false statement" alone is insufficient as a matter of law to give rise to primary securities fraud liability.  *Id.* at *17.

## II. *JANUS* ESTABLISHES THAT MR. DAIFOTIS CANNOT BE PRIMARILY LIABLE FOR THE ALLEGED THIRD-PARTY MISSTATEMENTS.

*Janus* squarely applies to the SEC's allegations that Mr. Daifotis is primarily liable for the alleged Third-Party Misstatements.  As this Court ruled, primary liability for these statements was viable only because Mr. Daifotis (and/or Mr. Merk) allegedly reviewed, drafted, edited, or otherwise "substantially participated" in the "creation" of the Third Party Misstatements.  (Order at 7.)

For example, the Court found that the SEC adequately alleged that Mr. Daifotis "substantially participated" in the "creation" of the alleged Third-Party Misstatements in the following paragraphs:

- Paragraph 55 because "Daifotis **gave an interview** to Dow Jones";
- Paragraphs 66-67 because "Daifotis **participated in the discussion about and the drafting of** a press release";
- Paragraph 74 because "Daifotis **received, reviewed, and contributed to** sale and marketing materials regarding YieldPlus **put out by Schwab** and **made suggestions and edits** to some of them";
- Paragraphs 81, 89, 92-94, and 98 because "Daifotis **substantially participated** in misstatements concerning YieldPlus's weighted average maturity based on . . .

- *suggesting the change to others at Schwab* and *discussing* with other officials how to implement it . . .";

- Paragraphs 108, 113-114, and 125 because "Daifotis *substantially participated* in misstatements concerning YieldPlus's investment of more than 25 percent of its assets in non-agency mortgage backed securities by [taking actions that] *resulted in misstatements by Schwab* . . ."; and

- Paragraphs 149-50 because "Daifotis *substantially contributed* to the creation of a set of November 2007 talking points *by reviewing them* . . . ."

(Order at 7-8.) While these allegations may have been adequate before *Janus*, they no longer suffice. They must be reevaluated under the new legal test.

**A.  The SEC's Sections 10(b) and 17(a) Claims Must Be Dismissed To The Extent That They Are Based On The Substantial Participation Theory.**

The Third-Party Misstatements supporting the SEC's First and Third Claims for Relief are exactly the types of allegations that now fail to state a claim for primary liability after *Janus*.[3] *See Janus*, 2011 U.S. LEXIS 4380 at *9. Without "control," Mr. Daifotis could "merely suggest what to say, not 'make' a statement in [his] own right." *Id.* at *13. Merely "participating in the drafting of a false statement" is not enough. *Id.* at *17. Mr. Daifotis is not primarily liable simply because he helped "create" a misstatement made by another. *Id.* at *16.

The SEC does not allege that Mr. Daifotis had "ultimate authority over [any alleged Third-Party Misstatement], including [their] content and whether and how to communicate [them]." *Id.* at *13. Instead, the "content [was] entirely within the control of the [entities or persons that] deliver[ed] it. *Id.* at *14.

In sum, *Janus* represents an intervening change in the law. The SEC pleaded its claims under the now-abrogated "substantial participation" standard, and the Court relied on that

---

[3] The *Janus* analysis also applies to SEC's Third Claim for Relief under Section 17(a) of the Securities Act. *See, e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (finding elements of Securities Act Section 17(a) mirror those of Exchange Act Section 10(b)); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 531 (7th Cir. 1985) ("[I]n a case in which a Rule 10b-5 action is available, there is no reason to think that a § 17(a) action would have different elements. . . ."); *Stephenson v. Calpine Conifers II*, 652 F.2d 808, 815 (9th Cir. 1981), *overruled on other grounds by In re Washington Public Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (9th Cir. 1987) (noting that there are only "minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act").

1 very standard in ruling on Mr. Daifotis's motion to dismiss. Thus, the Court should reconsider
2 its Order, reevaluate the complaint in light of the Supreme Court's new "ultimate authority" test,
3 and dismiss the SEC's primary liability claims under Sections 10(b) and 17(a) to the extent that
4 they are based on the alleged Third-Party Misstatements. Therefore, pursuant to Federal Rule of
5 Civil Procedure 12(f), the Court should strike from the Complaint those discrete primary
6 liability allegations that fall short of the standard set forth in *Janus*.[4]

        **B.    The SEC's Section 34(b) Claim Under the Investment Company Act Must Be Dismissed With Prejudice.**

9         The *Janus* analysis also applies to the SEC's Sixth Claim for Relief for a primary
10 violation of Section 34(b) of the Investment Company Act. Like Section 10(b), Section 34(b)
11 establishes liability for "making" false statements and the operative statutory language is the
12 same. *See* 15 U.S.C. § 80a-33(b) ("It shall be unlawful for any person to ***make*** any untrue
13 statement of a material fact in any registration statement, application, report, account, record, or
14 other document filed or transmitted [to the SEC]."); *see also S.E.C. v. Pimco Advisors Fund*
15 *Mgmt. LLC*, 341 F. Supp. 2d 454, 471 (S.D.N.Y. 2004) ("Section 34(b) of the Investment
16 Company Act . . . prohibits material misrepresentations or omissions in terms similar to [Rule]
17 10b-5.").
18         Accordingly, the SEC's allegation that Mr. Daifotis "made" untrue statements of
19 material fact in registration statements, reports, records, or other documents filed with the
20 Commission in violation of Section 34(b) (Compl. ¶ 194), necessarily fails under *Janus*. Only
21 the "ultimate authority" for those filings can be primarily liable for alleged misstatements
22 contained within them. *See Janus*, 2011 U.S. LEXIS 4380 at *12 (finding one only "makes a
23 statement by stating it"). In this case, it is undisputed that the YieldPlus SEC filings were made

---

[4] Such allegations are immaterial to the SEC's claims for relief and may be stricken. *See, e.g.*, *In re ESS Tech., Inc.*, No. C-02-04497 RMW, 2005 WL 418548, at *6 (N.D. Cal. Feb. 22, 2005) (under Rule 12(f), striking claims based on alleged false statements due to a failure to plead scienter as to those statements); *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420-22 (N.D. Cal. 1995) (striking numerous factual allegations deemed not actionable as redundant and immaterial under Rule 12(f)).

by Schwab Investments, not by Mr. Daifotis, and the SEC does not allege (nor could it) that Mr. Daifotis signed even a single SEC filing.

Thus, the Court should dismiss the Sixth Claim for Relief as to Mr. Daifotis with prejudice.

### III. THE SEC ALSO MUST REPLEAD ITS AIDING AND ABETTING CLAIMS DUE TO THE FAILURE OF ITS PRIMARY LIABILITY ALLEGATIONS.

The Court must also dismiss the SEC's aiding and abetting claims. Mr. Daifotis can only be liable for aiding and abetting if the SEC establishes a primary violation of the relevant securities law. *See Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003). The SEC's complaint alleges that Mr. Daifotis aided and abetted primary violations, but those primary violations were, in turn, based on Mr. Merk's "substantial participation." But, because the SEC's "substantial participation" allegations are no longer sufficient to support primary liability, the alleged Third-Party Misstatements no longer state a predicate primary violation.

For example, the SEC alleges that "Merk (along with Daifotis) directly and substantially participated in the issuance of a 'cash/CD/YieldPlus related press release' on August 1, 2006." (Compl. ¶ 49.) But the SEC does not attribute this press release to any specific entity or person. And, Mr. Merk—who is only alleged to have "substantially participated" in creating the press release—can no longer serve as the alleged primary violator whom Mr. Daifotis aided and abetted (and vice versa).[5]

One alleged misstatement is attributed to a disinterested third-party, Dow Jones (Compl. ¶ 55), while another is attributed to Mr. Charles Schwab (Compl. ¶ 74(e)). Unless the SEC alleges that Dow Jones and Mr. Schwab each committed a primary securities fraud violation in connection with their statements, there is simply nothing for Mr. Daifotis to have aided and abetted.

---

[5] In its Order, this Court stated that, at least as to some allegations, "misrepresentations by Merk can serve as a primary violation underlying aiding and abetting by Daifotis, and vice versa." (Order at 11.)

1   Further, several Third-Party Misstatements are attributed to **both** CS&Co. and
2  CSIM (and possibly even to a third entity, Schwab Investments). (*See, e.g.*, Compl. ¶¶ 74, 81,
3  112-114, 122-125, 145, 149.) Thus, the SEC alleges that numerous Schwab entities "made"
4  numerous alleged misstatements simultaneously. But, under *Janus*, one Schwab entity cannot
5  be primarily liable for alleged misstatements "made" by another Schwab entity where it is
6  "undisputed that corporate formalities were observed" between those entities. *Janus*, 2011 U.S.
7  LEXIS 4380 at *19. As was the case with the Janus family of entities, CSIM "is a separate legal
8  entity" from both CS&Co. and Schwab Investments.[6] *See id.* at *5-6.
9   Thus, in light of *Janus*, the SEC must allege which Schwab entity or employee
10 "made" each alleged misstatement. Without the "substantial participation" crutch, the SEC's
11 current approach—attributing alleged misstatements to multiple entities at once or to one who
12 edited or reviewed the alleged misstatement—fails to state with particularity a primary violation
13 that Mr. Daifotis is alleged to have aided and abetted. *See S.E.C. v. Berry*, 580 F. Supp. 2d 911,
14 924 (N.D. Cal. 2008) (Whyte, J.) ("To the extent the aiding and abetting claims are grounded in
15 fraud, they require particularized allegations.").
16  In sum, because *Janus* establishes that "the maker of a statement is the person or
17 entity with ultimate authority over the statement, including its content and whether and how to
18 communicate it," the "maker" for each Third-Party Misstatement must be identified for the
19 SEC's aiding and abetting claims to survive. *Janus*, 2011 U.S. LEXIS 4380 at *13. Otherwise,
20 an aiding and abetting cause of action is not pled.

21                              **CONCLUSION**
22  For these reasons, first, the Court should grant the motion for reconsideration of
23 its June 6, 2011 Order and dismiss the primary liability claims against Mr. Daifotis (Claims 1
24 and 3) to the extent that they are based on others' alleged misstatements. The Court should also

---

26 [6] This is established by the SEC's own allegations. Schwab Investments issued the YieldPlus Fund (Compl. ¶ 24). CSIM, a separate legal entity, served as the primary investment adviser of
27 the Fund. (Compl. ¶ 22.) And, yet another separate legal entity, CS&Co., provided the marketing, legal and compliance services to the Fund. (Compl. ¶ 23.)
28

1  strike all allegations relating to the Third-Party Misstatements that are based on the "substantial

2  participation" standard.  Second, the Court should dismiss Claim 6 as to Mr. Daifotis with

3  prejudice.  Finally, with respect to the aiding and abetting cause of action (Claim 2), the Court

4  should require the SEC to identify the predicate primary violator for each alleged misstatement

5  that Mr. Daifotis supposedly aided and abetted.

7  Respectfully submitted,

8  DATED:  June 22, 2011   COVINGTON & BURLING LLP

9  By:   */s/ Tammy Albarrán*
        TAMMY ALBARRÁN

  Attorneys for Defendant KIMON P. DAIFOTIS