IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>  v.<br><br>KIMON DAIFOTIS and RANDALL MERK,<br><br>          Defendants.<br>_____ / | No. C 11-00137 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR RECONSIDERATION AND MODIFYING IN PART ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND STRIKE** |

## INTRODUCTION

Defendants Kimon Daifotis and Randall Merk move for reconsideration of the order granting in part and denying in part their motions to dismiss and strike portions of the complaint against them in light of the subsequent Supreme Court decision, *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011). For the following reasons, defendants' motions for reconsideration are **GRANTED**, and the order granting in part and denying in part defendants' motions to dismiss and strike is **MODIFIED IN PART**.

## STATEMENT

On June 6, 2011, an order granted in part and denied in part defendants' motions to dismiss and strike the complaint against them in this enforcement action that alleges securities law violations in defendants' management of the Schwab YieldPlus Fund. The background and a review of the complaint can be found in that order. On June 13, 2011, the Supreme Court issued its decision in *Janus Capital Group, Inc. v. First Derivative Traders*. That decision will be

reviewed below. Defendants moved for leave to file motions for reconsideration and leave was granted. Defendants' motions for reconsideration were heard on July 28.

## ANALYSIS

### A. *JANUS CAPITAL GROUP, INC. V. FIRST DERIVATIVE TRADERS*

*Janus* considered whether a mutual fund investment adviser could be held liable in a private action under Securities and Exchange Commission Rule 10b-5 for false statements included in *its client mutual funds'* prospectuses. Justice Thomas writing for the Court concluded that the mutual fund investment adviser could not be held liable because it did not "make" the statements in the prospectuses. The procedural posture of *Janus* was whether the complaint there stated a claim on which relief could be granted.

In interpreting Rule 10b-5's prohibition making it "unlawful for any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact" in connection with the purchase or sale of securities, *Janus* began with the following: "One 'makes' a statement by stating it." After considering dictionary definitions and uses of the word "make," *Janus* held that the phrase at issue in Rule 10b-5 ("[t]o make any . . . statement") is the "approximate equivalent" of "to state." Thus:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by — and only by — the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit — or blame — for what is ultimately said.

131 S.Ct. at 2302.

*Janus* then went on to state that this rule follows from *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), which held that a private right of action does not lie against aiders and abettors of alleged Rule 10b-5 violations. "If persons or entities without control over the content of a statement could be considered primary violators who 'made' the statement, then aiders and abettors would be almost nonexistent." In addition, the

2

Court noted that it followed from *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), "that the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."

The Supreme Court held that under this rule the mutual fund investment adviser did not "make" the statements in its client mutual funds' prospectuses. A footnote added a potentially important caveat that "as long as a statement is made, it does not matter whether the statement was communicated directly or indirectly to the recipient" — but in any event "attribution" of the statement to the alleged primary violator "is necessary." *Janus* concluded by noting explicitly that it is insufficient for the alleged primary violator to have been "significantly involved" in preparing the statement or "assist[ing]" the entity with ultimate control in "crafting" the statement.

Our court of appeals has since noted that *Janus* "set[] the pleading bar even higher in private securities fraud actions seeking to hold defendants primarily liable for the misstatements of others." *Reese v. BP Exploration (Alaska) Inc.*, — F.3d —, No. 10-35128, 2011 WL 2557238, at *10 n.8 (9th Cir. June 29, 2011).

Both sides agree that this order must reconsider the order granting in part and denying in part defendants' motions to dismiss and strike, at least in part, pursuant to these new principles, and this order so finds. With the scope of consequent modifications to the order to be considered below, the motions for reconsideration are **GRANTED**.

### B. THE CLAIMS AT ISSUE IN THE RECONSIDERATION MOTIONS

Defendants' instant motions for reconsideration target the claims in the complaint for: (1) violations of Section 10(b) of the Exchange Act (15 U.S.C. 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5); (2) aiding and abetting violations of Section 10(b) of the Exchange Act (15 U.S.C. 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5); (3) violations of Section 17(a) of the Securities Act (15 U.S.C. 77q(a)); and (6) violations of Section 34(b) of the Investment Company Act (15 U.S.C. 80a-33(b)). The other claims in the complaint will not be addressed by this order and the holdings of the order on defendants' motions to dismiss as to those claims will not be disturbed.

### C. CLAIM ONE: PRIMARY LIABILITY UNDER RULE 10B-5

The parties agree that defendants are sufficiently alleged to have been "makers" of *certain* alleged misstatements identified in the complaint. In other words, no one argues that claim one should be dismissed *entirely* as to either defendant after *Janus*. Defendant Merk concedes that the following statements are sufficiently alleged to have been "made" by him to serve as a basis for claim one liability even under *Janus*:

1. Registration statement signed by Merk filed on November 15, 2006 (Compl. ¶¶ 123–24); and

2. Set of questions and answers that listed Merk as the author published on the Schwab website in August 2007 (Compl. ¶ 145).

Defendant Daifotis concedes that the following statements are sufficiently alleged to have been "made" by him to serve as a basis for claim one liability even under *Janus*:

- Advertisement quoting Daifotis and containing his picture in September 2005 (Compl. ¶ 74(f));

- Brochure, attributing a statement to Daifotis, sent to investors in Spring 2006 (Compl. ¶ 74(b));

- Statement by Daifotis in a conference call with registered investment advisers in August 2007 (Compl. ¶ 68);

- Statement by Daifotis in a conference call with registered investment advisers on August 14, 2007 (Compl. ¶ 141); and

- Statement by Daifotis in a conference call with registered investment advisers on August 16, 2007 (Compl. ¶ 142).

Claim one thus remains against both defendants, as the above alleged misstatements are sufficiently alleged to have been made by them.

The Commission asserts that there are two other alleged misstatements that are sufficiently pled as having been "made" by defendant Daifotis pursuant to *Janus*.

*First*, the Commission points to alleged misstatements in a November 2007 "Manager's Discussion" issued to the public. The complaint states that the "Manager's Discussion" document was "reviewed by Daifotis" and "was issued to the public under his title 'Manager'" (Compl. ¶ 159). The Commission argues that the "manager" referenced in the document was Daifotis, and defense counsel argue that "manager" could refer to a variety of people or entities. This order, however, must focus on what the *complaint* says; again, it says this document "was

4

1    issued to the public under *his* title 'Manager'" (emphasis added). The complaint's allegations
2    impress upon the reader that Daifotis was the manager being referred to as the speaker in the
3    document, and in addition that he reviewed the document before it was issued, which would only
4    be consistent if he was the "manager" being referred to as the speaker. If the facts show
5    something different, it will undoubtedly be the subject of a motion for summary judgment, but
6    that is not our issue now. As alleged, the complaint states a claim for violation of Rule 10b-5
7    based on alleged misstatements in the November 2007 "Manager's Discussion" against defendant
8    Daifotis. Thus, one additional alleged misstatement — in addition to the above five — is
9    sufficiently pled under the *Janus* standard against defendant Daifotis.

10   *Second*, the Commission points to alleged misstatements in an advertisement described in
11   paragraph 74(g) of the complaint, which states that the advertisement "included a picture of
12   Daifotis" (emphasis omitted). As alleged, this is insufficient to state a claim under *Janus* —
13   Daifotis is not sufficiently alleged to have been the "maker" of the statements in the
14   advertisement solely based on an allegation that the advertisement included a picture of him. This
15   order expresses no opinion about whether further allegations could be made about the
16   advertisement to sufficiently attribute it to Daifotis for pleading purposes.

17   Other than these two contested allegations and the alleged misstatements that defendants
18   concede are sufficient to state a claim (reviewed above), all other alleged misstatements in the
19   complaint are not sufficiently pled as having been "made" by defendants to serve as a basis for
20   claim one liability under *Janus*. *The Commission does not contest this*. In other words, the
21   Commission does not oppose that *Janus* renders all other alleged misstatements in the complaint
22   ineligible to serve as a basis for claim one liability against either defendant.

23   Moreover, it is unnecessary to parse further whether various individual alleged
24   misstatements *could* meet the *Janus* standard if pled differently, because, as stated clearly in the
25   order on defendants' motions to dismiss, discovery is proceeding as to *all* alleged false
26   statements. For this reason it is inappropriate to strike any allegations just because they do not
27   sufficiently serve as a basis for primary liability on their own, as defendant Daifotis requests. A
28   motion to strike should only be granted if "the matter to be stricken clearly could have no possible

bearing on the subject of the litigation." *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035, 1046 (N.D. Cal. 2009). That is not the case here. As some of the statements are properly pled under *Janus*, reasonable discovery is allowed into other statements related to the same alleged fraud. Then, at summary judgment time, we can sort which raise issues of fact under the *Janus* standard.

For the foregoing reasons, there are six alleged misstatements as to defendant Daifotis and two alleged misstatements as to defendant Merk that meet the pleading standard to state a claim under Rule 10b-5 pursuant to *Janus*, and claim one will proceed as to the current complaint only on those alleged misstatements.

### D. CLAIM TWO: AIDING AND ABETTING RULE 10B-5 VIOLATIONS

Defendants next argue that the complaint must be dismissed as to claim two for aiding and abetting Rule 10b-5 violations under *Janus*. As stated in the order on defendants' motions to dismiss, the aiding and abetting claims brought here have three elements: (1) a primary violation of the relevant securities law; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her role in furthering it; and (3) substantial assistance in commission of the primary violation, *see Ponce v. S.E.C.*, 345 F.3d 722, 737 (9th Cir. 2003), and each prong must be pled with the particularity required by FRCP 9(b), *see, e.g.*, *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 924 (N.D. Cal. 2008). Defendants argue that, as to the primary violation prong, the complaint does not meet the *Janus* standard in alleging primary violations by *others*.

As an initial matter, defendants were not granted leave to file a motion for reconsideration as to any of the claims except the "primary liability" claims (Dkt. No. 61). Defendants were not granted leave to move for reconsideration of the order on their motions to dismiss as to claim two. Nevertheless, even if leave had been granted, modification of the order under *Janus* is inappropriate.

The order on defendants' motions to dismiss stated, as to whether primary violations were adequately stated as a basis for the aiding and abetting claims against defendants (Dkt. No. 58 at 11):

> As to the first prong — the primary violation — the complaint sets forth many alleged misrepresentations, and it is undisputed that the complaint contains direct

6

> statements by Daifotis and Merk that serve as a basis for the direct liability claims against them, as set forth above. The same alleged misrepresentations by Merk can serve as a primary violation underlying aiding and abetting by Daifotis, and vice versa. Alternatively, as the Commission points out, the directly attributed statements are just some of the pled misstatements that can otherwise be attributed to the Schwab entities, which alleged misstatements may serve as the primary violations for aiding and abetting liability.

Defendants present no reason to modify this holding under *Janus*. *First*, the complaint still contains direct statements by Daifotis and Merk that serve as a basis for the direct liability claims against them, and the alleged primary violations by one can still underlie the aiding and abetting claim against the other.

*Second*, defendants argue that the complaint pleads various alleged misstatements made by the Schwab entities but does not sufficiently identify *which* of the Schwab entities "made" each specific misstatement in *Janus* terms. In other words, the allegations do not attribute the entity maker *exclusive* of other entities as to each misstatement. This is not surprising given that the complaint was filed before *Janus* was decided. For the reasons stated, claim two remains against defendants. If the Commission chooses to move for leave to file an amended complaint, perhaps it will more clearly attribute each misstatement to a specific Schwab entity pursuant to *Janus*. In any event, and as stated, discovery is proceeding as to all alleged false statements.

### E. CLAIM THREE: *JANUS* DOES NOT APPLY TO SECTION 17(A)

Defendant Daifotis argues that *Janus* should also make it harder to plead a claim of violation of Section 17(a). Counsel point out that both Section 17(a) and Section 10(b) "forbid *making* a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce." *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852, 855–56 (9th Cir. 2001) (emphasis added). Nevertheless, this order holds that *Janus* does not apply to claims brought under Section 17(a).

*Janus* was very specifically a decision about claimed violations of Rule 10b-5. Importantly, the word "make," which was the very thing the Supreme Court was interpreting in *Janus*, is absent from the operative language of Section 17(a). Rather, Section 17(a) makes it unlawful (1) "*to employ* any device, scheme, or artifice to defraud," (2) "*to obtain* money or

7

property by means of any untrue statement" or omission of a material fact, or (3) "*to engage* in" certain types of transactions (emphasis added).

Moreover, *Janus*'s stringent reading of the word "make" followed from the Court's prior decisions limiting the scope of implied private rights of action under Rule 10b-5, as reviewed above. The same rationale does not apply in the context of Section 17(a) because there is already no implied private right of action for Section 17(a) claims. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987) (holding that there is no implied private right of action under Section 17(a)).

For these reasons, this order will not modify the order on defendants' motions to dismiss based on defendants' request to apply *Janus* to claim three.

### F. CLAIM SIX: *JANUS* DOES NOT APPLY TO SECTION 34(B)

Similarly, defendants argue that *Janus* should also make it harder to plead a Section 34(b) claim. Section 34(b) *does* include the word "make," in stating: "It shall be unlawful for any person to make any untrue statement of a material fact in any registration statement, application, report, account, record, or other document filed or transmitted . . ."

Yet, here too, *Janus* shall not be applied to limit claims made under Section 34(b) because *Janus* itself was limited to claims of primary violations of Rule 10b-5. Moreover, as stated above, *Janus*'s stringent reading of the word "make" followed from the Court's prior decisions limiting the scope of implied private rights of action under Rule 10b-5, and the same rationale does not apply in the context of Section 34(b) because there is already no implied private right of action for Section 34(b) claims. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007), *cited with approval in Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106 (9th Cir. 2010) (no implied private right of action under Section 34(b)). To hold otherwise may cabin Section 34(b) liability only to entity defendants that bear the statutory obligation to *file* documents with the Commission. This would change the scope of defendants that may be targeted by Section 34(b) based on a Supreme Court decision that in no way even addressed Section 34(b). This order cannot and need not take such a step. *Janus* was not a touchstone to

8

change myriad laws that happen to use the word "make" — it was a decision interpreting primary liability under Rule 10b-5.

Therefore, this order will leave claim six untouched by *Janus*.

### G. DEFENDANT DAIFOTIS'S REQUEST FOR CLARIFICATION

In his reply brief, defendant Daifotis requests for the first time a ruling that portions of the order on defendants' motions to dismiss concerning certain of defendant Merk's arguments in his motion to dismiss should also apply to defendant Daifotis (Reply 11).

Defendant Daifotis is not entitled to such a ruling. The arguments made by defendant Merk included discussion of the allegations made against him specifically. Defendant Daifotis made no such arguments. Instead, he included a footnote that stated generally, "Mr. Daifotis joins in and incorporates by reference the parallel motion to dismiss . . . by Defendant Randall Merk" (Dkt. No. 38 at 1 n.2).

Defendants Daifotis and Merk were entitled to file a joint motion and apply various legal points to the allegations against each of the two defendants in one brief. Alternatively, they were entitled to file separate briefs — as they did — and raise separate arguments in each. In contrast, defendants were not entitled to combine their two 25-page briefs to set forth 50 pages worth of different arguments and then as to the arguments found in the other defendant's brief simply say "me too." If a defendant did not actually apply a legal point to the case against *him*, he cannot cure the problem with a general joinder in a footnote. Therefore, defendant Daifotis is not entitled to the "clarification" he seeks that the portions of the order on defendants' motions to dismiss concerning arguments made solely by defendant Merk apply to him too.

### CONCLUSION

For the reasons stated, defendants' motions for reconsideration are **GRANTED**, and the order granting in part and denying in part defendants' motions to dismiss and strike is **MODIFIED IN PART**. As stated by prior order, the Commission may move for leave to file an amended complaint **WITHIN 21 CALENDAR DAYS** of the date of this order (Dkt. No. 65). The admonition

1 remains that discovery should be proceeding in earnest as to all claims and all alleged false
2 statements regardless of whether they state a claim by themselves.

**IT IS SO ORDERED.**

Dated: August 1, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California