IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

KIMON P. DAIFOTIS and RANDALL MERK,

    Defendants.

No. C 11-00137 WHA

**ORDER GRANTING PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT**

## INTRODUCTION

In this enforcement action by the Securities and Exchange Commission, plaintiff requests leave to file a first amended complaint. For the following reasons, the motion is **GRANTED**.

## STATEMENT

This enforcement action alleges securities law violations by defendants Kimon Daifotis and Randall Merk — executives of subsidiaries of Charles Schwab Corporation — in their management of the Schwab YieldPlus Fund, an ultra-short bond fund. YieldPlus's value dropped 28 percent in an eight-month period in 2007 and 2008, and its assets dropped from $13.5 billion to $1.8 billion (Compl. ¶ 15).[1] From July 2007 to July 2008, Daifotis reported to Merk at Charles Schwab Investment Management, a wholly-owned subsidiary of Charles Schwab Corporation

---

[1] The factual allegations in this section were pled in the Commission's original complaint (Dkt. No. 1).

(*id.* at ¶¶ 20, 22). CSIM is a registered investment advisor, not a broker-dealer, whereas Charles Schwab & Co., Inc. — another wholly-owned subsidiary of Charles Schwab — is a registered broker-dealer (*id.* at ¶¶ 22–23).

During the relevant time period, Daifotis was the lead portfolio manager of the YieldPlus Fund, and was a Senior Vice President and Chief Investment Officer of fixed income mutual funds at CSIM (*id.* at ¶ 20). Daifotis allegedly made a series of misleading statements, attempting to portray YieldPlus as a safe "cash-alternative" or "cash-equivalent" investment, without fully or properly disclosing to investors how YieldPlus was fundamentally different from and significantly riskier than cash-like investments (*id.* at ¶¶ 62–102). Additionally, Daifotis allegedly directed investments that caused YieldPlus to violate its own published governance policy against concentrating too much of its own holdings in a single industry, and then caused the submission of false documents to the SEC and to the public masking what had occurred (*id.* at ¶¶ 108–26). When YieldPlus began to decline in value in 2007, Daifotis allegedly made further misleading statements about YieldPlus in order to dissuade investors from redeeming their investments (*id.* at ¶¶ 127-60).

Defendant Merk was an Executive Vice President at Charles Schwab Corporation and Charles Schwab & Co., Inc., and was the President of CSIM from July 2007 through December 2010 (*id.* at ¶ 21). Prior to 2007, he was a trustee for Schwab Investments, the issuer of YieldPlus and other Schwab funds, and he oversaw the head of the product development and management groups responsible for the YieldPlus Fund. The President of CSIM during that time, who supervised the Fund's portfolio managers, reported to Merk (*id.* at ¶¶ 21, 24, 39). Merk allegedly made a series of misleading statements about YieldPlus, much like Daifotis (*id.* at ¶¶ 39–61, 74–78). Additionally, Merk allegedly voted to approve a plan to allow YieldPlus to violate its concentration policy and then allegedly signed one or more false documents to mask what had occurred (*id.* at ¶¶ 56, 116–24, 126). As with Daifotis, Merk allegedly made misleading statements about Yield Plus to dissuade investors from redeeming their investments once YieldPlus began to decline (*id.* at ¶¶ 127–34, 145–60). Finally, Merk allegedly permitted certain Schwab mutual funds to redeem their YieldPlus investments after obtaining material insider

2

information about the Fund, while trying to keep outside investors, who were not given that information, from redeeming their investments (*id.* at ¶¶ 161–72).

The Commission initiated the present action in January 2011 and brought eight claims for relief (Dkt. No. 1). On June 6, 2011, an order granted in part and denied in part defendant's motions to dismiss and to strike the complaint (Dkt. No. 58). On June 13, 2011, the Supreme Court issued its decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011). *Janus* interpreted Rule 10b-5's prohibition making it "unlawful for any person, directly or indirectly, . . . [t]o make any untrue statement of material fact" in connection with the purchase or sale of securities, clarifying the definition of the word "make." In light of this decision, an order dated August 1, 2011, granted defendant's motion for reconsideration, and the order dated June 6 was modified in part (Dkt. No. 74).

The Commission now moves for leave to file a first amended complaint, which cures a defect in the previous complaint, adds allegations of additional misrepresentations and omissions by defendants, and adds two claims for secondary liability. The Commission's proposed first amended complaint states eight claims for relief: (1) violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder against both defendants; (2) aiding and abetting violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder against both defendants; (3) control-person liability under Exchange Act Section 20(a) for violations of Section 10(b) of the Exchange Act against defendant Merk; (4) violations of Section 17(a) of the Securities Act against both defendants; (5) aiding and abetting violations of Section 206(1) and (2) of the Advisers Act against defendant Merk; (6) aiding and abetting violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder against both defendants; (7) violations of Section 34(b) of the Investment Company Act against both defendants; and (8) violations of Section 48(a) of the ICA against both defendants. This order follows full briefing.

**ANALYSIS**

FRCP 15(a)(2) states that a court should freely give leave to amend when justice so requires. Leave to amend may be denied, however, if the proposed amendment is futile or would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

3

1    To survive a motion to dismiss, a complaint must contain sufficient factual matter,
2 accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*,
3 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual
4 allegations to draw a reasonable inference that the defendants are liable for the misconduct
5 alleged. While a court "must take all of the factual allegations in the complaint as true," it is
6 "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949–50
7 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of
8 law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state
9 a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

10   FRCP 9(b) requires that in all averments of fraud the circumstances constituting fraud
11 must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's
12 mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what,
13 when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317
14 F.3d 1097, 1106 (9th Cir. 2003). FRCP 9(b) serves to give defendants notice of the specific
15 fraudulent conduct against which they must defend. *Bly-Magee v. California*, 236 F.3d 1014,
16 1018 (9th Cir. 2001). It applies to a pleading as a whole where a plaintiff "allege[s] a unified
17 course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [its]
18 claim[s]." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th. Cir. 2009).

19   **1.    REMEDY OF SECTION 17(A)(2) CLAIM AGAINST MERK.**

20   In its first amended complaint, the Commission cures the previously dismissed claim for
21 violation of Section 17(a)(2) of the Securities Act.[2] Section 17(a)(2) prohibits "offer[ing] the sale
22 of securities . . . to obtain money or property by means of any untrue statement of a material fact
23 or any omission to state a material fact." 15 U.S.C. 77q(a). This claim was dismissed as to
24 defendant Merk because the Commission did not allege Merk's receipt of money or property,
25 rather, only that the *company* received money or property. The order dated June 6 held that the

---

[2] In their opposition, defendants challenge claims based on "scheme liability," but those claims were dismissed by the order dated June 6. The Commission does not attempt to cure those claims in its first amended complaint but, rather, seeks to preserve them for appellate review.

4

plain meaning of the Act requires that *defendant* himself be alleged to have obtained money or property.

To cure this pleading deficiency, the Commission now alleges that Merk himself received money in the form of "significant bonuses in addition to salary and long-term incentive compensation" between January 2005 and December 2008. Because "Merk's bonuses were based on the revenues and profits of Charles Schwab Corporation . . . which in turn reflected the performance of bond funds including . . . YieldPlus," Merk's misconduct resulted in his higher compensation and bonuses (First Amd. Compl. ¶ 195).

Merk argues that the Commission does not allege any facts "with particularity" to support this theory (Merk Opp. 7). Merk claims that the Commission does not demonstrate a causal connection between his alleged misconduct and the increase of his bonuses due to the large amount of bonds, equity, and money market funds that were under his management. He argues that because YieldPlus declined in 2007 and 2008 while his bonuses increased, the "only plausible inference" is that his bonuses were unaffected by YieldPlus.

The Commission alleges, however, that YieldPlus assets grew from $7.5 billion to $13 billion between 2006 and 2007 (First Amd. Compl. ¶ 61). Merk allegedly falsely represented YieldPlus to be a "low-risk" investment option with the goal of increasing its assets. During 2006 and 2007, he was successful and received substantial bonuses during those years. YieldPlus ultimately began to lose money, but between 2006 and 2007, its success profited Charles Schwab Corporation, and ultimately Merk.

Merk suggests that since the Commission did not plead the exact amount of his bonuses and precisely how they fluctuated over the four-year period, the claim was not pled "with particularity." FRCP 9(b) does not require that every detail be alleged in a complaint. It must allege the "who, what, when, where, and how" as to the fraudulent conduct. The Commission has met this burden. Now it has pled sufficient facts to suggest that Merk received money or property as a result of these allegedly misleading statements. The Commission has thus met its burden under FRCP 9(b) and cured this claim. Accordingly, the Commission's motion to amend this claim is **GRANTED**.

5

### 2. ADDITIONAL MISREPRESENTATIONS AND OMISSIONS.

In its amended first complaint, the Commission includes additional misrepresentations and omissions made by both Merk and Daifotis which "support primary or secondary liability claims" in the first amended complaint (Br. 6–7). The Commission concedes that some of the statements would be consider "made" by defendants under the *Janus* standard, and some would not. As the order dated August 1 stated, it is not necessary at this time to parse through which statements meet the *Janus* standard and which do not. Discovery is proceeding as to *all* allegedly false statements, and it is not necessary to strike or classify statements. Come summary judgment time, it will be determined which statements raise issues of fact under the *Janus* standard.

### 3. NEW CLAIMS.

The Commission moves to add new claims for (1) control-person liability as to Merk under Section 20(a) of the Exchange Act, and (2) liability as to both defendants under Section 48(a) of the Investment Company Act. FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1986–87.

#### A. Control-Person Liability Under Section 20(a) Against Merk.

The Commission moves to add a claim for control-person liability under Section 20(a) against defendant Merk (Br. 8). At the time of the conduct in question, Section 20(a) provided:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. 78t(a).

6

In 1975, Section 3(a)(9) of the Exchange Act was amended to define the term "person" as "any natural person, company, government, or political subdivision, agency, or instrumentality of a government." In 2010, Section 929P(c) of the Dodd-Frank Act amended Section 20(a) by inserting "(including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title)" after the phrase "controlled person is liable." Pub. L. No. 111-203, 124 Stat. 1376–2223, 1865 (2010).

Merk argues that at the time of the conduct in question, the Commission was not considered a "person" in the phrase "to any person" under Section 20(a). The parties agree that under the Dodd-Frank Act, the Commission is now considered a "person." Merk argues that the Dodd-Frank Act *created* new powers of enforcement for the Commission. The Commission argues that the Dodd-Frank act merely *clarified* a power that already existed under the Exchange Act.

The Court of Appeals for the Ninth Circuit did not have an occasion to decide this issue before the Frank-Dodd Act. The Court of Appeals for the Second Circuit "upheld the SEC's authority to pursue an enforcement action under [Section] 20(a)." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996). The Court of Appeals for the Third Circuit also held that "the SEC is a 'person' within the meaning of [Section] 20(a)." *SEC v. J. W. Barclay & Co.*, 442 F.3d 834, 842 (3rd Cir. 2006). The Court of Appeals for the Sixth Circuit held that the Commission lacked the authority to bring control person claims under this section, but this decision was made *before* the 1975 amendment clarifying the definition of "person." *SEC v. Coffey*, 493 F.2d 1304, 1318 (6th Cir. 1974). The majority of authority thus weighs in favor that the Commission was considered a "person" under the Exchange Act before the Dodd-Frank amendments, and this order agrees with the weight of authority.

In arguing to the contrary, Merk relies heavily on a district court case from the District of Oregon, *SEC v. Stringer*, No. Civ. 02-1341-ST, 2003 WL 23538011 (D. Or. Sept. 3, 2003) (Redden, J.). The court in *Stringer* held that Section 20(a) has never been intended for use by the Commission in enforcement actions. *Id.* at *4. In forming this decision, the court primarily relied on the "escape clause" in Section 3(a)(9), which allows definitions to be ignored where the

7

"context requires otherwise." *Id.* at *6. The court held that it "strain[ed] the statute to characterize a secondary actor as 'liable to' the SEC. The SEC is a government agency tasked with enforcing federal securities laws. It is not an injured party." *Ibid.*

The Supreme Court has explained that federal securities laws should be construed "not technically and restrictively, but flexibly to effectuate [their] remedial purposes." *SEC v. Zanford*, 535 U.S. 813, 815 (2002). To hold that the Commission, the very agency charged with enforcing federal securities laws, cannot hold control persons liable contradicts the purpose of securities laws. This order finds that a plain reading of the statute as it existed at the time of the misconduct — and as it is interpreted by a majority of the circuits — is that the Commission was considered a "person" under Section 20(a). Accordingly, the Commission's motion to add this claim is **GRANTED**.

### B. Section 48(a) of the ICA Against Both Defendants.

The Commission also seeks to add a claim for violation of Section 48(a) of the ICA. Section 48(a) makes it "unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder." 15 U.S.C. 80a-47(a). The Commission alleges that defendants violated Section 34(b) of the ICA and "caused" Schwab entities and each other "to do the acts or things constituting those violations" (Br. 9).

Defendant Daifotis challenges this claim, arguing that he is not liable under Section 34(b) of the ICA.[3] The orders dated June 6 and August 1 both held that the Commission pled sufficient facts to state a claim for violation of Section 34(b) as to Daifotis. The order dated August 1 explicitly held that Section 34(b) liability is not limited "only to entity defendants that bear the statutory obligation to *file* documents with the Commission." Yet Daifotis attempts yet again to revive this very argument. This order, as before, holds that the Commission has adequately stated a claim for violation of Section 34(b) as to Daifotis.

---

[3] Defendant Merk does not challenge this claim.

8

Daifotis next argues that this claim must fail because the Commission has not demonstrated that he "caused" any violation of Section 34(b), and thus that he violated Section 48(a). Daifotis suggests that a person cannot be liable under Section 48(a) for causing illegal activity without being a "control person." The word "control" does not appear anywhere in the statutory text of Section 48(a), nor does Daifotis cite to any authority stating that control person status is *necessary* for liability under Section 48(a). In support of this theory, Daifotis references a Senate Report from 1940 that used the phrase "liability of controlling persons," and a previous order by the undersigned judge, *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006). That order, in holding that there is no private right of action under Section 48(a), referenced the potential liability of control persons under the Section. *Id.* at *23. The order did not — nor did any other authority Daifotis references — hold that *only* a control person can be liable under Section 48(a). Accordingly, the Commission's motion to add this claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, the Commission's motion to amend is **GRANTED**. Plaintiff shall file its first amended complaint **BY NOON ON OCTOBER 14, 2011**, and answers will be due within **FOURTEEN CALENDAR DAYS** thereafter. Further Rule 12 practice will not be allowed.

**IT IS SO ORDERED.**

Dated: October 7, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9