DAVID B. BAYLESS (SBN 189235)
Email:  dbayless@cov.com
TAMMY ALBARRÁN (SBN 215605)
Email:  talbarran@cov.com
AILEEN WHEELER (SBN 223705)
Email:  awheeler@cov.com
JOSHUA D. HURWIT (SBN 263108)
Email: jhurwit@cov.com
SAMANTHA J. CHOE (SBN 252002)
Email:  schoe@cov.com
JOHN D. FREED (SBN 261518)
Email:  jfreed@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone:     415-591-6000
Facsimile:     415-591-6091

Attorneys for Defendant Kimon P. Daifotis

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Civil Case No.: 11-cv-00137-WHA |
| Plaintiff, | **DEFENDANT KIMON DAIFOTIS'S ANSWER TO THE FIRST AMENDED COMPLAINT** |
| v. | |
| KIMON P. DAIFOTIS and RANDALL MERK, | Trial Date:   July 9, 2012 |
| Defendants. | Time:         7:30 a.m. |
| | Judge:        Hon. William H. Alsup |
| | Courtroom:  9 |

## ANSWER

Defendant Kimon P. Daifotis ("Mr. Daifotis"), by and through his undersigned counsel, answers the Securities and Exchange Commission's First Amended Complaint ("FAC") as follows:

1. Answering paragraph 1, Mr. Daifotis admits he was an officer of Schwab Investments and Charles Schwab Investment Management ("CSIM") for the time period listed. Mr. Daifotis admits that he was an employee of Charles Schwab & Co. (CS&Co.). Mr. Daifotis further admits that CSIM served as the investment advisor to the funds issued by Schwab Investments. Mr. Daifotis denies that CS&Co. provided investment advisory services to Schwab Investments but clarifies that CS&Co. served as Schwab Investments' distributor, shareholder services agent and transfer agent. Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegation regarding Mr. Merk's official titles or employee status. Mr. Daifotis denies the remaining allegations in paragraph 1.

2. Answering paragraph 2, Mr. Daifotis admits that the Schwab YieldPlus Fund ("YieldPlus or the "Fund") was a fixed income mutual fund advised by CSIM. Mr. Daifotis avers that YieldPlus's historical assets and account data speak for themselves. Mr. Daifotis admits that YieldPlus was the largest ultra-short bond fund in its category. Except as expressly admitted, Mr. Daifotis denies the allegations in paragraph 2.

3. Answering paragraph 3, Mr. Daifotis denies the allegations.

4. Answering paragraph 4, Mr. Daifotis denies the allegations.

5. Answering paragraph 5, Mr. Daifotis avers that YieldPlus's historical concentration policies speaks for themselves. To the extent the allegations of paragraph 5 constitute legal conclusions, they require no response. Except as expressly admitted, Mr. Daifotis denies the allegations in paragraph 5.

6. Answering paragraph 6, Mr. Daifotis denies the allegations.

7. Answering paragraph 7, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

8. Answering paragraph 8, Mr. Daifotis denies the allegations.

9.      Answering paragraph 9, Mr. Daifotis denies the allegations.

10.      Answering paragraph 10, Mr. Daifotis avers that YieldPlus's historical share prices speak for themselves.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegation concerning investors' expectations.  Mr. Daifotis admits that the Fund experienced redemptions in the summer of 2007 and avers that the Fund's historical assets data speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

11.      Answering paragraph 11, Mr. Daifotis avers that his statements during the August 2007 conference calls referenced in that paragraph speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

12.      Answering paragraph 12, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

13.      Answering paragraph 13, Mr. Daifotis avers that YieldPlus's historical share prices and assets data speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

14.      Answering paragraph 14, Mr. Daifotis admits that Plaintiff seeks the relief set forth in that paragraph.  Except as expressly admitted, Mr. Daifotis denies the allegations.

15.      Answering paragraph 15, Mr. Daifotis admits that the Court has jurisdiction over the subject matter of this action.  Mr. Daifotis admits that he used the means and instrumentalities of interstate commerce in the course of his work.  Except as expressly admitted, Mr. Daifotis denies the allegations.

16.      Answering paragraph 16, Mr. Daifotis admits that venue is proper in this district.  Except as expressly admitted, Mr. Daifotis denies the allegations.

17.      Answering paragraph 17, Mr. Daifotis admits that assignment to the San Francisco Division is proper pursuant to Local Rule 3-2(d).  Except as expressly admitted, Mr. Daifotis denies the allegations.

18.      Answering paragraph 18, Mr. Daifotis admits the allegations contained in the first sentence of that paragraph.  Mr. Daifotis admits that he was employed by CS&Co. and

was a Senior Vice-President and Chief Investment Officer of Fixed Income at CSIM from at least 2005 until July 2008.  Mr. Daifotis admits that he supervised the portfolio managers of the funds referenced in paragraph 18.  Mr. Daifotis admits that he reported to Randall Merk beginning in July 2007 and that he possessed the licenses as listed in that paragraph during the relevant time period.  Except as expressly admitted, Mr. Daifotis denies the allegations.

19.     Answering paragraph 19, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

20.     Answering paragraph 20, Mr. Daifotis admits that CSIM is a San Francisco-based, wholly-owned subsidiary of the Charles Schwab Corporation.  Mr. Daifotis further admits that CSIM managed the assets of YieldPlus, the Total Bond Fund, the Short-Term Bond Fund and certain other Schwab funds.  Mr. Daifotis further admits that CSIM is the investment advisor of those funds.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

21.     Answering paragraph 21, Mr. Daifotis admits that CS&Co. is a wholly-owned subsidiary of the Charles Schwab Corporation.  Mr. Daifotis further admits that, at all relevant times, CS&Co. served as the distributor, shareholder services agent and transfer agent to the funds identified in that paragraph.  Mr. Daifotis further admits that CS&Co. provided personnel who performed marketing, legal and compliance services to the funds identified in that paragraph.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.  Except as expressly admitted, Mr. Daifotis denies the allegations.

22.     Answering paragraph 22, Mr. Daifotis admits the allegations.

23.     Answering paragraph 23, Mr. Daifotis admits that Plaintiff uses the term "Schwab Entities" in its First Amended Complaint to refer collectively to the separate and independent entities listed in that paragraph.

24.     Answering paragraph 24, Mr. Daifotis denies the allegations.

25.      Answering paragraph 25, Mr. Daifotis avers that public statements regarding YieldPlus speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

26.      Answering paragraph 26, Mr. Daifotis denies the allegations.

27.      Answering paragraph 27, Mr. Daifotis admits that YieldPlus was established in 1999.  Mr. Daifotis avers that YieldPlus's historical share prices speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

28.      Answering paragraph 28, Mr. Daifotis denies the allegations to the extent they relate to him.  To the extent the allegations contained in paragraph 28 do not relate to Mr. Daifotis, they require no answer.

29.      Answering paragraph 29, Mr. Daifotis denies the allegations.

30.      Answering paragraph 30, Mr. Daifotis admits the allegations.

31.      Answering paragraph 31, Mr. Daifotis avers that YieldPlus's historical average maturity and portfolio composition speak for themselves.  Mr. Daifotis further avers that rules promulgated by the Commission under the Investment Company Act regarding money market fund portfolios speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

32.      Answering paragraph 32, Mr. Daifotis avers that YieldPlus's historical average maturity and portfolio composition speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

33.      Answering paragraph 33 , Mr. Daifotis avers that YieldPlus's historical share prices and its portfolio's historical average maturity and composition speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

34.      Answering paragraph 34, Mr. Daifotis denies the allegations.

35.      Answering paragraph 35, Mr. Daifotis admits that YieldPlus was classified as an ultra-short bond fund.  Mr. Daifotis further admits that duration is a measure of interest rate sensitivity.  Except as expressly admitted, Mr. Daifotis denies the allegations.

36.     Answering paragraph 36, Mr. Daifotis avers that YieldPlus's historical portfolio composition and investment guidelines speak for themselves.  Mr. Daifotis further avers that rules promulgated under the Investment Company Act regarding money market funds speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

37.     Answering paragraph 37, Mr. Daifotis avers that the YieldPlus internal audit findings and report speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

38.     Answering paragraph 38, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

39.     Answering paragraph 39, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

40.     Answering paragraph 40, Mr. Daifotis admits that he was an officer of CSIM and Schwab Investments and that he reported directly to Mr. Merk from July 2007 until mid-2008.  Mr. Daifotis further admits that from approximately September 2006 until July 2007 he reported directly to the then-President and CEO of CSIM, who reported directly to Mr. Merk.  Mr. Daifotis denies the remaining allegations to the extent they relate to him.  To the extent the allegations in paragraph 40 do not relate to Mr. Daifotis, they require no answer.

41.     Answering paragraph 41, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

42.     Answering paragraph 42, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

43.     Answering paragraph 43, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

44.     Answering paragraph 44, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

45.     Answering paragraph 45, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

46.     Answering paragraph 46, Mr. Daifotis admits that he reported directly to Mr. Merk beginning in July 2007 when Mr. Merk assumed the position of CSIM President. Mr. Daifotis further admits that from approximately September 2006 until July 2007 he reported directly to the then-President and CEO of CSIM, who reported directly to Mr. Merk.  To the extent the allegations in paragraph 46 do not relate to Mr. Daifotis, they require no answer.

47.     Answering paragraph 47, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegation concerning senior Schwab executives' concerns regarding a competitor or Schwab's response.  Mr. Daifotis avers that the remaining allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

48.     Answering paragraph 48, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

49.     Answering paragraph 49, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

50.     Answering paragraph 50, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

51.     Answering paragraph 51, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

52.     Answering paragraph 52, Mr. Daifotis avers that content posted on Schwab's public website speaks for itself.  Mr. Daifotis further avers that to the extent the allegations contained in that paragraph do not relate to Mr. Daifotis, they require no answer.

53.     Answering paragraph 53, Mr. Daifotis avers that content posted on Schwab's public website and in sales materials speak for themselves.  Mr. Daifotis further avers that to the extent the allegations contained in that paragraph do not relate to Mr. Daifotis, they require no answer.

54.     Answering paragraph 54, Mr. Daifotis avers that YieldPlus's historical share prices and public statements about the Fund speak for themselves.  Mr. Daifotis further

avers that to the extent the allegations contained in that paragraph do not relate to Mr. Daifotis, they require no answer.

55.     Answering paragraph 55, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

56.     Answering paragraph 56, Mr. Daifotis denies that he directly and substantially participated in the August 1, 2006 press release referenced in that paragraph. Mr. Daifotis avers that the remaining allegations of that paragraph do not relate to Mr. Daifotis and thus require no answer.

57.     Answering paragraph 57, Mr. Daifotis avers that the August 1, 2006 press release referenced in that paragraph speaks for itself.  Mr. Daifotis avers that to the extent the remaining allegations of that paragraph do not relate to Mr. Daifotis, they require no answer. Except as expressly admitted, Mr. Daifotis denies the allegations.

58.     Answering paragraph 58, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

59.     Answering paragraph 59, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

60.     Answering paragraph 60, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning how the purported marketing plans set forth in paragraph 59 were "carried out" but denies the remaining allegations.

61.     Answering paragraph 61, Mr. Daifotis avers that YieldPlus's historical asset data speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

62.     Answering paragraph 62, Mr. Daifotis admits that Dow Jones published an article on July 18, 2006 based in part on an interview with Mr. Daifotis and avers that that article speaks for itself.  To the extent the remaining allegations of that paragraph do not relate to Mr. Daifotis, they require no response.

63.     Answering paragraph 63, Mr. Daifotis admits that the Board of Trustees approved a change in the classification of non-agency MBS for purposes of a concentration

policy applicable to YieldPlus and other Schwab funds.  To the extent the allegations do not relate to Mr. Daifotis, they require no answer.  Except as expressly admitted, Mr. Daifotis denies the allegations.

64.     Answering paragraph 64, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

65.     Answering paragraph 65, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.

66.     Answering paragraph 66, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.  To the extent an answer is required, Mr. Daifotis denies the allegations.

67.     Answering paragraph 67, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.  To the extent an answer is required, Mr. Daifotis denies the allegations.

68.     Answering paragraph 68, Mr. Daifotis avers that the allegations contained in that paragraph do not relate to Mr. Daifotis and thus require no answer.  To the extent an answer is required, Mr. Daifotis denies the allegations.

69.     Answering paragraph 69, Mr. Daifotis denies the allegation.

70.     Answering paragraph 70, Mr. Daifotis denies the allegations.

71.     Answering paragraph 71, Mr. Daifotis admits that, when requested, he reviewed certain YieldPlus marketing materials.  Except as expressly admitted, Mr. Daifotis denies the allegations.

72.     Answering paragraph 72, Mr. Daifotis avers that YieldPlus's publicly disseminated sales and marketing materials speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

73.     Answering paragraph 73, Mr. Daifotis admits that, when requested, he or other YieldPlus portfolio managers who reported to him provided certain YieldPlus data for use in certain marketing materials but Mr. Daifotis is without sufficient information to form a belief as to the truth of the allegations regarding whether such data was provided in connection with

1   each item referenced in Sections A.4-6 of the First Amended Complaint.  Except as expressly

2   admitted, Mr. Daifotis denies the allegations.

3          74.    Answering paragraph 74, Mr. Daifotis is without sufficient information to

4   form a belief as to the truth of the allegations regarding whether he participated in discussions

5   about or drafting of the August 1, 2006 press release referenced in that paragraph.  Mr. Daifotis

6   avers that the August 1, 2006 press release speaks for itself.  Mr. Daifotis denies the remaining

7   allegations.  Except as expressly admitted, Mr. Daifotis denies the allegations.

8          75.    Answering paragraph 75, Mr. Daifotis is without sufficient information to

9   form a belief as to the truth of the allegations regarding whether he saw drafts or the final

10  language of the August 1, 2006 press release.  Mr. Daifotis avers that the August 1, 2006 press

11  release speaks for itself.  Mr. Daifotis denies the remaining allegations.

12         76.    Answering paragraph 76, Mr. Daifotis avers that his statements during the

13  August 2007 conference call referenced in that paragraph speak for themselves.  Except as

14  expressly admitted, Mr. Daifotis denies the allegations.

15         77.    Answering paragraph 77, Mr. Daifotis avers that statements made during

16  a March 2006 webcast and in August 2007 conference calls speak for themselves.  Mr. Daifotis

17  further avers that statements made in YieldPlus sales and marketing materials, including those

18  posted in Schwab's public website and the Mutual Fund Center speak for themselves.  Except as

19  expressly admitted, Mr. Daifotis denies the allegations.

20         78.    Answering paragraph 78, Mr. Daifotis denies the allegations.

21         79.    Answering paragraph 79, Mr. Daifotis denies the allegations.

22         80.    Answering paragraph 80, Mr. Daifotis denies the allegations.

23         81.    Answering paragraph 81, Mr. Daifotis denies the allegations.

24         82.    Answering paragraph 82, Mr. Daifotis admits that he presented

25  information about the fixed income markets and YieldPlus at certain meetings, conferences and

26  symposiums.  Mr. Daifotis admits that he made oral statements and often, but not always,

27  displayed slides as part of his presentation.  Mr. Daifotis avers that his presentations, including

28

any slides displayed as part of those presentations, speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

83.     Answering paragraph 83, Mr. Daifotis admits that he travelled to the locations set forth in that paragraph but is without sufficient information to form a belief as to the truth of the allegations regarding the dates listed or whether he appeared or spoke about the Fund at the unspecified events referenced in that paragraph.  Mr. Daifotis further admits that he attended the Schwab IMPACT Conferences listed in that paragraph but is without sufficient information to form a belief as to the truth of the allegations regarding whether he appeared or spoke about the Fund at those events.  Except as expressly admitted, Mr. Daifotis denies the allegations.

84.     Answering paragraph 84 and all subparts, Mr. Daifotis avers that any statements made or slides displayed at the events referenced in paragraph 83 speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

85.     Answering paragraph 85, Mr. Daifotis denies the allegations of that paragraph.

(a)     Answering paragraph 85(a) and all subparts, Mr. Daifotis avers that any statements made or slides displayed at the events referenced in that paragraph speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

(b)     Answering paragraph 85(b) and all subparts, Mr. Daifotis avers that any statements or slides displayed at the September 20, 2006 webcast speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

86.     Answering paragraph 86, Mr. Daifotis denies the allegations.

(a)     Answering paragraph 86(a), Mr. Daifotis avers that the March 10, 2008 letter referenced in that paragraph speaks for itself.

(b)     Answering paragraph 86(b) and all subparts, Mr. Daifotis avers that content appearing on Schwab's internal website on or about June 30, 2007 speaks for itself.

(c)     Answering paragraph 86(c) and all subparts, Mr. Daifotis avers that the Spring 2006 brochure referenced in that paragraph speaks for itself.

1    (d)    Answering paragraph 86(d) and all subparts, Mr. Daifotis avers

2    that the white papers referenced in that paragraph as well as a letter that allegedly accompanied a

3    December 2005 white paper speak for themselves.

4    (e)    Answering paragraph 86(e), Mr. Daifotis admits that the Schwab

5    internal website was available to Schwab Financial Consultants.  Mr. Daifotis is without

6    knowledge or information sufficient to form a belief as to the truth of the allegations regarding

7    whether the Schwab internal website was available to independent Registered Investment

8    Advisors.  Mr. Daifotis avers that content appearing on Schwab's internal website on or about

9    December 23, 2005 speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the

10   allegations.

11   (f)    Answering paragraph 86(f), Mr. Daifotis avers that the November

12   30, 2005 report referenced in that paragraph speaks for itself.  Except as expressly admitted,

13   Mr. Daifotis denies the allegations.

14   (g)    Answering paragraph 86(g), Mr. Daifotis avers that the September

15   2005 advertisement referenced in that paragraph speaks for itself.

16   87.    Answering paragraph 87, Mr. Daifotis denies the allegations.

17   (a)    Answering paragraph 87(a), Mr. Daifotis denies the allegations.

18   (b)    Answering paragraph 87(b), Mr. Daifotis denies the allegations.

19   (c)    Answering paragraph 87(c), Mr. Daifotis denies the allegations.

20   (d)    Answering paragraph 87(d), Mr. Daifotis denies the allegations.

21   (e)    Answering paragraph 87(e), Mr. Daifotis denies the allegations.

22   (f)    Answering paragraph 87(f), Mr. Daifotis denies the allegations.

23   (g)    Answering paragraph 87(g), Mr. Daifotis denies the allegations.

24   (h)    Answering paragraph 87(h), Mr. Daifotis denies the allegations.

25   88.    Answering paragraph 88 and all subparts, Mr. Daifotis avers that to the

26   extent the allegations in that paragraph do not relate to him, they require no response.

27   Mr. Daifotis avers that the letters and public filings referenced in that paragraph speak for

28   themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

89.     Answering paragraph 89 and all subparts, Mr. Daifotis avers that to the extent the allegations in that paragraph do not relate to him, they require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

90.     Answering paragraph 90, Mr. Daifotis denies the allegations.

(a)     Answering paragraph 90(a), Mr. Daifotis admits that fact sheets about YieldPlus were issued.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the frequency with which these fact sheets were issued.  Mr. Daifotis avers that the fact sheets referenced in that paragraph speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

(b)     Answering paragraph 90(b) and all subparts, Mr. Daifotis admits that annual and semi-annual reports for the YieldPlus were filed with the SEC.  Mr. Daifotis avers that the annual and semi-annual reports referenced in paragraph 90(b) and its subparts speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

(c)     Answering paragraph 90(c), Mr. Daifotis admits that a Form N-CSR for the period September 1, 2006 through February 28, 2007 was filed with the SEC on or about May 3, 2007.  Mr. Daifotis avers that this Form N-CSR speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

(d)     Answering paragraph 90(d), Mr. Daifotis admits that content referencing YieldPlus appeared on Schwab.com, Schwab's public website.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the date by which the content referenced in paragraph 90(d) appeared on Schwab.com but avers that content posted on Schwab's public website as of mid-2006, the date referenced in that paragraph, speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

(e)     Answering paragraph 90(e) and all subparts, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90(e) and all subparts but avers that content posted on Schwab's public website as of the dates referenced in that paragraph speaks for itself.

(f)     Answering paragraph 90(f) and all subparts, Mr. Daifotis avers that the September 2006 brochure referenced in paragraph 90(f) and all subparts speaks for itself.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding to whom or when the brochure referenced in that paragraph was mailed.

(g)     Answering paragraph 90(g) and all subparts, Mr. Daifotis avers that content appearing on Schwab's public website in June 2006 speaks for itself.

(h)     Answering paragraph 90(h) and all subparts, Mr. Daifotis avers that the Charles Schwab's September 2006 email referenced in that paragraph speaks for itself.

(i)     Answering paragraph 90(i), Mr. Daifotis avers that the May 2005 advertisement referenced in paragraph 90(i) speaks for itself.

(j)     Answering paragraph 90(j) and all subparts, Mr. Daifotis avers that content appearing on Schwab's public website in the summer of 2005 speaks for itself.

(k)     Answering paragraph 90(k), Mr. Daifotis avers that the brochure referenced in paragraph 90(k) speaks for itself.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding to whom or when the brochure referenced in that paragraph was mailed.

(l)     Answering paragraph 90(l), Mr. Daifotis admits that the Lehman Brothers U.S. Treasury 9-12 Month Index was used as the benchmark for measuring YieldPlus performance.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding where or when the benchmark was listed but avers that the documents referenced in that paragraph speak for themselves.  Unless expressly admitted, Mr. Daifotis denies the allegations.

(m)     Answering paragraph 90(m), Mr. Daifotis admits that annual registration statement amendments were filed and avers that these materials speak for themselves.

91.     Answering paragraph 91, Mr. Daifotis denies the allegations.

(a)     Answering paragraph 91(a), Mr. Daifotis denies the allegations.

DEFENDANT KIMON P. DAIFOTIS' ANSWER TO THE
FIRST AMENDED COMPLAINT
Case No.: 11-CV-00137 WHA

-13-

1             (b)       Answering paragraph 91(b), Mr. Daifotis denies the allegations.

2 Mr. Daifotis avers that the documents referenced in paragraph 91(b) speak for themselves.

3             (c)       Answering paragraph 91(c), Mr. Daifotis denies the allegations.

4             (d)       Answering paragraph 91(d), Mr. Daifotis denies the allegations.

5             (e)       Answering paragraph 91(e), Mr. Daifotis admits that YieldPlus

6 owned certain assets that money market funds were not permitted to own.  Mr. Daifotis denies

7 the remaining allegations.  Except as expressly admitted, Mr. Daifotis denies the allegations.

8             (f)       Answering paragraph 91(f), Mr. Daifotis denies the allegations.

9             (g)       Answering paragraph 91(g), Mr. Daifotis denies the allegations.

10             92.       Answering paragraph 92, Mr. Daifotis is without knowledge or

11 information sufficient to form a belief as to the truth of the allegations concerning who reviewed

12 and/or prepared the referenced sales and marketing materials.

13             93.       Answering paragraph 93, Mr. Daifotis denies the allegations.

14             94.       Answering paragraph 94, Mr. Daifotis denies the allegations.

15             95.       Answering paragraph 95, Mr. Daifotis avers that the allegations in that

16 paragraph constitute legal conclusions and require no response.  To the extent a response is

17 required, Mr. Daifotis denies the allegation.

18             96.       Answering paragraph 96, Mr. Daifotis denies the allegations.

19             97.       Answering paragraph 97, Mr. Daifotis is informed and believes that

20 YieldPlus's WAM was misstated on Schwab's public website during the time period listed.

21 Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the

22 allegations regarding whether YieldPlus's WAM was misstated in the Commission filing or in

23 other communications to investors as referenced in that paragraph.  Except as expressly

24 admitted, Mr. Daifotis denies the allegations.

25             98.       Answering paragraph 98, Mr. Daifotis is without knowledge or

26 information sufficient to form a belief as to the truth of the allegations of that paragraph.  Except

27 as expressly admitted, Mr. Daifotis denies the allegations.

28             99.       Answering paragraph 99, Mr. Daifotis denies the allegations.

-14-

100.     Answering paragraph 100, Mr. Daifotis admits that duration is a measure of a bond's interest-rate sensitivity.  Except as expressly admitted, Mr. Daifotis denies the allegations of paragraph 100.

101.     Answering paragraph 101, Mr. Daifotis admits that YieldPlus was classified as an ultra-short bond fund because, in part, of its relatively low duration.  Except as expressly admitted, Mr. Daifotis denies the allegations.

102.     Answering paragraph 102, Mr. Daifotis avers that the Fund's historical duration and weighted average maturity speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

103.     Answering paragraph 103, Mr. Daifotis is informed and believes that Schwab's public website disclosed the Fund's duration.  Mr. Daifotis avers that the Schwab's public website and sales materials referenced in that paragraph speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

104.     Answering paragraph 104, Mr. Daifotis avers that material posted on Schwab's public website and other communications referenced in paragraph 104 speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

105.     Answering paragraph 105, Mr. Daifotis avers that YieldPlus's historical duration and material posted on Schwab's public website speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

106.     Answering paragraph 106, Mr. Daifotis avers that material posted on Schwab's public website speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

107.     Answering paragraph 107, Mr. Daifotis avers that material posted on Schwab's public website speaks for itself.  To the extent the allegations in that paragraph constitute legal conclusions, they require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

108.     Answering paragraph 108, Mr. Daifotis avers that YieldPlus's historical duration and WAM speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

109.     Answering paragraph 109, Mr. Daifotis avers that to the extent the allegations contained in that paragraph do not relate to Mr. Daifotis, they require no answer.  To the extent an answer is required, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Merk's actions or state of mind referenced in paragraph 109.  Mr. Daifotis avers that the SEC filing referenced in that paragraph speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

110.     Answering paragraph 110, Mr. Daifotis avers that the Schwab publication and issue referenced in that paragraph speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

111.     Answering paragraph 111, Mr. Daifotis is informed and believes that a change was made to reflect the Fund's duration on the Schwab's Mutual Fund Center's website during the time period listed and that this change affected YieldPlus only.  Mr. Daifotis avers that material posted on the Mutual Fund Center speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

112.     Answering paragraph 112, Mr. Daifotis denies the allegations.

113.     Answering paragraph 113, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding CS&Co. representatives' and investors' understanding.  Except as expressly admitted, Mr. Daifotis denies the allegations.

114.     Answering paragraph 114, Mr. Daifotis denies the allegations.

115.     Answering paragraph 115, Mr. Daifotis denies the allegations.

116.     Answering paragraph 116, Mr. Daifotis denies the allegations.

117.     Answering paragraph 117, Mr. Daifotis denies the allegations.

118.     Answering paragraph 118, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what CS&Co.

1   employees communicated to investors.  Except as expressly admitted, Mr. Daifotis denies the

2   allegations.

3            119.    Answering paragraph 119, Mr. Daifotis denies the allegations.

4            120.    Answering paragraph 120, Mr. Daifotis avers that the allegations in that

5   paragraph constitute legal conclusions and require no response.  To the extent a response is

6   required, Mr. Daifotis avers that Investment Company Act provisions cited in that paragraph

7   speak for themselves.

8            121.    Answering paragraph 121, Mr. Daifotis avers that the allegations in that

9   paragraph constitute legal conclusions and require no response.  To the extent a response is

10  required, Mr. Daifotis admits that the YieldPlus, Total Bond and the Short-Term Bond Funds

11  were taxable bond funds issued by Schwab Investments.  Mr. Daifotis further admits that the

12  concentration policy applicable to each of these taxable bond funds was set forth in the funds'

13  registration statements.  Mr. Daifotis is informed and believes that the registration statement for

14  each fund was filed with the SEC at or around the time of each fund's creation.  Mr. Daifotis

15  admits that updated registration statements for these funds were filed with the SEC.

16  Mr. Daifotis further admits that these registration statements were available to the public.

17  Mr. Daifotis avers that the registration statements referenced in paragraph 121 speak for

18  themselves.

19           122.    Answering paragraph 122, Mr. Daifotis avers that the registration

20  statements referenced in that paragraph speak for themselves.

21           123.    Answering paragraph 123, Mr. Daifotis avers that the registration

22  statements referenced in that paragraph speak for themselves.

23           124.    Answering paragraph 124, Mr. Daifotis avers that the allegations in that

24  paragraph constitute legal conclusions and require no response.  To the extent a response is

25  required, Mr. Daifotis denies the allegations.

26           125.    Answering paragraph 125, Mr. Daifotis avers that the allegations

27  contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,

28  2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

answer.  To the extent the allegations of that paragraph relate to claims not dismissed,
Mr. Daifotis denies the allegations.

126.    Answering paragraph 126, Mr. Daifotis avers that the allegations
contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,
2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no
answer.  To the extent the allegations of that paragraph relate to claims not dismissed,
Mr. Daifotis denies the allegations.

127.    Answering paragraph 127, Mr. Daifotis avers that the allegations
contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,
2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no
answer.  To the extent the allegations of that paragraph relate to claims not dismissed,
Mr. Daifotis denies the allegations.

128.    Answering paragraph 128, Mr. Daifotis avers that the allegations
contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,
2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no
answer.  To the extent the allegations of that paragraph relate to claims not dismissed,
Mr. Daifotis denies the allegations.

129.    Answering paragraph 129, Mr. Daifotis avers that the allegations
contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,
2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no
answer.  To the extent the allegations of that paragraph relate to claims not dismissed,
Mr. Daifotis denies the allegations.

130.    Answering paragraph 130, Mr. Daifotis avers that the allegations
contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,
2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no
answer.  To the extent the allegations of that paragraph relate to claims not dismissed,
Mr. Daifotis denies the allegations.

131.     Answering paragraph 131, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of that paragraph relate to claims not dismissed, Mr. Daifotis denies the allegations.

132.     Answering paragraph 132, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of that paragraph relate to claims not dismissed, Mr. Daifotis denies the allegations.

133.     Answering paragraph 133, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of that paragraph relate to claims not dismissed, Mr. Daifotis admits that the Board of Trustees of Schwab Investments voted in August 2006 to stop treating non-agency MBS as an industry.  Mr. Daifotis further admits that the Board of Trustees' vote, referenced above, permitted the investment of more than 25% of assets in non-agency MBS.  Mr. Daifotis is informed and believes that the Board of Trustees' vote applied to all taxable bond funds, including the funds specified in paragraph 133.  Except as expressly admitted, Mr. Daifotis denies the allegations.

134.     Answering paragraph 134, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of that paragraph relate to claims not dismissed, Mr. Daifotis denies the allegations.

135.     Answering paragraph 135, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

1  answer.  To the extent the allegations of paragraph 135 relate to claims not dismissed,

2  Mr. Daifotis admits that the Board of Trustees of Schwab Investments voted in August 2006 to

3  approve the change referenced in paragraph 133.  Mr. Daifotis further admits that the Board of

4  Trustees did not seek shareholder approval for that change.  Mr. Daifotis avers that the

5  remainder of the allegations of paragraph 135 constitute legal conclusions and require no

6  response.  To the extent a response is required, Mr. Daifotis denies these remaining allegations.

7          136.    Answering paragraph 136, Mr. Daifotis avers that the allegations

8  contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,

9  2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

10  answer.  To the extent the allegations of paragraph 136 relate to claims not dismissed,

11  Mr. Daifotis avers that these allegations constitute legal conclusions and require no response.

12  To the extent a response is required, Mr. Daifotis denies the allegations.

13          137.    Answering paragraph 137, Mr. Daifotis avers that the allegations

14  contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,

15  2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

16  answer.  To the extent the allegations of paragraph 137 relate to claims not dismissed,

17  Mr. Daifotis avers that YieldPlus's historical portfolio composition speaks for itself.

18          138.    Answering paragraph 138, Mr. Daifotis avers that the allegations

19  contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,

20  2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

21  answer.  To the extent the allegations of paragraph 138 relate to claims not dismissed,

22  Mr. Daifotis avers that the historical portfolio compositions of the Total Bond Fund and the

23  Short Term Bond Fund speak for themselves.

24          139.    Answering paragraph 139, Mr. Daifotis avers that the allegations

25  contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,

26  2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

27  answer.  To the extent the allegations of paragraph 139 relate to claims not dismissed,

28  Mr. Daifotis denies the allegations.

140.     Answering paragraph 140, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of paragraph 140 relate to claims not dismissed, Mr. Daifotis avers that they require no answer to the extent the allegations of that paragraph do not relate to Mr. Daifotis.  To the extent an answer is required, Mr. Daifotis denies the allegations.

141.     Answering paragraph 141, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of paragraph 141 relate to claims not dismissed, Mr. Daifotis avers that, to the extent these allegations do not relate to Mr. Daifotis, they require no answer.  To the extent an answer is required, Mr. Daifotis denies the allegations.

142.     Answering paragraph 142, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of paragraph 142 relate to claims not dismissed, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether he reviewed, and whether he received a request to review or comment on, the SEC filing referenced in that paragraph.  Except as expressly admitted, Mr. Daifotis denies the allegations of paragraph 142.

143.     Answering paragraph 143, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6, 2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no answer.  To the extent the allegations of paragraph 143 relate to claims not dismissed, Mr. Daifotis is informed and believes that the SEC filings referenced in that paragraph were filed with the SEC on the dates listed.  Mr. Daifotis avers that these filings, as well as the Fund's

1    historical portfolio composition and asset data, speak for themselves.  Except as expressly

2    admitted, Mr. Daifotis denies the allegations of paragraph 143.

3                144.    Answering paragraph 144, Mr. Daifotis avers that the allegations

4    contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,

5    2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

6    answer.  To the extent the allegations of paragraph 144 relate to claims not dismissed,

7    Mr. Daifotis denies the allegations.

8                145.    Answering paragraph 145, Mr. Daifotis avers that the allegations

9    contained in that paragraph relate to claims the Court dismissed with prejudice in its June 6,

10   2011 Order.  Accordingly, these allegations cannot form the basis of liability and require no

11   answer.  To the extent the allegations of paragraph 145 relate to claims not dismissed,

12   Mr. Daifotis denies the allegations.

13               146.    Answering paragraph 146, Mr. Daifotis is without knowledge or

14   information sufficient to form a belief as to the truth of the allegations regarding investors'

15   expectations.  Except as expressly admitted, Mr. Daifotis denies the allegations.

16               147.    Answering paragraph 147, Mr. Daifotis avers that YieldPlus's historical

17   share prices and assets data speak for themselves.

18               148.    Answering paragraph 148, Mr. Daifotis avers that the emails referenced in

19   that paragraph speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the

20   allegations.

21               149.    Answering paragraph 149, Mr. Daifotis admits that conference calls were

22   held, written materials were issued, internal talking points were circulated to certain groups and

23   that Schwab representatives spoke with customers and advisors regarding, among other things,

24   YieldPlus's decline.  Mr. Daifotis denies the remaining allegations of paragraph 149.  Except as

25   expressly admitted, Mr. Daifotis denies the allegations.

26               150.    Answering paragraph 150, Mr. Daifotis denies the allegations.

27               151.    Answering paragraph 151, Mr. Daifotis admits that he led conference

28   calls in which he discussed YieldPlus, among other topics.  Mr. Daifotis further admits that he

1    began receiving updates concerning YieldPlus at some point during the Fund's decline.

2    Mr. Daifotis denies the remaining allegations.  Except as expressly admitted, Mr. Daifotis denies

3    the allegations.

4            152.    Answering paragraph 152, Mr. Daifotis avers that these allegations do not

5    relate to Mr. Daifotis and thus require no answer.  To the extent a response is required,

6    Mr. Daifotis admits that Mr. Merk supervised Mr. Daifotis beginning in July 2007.  Except as

7    expressly admitted, Mr. Daifotis denies the allegations.

8            153.    Answering paragraph 153, Mr. Daifotis denies the allegations.

9            154.    Answering paragraph 154, Mr. Daifotis admits that conference calls were

10   held on August 14, 2007 and August 16, 2007.  Mr. Daifotis admits that the calls were intended

11   to respond to investors' questions and concerns about YieldPlus, other Schwab products, and the

12   fixed income markets generally.  Mr. Daifotis denies the remaining allegations.  Except as

13   expressly admitted, Mr. Daifotis denies the allegations.

14           155.    Answering paragraph 155, Mr. Daifotis avers that YieldPlus's historical

15   assets and transactional data speak for themselves.  Except as expressly admitted, Mr. Daifotis

16   denies the allegations.

17           156.    Answering paragraph 156, Mr. Daifotis admits that he had access to

18   redemption levels in August 2007.  Mr. Daifotis is without knowledge or information sufficient

19   to form a belief as to the truth of the allegations regarding whether he monitored redemption

20   levels multiple times per day in August 2007.  Except as expressly admitted, Mr. Daifotis denies

21   the allegations.

22           157.    Answering paragraph 157, Mr. Daifotis avers that the email referenced in

23   that paragraph speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the

24   allegations.

25           158.    Answering paragraph 158, Mr. Daifotis avers that the email referenced in

26   that paragraph speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the

27   allegations.

28

159.     Answering paragraph 159, Mr. Daifotis avers that the email referenced in that paragraph speaks for itself.  Except as expressly admitted, Mr. Daifotis denies the allegations.

160.     Answering paragraph 160, Mr. Daifotis admits that a conference call with independent registered investment advisors was held on August 14, 2007.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of independent registered investment advisors attending the call. Mr. Daifotis avers that the audio recording and related transcript of that conference call speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

161.     Answering paragraph 161, Mr. Daifotis admits that a conference call with CS&Co. registered representatives was held on August 16, 2007.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of CS&Co. registered representatives attending the call.  Mr. Daifotis avers that the audio recording and related transcript of that conference call speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

162.     Answering paragraph 162, Mr. Daifotis denies the allegations.

163.     Answering paragraph 163, Mr. Daifotis is without knowledge or information sufficient to form a belief as to whether paragraph 163 accurately quotes the purported communication between a CS&Co. representative and a YieldPlus investor. Mr. Daifotis denies the remaining allegations.

164.     Answering paragraph 164, Mr. Daifotis avers that material posted on Schwab's public website speaks for itself.  Mr. Daifotis further avers that the August Q&A referenced in paragraph 164 speaks for itself.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the time period the document appeared on Schwab's public website.  To the extent the allegations do not relate to Mr. Daifotis, they require no answer.  Except as expressly admitted, Mr. Daifotis denies the allegations.

1    165.    Answering paragraph 165, Mr. Daifotis avers that to the extent the

2    allegations do not relate to Mr. Daifotis, they require no answer.  Except as expressly admitted,

3    Mr. Daifotis denies the allegations.

4    166.    Answering paragraph 166, Mr. Daifotis is without knowledge or

5    information sufficient to form a belief as to the truth of the allegations concerning the

6    performance of other "peer" funds as referenced in that paragraph.  Mr. Daifotis is without

7    knowledge or information sufficient to form a belief as to the truth of the allegations regarding

8    the time period the referenced document remained on Schwab's public website.  Mr. Daifotis

9    avers that to the extent the allegations of paragraph 166 do not relate to Mr. Daifotis, they

10   require no answer.  Except as expressly admitted, Mr. Daifotis denies the allegations.

11   167.    Answering paragraph 167, Mr. Daifotis is without knowledge or

12   information sufficient to form a belief as whether statements contained in the document

13   referenced in paragraph 164 were communicated to YieldPlus investors or whether paragraph

14   167 accurately quotes the purported communication between a CS&Co. representative and a

15   YieldPlus investor.  Mr. Daifotis avers that to the extent the allegations of paragraph 167 do not

16   relate to Mr. Daifotis, they require no answer.  Except as expressly admitted, Mr. Daifotis denies

17   the allegations.

18   168.    Answering paragraph 168, Mr. Daifotis admits that he spoke in a webcast

19   on or about September 18, 2007.  Mr. Daifotis is without knowledge or information sufficient to

20   form a belief as to the truth of the allegations regarding the audience for the webcast.

21   Mr. Daifotis avers that the web broadcast, audio recording and related transcript of that web

22   broadcast speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the

23   allegations.

24   169.    Answering paragraph 169, Mr. Daifotis admits that a "Manager's

25   Discussion" was created in November 2007.  Mr. Daifotis is without knowledge or information

26   sufficient to form a belief as to the truth of the allegations regarding whether or how that

27   document was "distributed" to the public or the scope of that document's distribution but avers

28   that content appearing on Schwab's public website as of the date referenced in paragraph 169

1    speaks for itself.  Mr. Daifotis further avers that the November 2007 Manager's Discussion

2    referenced in paragraph 169 speaks for itself.  Except as expressly admitted, Mr. Daifotis denies

3    the allegations.

4            170.    Answering paragraph 170, Mr. Daifotis admits that internal talking points

5    were created in November 2007.  Mr. Daifotis avers that the talking points document referenced

6    in paragraph 170 speaks for itself.  Mr. Daifotis is without knowledge or information sufficient

7    to form a belief as to the truth of the allegations regarding whether Schwab employees used the

8    document referenced in paragraph 170 when discussing YieldPlus with investors.  Mr. Daifotis

9    is without knowledge or information sufficient to form a belief as to the truth of the allegations

10   regarding whether or when Mr. Daifotis reviewed the document referenced in paragraph 170.

11   To the extent the allegations of paragraph 170 do not relate to Mr. Daifotis, they require no

12   answer.  Except as expressly admitted, Mr. Daifotis denies the allegations.

13           171.    Answering paragraph 171, Mr. Daifotis avers that the talking points

14   document referenced in that paragraph speaks for itself.

15           172.    Answering paragraph 172, Mr. Daifotis denies the allegations.

16           (a)     Answering paragraph 172(a), Mr. Daifotis avers that the emails

17   referenced in paragraph 172(a) speak for themselves.  Except as expressly admitted, Mr. Daifotis

18   denies the allegations.

19           (b)     Answering paragraph 172(b), Mr. Daifotis avers that YieldPlus

20   historical portfolio composition and assets data speak for themselves.  Except as expressly

21   admitted, Mr. Daifotis denies the allegations.

22           (c)     Answering paragraph 172(c), Mr. Daifotis avers that the

23   September 2007 webcast and the November 2007 Manager's Discussion referenced in that

24   paragraph speaks for themselves.  Except as expressly admitted, Mr. Daifotis denies the

25   allegations.

26           (d)     Answering paragraph 172(d), Mr. Daifotis avers that YieldPlus

27   historical portfolio composition and assets data speak for themselves.  Except as expressly

28   admitted, Mr. Daifotis denies the allegations.

173.     Answering paragraph 173, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning purported communications between CS&Co. representatives and investors.  Except as expressly admitted, Mr. Daifotis denies the allegations.

174.     Answering paragraph 174, Mr. Daifotis denies the allegations.

175.     Answering paragraph 175, Mr. Daifotis avers that YieldPlus's historical portfolio composition and assets data speak for themselves.  Except as expressly admitted, Mr. Daifotis denies the allegations.

176.     Answering paragraph 176, Mr. Daifotis avers that the August 2007 Q&A referenced in that paragraph and YieldPlus's historical portfolio composition and assets data speak for themselves.  To the extent the allegations do not relate to Mr. Daifotis, they require no answer.  Except as expressly admitted, Mr. Daifotis denies the allegations.

177.     Answering paragraph 177, Mr. Daifotis avers that the August 2007 Q&A referenced in that paragraph speaks for itself.  To the extent the allegations do not relate to Mr. Daifotis, they require no answer.  Except as expressly admitted, Mr. Daifotis denies the allegations.

178.     Answering paragraph 178, Mr. Daifotis avers that the August 2007 Manager's Discussion referenced in that paragraph speaks for itself.  Mr. Daifotis further avers that YieldPlus's historical portfolio composition and assets data speak for themselves. Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether the August 2007 Manager's Discussion referenced in paragraph 178 was posted on Schwab's internal website, who had access to Schwab's internal website or how the document was to be used.  Except as expressly admitted, Mr. Daifotis denies the allegations.

179.     Answering paragraph 179, Mr. Daifotis avers that the November 2007 "Manager's Discussion" referenced in that paragraph speaks for itself.  Mr. Daifotis further avers that YieldPlus's historical portfolio composition and assets data speak for themselves. Except as expressly admitted, Mr. Daifotis denies the allegations.

180.     Answering paragraph 180, Mr. Daifotis denies the allegations.

181.     Answering paragraph 181, Mr. Daifotis denies the allegations.

182.     Answering paragraph 182, Mr. Daifotis admits that certain Schwab-related funds redeemed their YieldPlus holdings.  Mr. Daifotis further avers that to the extent the allegations of that paragraph constitute legal conclusions, they require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

183.     Answering paragraph 183, Mr. Daifotis admits that the funds referenced in that paragraph redeemed their YieldPlus holdings.  Mr. Daifotis further admits that, at the time of redemption, the referenced funds' senior portfolio manager was the Chief Investment Officer for Equities.  Mr. Daifotis avers that to the extent the allegations of that paragraph constitute legal conclusions, they require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

184.     Answering paragraph 184, Mr. Daifotis admits that he and the Chief Investment Officer for Equities reported to Mr. Merk during the time period referenced in that paragraph.  Mr. Daifotis further admits that he had meetings with Mr. Merk in February and March 2008.  Mr. Daifotis avers that to the extent the allegations of that paragraph constitute legal conclusions, they require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

185.     Answering paragraph 185, Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what was discussed in the meetings referenced in paragraph 184.  Mr. Daifotis avers that to the extent the allegations of that paragraph constitute legal conclusions, they require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

186.     Answering paragraph 186, Mr. Daifotis avers that to the extent the allegations do not relate to him, they require no answer.  Mr. Daifotis further avers that to the extent the allegations of that paragraph constitute legal conclusions, they require no response.  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the

1   allegations concerning the Chief Investment Officer for Equities' knowledge or conduct.  Except

2   as expressly admitted, Mr. Daifotis denies the allegations.

3   187.   Answering paragraph 187, Mr. Daifotis avers that to the extent the

4   allegations do not relate to him, they require no response.  Mr. Daifotis is without knowledge or

5   information sufficient to form a belief as to the truth of the allegations or paragraph 187.

6   188.   Answering paragraph 188, Mr. Daifotis admits that CSIM served as

7   investment advisor to YieldPlus.  Mr. Daifotis avers that to the extent the allegations do not

8   relate to him, they require no response.  Mr. Daifotis further avers that the allegations of that

9   paragraph constitute legal conclusions and require no response.  Except as expressly admitted,

10  Mr. Daifotis denies the allegations.

11  189.   Answering paragraph 189, Mr. Daifotis avers that to the extent the

12  allegations do not relate to him, they require no response.  Mr. Daifotis further avers that to the

13  extent the allegations of that paragraph constitute legal conclusions, they require no response.

14  Except as expressly admitted, Mr. Daifotis denies the allegations.

15  190.   Answering paragraph 190, Mr. Daifotis avers that to the extent the

16  allegations do not relate to him, they require no response.  Mr. Daifotis further avers that to the

17  extent the allegations of that paragraph constitute legal conclusions, they require no response.

18  Except as expressly admitted, Mr. Daifotis denies the allegations.

19  191.   Answering paragraph 191, Mr. Daifotis avers that to the extent the

20  allegations do not relate to him, they require no response.  Mr. Daifotis further avers that to the

21  extent the allegations of that paragraph constitute legal conclusions, they require no response.

22  Mr. Daifotis is without knowledge or information sufficient to form a belief as to the truth of the

23  allegations regarding trustees' knowledge or conduct.  Except as expressly admitted,

24  Mr. Daifotis denies the allegations.

25  192.   Answering paragraph 192, Mr. Daifotis avers that to the extent the

26  allegations do not relate to him, they require no response.  Mr. Daifotis further avers that to the

27  extent the allegations of that paragraph constitute legal conclusions, they require no response.

28  Except as expressly admitted, Mr. Daifotis denies the allegations.

DEFENDANT KIMON P. DAIFOTIS' ANSWER TO THE        -29-
FIRST AMENDED COMPLAINT
Case No.: 11-CV-00137 WHA

193.    Answering paragraph 193, Mr. Daifotis avers that to the extent the allegations do not relate to him, they require no response.  Mr. Daifotis further avers that to the extent the allegations of that paragraph constitute legal conclusions, they require no response. Except as expressly admitted, Mr. Daifotis denies the allegations.

194.    Answering paragraph 194, Mr. Daifotis admits that he received bonuses and salary for the referenced period and that the long-term performance of the fixed income funds factored in the calculation of his bonuses.  Except as expressly admitted, Mr. Daifotis denies the allegations.

195.    Answering paragraph 195, Mr. Daifotis avers that to the extent the allegations do not relate to him, they require no response.

196.    Answering paragraph 196, Mr. Daifotis incorporates by reference his responses to paragraphs 1-195 of the First Amended Complaint as if fully set forth herein.

197.    Answering paragraph 197, Mr. Daifotis avers that the allegations of that paragraph constitute a legal conclusion and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations,

198.    Answering paragraph 198, Mr. Daifotis avers that the allegations of that paragraph do not relate to him and require no response.  Mr. Daifotis further avers that the allegations of that paragraph constitute a legal conclusion and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

199.    Answering paragraph 199, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

200.    Answering paragraph 200, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed in its June 6, 2011 Order and therefore no response is necessary.  Mr. Daifotis further avers that the allegations of that paragraph do not relate to him and require no response.  Mr. Daifotis further avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

201.    Answering paragraph 201, Mr. Daifotis avers that the allegations of that paragraph constitute a legal conclusion and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

202.    Answering paragraph 202, Mr. Daifotis incorporates by reference his responses to paragraphs 1-201 of the First Amended Complaint as if fully set forth herein.

203.    Answering paragraph 203, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

204.    Answering paragraph 204, Mr. Daifotis avers that the allegations of that paragraph constitute a legal conclusion and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

205.    Answering paragraph 205, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

206.    Answering paragraph 206, Mr. Daifotis avers that the allegations of that paragraph constitute a legal conclusion and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

207.    Answering paragraph 207, Mr. Daifotis incorporates by reference his responses to paragraphs 1-206 of the Complaint as if fully set forth herein.

208.    Answering paragraph 208, Mr. Daifotis avers that the allegations of that paragraph constitute a legal conclusion and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

209.    Answering paragraph 209, Mr. Daifotis avers that the allegations of that paragraph constitute a legal conclusion and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

210.    Answering paragraph 210, Mr. Daifotis avers that to the extent the allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further

avers that the allegations of that paragraph constitute legal conclusions and require no response. Except as expressly admitted, Mr. Daifotis denies the allegations.

211.    Answering paragraph 211, Mr. Daifotis avers that to the extent the allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further avers that the allegations of that paragraph constitute a legal conclusion and require no response. Except as expressly admitted, Mr. Daifotis denies the allegations.

212.    Answering paragraph 212, Mr. Daifotis avers that to the extent the allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further avers that the allegations of that paragraph constitute a legal conclusion and require no response. Except as expressly admitted, Mr. Daifotis denies the allegations.

213.    Answering paragraph 213, Mr. Daifotis avers that to the extent the allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further avers that the allegations of that paragraph constitute a legal conclusion and require no response. Except as expressly admitted, Mr. Daifotis denies the allegations.

214.    Answering paragraph 214, Mr. Daifotis avers that to the extent the allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further avers that the allegations of that paragraph constitute a legal conclusion and require no response. Except as expressly admitted, Mr. Daifotis denies the allegations.

215.    Answering paragraph 215, Mr. Daifotis incorporates by reference his responses to paragraphs 1-214 of the First Amended Complaint as if fully set forth herein.

216.    Answering paragraph 216, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

217.    Answering paragraph 217, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

218.    Answering paragraph 218, Mr. Daifotis avers that the allegations contained in that paragraph relate to claims the Court dismissed in its June 6, 2011 Order.

1    Accordingly, these allegations require no response.  Mr. Daifotis further avers that to the extent

2    the allegations of that paragraph do not relate to him or they constitute legal conclusions, they

3    require no response.  Except as expressly admitted, Mr. Daifotis denies the allegations.

4            219.    Answering paragraph 219, Mr. Daifotis avers that the allegation of that

5    paragraph constitutes a legal conclusion and requires no response.  Except as expressly admitted,

6    Mr. Daifotis denies the allegation.

7            220.    Answering paragraph 220, Mr. Daifotis incorporates by reference his

8    responses to paragraphs 1-219 of the First Amended Complaint as if fully set forth herein.

9            221.    Answering paragraph 221, Mr. Daifotis avers that to the extent the

10   allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further

11   avers that the allegations of that paragraph constitute legal conclusions and require no response.

12   Except as expressly admitted, Mr. Daifotis denies the allegations.

13           222.    Answering paragraph 222, Mr. Daifotis avers that to the extent the

14   allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further

15   avers that the allegations of that paragraph constitute a legal conclusion and require no response.

16   Except as expressly admitted, Mr. Daifotis denies the allegations.

17           223.    Answering paragraph 223, Mr. Daifotis avers that to the extent the

18   allegations of that paragraph do not relate to him, they require no response.  Mr. Daifotis further

19   avers that the allegations of that paragraph constitute legal conclusions and require no response.

20   Except as expressly admitted, Mr. Daifotis denies the allegations.

21           224.    Answering paragraph 224, Mr. Daifotis avers that to the extent the

22   allegation of that paragraph does not relate to him, it requires no response.  Mr. Daifotis further

23   avers that the allegation of that paragraph constitutes a legal conclusion and requires no

24   response.  Except as expressly admitted, Mr. Daifotis denies the allegation.

25           225.    Answering paragraph 225, Mr. Daifotis incorporates by reference his

26   responses to paragraphs 1-224 of the First Amended Complaint as if fully set forth herein.

27

28

226.    Answering paragraph 226, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

227.    Answering paragraph 227, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

228.    Answering paragraph 228, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

229.    Answering paragraph 229, Mr. Daifotis avers that the allegation of that paragraph constitutes a legal conclusion and requires no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

230.    Answering paragraph 230, Mr. Daifotis incorporates by reference his responses to paragraphs 1-229 of the First Amended Complaint as if fully set forth herein.

231.    Answering paragraph 231, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

232.    Answering paragraph 232, Mr. Daifotis avers that the allegation of that paragraph constitutes a legal conclusion and requires no response.  To the extent a response is required, Mr. Daifotis denies the allegation.

233.    Answering paragraph 233, Mr. Daifotis incorporates by reference his responses to paragraphs 1-232 of the First Amended Complaint as if fully set forth herein.

234.    Answering paragraph 234, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response.  To the extent a response is required, Mr. Daifotis denies the allegations.

235.    Answering paragraph 235, Mr. Daifotis avers that the allegation of that paragraph constitutes a legal conclusion and requires no response.  To the extent a response is required, Mr. Daifotis denies the allegation.

236. Answering paragraph 236, Mr. Daifotis avers that the allegations of that paragraph constitute legal conclusions and require no response. To the extent a response is required, Mr. Daifotis denies the allegations.

237. Answering paragraph 237, Mr. Daifotis avers that the allegation of that paragraph constitutes a legal conclusion and requires no response. To the extent a response is required, Mr. Daifotis denies the allegation.

## THE SEC'S PRAYER FOR RELIEF

Mr. Daifotis denies that the SEC is entitled to the relief requested in any part of its Prayer for Relief.

## AFFIRMATIVE DEFENSES

Without admitting or acknowledging that Mr. Daifotis bears any burden of proof as to any of them, Mr. Daifotis asserts the following affirmative defenses. Insofar as any of the following expresses denial of an element of any claim alleged against Mr. Daifotis, such expression does not indicate that the SEC is relieved of its burden to prove each and every element of any such claim.

Mr. Daifotis has not knowingly or intentionally waived any applicable defenses and explicitly reserves the right to assert and rely on such other additional affirmative defenses as may become available or apparent during discovery or pretrial proceedings. Mr. Daifotis further reserves the right to supplement or amend this Answer in order to assert such further affirmative defenses or to withdraw defenses that he determines are not applicable.

## First Affirmative Defense

### (All Counts; Failure to State a Claim)

The First Amended Complaint fails to state a claim against Mr. Daifotis upon which relief can be granted.

## Second Affirmative Defense

### (All Counts; Reasonable Reliance on Subject Matter Experts)

1    The SEC's claims fail in whole or in part because Mr. Daifotis at all times acted

2 in good faith and did not knowingly or recklessly make a false or misleading statement or

3 omission.  Mr. Daifotis reasonably relied upon the involvement, recommendations, statements,

4 or representations of Schwab Entities' internal and external subject matter experts, including but

5 not limited to the Schwab Entities' compliance professionals, lawyers, and fund accountants.  To

6 the extent that Mr. Daifotis is deemed responsible for any statements or conduct forming the

7 basis of this suit, Mr. Daifotis reasonably relied upon the involvement, recommendations,

8 statements, or representations of the Schwab Entities' internal and external subject matter

9 experts, including but not limited to the Schwab Entities' compliance professionals, lawyers, and

10 fund accountants.  Mr. Daifotis' good faith and reasonable reliance on such subject matter

11 experts negates any inference of scienter or any intent to deceive on the part of Mr. Daifotis.

12                          **Third Affirmative Defense**

13                 **(All Counts, Reasonable Reliance on Process)**

14    The SEC's claims fail in whole or in part because Mr. Daifotis at all times acted

15 in good faith and did not knowingly or recklessly make a false or misleading statement or

16 omission.  Mr. Daifotis reasonably relied upon the Schwab Entities' applicable processes,

17 including but not limited to the processes for the creation, review and dissemination or

18 publication of any and all statements regarding YieldPlus (including but not limited to investor

19 communications and SEC filings); legal and compliance review; and Board of Trustees'

20 oversight and approval.  To the extent that Mr. Daifotis is deemed responsible for any statements

21 or conduct forming the basis of this suit, Mr. Daifotis reasonably relied upon the Schwab

22 Entities' formal processes.  Mr. Daifotis' good faith and reasonable reliance negates any

23 inference of scienter or any intent to deceive on the part of Mr. Daifotis.

24                          **Fourth Affirmative Defense**

25                 **(All Counts, Reliance on Advice of Counsel)**

26    The SEC's claims fail in whole or in part because Mr. Daifotis at all times acted

27 in good faith and did not knowingly or recklessly make a false or misleading statement or

28 omission.  Mr. Daifotis reasonably relied upon the advice of the Schwab Entities' in-house and

1   outside legal counsel.  To the extent that Mr. Daifotis is deemed responsible for any statements

2   or conduct forming the basis of this suit, Mr. Daifotis reasonably relied upon the advice of the

3   Schwab Entities' in-house and outside legal counsel.  Mr. Daifotis' good faith and reasonable

4   reliance on such advice negates any inference of scienter or any intent to deceive on the part of

5   Mr. Daifotis.

6                                   **Fifth Affirmative Defense**

7                              **(All Counts; Waiver and Estoppel)**

8                  The SEC is barred by the doctrines of waiver and estoppel from seeking relief

9   based on any statements or alleged omissions identified in its August 10, 2006 letter to Schwab

10  and addressed in Schwab's September 8, 2006 letter in response.  By not responding to

11  Schwab's September 8, 2006 letter which set forth Schwab's plans to respond to the SEC's

12  concerns about these statements and alleged omissions, the SEC affirmatively waived its right to

13  later use such statements and alleged omissions as the basis of any claim and is thereby estopped

14  from advancing such claims in this or any other action.  The SEC is further estopped from

15  bringing claims based on statements or alleged omissions in any Schwab marketing materials in

16  circulation as of August 10, 2006 through its failure to alert Schwab to such alleged deficiencies

17  at that time.

18                                  **Sixth Affirmative Defense**

19                            **(All Counts; Ratification and Laches)**

20                 The SEC is barred by the doctrines of ratification and laches from seeking relief

21  based on any statements or alleged omissions identified in its August 10, 2006 letter to Schwab

22  and addressed in Schwab's September 8, 2006 letter in response.  By not responding to

23  Schwab's September 8, 2006 letter to the SEC which set forth Schwab's plans to respond to the

24  SEC's concerns about these statements and alleged omissions, the SEC implicitly ratified

25  Schwab's stated plans.  The SEC is further barred from bringing claims for any statements or

26  alleged omissions in any Schwab marketing materials related to Schwab's September 8, 2006

27  letter under the doctrine of laches because, by failing to alert Schwab to the alleged deficiencies

28  after that time, the SEC allowed the alleged violations to continue to occur.

1

**Seventh Affirmative Defense**

2

**(All Counts; Statute of Limitations)**

3        The SEC is time-barred from seeking the penalties and any other relief set forth

4   in its First Amended Complaint pursuant to the statute of limitations set forth in 28 U.S.C. §

5   2462.

6

**Eighth Affirmative Defense**

7

**(All Counts; No Basis for Injunctive Relief)**

8        The First Amended Complaint fails to allege facts sufficient to support any

9   granting of injunctive relief against Mr. Daifotis because there is no reasonable likelihood that

10  Mr. Daifotis will repeat any alleged wrongdoing.

11

**Ninth Affirmative Defense**

12

**(All Counts; No Basis for Disgorgement)**

13       The First Amended Complaint fails to allege facts sufficient to support an order

14  of disgorgement because there is no evidence that Mr. Daifotis wrongfully obtained profits,

15  received benefits or avoided losses as a result of the conduct alleged in the Complaint or that

16  disgorgement is necessary for deterrence purposes.

17

**Tenth Affirmative Defense**

18

**(All Counts; No Basis for Civil Penalties)**

19       The First Amended Complaint fails to allege facts sufficient to support the

20  imposition of any civil penalties.

21

22

23

24

25

26

27

28

DEFENDANT KIMON P. DAIFOTIS' ANSWER TO THE         -38-
FIRST AMENDED COMPLAINT
Case No.: 11-CV-00137 WHA

## **Eleventh Affirmative Defense**

### **(All Counts; Defenses Asserted by Other Defendants)**

Mr. Daifoties hereby adopts and incorporates by reference any and all other defenses, including affirmative defenses, asserted by any other defendant to the extent such defenses apply to Mr. Daifotis.

### **Reservation of Right to Assert Additional Defenses**

Mr. Daifotis's investigation into the facts underlying the First Amended Complaint is ongoing.  Mr. Daifotis therefore reserves the right to supplement or amend his Answer and to assert additional affirmative defenses as additional facts are learned in the course of his investigation or through discovery.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Kimon Daifotis prays the Court as follows:

1.     That Mr. Kimon Daifotis be found not liable;

2.     That the SEC recover nothing from Mr. Daifotis;

3.     That the SEC not be granted the requested injunctive relief; and

4.     For such other and further relief as this Court deems proper and just.

## **DEMAND FOR TRIAL BY JURY**

Mr. Daifotis hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

DATED:  October 27, 2011          COVINGTON & BURLING LLP

By:    /s/ David B. Bayless
                DAVID B. BAYLESS

Attorneys for Defendant KIMON P. DAIFOTIS