David J. Gottesman (Trial Counsel) (Illinois Bar No. 6182719)
(gottesmand@sec.gov)
Frederick L. Block (blockf@sec.gov)
David S. Mendel (mendeld@sec.gov)
Robert A. Cohen (cohenr@sec.gov)
Melissa R. Hodgman (hodgmanm@sec.gov)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-4030
Telephone: (202) 551-4470 (Gottesman)
Facsimile: (202) 772-9245 (Gottesman)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV-11-0137 WHA |
| Plaintiff, | **[REDACTED] PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO FIFTH AND SIXTH AFFIRMATIVE DEFENSES AND FOR PARTIAL SUMMARY JUDGMENT AS TO SEVENTH AFFIRMATIVE DEFENSE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| vs. | |
| KIMON P. DAIFOTIS, | |
| Defendant. | |
| | Date: June 7, 2012 |
| | Time: 8:00 a.m. |
| | Judge: Hon. William H. Alsup |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
AS TO FIFTH AND SIXTH AFFIRMATIVE DEFENSES AND FOR PARTIAL
SUMMARY JUDGMENT AS TO SEVENTH AFFIRMATIVE DEFENSE**

TO DEFENDANT KIMON P. DAIFOTIS AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 7, 2012, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable William H. Alsup, at the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, plaintiff Securities and Exchange Commission ("SEC") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in favor of the SEC on the Fifth and Sixth Affirmative Defenses, and partial summary judgment in favor of the SEC on the Seventh Affirmative Defense, set forth by defendant Kimon P. Daifotis in his Answer to First Amended Complaint (Dkt. 99) ("Answer").

This Motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities; the Declaration of David Mendel in support of the SEC's Motion ("Mendel Decl.") and the exhibits attached thereto ("Ex. __"); the papers and pleadings on file with this Court; and other such written or oral argument and other materials as may be presented to this Court.

**ISSUES TO BE DECIDED**

I.      Whether the SEC is entitled to summary judgment on Defendant's Fifth Affirmative Defense asserting waiver and estoppel.

II.     Whether the SEC is entitled to summary judgment on Defendant's Sixth Affirmative Defense asserting ratification and laches.

III.    Whether the SEC is entitled to partial summary judgment on Defendant's Seventh Affirmative Defense asserting statute of limitations under 28 U.S.C. § 2462.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................... v

PRELIMINARY STATEMENT................................................................................................... 1

BACKGROUND FACTS, INCLUDING MATERIAL
FACTS AS TO WHICH THERE IS NO GENUINE ISSUE .......................................................... 3

The SEC's Examination Process.................................................................................................. 3

The SEC's 2006 Examination of Schwab ...................................................................................... 4

The SEC's Deficiency Letter ........................................................................................................ 4

Schwab's Response to the Deficiency Letter............................................................................... 6

The SEC's Claims in This Lawsuit.............................................................................................. 6

ARGUMENT ............................................................................................................................... 8

I.      DAIFOTIS MUST SHOW A GENUINE ISSUE OF MATERIAL FACT TO
        AVOID SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES .......................... 8

II.     THE SEC IS ENTITLED TO SUMMARY JUDGMENT ON DAIFOTIS'S
        FIFTH AFFIRMATIVE DEFENSE .............................................................................. 9

        A.      The SEC Cannot Waive or Be Estopped From Bringing an
                Enforcement Action ........................................................................................ 10

        B.      No Genuine Issues of Material Fact Preclude Summary Judgment on
                Daifotis's Waiver and Estoppel Defenses......................................................... 11

                1.      Waiver and Estoppel Do Not Bar the SEC's Claims Based on
                        Statements or Omissions "Identified in" the Deficiency Letter............... 12

                        a.      The SEC Did Not Waive Any Right ........................................... 13

                        b.      The SEC and Daifotis's Actions Do Not
                                Support Estoppel ....................................................................... 14

                2.      Estoppel Does Not Bar the SEC's Claims Based On Statements or
                        Omissions Not Identified in the Deficiency Letter .................................. 15

                3.      Daifotis Cannot Meet the Heightened Standard for Asserting
                        Any Estoppel Defense Against the SEC.................................................... 17

III.    SUMMARY JUDGMENT SHOULD BE GRANTED ON DAIFOTIS'S
        SIXTH AFFIRMATIVE DEFENSE................................................................... 19

        A.    The Exchange Act Precludes Daifotis's Ratification Defense............................. 19

        B.    The Laches Defense is Unavailable Against the SEC ......................................... 20

IV.     Partial Summary Judgment Should Be Granted on Daifotis's Seventh
        Affirmative Defense......................................................................................... 21

CONCLUSION ................................................................................................... 24

## TABLE OF AUTHORITIES

### CASES

*American Express Travel Related Servs. Co. v. D&A Corp.*, 2007 WL 3217565 (E.D. Cal. Oct. 29, 2007) ................................................................. 9

*Arrow Electronics v. Night Operations Systems, Inc.*, 2011 WL 2633155 (D. Nev. July 1, 2011) ......................................................................................... 9

\*Baccei v. United States*, 632 F.3d 1140 (9th Cir. 2011) .................. 11, 12, 14, 15, 17, 18

*Bresson v. Commissioner of Internal Revenue*, 213 F.3d 1173 (9th Cir. 2000) .............. 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................... 8, 9

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........................................ 9

*Falcone v. Pierce*, 864 F.2d 226 (1st Cir. 1988)............................................ 14

*Fuentes v. Secretary of HHS*, 1993 WL 50940 (Fed. Cl. Feb. 11, 1993) ....................... 15

\*Graham v SEC*, 222 F.3d 994 (D.C. Cir. 2000)................................... 12, 14, 16

*Harvard Investment Co. v. Gap Stores, Inc.*, 156 Cal. App. 3d 704, 202 Cal. Rptr. 891 (1984)............................................................................ 12

\*Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51 (1984)............................................................. 10, 12, 14, 15, 17

*Investors Research Corp .v. SEC*, 628 F.2d 168 (D.C. Cir. 1980) ................................. 16

*Morgan v. Gonzales*, 495 F.3d 1084 (9th Cir. 2007) ........................................ 17

*Morgan v. Heckler*, 779 F.2d 544 (9th Cir. 1985) ...................................... 11, 13

*Mukherjee v. INS*, 793 F.2d 1006 (9th Cir. 1986)........................................... 18

*Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990)............................................. 9

*Plumb v. Fluid Pump Service, Inc*., 124 F.3d 849 (7th Cir. 1997) ............................ 14, 16

*Rakestraw v. Rodrigues*, 8 Cal.3d 67, 500 P.2d 1401 (Cal. 1972)................................. 20

\*Rind v. SEC*, 991 F.2d 1486 (9th Cir. 1993) ................................................ 22

*Roling v. E\*Trade Secs., LLC*, 2012 WL 1038618 (N.D. Cal. Mar. 27, 2012) ............... 12

*Schweiker v. Hansen*, 450 U.S. 785 (1981) (per curiam)....................................... 13

*SEC v. Badian*, 2010 WL 1028256 (S.D.N.Y. Mar 11, 2010)......................................... 11

*SEC v. Berry*, 580 F. Supp.2d 911 (N.D. Cal. 2008) ..................................... 22, 23

*SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) ................................................................... 22

*\*SEC v. Culpepper*, 270 F.2d 241 (2d Cir. 1959)................................................... 10, 11, 19

*SEC v. Des Champs*, 2009 WL 3068258 (D. Nev. Sep. 11, 2009) ............................ 22, 23

*SEC v. Gulf & Western Indus., Inc.*, 502 F. Supp. 343 (D.D.C. 1980)........... 11, 19, 20, 21

*SEC v KPMG*, 2003 WL 21976733 (S.D.N.Y. Aug. 20, 2003)........................... 12, 13, 14

*\*SEC v. Keating*, 1992 WL 207918 (C.D. Cal. July 23, 1992)..................... 10, 11, 20, 21

*SEC v. Kelly*, 765 F. Supp. 2d 301 (S.D.N.Y. 2011) ......................................................... 23

*SEC v. Morgan, Lewis & Bockius*, 209 F.2d 44 (3d Cir. 1953)........................................ 11

*SEC v. Mercury Interactive, LLC*, 2008 WL 4544443 (N.D. Cal. Sep. 30, 2008) ................................................................................................................... 22, 23

*SEC v. Sands*, 902 F. Supp. 1149 (C.D. Cal. 1995) ......................................................... 19

*United States v. Alaska S. S. Co.*, 491 F.2d 1147 (9th Cir. 1974)..................................... 20

*United States v. Ruby Co.*, 588 F.2d 697 (9th Cir. 1978) .......................................... 12, 21

*United States v. Summerlin*, 310 U.S. 414 (1940) ..................................................... 20, 21

*Watkins v. United States Army*, 875 F.2d 699 (9th Cir. 1989)........................................ 17

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P. 56 ................................................................................................................. 8

Fed. R. Civ. P. 56(e)............................................................................................................ 9

Securities Exchange Act of 1934

    Section 17(b) [15 U.S.C. § 78q(b)]................................................................................ 3

    Section 26 [15 U.S.C. § 78z]................................................................................... 11, 19

Investment Advisers Act of 1940

    Section 204 [15 U.S.C. § 80b-4] .................................................................................... 3

28 U.S.C. § 2462 ......................................................................................................... 22, 23

**MISCELLANEOUS**

BLACK'S LAW DICTIONARY 872 (6th abridged ed. 1991) ................................................ 20

1

2

### PRELIMINARY STATEMENT

3      The SEC brought this lawsuit alleging that Defendant Kimon P. Daifotis ("Daifotis")

4 violated the securities laws through misrepresentations and misleading omissions of material

5 fact about a mutual fund that Daifotis managed, the Schwab YieldPlus Fund ("YieldPlus" or

6 "Fund").   The SEC's claims are generally based on Daifotis's misrepresentations or

7 misleading omissions (or those that he aided and abetted) about YieldPlus that relate to (1)

8 the nature and characteristics of YieldPlus from 2005 to 2008; and (2) characterizations of the

9 level of investor redemptions of the Fund after the value of Fund shares began to deteriorate

10 in the summer of 2007.

11      Daifotis seeks to avoid responsibility for the first category of false statements

12 described above, by asserting defenses of waiver and estoppel (his Fifth Affirmative Defense)

13 and ratification and laches (his Sixth Affirmative Defense).  Answer, Mendel Decl. Ex. 1.

14 But Daifotis fails in his attempt to shift blame for these statements to the SEC, by arguing that

15 SEC staff who examined the Schwab entities with which Daifotis was associated (collectively

16 referred to here as "Schwab" or "the companies") should have done *more* to warn Schwab

17 about the statements.

18      The SEC's Office of Compliance Inspections and Examinations ("OCIE") conducted

19 an examination of Schwab in 2006 ("Examination"), as a result of which the SEC wrote a

20 letter alerting Schwab to deficiencies in certain advertisements for YieldPlus ("Deficiency

21 Letter").  The SEC advised Schwab, among other things, that an advertisement stating that

22 YieldPlus sought "'higher yield with slightly higher risks than money market funds'" "may be

23 inaccurate or misleading" absent additional disclosure.  Deficiency Letter, Mendel Decl. Ex.

24 2.  In a letter responding to the SEC ("Response Letter"), Schwab told the SEC that it

25 acknowledged SEC's position, had stopped using the particular advertisement at issue, and

26 would incorporate additional risk disclosures in any similar future marketing materials.

27 Response Letter, Mendel Decl. Ex. 3.

28

In setting out his affirmative defenses here, Daifotis variously contends that the SEC's present claims are barred to the extent they are based on misrepresentations or misleading omissions (1) "identified in" the Deficiency Letter, (2) in any Schwab marketing materials in circulation at the time the Deficiency Letter was sent, and (3) in any Schwab marketing materials "related to" the Deficiency Letter.  Answer, Fifth and Sixth Affirmative Defenses, Mendel Decl. Ex. 1.  Each of these contentions is legally and factually unfounded.

*First*, Section 26 of the Securities Exchange Act of 1934 ("Exchange Act") and established case law preclude use of the defenses asserted here to contest an SEC enforcement action, or, alternatively, set high standards for proving them in a case against the government. *Second*, Daifotis cannot meet even the basic elements of these defenses, particularly given explicit notices provided by the SEC in the Deficiency Letter.  These notices stated that the SEC was not disclaiming other regulatory actions that might result from the Examination, nor was the SEC approving any of the companies' practices or communications that were not discussed in the Deficiency Letter.  *Third*, Daifotis cannot make the required showing that the SEC engaged in "affirmative misconduct" in connection with the Examination.

In sum, Daifotis cannot present evidence creating a genuine issue of material fact and the SEC is entitled to judgment as a matter of law as to Daifotis's Fifth and Sixth Affirmative Defenses.  In addition, Daifotis erroneously asserts his Seventh Affirmative Defense, statute of limitations, against *all* of the relief sought by the SEC's First Amended Complaint.  The SEC is entitled to summary judgment on this defense at least to the extent it seeks to bar injunctive relief or disgorgement (which are not subject to the statute of limitations at all), and to the extent that the defense seeks to bar civil penalties based on Daifotis's conduct within five years of the filing of this lawsuit.

## BACKGROUND FACTS, INCLUDING MATERIAL
## <u>FACTS AS TO WHICH THERE IS NO GENUINE ISSUE</u>

### <u>The SEC's Examination Process</u>

1.      The SEC conducts examinations generally to look for securities law violations involving firms required to register with the SEC ("registrants") and to protect investors.  *See* 15 U.S.C. §§ 78q(b), 80b-4; Transcript of Erica Gould Deposition ("Gould Tr.") 78-79, Mendel Decl. Ex. 4.  Firms may be selected for examination for any number of reasons, including for a routine examination, because of an investor complaint, or in connection with a review of a particular compliance area.  *See* Gould Tr. 80-83 (distinguishing between "cause examinations" and other examinations).  The reasons why firms have been selected for examination are non-public information, and typically will not be shared with the firm under examination.  Gould Tr. 83.  Where an examination reveals issues related to the registrant's operations that merit corrective action, the SEC typically notes these issues in a deficiency letter to the registrant upon completion of the examination.  Gould Tr. 66-68, 89-90.

2.      As of June 2005 – less than a year before the Examination – the SEC had oversight responsibility for approximately 8,000 mutual funds, managed in over 900 fund complexes, and over 8,000 investment advisers.[1]  It employed between 360 and 500 staff to conduct compliance examinations of these registrants.  *Id.*  Because the size of the mutual fund industry precluded a comprehensive audit of each registrant's operations by examination staff, examinations focused on areas that, in the staff's judgment, posed the greatest risk to investors.  *Id.*; *see also* Gould Tr. 243-245, 253-254, Mendel Decl. Ex. 4.  Even upon identifying the areas to be examined, SEC examination staff may review only subsets or samples of available documents.  *See* Gould Tr. 106-111.  The SEC examination staff does not purport to examine every aspect of a registrant's operations or every aspect of its

---

[1] Testimony Concerning SEC's Mutual Fund Oversight, by Lori A. Richards, Director, Office of Compliance Inspections and Examinations, SEC, Before the U.S. House Subcommittee on Commercial and Administrative Law, June 7, 2005, available at http://sec.gov/news/testimony/ts060705lar.htm, Mendel Decl. Ex. 5.

communications with the public, nor does it purport to examine the truthfulness of every statement in the materials it reviews during an examination.  Gould Tr. 244-245, 253-255.

### The SEC's 2006 Examination of Schwab

3.      In April 2006, the SEC began four simultaneous examinations of registered Schwab entities:  (1) Charles Schwab Investment Management ("CSIM"), which serves as the investment adviser to Schwab mutual funds and other products; (2) Charles & Schwab & Co. ("CS&Co."), which is a registered broker-dealer, transfer agent, and investment adviser, in its capacity as an investment adviser; (3) four registered investment companies, one of which was Schwab Investments; and (4) CS&Co. in its capacity as a transfer agent.  Gould Tr. 61-62, 65-66, 68, 73, Mendel Decl. Ex. 4; Pages from OCIE Super Tracking and Reporting System ("STARS Pages"), Mendel Decl. Ex. 6; Deficiency Letter, Mendel Decl. Ex. 2.[2] These examinations were conducted by six SEC employees from the agency's San Francisco regional office.  Gould Tr. 25-26; March 28, 2006 Fleisher Email to Fillmore, Mendel Decl. Ex. 7.

4.      The SEC performed approximately three weeks of on-site fieldwork at Schwab's offices and additional document review and analysis at the SEC's offices.  STARS Pages, Mendel Decl. Ex. 6; Gould Tr. 43-44, 84-89, Mendel Decl. Ex. 4.  The SEC reviewed, among other documents, samples of (but not all) advertisements and sales materials for various mutual funds.  May 24, 2006 Sese Fax Transmittal to Fillmore, Mendel Decl. Ex. 9; Gould Tr. 106-112, 152-154, 265-266.  The SEC completed the examinations by August 2006.  *See* STARS Pages; Gould Tr. 66-67, 69.

### The SEC's Deficiency Letter

5.      On August 10, 2006, the SEC sent the Deficiency Letter to the Board of Trustees of Schwab Investments and other recipients stating that sales materials relating to one of the funds that the SEC reviewed, YieldPlus (a series of Schwab Investments), might be

---

[2] CSIM and CS&Co are direct or indirect subsidiaries of Charles Schwab Corporation, Inc., the publicly traded parent.  *See* Gould Tr. 142-143, Mendel Decl. Ex. 4.

misleading in violation of SEC rules.  Deficiency Letter, Mendel Decl. Ex. 2; Gould Tr. 173-

174, Mendel Decl. Ex. 4.  The Deficiency Letter was issued in connection with the SEC's

examination of the investment companies ("Examination"), which covered activities from

January 1, 2004, to March 31, 2006.  *See* STARS Pages.  The Deficiency Letter stated, in

pertinent part:

> The YieldPlus Fund's sales material does not always contain balanced disclosure. Specifically, the sales materials frequently discuss the YieldPlus Fund's higher return potential vs. money market funds or other long-term cash investment vehicles without presenting sufficient balancing disclosure regarding the downsides of investing in the YieldPlus Fund.  For instance, advertising item #004-12997 states the following:

> YieldPlus Funds] seek **higher yield** with **slightly higher risks** than money market funds, but lower risk than longer-term bond funds. . . .

> While this statement is accompanied by disclosure that the value of an investment may fluctuate and that shares may be worth less than the original cost when redeemed, it does not discuss the material differences between the YieldPlus Fund and, in particular, money market funds. These differences include among, other things, significant credit quality and diversification requirements imposed upon money market funds by Rule 2a-7 of the [Investment Company] Act.  Also, these differences in credit quality, and therefore risk, could be substantial since the YieldPlus Fund may invest up to 25% of its assets in less than investment-grade securities. Therefore, the statement that the Schwab YieldPlus funds may incur slightly" higher risk than money market funds may be inaccurate or misleading, especially without additional, balanced disclosure.

> The funds and CSCO should review the YieldPlus Fund's sales Materials to ensure that they are accurate and contain sufficient, balanced disclosure to avoid being false or misleading.

Deficiency Letter at 3 (emphasis in original; footnote omitted).  The Deficiency Letter also

noted other improprieties, but those are not part of the claims that the SEC is now pursuing in

this case.[3]

------------------------------------------------

[3] In addition to highlighting Schwab's problematic comparison of YieldPlus with money market funds, the Deficiency Letter noted concerns with the index that Schwab used as the benchmark for YieldPlus (the Lehman U.S. Short Treasury: 9-12 Months index); advertisements stating that YieldPlus minimized credit risk by investing primarily in investment grade bonds without also mentioning that the Fund invested in unrated securities; and Schwab's failure to include a certain required disclosure on the back page of its statutory prospectus.  Deficiency Letter, Mendel Decl. Ex. 2.  These other three issues are not included in the SEC's present claims against Daifoits.

6.       In addition, the Deficiency Letter provided the following notices:

> The staff is bringing the deficiencies and/or violations of law described above to your attention for immediate corrective actions, ***without regard to any other actions(s) that may result from the examination***. ***You should not assume that the Funds' activities not discussed in this letter are in full compliance with federal securities laws or other applicable rules and regulations.*** The above findings are based on the staff's examination and are not findings or conclusions of the Commission.

Deficiency Letter at 4 (emphasis added), Mendel Decl. Ex. 2.

## Schwab's Response to the Deficiency Letter

7.       On September 8, 2006, the Chief Compliance Officer for the Schwab Funds sent the Response Letter to the SEC. Response Letter, Mendel Decl. Ex. 3. Although Schwab's response asserted that the particular advertisement identified in the Deficiency Letter was "fair and balanced," Schwab notably agreed to make changes that the SEC examination staff requested. Schwab's Response Letter stated:

> The funds would also like to point out that this advertisement is no longer in use. Nonetheless, the Funds and CS&Co. acknowledge the staff's position relative to the differing risk characteristics between money market funds and the ultra short bond fund category and to the extent money funds are mentioned, the ***Funds and CS&Co. will incorporate additional risk disclosures in future advertising and sales literature***.

Response Letter at 6-7 (emphasis added). SEC examiners responsible for the Examination understood the Response Letter to say that Schwab was taking the corrective steps that the SEC had requested. Gould Tr. 223-225, 228, Mendel Decl. Ex. 4. The SEC did not reply in writing to the Response Letter. Gould Tr. 228.

## The SEC's Claims in This Lawsuit

8.       In January 2011, the SEC bought this lawsuit against Daifotis, alleging that from 2005 to 2008 he knowingly or recklessly made misrepresentations and misleading omissions of material fact about YieldPlus, and caused or provided substantial assistance to the making of misleading statements about YieldPlus, to investors and the investment community generally (including Schwab registered representatives and independent registered investment advisers). Most of the misrepresentations and omissions, however,

1    were made after the review period for the Examination, which ended March 31, 2006, and

2    after the August 10, 2006 Deficiency Letter.

3         9.    The misrepresentations and omissions involved in this case were variously

4    contained in oral statements by Daifotis, slides that he displayed and that attributed their

5    contents to him, advertisements and other publications that quoted Daifotis or attributed their

6    contents to him, and a letter that he signed.  The false or misleading statements generally fall

7    into the following categories:[4]

8

9         (i)    Misrepresentations and misleading omissions in 2007 to the
               effect that *redemptions* by YieldPlus investors were "very,
10              very, very slight" or "minimal";

11        (ii)   Misrepresentations and misleading omissions about the
               *maturity levels* of YieldPlus holdings;
12
13        (iii)  Misrepresentations and misleading omissions to the effect that
               YieldPlus was a *diversified* fund, and in particular, was
14              diversified by industry and sector;

15        (iv)   Misrepresentations and misleading omissions to the effect that
               YieldPlus was a *stable investment*, including, but not limited
16              to, *comparisons of YieldPlus to money market funds or other
               cash investments, and assertions that YieldPlus would have
               minimal price fluctuations or had only a "slightly increased
17              risk to principal" or "modest increase in risk" compared to
               money market funds;*

18        (v)    Misrepresentations and misleading omissions in August 2007
               to the effect that Yield Plus *had high liquidity, was not selling
19              its bonds, and expected its bonds to go to par;*

20        (vi)   Misrepresentations and misleading omissions in September and
               November  2007 to the effect that YieldPlus *was holding cash
21              for buying opportunities;* and

22

23    _____

24        [4] Plaintiff's Fourth Amended and Supplemental Responses to Defendant Daifotis's
     First Set of Interrogatories ("Pl.'s Fourth Suppl. Responses to Def.'s First Set Rogs.")
25    (providing, in response to Interrogatory Numbers 1 and 2, a Schedule setting forth particular
     misrepresentations and misleading omissions related to defendant's alleged primary and/or
26    secondary liability under the securities laws, and, in response to Interrogatory Number 5,
     categories of misrepresentations and misleading omissions with specific references to entries
27    on the SEC Schedule), Mendel Decl. Ex. 8.

28

1
2
      (vii)   Misrepresentations and misleading omissions in August and
              November 2007 related to the **non-disclosure of holdings of
              securities backed by Alt-A mortgages;**

3
4
      (viii)  Misrepresentations and misleading omissions in August 2007
              to the effect that YieldPlus **did not hold direct obligations of
              troubled mortgage originators.**

5       10.    Categories (i), (v), (vi), (vii) and (viii) above involve only misrepresentations

6  and omissions made in 2007 or 2008 and do not involve subject matters addressed in the

7  Deficiency Letter.  Thus, these categories are outside the scope of Daifotis's Fifth, Sixth, and

8  Seventh Affirmative Defenses.  In addition, most of the misrepresentations and omissions

9  covered by the remaining categories (ii), (iii) and (iv) occurred after the August 10, 2006

10 Deficiency Letter (and after the Examination review period, which ended March 31, 2006), so

11 they too are outside the scope of at least Daifotis's Fifth Affirmative Defense.[5]  And most of

12 the misrepresentations and omissions covered by the categories (ii), (iii) and (iv) were made

13 within five years of the filing of the complaint in this case, so these also are outside the scope

14 of Daifotis's Seventh Affirmative Defense.

15                                   **ARGUMENT**

16 **I.   DAIFOTIS MUST SHOW A GENUINE ISSUE OF MATERIAL FACT TO
        AVOID SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES**

17           Summary judgment is proper when it is shown that there exists "no genuine issue as to

18 any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.

19 R. Civ. P. 56.  The party moving for summary judgment bears the initial burden of

20 demonstrating the absence of a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett*,

21 477 U.S. 317, 323 (1986).  However, "[w]hen the nonmoving party has the burden of proof at

22
23 trial, the moving party need only point out 'that there is an absence of evidence to support the

24 _____

25       [5] As shown in the Schedule I attached to Pl.'s Fourth Suppl. Responses to Def.'s First
   Set Rogs., the only items arguably arising before August 10, 2006 are certain materials
26 described in items 9.a. (a document dated August 9, 2006), item 10 (*i.e.*, "White Papers" as of
   September 30, 2005, March 31, 2006, and June 30, 2006), item 11 (content from Schwab's
27 internal website as of December 23, 2005), item 12 (a document dated November 30, 2005),
   item 13 (a September 2005 advertisement), and item 34 (a May 2005 advertisement).
28

nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Devereaux*, 263 F.3d at 1076 (quoting Fed. R. Civ. P. 56(e), and citing *Celotex*, 477 U.S. at 323-24); *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). "The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." *American Express Travel Related Servs. Co. v. D&A Corp.*, 2007 WL 3217565, at *1 (E.D. Cal. Oct. 29, 2007).

Daifotis has the burden of proving his affirmative defenses at trial. Therefore, in response to the SEC's showing of an absence of evidence to support these defenses, Daifotis must produce evidence sustaining a genuine issue of disputed material fact. *See, e.g., Arrow Electronics v. Night Operations Systems, Inc.*, 2011 WL 2633155, at *6 (D. Nev. July 1, 2011) (court "must consider whether [defendant] has produced affirmative evidence and specific facts in support of its affirmative defenses to defeat a motion for summary judgment"); *American Express Travel*, 2007 WL 3217565, at *36 ("The issue on summary judgment is whether Defendants can support the affirmative defenses with evidence.").

## II.    THE SEC IS ENTITLED TO SUMMARY JUDGMENT ON DAIFOTIS'S FIFTH AFFIRMATIVE DEFENSE

Daifotis asserts as his Fifth Affirmative Defense, "waiver and estoppel," against all counts as follows:

> The SEC is barred by the doctrines of waiver and estoppel from seeking relief based on any statements or alleged omissions identified in its August 10, 2006 letter to Schwab and addressed in Schwab's September 8, 2006 letter in response. By not responding to Schwab's September 8, 2006 letter which set forth Schwab's plans to respond to the SEC's concerns about these statements and alleged omissions, the SEC affirmatively waived its right to later use such statements and alleged omissions as the basis of any claim and is thereby estopped from advancing such claims in this or any other action. The SEC is further estopped from bringing claims based on statements or alleged omissions in any Schwab marketing materials in circulation as of

1    August 10, 2006 through its failure to alert Schwab to such alleged
2    deficiencies at that time.

Answer, Fifth Affirmative Defense, Mendel Decl. Ex. 1.  Thus, Daifotis seeks to bar any

claims by the SEC based on misrepresentations or misleading omissions (1) identified in the

Deficiency Letter; and (2) in any other "marketing materials in circulation as of August 10,

2006," even though the Deficiency Letter did not address them.  Daifotis's Fifth Affirmative

argues that "[b]y not responding to Schwab's September 8, 2006 letter . . . the SEC

affirmatively waived its right to later use such statements and alleged omissions as the basis

of any claim."  Daifotis asserts that the SEC is further "estopped" from relying on any

misrepresentations or omissions in any "Schwab marketing materials in circulation as of

August 10, 2006."

Notably, the Fifth Affirmative Defense appears not to target SEC claims based on

misrepresentations or misleading omissions that occurred after August 10, 2006.  *See supra*

Background Facts (describing SEC claims).  In any event, there is no genuine issue as to any

material fact that could support Daifotis's asserted waiver or estoppel defenses against *any*

misrepresentations or misleading omissions at issue here, and the SEC is entitled to judgment

as a matter of law on Daifotis's Fifth Affirmative Defense.

A.    **The SEC Cannot Waive or Be Estopped From Bringing an Enforcement
      Action**

"[I]t is well settled that the Government may not be estopped on the same terms as any

other litigant." *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51,

60 (1984).  Estoppel against the government is disfavored because, "when the Government is

unable to enforce the law because the conduct of its agents has given rise to estoppel, the

interest of the citizenry as a whole in obedience to the rule of law is undermined." *Id.*  Thus,

some courts have held that the SEC cannot be subject to estoppel at all in the context of

enforcement actions, "for the reason that the Commission may not waive the requirements of

an act of Congress nor may the doctrine of estoppel be invoked against the Commission."

*SEC v. Keating*, 1992 WL 207918, at *3 (C.D. Cal. July 23, 1992) (citing *SEC v. Culpepper*,

270 F.2d 241, 248 (2d Cir. 1959) (citing *SEC v. Morgan, Lewis & Bockius*, 209 F.2d 44, 49

(3d Cir. 1953))); *see also SEC v. Badian*, 2010 WL 1028256, at * (S.D.N.Y. Mar. 11, 2010)

(rejecting estoppel defense against SEC, citing *Culpepper*).  This position is supported by

Section 26 of the Securities Exchange Act of 1934 ("Exchange Act"), which states:

> [N]o action or failure to act by the Commission . . . shall be construed to
> mean that the particular authority has in any way passed upon the merits
> of or given approval to any security or any transaction or transactions
> therein, nor shall such action or failure to act with regard to any statement
> or report filed with or examined by such authority . . . be deemed a finding
> by such authority that such statement or report is true and accurate on its
> face or that it is not false or misleading.

15 U.S.C. § 78z; *see SEC v. Gulf Western Indus., Inc.*, 502 F. Supp. 343 (D.D.C. 1980)

(relying on Exchange Act Section 26 in holding that estoppel was not a defense to an SEC

enforcement action).

The above-stated considerations that weigh against application of estoppel to the SEC

also counsel against waiver.  "[T]he SEC cannot be held to have waived its right of action."

*Keating*, 1992 WL 207918, at *3 (citing authorities and imposing Rule 11 sanctions for

assertion of, among others, waiver defense against SEC).

Accordingly, Daifotis's waiver and estoppel defenses fail as a matter of law, and the

SEC is entitled to summary judgment on the Fifth Affirmative Defense.

**B.      No Genuine Issues of Material Fact Preclude Summary Judgment on
Daifotis's Waiver and Estoppel Defenses**

Even assuming waiver and estoppel defenses are theoretically available against the

SEC in the context of an enforcement action, the standard for establishing either defense is

high.  A party asserting equitable estoppel against the government must meet criteria beyond

the standard elements of that defense.  The party must show that "(1) the government engaged

in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts

will cause a serious injustice; and (3) the public's interest will not suffer undue damage by

imposition of estoppel."  *Baccei v. U.S.*, 632 F.3d 1140, 1147 (9th Cir. 2011) (citing *Morgan*

1   *v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985)); *see also United States v. Ruby Co.*, 588 F.2d

2   697, 703 (9th Cir. 1978).

3        Furthermore, whether or not asserted against the government, estoppel involves a

4   showing that:  there was a "definite" representation to the party claiming estoppel; the latter

5   "relied on its adversary's conduct in such a manner as to change his position for the worse";

6   and the reliance was "reasonable." *Heckler*, 467 U.S. at 59; *Graham v SEC*, 222 F.3d 994,

7   1007 (D.C. Cir. 2000) (summarizing elements).  The Ninth Circuit Court of Appeals has held

8   that the traditional elements of the equitable estoppel include:  "(1) the party to be estopped

9   must know the facts; (2) he must intend that his conduct shall be acted on or must so act that

10  the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be

11  ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Baccei*,

12  632 F.3d at 1147 (internal quotation omitted).

13       Waiver, to the extent distinguishable from Daifotis's asserted estoppel defense here,

14  "generally involves a clear, voluntary, intentional, and knowing expression." *Harvard*

15  *Investment Co. v. Gap Stores, Inc.*, 156 Cal. App.3d 704, 711 n. 6, 202 Cal. Rptr. 891 (1984);

16  *see also Roling v. E*Trade Secs., LLC*, 2012 WL 1038618, at *3 (N.D. Cal. Mar. 27, 2012);

17  *SEC v KPMG*, 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003) ("Waiver is the

18  'intentional relinquishment of a known right.").

19       Here, Daifotis cannot present specific facts supporting his claim that the SEC waived,

20  or should be estopped from asserting, claims based on misrepresentations or misleading

21  omissions (1) "identified in" the Deficiency Letter, including, but not limited to, the specific

22  advertisement addressed in the Deficiency Letter ("Misleading Advertisement"), or (2) "in

23  any Schwab marketing materials in circulation" as of the date of the Deficiency Letter.

24  Accordingly, there is no genuine issue of material fact and the SEC is entitled to judgment as

25  a matter of law.

26       **1.    Waiver and Estoppel Do Not Bar the SEC's Claims Based on
27              Statements or Omissions "Identified in" the Deficiency Letter**

28

### a.        The SEC Did Not Waive Any Right

Daifotis's waiver defense fails for at least three reasons.  First, because waiver requires a relinquishment that is "clear," "intentional," and "knowing," the SEC could not have "affirmatively waived" its rights simply by "not responding to" the Response Letter.  Nothing in the SEC's rules supports an inference of waiver in these circumstances.  To the contrary, Exchange Act Section 26 forbids such an inference.  *See supra* Argument Section II.A.

Second, the Deficiency Letter expressly warned that other regulatory actions could result from the Examination.  The Deficiency Letter stated:  "The staff is bringing the deficiencies and/or violations of law described above to your attention for immediate corrective action, *without regard to any other action(s) that may result from the examination*."  Deficiency Letter at 4 (emphasis added), Mendel Decl. Ex. 2; Gould Tr. 255-257, Mendel Decl. Ex. 4.  The Deficiency Letter therefore provided notice to Schwab that the SEC was not restricting itself with respect to possible future actions based on the Misleading Advertisement or similar sales materials identified in the Deficiency Letter.  This notice fatally undermines Daifotis's purported waiver theory.

Third, Daifotis cannot point to any written (or other) statement by the SEC after it sent the Deficiency Letter in which the SEC disclaimed the possibility of an enforcement action based on the Misleading Advertisement or similar materials.[6]  Finally, to the extent that the Fifth Affirmative Defense targets sales materials that post-date the Deficiency Letter, the waiver theory fails because the Deficiency Letter did not specifically address those materials,

---

[6] Defendant also cannot point to any oral statement by the SEC disclaiming the possibility of an enforcement action based on these materials.  Even if such an oral statement had been made, it almost certainly would have been insufficient to bind the agency.  *See Morgan v. Heckler*, 779 F.2d 544, 546 (9th Cir. 1985) (citing *Schweiker v. Hansen*, 450 U.S. 785 (1981) (per curiam)); *KPMG*, 2003 WL 21976733, at *3 (rejecting defenses asserted against SEC enforcement action where defenses were based on oral communications with the agency).

nor did the SEC undertake an obligation specifically to monitor those materials in connection with the Examination.

In sum, the SEC's actions following the Response Letter, particularly when considered in light of the Deficiency Letter's notice, are "insufficient as a matter of law to reflect an intentional relinquishment by the SEC of its right and duty under the law to file charges when it finds that charges are appropriate under the laws passed by Congress." *KPMG*, 2003 WL 21976733, at *3 (citing *Graham*, 222 F.3d at 1008)).

### b.     The SEC and Daifotis's Actions Do Not Support Estoppel

For similar reasons, the SEC is not estopped from bringing claims against Daifotis based on sales material identified in the Deficiency Letter.  Daifotis cannot meet even the basic elements of estoppel for these materials.  At no point did the SEC provide a "definite representation," *Heckler*, 467 U.S. at 59, or "act" in a manner from which Daifotis had "a right to believe," *Baccei*, 632 F.3d at 1147, that an enforcement action would not be brought based on these materials.  To the contrary, the Deficiency Letter alerted Schwab as to deficiencies "*without regard to any other action(s) that may result from the examination*." Deficiency Letter at 4 (emphasis added), Mendel Decl. Ex. 2; Gould Tr. 255-257.  "[T]he SEC's failure to prosecute at an earlier stage does not estop the agency from proceeding once it finally accumulated sufficient evidence to do so." *Graham*, 222 F.3d at 1008.

Furthermore, any reliance by Daifotis on the SEC's alleged silence after the Response Letter, for the proposition that no enforcement action would be forthcoming based on sales materials identified in the Deficiency Letter (or that the SEC somehow had approved advertisements that post-dated the Response Letter, which did not even exist at the time of the Examination) would have been unreasonable.  Assuming Daifotis had read the Deficiency Letter, it expressly stated "other action(s)" could result.  The present case is just such an other action.  And to the extent Daifotis now contends he did *not* read the Deficiency Letter, he can hardly contend that it was reasonable for him to assume anything about the SEC's future intentions regarding the subject matter of the Examination.  *See Falcone v. Pierce*, 864 F.2d

226, 230-31 (1st Cir. 1988) (rejecting estoppel claim by party that failed to review available documents); *Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 856 (7th Cir. 1997) (same); *Fuentes v. Secretary of HHS*, 1993 WL 50940, at *5 (Fed. Cl. Feb. 11, 1993) (reliance not reasonable where party asserting estoppel never read pertinent letter).[7]  In short, Daifotis could not have justifiably relied on the SEC's silence following the Response Letter (whether or not he saw the Deficiency Letter) to believe that this case would not have been brought.

### 2. Estoppel Does Not Bar the SEC's Claims Based On Statements or Omissions Not Identified in the Deficiency Letter

Daifotis also cannot present specific facts supporting an estoppel defense against claims "based on statements or alleged omissions in any Schwab marketing materials in circulation as of August 10, 2006," such that there is a genuine issue for trial.  Answer, Fifth Affirmative Defense, Mendel Decl. Ex. 1.  The fact that the SEC alerted Schwab to deficiencies in certain advertisements does not bar the SEC from pursuing claims based on other misleading marketing materials not referenced in the Deficiency Letter ("Other Materials").

Again, Daifotis cannot meet even the basic elements of estoppel.  Daifotis cannot present substantial evidence showing that SEC provided a "definite representation," *Heckler*, 467 U.S. at 59, or "act[ed]" in a manner from which the Daifotis had "a right to believe," *Baccei*, 632 F.3d at 1147, that the SEC approved the Other Materials.  To the contrary, the SEC provided explicit notice in the Deficiency Letter that the agency was ***not*** approving any of the company's other activities.  The Deficiency Letter stated:  ***"You should not assume***

---

[7] ███████████████████████████████████████████████████████

Defendant Kimon P. Daifotis's First Amended and Supplemental Objections and Responses to SEC's First Set of Interrogatories, Response to Interrogatory No. 6, Mendel Decl. Ex. 11; Defendant Kimon P. Daifotis's Second Amended and Supplemental Objections and Responses to SEC's First Set of Interrogatories, Response to Interrogatory No. 6, Mendel Decl. Ex. 12.  But that makes no difference for purposes of this motion.  As discussed herein, the elements for wavier and estoppel are not satisfied, and that is not changed by whether Daifotis saw the letter.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT                    15                              CASE NO. 11-CV-0137

*that the Funds' activities not discussed in this letter are in full compliance with the federal securities laws or other applicable rules and regulations."*  Deficiency Letter at 4 (emphasis added), Mendel Decl. Ex. 2; Gould Tr. 255-257, Mendel Decl. Ex. 4.  Therefore, Daifotis could not have reasonably relied on the SEC's silence as to the Other Materials.  *See Graham*, 222 F.2d at 1007 (rejecting estoppel claim where "neither the NASD nor the SEC made any representations at all to [petitioners]"); *Plumb*, 124 F.3d at 856 (party's "mere silence in the face of its not having a duty to speak cannot form the basis of an estoppel claim").

Any such reliance by Daifotis also would have been unreasonable because there is no evidence in the record that the SEC examiners purported to review all Schwab advertisements that had been issued.  Rather, they reviewed samples of the advertisements to which they had access.  Gould Tr. 106-111; *id.* at 179 ("[W]e can only cite deficiencies . . . that we find as a result of our examination, which is limited to the documents that we review."), Mendel Decl. Ex. 4.[8]  Moreover, with respect to the documents the SEC did review, it gave no assurances that the Deficiency Letter would address any and all deficiencies related to those documents.  *See Graham*, 222 F.3d at 1008 (no estoppel based on earlier review of subject matter by SEC examiner); *Investors Research Corp .v. SEC*, 628 F.2d 168, 174 (D.C. Cir. 1980) (no estoppel based on SEC's earlier receipt of information relating to violation).[9]  Given the Deficiency Letter's warning that it was not opining on any Other Materials, and the obvious limitations on the scope of the Examination, Daifotis cannot reasonably claim that he justifiably relied on

---

[8] After negotiating with Schwab about access to mutual fund advertisements, SEC examiners agreed to review samples of these advertisements selected from a list provided by Schwab.  Gould Tr. 106-111, Mendel Decl. Ex. 4.

[9] Of course, an examiner must first identify a potential problem before determining whether it constitutes a deficiency.  Gould Tr. 248-250, Mendel Decl. Ex. 4.  Whether or not the Examination covered sales materials that the SEC only later determined (in the context of the Enforcement investigation) to be problematic, the SEC did not represent that the Deficiency Letter itemized all possible deficiencies related to the documents the SEC reviewed.  Indeed, the Deficiency Letter stated that Schwab "should review the YieldPlus Fund's sales materials to ensure that they are accurate and contain sufficient, balanced disclosures to avoid being false and misleading."  Deficiency Letter at 6, Mendel Decl. Ex. 2. Moreover, the Deficiency Letter provided the notices cited in the text.

1   omissions in the Deficiency Letter as indicative of whether or not the SEC would bring an

2   enforcement action based on the Other Materials.

3        Finally, Daifotis cannot show that he relied *to his detriment* on the Examination or

4   related correspondence with respect to any marketing materials "in circulation as of August

5   10, 2006."  To show detrimental reliance, Daifotis must "identify the manner in which

6   reliance on the Government's misconduct has caused [him] to change his position for the

7   worse."  *Heckler*, 467 U.S. at 61.  Here, Daifotis cannot show that, because of anything the

8   SEC did in connection with the Examination, his actions before August 10, 2006 (or before

9   the March 31, 2006 end of the SEC's Examination period) would have been different with

10  respect to marketing materials in circulation as of that date.

11        **3.     Daifotis Cannot Meet the Heightened Standard for Asserting**
               **Any Estoppel Defense Against the SEC**

12

13       The SEC is entitled to summary judgment on Daifotis's Fifth Affirmative Defense for

14  the additional reason that Daifotis cannot meet the elements required for an assertion of

15  estoppel against the government.  Daifotis cannot present evidence creating a genuine issue as

16  to whether the SEC "engaged in affirmative misconduct going beyond mere negligence."

17  *Baccei*, 632 F.3d 1147, with respect to the Examination.  "Affirmative misconduct . . .

18  require[s] an affirmative misrepresentation or affirmative concealment of a material fact by

19  the government."  *Watkins v. United States Army*, 875 F.2d 699, 707 (9th Cir. 1989) (citation

20  omitted); *Morgan v. Gonzales*, 495 F.3d 1084, 1092 (9th Cir. 2007) ("extreme delay" of 13

21  years in seeking to remove alien was not affirmative misconduct).  In the present case, there

22  was no misrepresentation or concealment by the SEC at all, let alone "an affirmative

23  misrepresentation or affirmative concealment."  The record contains no hint that the SEC

24  affirmatively misrepresented or concealed any material fact concerning the Examination, nor

25  has Daifotis even alleged such misconduct.

26       Daifotis makes much of the fact that the SEC did not submit a written response to

27  Schwab's Response Letter, as though whoever writes the last letter automatically prevails.

28

1    Daifotis's argument fails.  First, the SEC had no obligation to reply to the Response Letter,

2    regardless of what that letter said.  The case law cited above requires an "affirmative

3    misrepresentation" or "affirmative concealment," not mere silence.

4           Second, no reasonable reading of Schwab's Response Letter would have suggested the

5    need for a reply.  Schwab's letter ***agreed*** to take the action requested by the SEC.  Schwab

6    represented to the SEC that it had stopped using the particular offending advertisement.  The

7    letter further stated that Schwab  "acknowledge[d] the staff's position relative to the differing

8    risk characteristics between money market funds and the ultra short bond fund category and to

9    the extent money funds are mentioned, the ***Funds and CS&Co. will incorporate additional***

10   ***risk disclosures in future advertising and sales literature***." (emphasis added)  Because

11   Schwab "acknowledge[d]" the SEC's position and agreed to include additional risk

12   disclosures in future ads, no reply was necessary.  Gould Tr. 223-225, 228, Mendel Decl. Ex.

13   4.  In short, there is no basis for concluding that the SEC's mere silence in response to

14   Schwab's assurances of future compliance was "affirmative misconduct."

15          Additionally, case law rejects the notion that the government engages in "affirmative

16   misconduct" by failing to alert a private party that he is non-compliant with pertinent rules.

17   *See Baccei*, 632 F.3d at 1147 (failure to inform taxpayer that his payment extension request

18   was deficient was not affirmative misconduct); *Mukherjee v. INS*, 793 F.2d 1006, 1009 (9th

19   Cir. 1986) (government's provision of incorrect information about immigration status did not

20   indicate "a deliberate lie" or "a pattern of false promises").  Although Daifotis tries to invoke

21   estoppel because the Deficiency Letter did not expressly point to other marketing materials

22   from before March 31, 2006, which are now the subject of the SEC's case, this effort fails.

23   Lack of earlier action by the SEC on those materials is not "affirmative misconduct" by any

24   stretch of that concept.

25          The asserted estoppel defense also requires Daifotis to show that the SEC's actions

26   "will cause a serious injustice" and "the public's interest will not suffer undue damage by

27   imposition of estoppel."  *Baccei*, 632 F.3d at 1147.  But Daifotis cannot make either showing.

28

First, the SEC's claims, if successful, may result in injunctive or other equitable relief, such as

disgorgement, or civil penalties against Daifotis.  For the reasons already stated, the facts that

the SEC had communicated concerns about some advertisements but not others in the

Deficiency Letter, and did not reply to the Response Letter, would not cause an injustice.

Second, imposition of estoppel here would harm the public interest.  Failure to enforce

otherwise valid claims by the SEC against Daifotis would deny the public "an injunction to

prevent future violations of an Act of Congress" or other appropriate relief against Daifotis.

*Culpepper*, 270 F.2d at 248.

### III.    Summary Judgment Should Be Granted On Daifotis's Sixth Affirmative Defense

Daifotis asserts his Sixth Affirmative Defense, ratification and laches, against all

counts as follows:

> The SEC is barred by the  doctrines of ratification and laches from
> seeking relief based on any statements or alleged omissions identified
> in its August 10, 2006 letter to Schwab and addressed in Schwab's
> September 8, 2006 letter in response. By not responding to Schwab's
> September 8,2006 letter to the SEC which set forth Schwab's plans to
> respond to the SEC's concerns about these statements and alleged
> omissions, the SEC implicitly ratified Schwab's stated plans. The SEC
> is further barred from bringing claims for any statements or alleged
> omissions in any Schwab marketing materials related to Schwab's
> September 8, 2006 letter under the doctrine of laches because, by
> failing to alert Schwab to the alleged deficiencies after that time, the
> SEC allowed the alleged violations to continue to occur.

Answer, Sixth Affirmative Defense, Mendel Decl. Ex. 1.  These additional defenses are barely

distinguishable from the waiver and estoppel defenses discussed above and similarly should

be rejected here on summary judgment.  *See Gulf & Western*, 502 F. Supp. at 348 (striking

combined affirmative defense of "laches and equitable estoppel"); *SEC v. Sands*, 902 F. Supp.

1149, 1167 (C.D. Cal. 1995) (striking combined affirmative defense of "ratification and

estoppel").

#### A.    The Exchange Act Precludes Daifotis's Ratification Defense

Exchange Act Section 26 provides that the SEC cannot through any "action or failure

to act" approve "any security or any transaction or transactions therein," or find that any

statement or report filed with or examined by the SEC "is true and accurate on its face or that it is not false or misleading." 15 U.S.C. § 78z. Under this Section, "the SEC cannot be held to have ratified illegal acts." *Keating*, 1992 WL 207918, at *4; *Gulf & Western*, 502 F. Supp. at 348 (Section 26 precluded defense that SEC had "ratified" accounting principles at issue). To the extent YieldPlus advertisements were materially misleading, Schwab's plans for these advertisements could not have been ratified by the SEC.

Daifotis's ratification defense also fails for lack of logic. Schwab told the SEC in its Response Letter that the Misleading Advertisement "is no longer in use," so, at least as to that advertisement, there was nothing to ratify. Response Letter at 7, Mendel Decl. Ex. 3. In addition, "ratification" generally requires a *prior act* that can be affirmed by the ratifying party. *See United States v. Alaska S.S. Co.*, 491 F.2d 1147, 1147 (9th Cir. 1974); *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 61, 500 P.2d 1401, 1405 (Cal. 1972) ("Generally, the effect of ratification is that the authority which is given to the purported agent relates back to the time when he performed the act."); BLACK'S LAW DICTIONARY 872 (6th Abridged Ed. 1991) ("Ratification" means "[i]n a broad sense, the confirmation of a previous act done either by the party himself or by another").

Here, Schwab committed no prior act that the SEC could ratify. Rather, the Response Letter stated that, "*to the extent money funds are mentioned*, the Funds and CS&Co. will incorporate additional risk disclosures in future advertising and sales literature." Response Letter at 7 (emphasis added), Mendel Decl. Ex. 3. Thus, Schwab described no prior or current practice and did not even state with certainty that it intended to use similar advertisements in the future. Schwab's vague promise to provide "additional risk disclosures," without reference to the specific language of any particular advertisement or what the additional disclosures would be, did not constitute anything susceptible to ratification by the SEC.

**B.    The Laches Defense is Unavailable Against the SEC**

Daifotis's attempt to invoke laches to support his theory that the SEC was obligated to monitor Schwab's advertisements after the Response Letter also fails. "It is well settled that

the United States is not . . . subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *see also Bresson v. Commissioner of Internal Revenue*, 213 F.3d 1173 (9th Cir. 2000) (laches defense unavailable against "the United States . . . acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law"). This principle applies to SEC enforcement actions. *See Keating*, 1992 WL 207918, at *2 ("[T]he case law makes clear that the government in general . . . and the SEC in particular are not subject to a defense of laches." (citing *Summerlin* and other cases)); *Gulf & Western*, 502 F. Supp. at 348 ("A claim of laches . . . cannot be applied to a government agency working in the public interest.").

Daifotis cannot provide evidence as to which there is a genuine issue of material fact that the SEC's actions or lack thereof warrant an exception to this principle for fairness or any other reason. *See generally Ruby*, 588 F.2d at 705 n. 10 ("Even if there were some allowance for laches against the government, there is no reason by that doctrine should not be subject to at least the same strictures as estoppel."). Daifotis can point to no rule that required SEC examiners to monitor Schwab's advertisements after the Examination to determine whether or how the company carried through on its promises, to preserve the SEC's claims against Daifotis. And Daifotis cannot provide evidence as to which there is a genuine issue of material fact that the SEC approved any advertisements that Schwab provided to the SEC as a follow-up to its Response Letter.

## IV.   Partial Summary Judgment Should Be Granted on Daifotis's Seventh Affirmative Defense

Daifotis asserts his Seventh Affirmative Defense, statute of limitations, against all counts as follows:

> The SEC is time-barred from seeking the penalties and any other relief set forth in its First Amended Complaint pursuant to the statute of limitations set forth in 28 U.S.C. § 2462.

Answer, Seventh Affirmative Defense, Mendel Decl. Ex. 1. Daifotis's reliance on Section 2462 is misguided. The SEC is entitled to summary judgment on the Seventh Affirmative

Defense at least to the extent Daifotis seeks to bar the SEC's request for injunctive relief or disgorgement (which are not subject to the statute of limitations at all) and to the extent Daifotis seeks to bar civil penalties based on Daifotis's conduct after January 11, 2006.

In *Rind v. SEC*, 991 F.2d 1486 (9th Cir. 1993), in which the SEC sought injunctive relief and disgorgement, the Ninth Circuit Court of Appeals held that no statute of limitations should apply to SEC enforcement actions. In reaching its holding, the Ninth Circuit emphasized that, "[w]hen the Commission sues to enforce the securities laws, it vindicates public rights and furthers the public interest." *Id.* at 1491. The court discussed the complex and time-consuming nature of investigations of violations of securities laws, concluding that "[p]lacing strict time limits on Commission enforcement actions therefore would quite plainly 'frustrate or interfere with the implementation of national policies.'" 991 F.2d at 1492 (internal citation omitted). The Ninth Circuit further explained that "[i]mposing a state or *any other* statute of limitations on Commission enforcement actions would also conflict with the underlying policies of the securities laws; this conclusion strongly negates any inference that Congress intended a limitations period to apply." *Id.* (emphasis added); *see also SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) (statute of limitations did not apply to SEC disgorgement claim).

In addition, courts in this circuit have roundly rejected attempts to use the five-year "catch-all" statute of limitations set forth in 28 U.S.C. § 2462, to bar SEC claims for injunctive relief and disgorgement. *See SEC v. Des Champs*, 2009 WL 3068258, at *2 (D. Nev. Sep. 11, 2009) (Section 2462 does not apply to SEC claims for injunction and disgorgement); *SEC v. Mercury Interactive, LLC*, 2008 WL 4544443, at *4 (N.D. Cal. Sep. 30, 2008) (same); *SEC v. Berry*, 580 F. Supp.2d 911, 919 (N.D. Cal. 2008) (same). Section 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within

the same period, the offender or the property is found within the
United States in order that proper service may be made thereon.

28 U.S.C. § 2462. Because Section 2462 potentially provides a statute of limitations only for relief that takes the form of a "fine, penalty, or forfeiture," the provision does not apply to SEC claims for injunctive relief or disgorgement, which are equitable in nature. *See, e.g.*, *Des Champs*, 2009 WL 3068258, at *2; *Berry*, 580 F. Supp.2d at 919.

District courts in this circuit have found that Section 2462 potentially bars civil monetary penalties sought by the SEC for conduct occurring more than five years before the complaint was filed, notwithstanding the decision in *Rind*. *See Berry*, 580 F. Supp. 2d at 919.

Two key points follow from the above authorities. First, as a matter of law, the SEC's claims for injunctive relief and disgorgement are not subject to any statute of limitations, regardless of when the conduct occurred. Rather, the only applicable statute of limitations (Section 2462) applies only, if at all, to the SEC's request for civil monetary penalties. Second, even with regard to civil monetary penalties, Section 2462 would apply only to a limited set of Daifotis's actions and omissions. The SEC's claims for civil monetary penalties in this case are based on misrepresentations and misleading omissions from 2005 to 2008.[10] The SEC filed this lawsuit on January 11, 2011. Therefore, Section 2462 potentially applies, at most, only to those statements and omissions that form a basis for the SEC's claims that occurred on or before January 11, 2006. As a matter of law, Section 2462 does not apply to claims based upon conduct after that date.[11]

_____

[10] The SEC seeks civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Exchange Act Section 21(d) [15 U.S.C. § 78u(d)], Section 209(e) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-9(e)] and Section 42(e) of the Investment Company Act [15 § 80a-41(e)]. *See* First Am. Compl., Prayer for Relief (Dkt. 98).

[11] Case law also recognizes principles under which Section 2462 would not even apply to conduct prior to January 11, 2006. For example, Section 2462 is subject to equitable tolling, *see Berry*, 580 F. Supp. 2d at 919; *Mercury*, 2008 WL 4544443, at *4, and does not apply to conduct that constitutes a "continuing violation" before and during the limitations period, *see Des Champs*, 2009 WL 3068258, at *2 (SEC validly asserted continuing violation theory), *SEC v. Kelly*, 765 F. Supp. 2d 301 (S.D.N.Y. 2011) ("[C]onduct that occurred outside the statute of limitations period is so closely related to the conduct that is not time barred as to

1    In sum, the Court should grant summary judgment to the SEC on Daifotis's Seventh

2 Affirmative Defense at least with respect to the SEC's request for injunctive relief and

3 disgorgement, and with respect to civil penalties based on conduct that occurred after January

4 11, 2006.

5                                    **<u>CONCLUSION</u>**

6    For the reasons set forth above, this Court should grant the SEC summary judgment

7 on Daifotis's Fifth and Sixth Affirmative Defenses and partial summary judgment on

8 Daifotis's Seventh Affirmative Defense.

9  DATED:  May 3, 2012                    Respectfully submitted,

10

11                                        /s/ *David Mendel*
                                          David J. Gottesman
12                                        Frederick L. Block
                                          David S. Mendel
13                                        Robert A. Cohen
                                          Melissa R. Hodgman
14

15                                        Attorneys for Plaintiff
                                          SECURITIES AND EXCHANGE
16                                        COMMISSION
                                          100 F Street, N.E.
17                                        Washington, DC 20549-4030
                                          Telephone:  (202) 551-4470 (Gottesman)
18                                        Facsimile:  (202) 772-9245 (Gottesman)

19

20

21

22

23

24

25

26

27  _____
    be viewed as part of a continuing violation.").  The Court, however, need not decide at this
28  juncture whether doctrines such as equitable tolling would apply in this case.