# EXHIBIT 27

SEVENTH EDITION

# THE HANDBOOK *of* FIXED INCOME SECURITIES

EDITED BY

Frank J. Fabozzi

WITH STEVEN V. MANN

# THE HANDBOOK OF FIXED INCOME SECURITIES

*This page intentionally left blank*

Case 3:11-cv-00137-WHA Document 122-27 Filed 05
#: 3008

# THE HANDBOOK OF FIXED INCOME SECURITIES

**Seventh Edition**

**FRANK J. FABOZZI, Ph.D., CFA, CPA**
*Editor*

*With the assistance of*
**STEVEN V. MANN, Ph.D.**

**McGraw-Hill**
New York Chicago San Francisco Lisbon London Madrid
Mexico City Milan New Delhi San Juan Seoul
Singapore Sydney Toronto

Exhibit 27
Page 443

- *Alt-A loans.* The Alt-A label has been applied to a broad swath of mortgage types. In general, we would characterize these loans as slightly below top-credit mortgages. These loans are primarily classified as "limited documentation," where the borrower is missing a standard credit history, documented source of income, or some other standard input used in credit scoring models. In general, Alt-A mortgage rates are higher than market, so they are also less sensitive to a rally in interest rates. Note that overall, Alt-A prepayments may be higher over time as the borrowers "cure" their problems at a reasonable pace. In most cases, the homeowner will find it advantageous to then refinance into a conforming loan at a lower rate. The important factor is that this credit curing is not necessarily correlated with interest rates; thus the collateral is considered more valuable than standard jumbo loans.

While lower-credit-quality loans have been securitized, in general, this is a very small market, primarily dominated by the home equity originators. Home equity loan–backed securities are discussed in Chapter 26.

### Other Nonagency CMO Issues

Besides collateral credit, there are a few other issues with nonagency CMOs that differentiate them from agency CMOs. While CMO collateral is bankruptcy remote from the issuer and originator, there can be residual servicing risk if the servicer has financial problems. Jumbo mortgage prepayments tend to behave differently than agency mortgage prepayments. In addition, there are other details that the housing GSEs take care of that a nonagency CMO investor may need to worry about occasionally, such as compensating interest.

***Compensating Interest.*** In a nonagency CMO deal, prepayments received before the end of the month result in an interest shortfall for the deal. The borrower is not obligated to pay interest for the balance of the month once the loan is paid off, yet the CMO deal is structured to pay interest on that balance through the end of the month. In agency deals, this shortfall is made up by the agencies themselves on the underlying pass-throughs. In nonagency deals, there are several ways that this problem can be solved.

- Compensating interest is paid by the servicer, originator, or deal sponsor to make up the interest-income shortfall owing to prepayments. Effectively, this structure resembles the agency CMO structure, with the exception that the credit rating of the compensating interest provider can become a factor in the deal's rating. Often the amount of interest in a single month is limited to fees taken in on the deal, effectively capping the risk to the compensating interest provider and raising a small risk to the investor.
- Create a regular CMO tranche or tranches that absorb the risk of the interest shortfall.